# EXHIBIT 1

## SETTLEMENT AGREEMENT

SETTLEMENT AGREEMENT made as of January 21, 2011, among:

(a) Plaintiffs Julie Lindemann, Melissa Nuttall, Sara Shuck, Lawrence McNally, Stephanie Bozzo, Yossi Zarfati, Darcy Trzupek, and Carol McDonough (collectively, the "Certified Class Representatives"), who have filed suit in the action styled *McDonough, et al. v Toys "R" Us, Inc. d/b/a Babies "R" Us, et al.,* Civil Action No. 2:06-cv-0242AB, in the United States District Court for the Eastern District of Pennsylvania (the "McDonough Action") as representatives of the McDonough Subclasses (as defined in Paragraph 1(s));

(b) Plaintiffs Ariel Elliott, Beth Hellman, Christine Brooke Logan, Kristi Monville, Sarah Otazo, Kelly Pollock, and Elizabeth Starkman (collectively, the "Elliott Class Representatives"), who have filed suit in the action styled *Elliott, et al. v Toys "R" Us, Inc., et al.,* Civil Action No. 2:09-cv-06151AB, in the United States District Court for the Eastern District of Pennsylvania (the "Elliott Action") as representatives of the Elliott Subclasses (as defined in Paragraph 1(k));

(c) Defendants Toys "R" Us, Inc., d/b/a Babies "R" Us, Babies "R" Us, Inc.[1], and Toys "R" Us-Delaware, Inc. (collectively, "BRU" or "Babies "R" Us"); and

(d) Defendants BabyBjörn AB ("BabyBjörn"), Britax Child Safety, Inc. ("Britax"), Kids Line, LLC ("Kids Line"), Maclaren USA, Inc. ("Maclaren"), Medela, Inc. ("Medela"), Peg Perego U.S.A., Inc. ("Peg Perego"), and Regal Lager, Inc. ("Regal Lager") (collectively, the "Manufacturer Defendants" and, together with BRU, "Defendants").

The Certified Class Representatives and the Elliott Class Representatives (collectively, the "Settlement Subclass Representatives," or "Plaintiffs") enter this Agreement both individually and on behalf of the Settlement Subclasses (as defined in Paragraph 1(ii).

---

[1]     Babies "R" Us, Inc. has been dissolved.

# I.   RECITALS

A.      Plaintiffs, respectively, are prosecuting the McDonough Action and the Elliott Action on their own behalf and on behalf of the Settlement Subclasses against Defendants, alleging violations of the Sherman Act, 15 U.S.C. § 1, *et seq.* and the Clayton Act, 15 U.S.C. §§ 12, *et seq.*  The parties have agreed to request consolidation of the McDonough Action and the Elliott Action for purposes of this Settlement only and the consolidated action shall be referred to as the "Baby Products Antitrust Litigation" or the "Litigation".

B.      Plaintiffs allege that Defendants engaged in unlawful conduct that resulted in the charging of supracompetitive prices for BabyBjörn baby carriers, Britax car seats, Kids Line Products, Maclaren strollers, Medela Pump In Style breast pumps, Peg Perego strollers, Peg Perego car seats, and Peg Perego high chairs.

C.      Plaintiffs allege that the Manufacturer Defendants conspired with BRU and/or aided and abetted or otherwise facilitated BRU in the conduct alleged.

D.      Defendants deny Plaintiffs' allegations, have not conceded or admitted any liability, and have asserted defenses to Plaintiffs' claims.

E.      The original Class Action Complaint in the McDonough Action was filed on or about January 19, 2006. Plaintiffs most recently filed the Fourth Amended Consolidated Class Action Complaint (the "McDonough Complaint") on or about November 2, 2007. On or about July 15, 2009, the Court granted, in part, Plaintiffs' Motion for Class Certification (except as to Kids Line, which was dismissed without prejudice from the McDonough Action), with the Certified Class Representatives appointed as representatives of the McDonough Subclasses, and Class Counsel appointed as class counsel.

F.      The Elliott Class Representatives filed the Class Action Complaint in the Elliott Action on or about December 28, 2009 (the "Elliott Complaint"). Pursuant to the Elliott

Complaint, the Elliott Class Representatives seek to represent the Elliott Subclasses, and Class Counsel seek to be appointed as class counsel for the Elliott Subclasses as part of the Settlement Subclasses.

G.     Class Counsel have conducted an investigation into the facts and the law regarding the Litigation, as well as, in the McDonough Action, conducted extensive document and deposition discovery, including the review of over one million (1,000,000) pages of documents produced by the Defendants and third parties, over thirty (30) depositions of fact witnesses, a three-day evidentiary hearing on Plaintiffs' motion for certification of the McDonough Subclasses, and the exchange of reports by and depositions of testifying expert witnesses. Based on this extensive analysis, Class Counsel in the Litigation has concluded that a settlement with Defendants in accordance with the terms set forth in this Agreement is in the best interests of the  Plaintiffs and the other members of the Settlement Subclasses.

H.     Each Defendant has concluded that it will enter into this Agreement in order to avoid the further risks, expense, inconvenience, and distraction of burdensome and protracted litigation, to obtain the releases and judgment contemplated by this Agreement, and to terminate with finality all claims that Plaintiffs and/or the other members of the Settlement Subclasses have or could have asserted against them in the Litigation.

I.     The parties entered into mediation before Professor Eric Green, during which Class Counsel, on behalf of Plaintiffs, and Defendants conducted arm's-length settlement negotiations, including a three-day in-person mediation and, subsequently, over six (6) months of extensive telephonic, email, and in-person negotiations. This Agreement embodies all of the terms and conditions of the settlement between Plaintiffs, both individually and on behalf of the

Settlement Subclasses, and Defendants, which have been reached as a result of the parties' negotiations, subject to the approval of the Court.

NOW, THEREFORE, IT IS STIPULATED AND AGREED, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, by and among Plaintiffs (for themselves and the Settlement Subclasses) and Defendants, through their respective attorneys or directly, without any admission or concession on the part of Plaintiffs of any lack of merit of the Litigation whatsoever, and without any admission or concession on the part of Defendants of any liability or wrongdoing or lack of merit in the defenses whatsoever, in consideration of the agreements and releases set forth herein, and for other good and valuable consideration, that the Litigation be settled, compromised, and dismissed on the merits with prejudice, on the following terms and conditions:

## II.    DEFINITIONS

1.      As used in this Agreement, in addition to the terms defined in the introductory paragraph and the Recitals, the following terms have the following meanings:

a.      "Agreement" means this Settlement Agreement, together with the Exhibits attached hereto, which are incorporated herein by this reference.

b.      "Allocation Order" means the Order attached as Exhibit F and to be entered in the Litigation, approving the allocation of the Settlement Amount among the Settlement Classes.

c.      "Authorized Claimant" means any Settlement Class Member whose claim for recovery has been allowed pursuant to the terms of this Agreement.

d.      "Claimant" means any Settlement Class Member who files a Claim Form in such form and manner, and within such time, as the Court shall prescribe.

e.     "Claims Administrator" means an independent professional service company to be selected by Class Counsel, subject to approval of the Court, and charged with administering the claims process, arranging for Court-ordered dissemination of required notices, and, if so ordered, distributing the settlement proceeds pursuant to the Allocation Order.

f.     "Claim Form" means the form of Claim Form and Release substantially in the form attached hereto as Exhibit D.

g.     "Class Counsel" means the law firms of Hagens Berman Sobol Shapiro LLP, Spector Roseman Kodroff & Willis PC, and Wolf Haldenstein Adler Freeman & Herz LLC.

h.     "Class Members" means all persons who are members of any of the Settlement Subclasses.

i.     "Complaints" means the McDonough Complaint and the Elliott Complaint.

j.     "Effective Date" means the date upon which the Final Judgment shall become Final.

k.     "Elliott Subclasses" means:

i.     All persons who directly purchased any Britax car seat from Babies "R" Us within the U.S. during the period January 20, 2006 to the Preliminary Approval Date. Plaintiffs Ariel Elliott and Kristi Monville are the Elliott Class Representatives for this Elliott Subclass.

ii.     All persons who directly purchased any Kids Line Product from Babies "R" Us within the U.S. during the period January 1, 1999 to December 31, 2006. Plaintiffs Beth Hellman and Kelly Pollock are the Elliott Class Representatives for this Elliott

Subclass.  The class definition for the Elliott Subclass relating to Kids Line Products continues until December 31, 2006, and not to the Preliminary Approval Date, because after the completion of discovery in the McDonough Action, Class Counsel had no information upon which to base claims beyond the date specified.

  iii. All persons who directly purchased any Maclaren stroller from Babies "R" Us within the U.S. during the period January 20, 2006 to the Preliminary Approval Date. Plaintiff Christine Brooke Logan is the Elliott Class Representative for this Elliott Subclass.

  iv. All persons who directly purchased any Medela Pump In Style breast pump from Babies "R" Us within the U.S. during the period January 20, 2006 to the Preliminary Approval Date. Plaintiff Kristi Monville is the Elliott Class Representative for this Elliott Subclass.

  v. All persons who directly purchased any Peg Perego stroller from Babies "R" Us within the U.S. during the period January 20, 2006 to the Preliminary Approval Date. Plaintiff Elizabeth Starkman is the Elliott Class Representative for this Elliott Subclass.

  vi. All persons who directly purchased any Peg Perego high chair from Babies "R" Us within the U.S. during the period July 1, 1999 to the Preliminary Approval Date. Plaintiff Sarah Otazo is the Elliott Class Representative for this Elliott Subclass.

  vii. All persons who directly purchased any Peg Perego car seat from Babies "R" Us within the U.S. during the period July 1, 1999 to the Preliminary Approval Date. Plaintiffs Lawrence McNally and Stephanie Bozzo are the Elliott Class Representatives for this Elliott Subclass.

l.      "Fairness Hearing" means the hearing prescribed by Fed. R. Civ. P. 23(e)(2) to be held as provided in the Preliminary Approval Order.

m.      "Fed. R. Civ. P." means the Federal Rules of Civil Procedure.

n.      "Fee and Expense Application" means the application of Class Counsel for the award of attorneys' fees, expenses, notice and administration costs, and incentive awards for the Plaintiffs, as provided in Part VII of this Agreement.

o.      "Fee and Expense Order" means the Order to be entered in the Litigation substantially in the form attached hereto as Exhibit G, granting the Fee and Expense Application.

p.      "Final," with respect to the Final Judgment, means: (i) if no appeal is filed, the expiration date of the time for filing or noticing of any appeal from the Court's entry of the Final Judgment; or, if an appeal is filed, (ii) the date of final dismissal of any appeal from the Final Judgment, or the final dismissal of any proceeding on certiorari to review the Final Judgment; or (iii) the date of final affirmance on an appeal of the Final Judgment, the expiration of the time to file a petition for a writ of certiorari, or the denial of a writ of certiorari to review the Final Judgment, and, if certiorari is granted, the date of final affirmance of the Final Judgment following review pursuant to that grant. Any proceeding or order, or any appeal or petition for a writ of certiorari pertaining solely to the Allocation Order and/or the Fee and Expense Order shall not in any way delay or preclude the Final Judgment from becoming Final.

q.      "Final Judgment" means the Final Order and Judgment Approving Settlement and Certifying Settlement Subclasses to be entered in the Litigation substantially in the form attached as Exhibit E, approving this Agreement and the Settlement.

r.      "Kids Line Product(s)" means all products supplied by Kids Line and sold at Babies "R" Us, including, but not limited to, crib sets, blankets, valances, sheets, wall

decorations, baskets, pillows, pads, hampers, porta crib sets, lamps, shelves, stackers, rugs, or mobiles.

      s.      "<u>McDonough Subclasses</u>" means:

      i.      All persons who directly purchased any BabyBjörn baby carrier distributed by Regal Lager from Babies "R" Us within the U.S. during the period February 2, 2000, to April 30, 2005. Plaintiffs Julie Lindemann, Melissa Nuttall, Sara Shuck, Lawrence McNally, and Stephanie Bozzo are the Certified Class Representatives for this McDonough Subclass. The class definition for the McDonough Subclass relating to BabyBjörn baby carriers continues until April 30, 2005, and not to January 19, 2006, because after the completion of discovery in the McDonough Action, Class Counsel had no information upon which to base claims beyond the date specified.

      ii.      All persons who directly purchased any Britax car seat from Babies "R" Us within the U.S. during the period January 1, 1999, to January 19, 2006. Plaintiff Melissa Nuttall is the Certified Class Representative for this McDonough Subclass.

      iii.      All persons who directly purchased any Maclaren stroller from Babies "R" Us within the U.S. during the period October 1, 1999, to January 19, 2006. Plaintiff Yossi Zarfati is the Certified Class Representative for this McDonough Subclass.

      iv.      All persons who directly purchased any Medela Pump In Style breast pump from Babies "R" Us within the U.S. during the period July 1, 1999, to January 19, 2006. Plaintiffs Stephanie Bozzo and Darcy Trzupek are the Certified Class Representatives for this McDonough Subclass.

      v.      All persons who directly purchased any Peg Perego stroller from Babies "R" Us within the U.S. during the period July 1, 1999, to January 19, 2006. Plaintiffs

Stephanie Bozzo, Carol McDonough, and Lawrence McNally are the Certified Class Representatives for this McDonough Subclass.

t.      "Medela Pump in Style" shall include any and all versions or models of the Medela Pump in Style Original, Pump in Style Traveler, Pump in Style Companion, and/or Pump in Style Advanced.

u.      "Net Settlement Fund" means the Settlement Fund net of any (i) Taxes, (ii) notice and administration costs pursuant to Paragraph 15, (iii) the attorneys' fee and expense award referred to in Paragraph 26, (iv) the incentive award to Plaintiffs referred to in Paragraph 26, and (v) the remaining administration expenses referred to in Paragraph 27.

v.      "Notice" means the form of notice of the proposed Settlement to be provided to Class Members as provided in this Agreement and the Preliminary Approval Order, substantially in the form attached hereto as Exhibit B.

w.      "Person" means any natural person (an individual), any entity, including any corporation (including any non-profit corporation), partnership (general or limited, including any limited liability partnership), limited liability company, investment company, business trust, cooperative, joint venture, estate, trust, association or organization, whether domestic or foreign, or any governmental or administrative body, whether domestic or foreign.

x.      "Preliminary Approval Date" means the date that the Preliminary Approval Order is entered.

y.      "Preliminary Approval Order" means the order preliminarily approving the Settlement, authorizing and directing dissemination of the Notice and Publication Notice to the Settlement Subclasses, and providing for the Fairness Hearing. The proposed form of the

Preliminary Approval Order, to be submitted pursuant to Paragraph 5, is attached hereto as Exhibit A.

z.      "Publication Notice" means the summary form of electronic and/or print notice of the proposed Settlement to be provided to Class Members as provided in this Agreement and the Preliminary Approval Order, substantially in the form attached hereto as Exhibit C.

aa.      "Released Claims" means those claims released pursuant to Paragraph 10.

bb.      "Releasees" means Defendants, including their past and present respective parents, subsidiaries, affiliates, employees, officers, directors, shareholders, attorneys, representatives, agents (acting in such capacity), and their respective successors and assigns.

cc.      "Releasors" means Plaintiffs and all other Settlement Class Members.

dd.      "Settlement" means the settlement of the Litigation contemplated by this Agreement.

ee.      "Settlement Amount" means Thirty Five Million Five Hundred Thousand U.S. Dollars (USD $35,500,000.00), subject to the possible reduction in that amount in accordance with Section X.

ff.      "Settlement Classes" or "Settlement Class Members" means the members of the Settlement Subclasses who do not timely and validly exclude themselves (sometimes referred to as "opting out") from the Settlement in accordance with the requirements set forth in the Notice or as otherwise approved by the Court.

gg.      "Settlement Fund" means the escrow account or accounts, in which is maintained the Settlement Amount after payments thereof by or on behalf of Defendants to the Settlement Trustees and any income earned thereon from the time of transfer and/or the amount

so maintained, as the context may require. That is, "Settlement Fund" means either the account(s) in which funds are held or the funds so held in such account(s), as the context may require.

hh.    "Settlement Products" means BabyBjörn baby carriers, Britax car seats, Kids Line Products, Maclaren strollers, Medela breast pumps, Peg Perego strollers, Peg Perego car seats, and Peg Perego high chairs purchased during the respective periods identified in the definitions of the Settlement Subclasses.

ii.    "Settlement Subclasses" means:

i.    All persons who directly purchased any BabyBjörn baby carrier distributed by Regal Lager from Babies "R" Us within the U.S. during the period February 2, 2000, to April 30, 2005. Plaintiffs Julie Lindemann, Melissa Nuttall, Sara Shuck, Lawrence McNally, and Stephanie Bozzo are the Certified Class Representatives for this Settlement Subclass.  The class definition for the Settlement Subclass relating to BabyBjörn baby carriers continues until April 30, 2005, and not to January 19, 2006, because after the completion of discovery in the McDonough Action, Class Counsel had no information upon which to base claims beyond the date specified.

ii.    All persons who directly purchased any Britax car seat from Babies "R" Us within the U.S. during the period January 1, 1999 to the Preliminary Approval Date. Plaintiffs Melissa Nuttall, Ariel Elliott, and Kristi Monville are the Settlement Class Representatives for this Settlement Subclass.

iii.    All persons who directly purchased any Kids Line Product from Babies "R" Us within the U.S. during the period January 1, 1999 to December 31, 2006. Plaintiffs Beth Hellman and Kelly Pollock are the Settlement Class Representatives for this

Settlement Subclass.   The class definition for the Settlement Subclass relating to Kids Line Products continues until December 31, 2006, and not to the Preliminary Approval Date, because after the completion of discovery in the McDonough Action, Class Counsel had no information upon which to base claims beyond the date specified.

iv.   All persons who directly purchased any Maclaren stroller from Babies "R" Us within the U.S. during the period October 1, 1999, to the Preliminary Approval Date. Plaintiffs Yossi Zarfati and Christine Brooke Logan are the Settlement Class Representatives for this Settlement Subclass.

v.   All persons who directly purchased any Medela Pump In Style breast pump from Babies "R" Us within the U.S. during the period July 1, 1999, to the Preliminary Approval Date. Plaintiffs Stephanie Bozzo, Darcy Trzupek, and Kristi Monville are the Settlement Class Representatives for this Settlement Subclass.

vi.   All persons who directly purchased any Peg Perego stroller from Babies "R" Us within the U.S. during the period July 1, 1999, to the Preliminary Approval Date. Plaintiffs Stephanie Bozzo, Carol McDonough, Lawrence McNally, and Elizabeth Starkman are the Settlement Class Representatives for this Settlement Subclass.

vii.   All persons who directly purchased any Peg Perego high chair from Babies "R" Us within the U.S. during the period July 1, 1999 to the Preliminary Approval Date. Plaintiff Sarah Otazo is the Settlement Class Representative for this Settlement Subclass.

viii.   All persons who directly purchased any Peg Perego car seat from Babies "R" Us within the U.S. during the period July 1, 1999 to the Preliminary Approval Date. Plaintiffs Lawrence McNally and Stephanie Bozzo are the Settlement Class Representatives for this Settlement Subclass.

jj.     "Settlement Trustees" means one of Defendant's Counsel (who shall be identified in writing jointly by Defendants to Class Counsel) and Class Counsel, when acting in the capacity as custodians of the Settlement Fund, through the Effective Date.   After the Effective Date, the term of Defendant's counsel as a Settlement Trustee shall automatically expire, and thereafter Class Counsel will be sole Settlement Trustees.   All decisions of the Settlement Trustees regarding the management and disbursement of the Settlement Fund must be unanimous.   Any disputes that cannot be resolved among the Settlement Trustees may be submitted by any Settlement Trustee to the Court for resolution.

kk.     "Taxes" means any and all (i) taxes due on income earned by the Settlement Fund, including interest and penalties, and (ii) expenses and costs incurred in connection with the taxation of the Settlement Fund (including expenses of tax attorneys and accountants).

### III.     CLASS CERTIFICATION

2.     Plaintiffs and Defendants stipulate, solely for settlement purposes, to the certification of the Settlement Subclasses, the designation of the Settlement Class Representatives as class representatives of the respective Settlement Subclasses, and the appointment of Class Counsel as counsel for the Settlement Subclasses. In the event the Final Judgment does not become Final, the stipulation in the prior sentence shall be null and void, shall not be binding upon Defendants, and shall be inadmissible in the Litigation or in any action or proceeding.

3.     Defendants shall not oppose Plaintiffs' filing of any motion made pursuant to Fed. R. Civ. P. 23 to (a) conditionally certify for settlement purposes only the Settlement Subclasses, consisting of the McDonough and the Elliott Subclasses, designate the Settlement Class Representatives as representatives of their respective Settlement Subclass(es) and appoint Class

Counsel as counsel for the Settlement Subclasses, either as part of or separately from any motion for entry of the Preliminary Approval Order, and (b) certify the Settlement Subclasses for settlement purposes only, designate the Settlement Class Representatives as class representatives, and appoint Class Counsel as counsel for the Settlement Subclasses, either as part of or separately from any motion for entry of the Final Judgment, except that Defendants reserve all their objections, arguments, appellate rights and defenses with respect to such class certification if this Agreement is rescinded or otherwise does not become Final.

## IV.   APPROVAL OF THIS AGREEMENT

4.      Plaintiffs and Defendants intend to be, and shall be, bound by this Agreement upon its execution, and this Agreement shall not be rescinded except in accordance with Section X. Plaintiffs and Defendants shall use their best efforts to effectuate this Agreement and the Settlement, and shall cooperate to promptly seek and obtain the Court's preliminary and final approval of this Agreement (including providing class notice under Fed. R. Civ. P. 23(c) and (e)) and to secure the prompt, complete, and final dismissal with prejudice of the Baby Products Antitrust Litigation.

5.      Promptly, but in any event within five (5) business days after the date this Agreement is fully executed, Plaintiffs shall submit to the Court and Defendants shall support a motion requesting preliminary approval of the Settlement and seeking entry of the Preliminary Approval Order. A copy of this Agreement shall be submitted with such motion.

6.      As directed by the Preliminary Approval Order, Class Counsel, through the Claims Administrator, shall establish and maintain a website under the Uniform Resource Locator (URL) www.babyproductsantitrustsettlement.com, at which the Notice shall be posted to provide notice to the Settlement Subclasses of the proposed Settlement. Class Counsel shall

notify counsel for Defendants of the date that Notice will be issued to the Settlement Subclasses at least three (3) business days prior to the date of issuance.

7.      Class Counsel, through the Claims Administrator, also shall cause the Publication Notice to be given to the Settlement Subclasses as directed by the Preliminary Approval Order.

8.      Following notice to the Settlement Subclasses, Plaintiffs shall submit to the Court and Defendants shall support a motion requesting final approval of the Settlement, including entry of the Final Judgment. At the Fairness Hearing, Class Counsel will also request that the Court enter the Allocation Order and the Fee and Expense Order.

9.      This Agreement shall become final, and the Effective Date shall occur, upon approval by the Court following notice to the Settlement Subclasses and the Fairness Hearing and the Final Judgment becoming Final. Pending the Effective Date, Class Counsel and Defendants agree to take all steps necessary to stay the Litigation. Any stay resulting from those efforts will have no effect on any pending action related to the Litigation, though Class Counsel agree they will not oppose any stay sought by any Defendant(s) in any such related action.

## V.      RELEASE AND DISCHARGE

10.      Upon the occurrence of the Effective Date and in consideration of the provisions of this Agreement, including payment of the Settlement Amount, the Settlement Class Members will release, waive and discharge Releasees, from any and all claims or causes of action, asserted or unasserted, the Settlement Class Members ever had or now have that were or could have been asserted in the Litigation including, but not limited to, any and all claims, causes of action, demands, actions, suits, rights, obligations, controversies or the like, known or unknown, including under federal or state antitrust or unfair competition law, that the Settlement Class Members ever had or have as of the date that this Agreement becomes Final, arising from or related to the wholesale or retail pricing, discounting, marketing, advertising, distribution or sale

of BabyBjörn baby carriers, Britax car seats, Kids Line Products, Maclaren strollers, Medela breast pumps, Peg Perego strollers, Peg Perego car seats, or Peg Perego high chairs (the "Released Claims"). For avoidance of doubt, Released Claims shall not include claims entirely unrelated to the claims that were or could have been asserted in the Litigation, including, but not limited to, allegations of false advertising or misrepresentations relating to the performance of the products purchased, personal injury, or breach of warranty or breach of contractual relationships relating to the performance of the products purchased. Released Claims shall include any and all claims Plaintiffs and any Settlement Class Member does not know or suspect to exist in his, her or its favor as of the Effective Date which arise out of or in any way relate to the facts, transactions, acts, practices, breaches, events, occurrences, statements, disclosures, omissions or failures to act alleged or which could have been alleged in the Litigation, which if known by him, her or it might have affected his, her or its decision(s) with respect to the Settlement (the "Unknown Claims"). With respect to any of the Released Claims and any of the Unknown Claims, upon the Effective Date, the Plaintiffs and each Settlement Class Member shall be deemed to have waived, and by operation of the Final Judgment shall have expressly waived, any and all provisions, rights and benefits conferred by any law of any state or territory in the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs and each Settlement Class Member acknowledge that they may hereafter discover facts in addition to or different from those that they know or believe to be true with respect to the subject matter of this Agreement, but it is their intention to fully and finally settle and release the

Released Claims, including Unknown Claims, notwithstanding the discovery or existence of any such additional or different facts.

## VI.   THE SETTLEMENT FUND

### A.   Payment of the Settlement Amount

11.   Subject to the provisions of this Agreement, and in full, complete, and final Settlement of the Litigation as provided herein as against Defendants and other Releasees, each Defendant agrees to pay Plaintiffs, on behalf of the Settlement Class Members, its portion of the Settlement Amount as set forth in Exhibit H filed with the Court under seal. Within fourteen (14) calendar days after the Preliminary Approval Date, each Defendant shall pay the portion of the Settlement Amount to be contributed by that Defendant in cash by wire transfer(s) to a joint account designated by the Settlement Trustees to be held in escrow. The Settlement Fund shall be administered in accordance with the provisions of this Agreement.

12.   Plaintiffs and Defendants have agreed that each Defendant's payment obligation is severable in its respective amount, and nothing in this Settlement Agreement shall be construed to mean that the obligations to pay the Settlement Amount under this Settlement Agreement are joint obligations of the Defendants.  Said differently, no Defendant shall be liable for any other Defendant's payment obligation as set forth in Exhibit H.

13.   In the event that the full Settlement Amount is not funded, Plaintiffs may rescind this Agreement pursuant to Section X.

### B.   Administration of the Settlement Fund

14.   Each Settlement Class Member shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims. Except as provided by order of the Court, no Settlement Class Member shall have any interest in the Settlement Fund or

any portion thereof. Defendants shall have no liability or responsibility with respect to disbursements from, or administration of, the Settlement Fund.

15.     <u>Disbursements before the Effective Date</u>.

(a)     Before the Effective Date, the Settlement Trustees shall disburse to Class Counsel, upon request, up to $300,000.00 from the Settlement Fund for payment of documented expenses associated with providing notice of the Settlement to the Settlement Subclasses and expenses associated with administering the Settlement. As provided in Paragraphs 30 and 37, amounts withdrawn and expensed (or for which expense has been committed and thereafter paid) pursuant to this Paragraph 15(a) shall not be refundable to Defendants in the event this Agreement is disapproved, rescinded, or otherwise fails to become effective, except to the extent of any Tax refund as provided in Paragraph 39.

(b)     Before the Effective Date, the Settlement Trustees shall disburse to Class Counsel, upon request, up to an additional $575,000.00 from the Settlement Fund, in addition to those amounts set forth in paragraph 15(a), for payment of documented expenses associated with providing notice of the Settlement to the Settlement Subclasses and expenses associated with administering the Settlement. All amounts withdrawn and expensed (or for which expense has been committed and thereafter paid) pursuant to this Paragraph 15(b) shall be repaid by Class Counsel in cash by wire transfer(s) to the joint account designated by the Settlement Trustees in which the Settlement Fund is held in escrow prior to the disbursement of the Settlement Fund to Defendants pursuant to Paragraph 39 in the event this Agreement is disapproved, rescinded, or otherwise fails to become effective.

16.     The Settlement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be paid pursuant

to this Agreement or further order of the Court. The Settlement Fund shall be invested in United States Treasury Securities, bank account(s) (including certificates of deposit) fully insured by the U.S. government, or funds solely invested in such securities or accounts. All income earned by the Settlement Fund shall become and remain part of the Settlement Fund.

17.     After making the payment required of it as described in Paragraph 11 of this Agreement and in Exhibit H thereto, each Defendant shall not have any responsibility, financial obligation (except as otherwise provided in this Agreement), or liability whatsoever with respect to the investment, allocation, distribution, use, or administration of the Settlement Fund, including any disputes relating thereto. Further, the payment to the Settlement Fund described in Exhibit H, shall be the total payment required by the Settlement from such Defendant, including but not limited to payments to Settlement Class Members, attorneys' fees, incentive awards, costs, taxes, claims administration costs and expenses, and class notice costs.

**C.     Distribution to Authorized Claimants**

18.     Each Settlement Class Member must submit a verified Claim Form, prepared in accordance with 28 U.S.C. §1746 with a sworn affidavit and/or documentary proof of the purchase(s) of one or more Settlement Products during the relevant time periods as described above, to be eligible to be paid any portion of the Net Settlement Fund. The Claims Administrator shall determine each Authorized Claimant's Authorized Claim based upon review of each Authorized Claimant's Claim Form in the manner described in the Notice or as otherwise approved by the Court.

19.     Subject to approval by the Court, the Net Settlement Fund will be allocated to the Settlement Subclasses as set forth in the Allocation Order. In the event the Court disapproves of or modifies the Allocation Order, such disapproval or modification shall have no effect on the terms of the Settlement or the Effective Date.

20.     Each Authorized Claimant shall be paid a share of the Net Settlement Fund based on his or her Authorized Claim as set forth in the Allocation Order. This is not a claims-made settlement. No portion of the Settlement Fund may revert to Defendants under any circumstances once the Settlement becomes Final. Defendants shall have no involvement in reviewing or challenging claims.

21.     Upon distribution of the Settlement Fund to Authorized Claimants, all taxes due, if any, on any amounts distributed shall be the responsibility of the Authorized Claimants. Following the Effective Date, nothing herein precludes the Settlement Trustees, upon approval by the Court, from establishing a reserve from the Settlement Fund to pay any taxes that will be owed for the period prior to distribution of the Settlement Fund, but are not yet due, and for expenses related to payment of such taxes or filing of such tax returns.

22.     The parties have agreed that the Final Excess Amount (as defined in the Allocation Order) shall be distributed *cy pres*. Prior to final disbursement of the Subclass Settlement Funds, the parties will jointly identify up to four (two by Plaintiffs and two by Defendants) not-for-profit organizations exempt from federal taxation as charitable organizations under Internal Revenue Code Section 501(c)(3) they respectively recommend to the Court for any *cy pres* distribution.   Approval of such recommendations is not a material term of this Agreement, and modification of the proposed charities shall not constitute a material modification of this Agreement, operate to terminate or cancel this Agreement, or affect or delay the Final Judgment from becoming Final.

**D.**     **Taxes**

23.     Subject to Paragraph 39, the Settlement Trustees, or the Claims Administrator at the direction of the Settlement Trustees, shall be solely responsible for filing all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the

Settlement Fund. Further, the Settlement Trustees, or the Claims Administrator at the direction of the Settlement Trustees, shall be solely responsible for withdrawing from the Settlement Fund, as and when legally required, any payments for Taxes. Except as otherwise provided in Paragraph 25, Defendants shall have no responsibility to make any filings relating to the Settlement Fund and shall have no responsibility to pay any Taxes unless the Settlement is not consummated and the Settlement Fund is returned to Defendants.

24.     For the purpose of Section 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Settlement Fund shall be the Settlement Trustees, who shall timely and properly file or cause to be filed, all tax returns necessary or advisable with respect to the Settlement Fund (including all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

25.     The parties to this Agreement and their counsel shall treat, and shall cause the Claims Administrator to treat, the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. The parties and their counsel agree that they will not, nor will they authorize the Settlement Trustees or the Claims Administrator to ask the Court to take any action inconsistent with the treatment of the Settlement Fund in such manner. In addition, the Settlement Trustees, the Claims Administrator and, as required, the parties shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. The Settlement Trustees, or the Claims Administrator at the direction of the Settlement Trustees, shall timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and

thereafter cause the appropriate filing to occur. All provisions of this Agreement shall be interpreted in a manner that is consistent with the Settlement Fund being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

## VII.   CLASS COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

26.   Class Counsel will move, pursuant to a Fee and Expense Application to be submitted prior to the Fairness Hearing, for: (a) an award of attorneys' fees of up to thirty three and one-third percent (33-1/3%) of the Settlement Amount, to be divided by Class Counsel, at their sole discretion and as they will agree, among themselves and any other Plaintiffs' counsel of record in the Litigation, (b) reimbursement of litigation expenses actually incurred, including the fees, costs and expenses of any experts or consultants, in the case of clauses (a) and (b) in connection with prosecuting the Litigation and obtaining preliminary and final approval of the Settlement, and (c) reimbursement of notice and administrative expenses actually incurred and not paid or reimbursed pursuant to Paragraph 15, in the case of clauses (a) through (c) plus any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid). Class Counsel also will move, pursuant to such Fee and Expense Application or otherwise, for an incentive payment from the Settlement Fund of not more than $2,500 for each Plaintiff.   Defendants will not oppose any Fee and Expense Application consistent with this paragraph.   These amounts are subject to approval by the Court.

27.   Class Counsel reserve the right to make additional Fee and Expense Applications to the Court for fees and expenses actually incurred in administration of the Settlement.

28.   The procedure for and the allowance or disallowance by the Court of amounts requested pursuant to any Fee and Expense Application are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the

Settlement set forth in this Agreement. Any order or proceedings relating to any Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Agreement, or affect or delay the Final Judgment from becoming Final. In the event the Court disapproves of or reduces the amount sought in any Fee and Expense Application, such disapproval or reduction shall have no effect on the terms of the Settlement.

29.    Defendants further agree not to object to the payment to Class Counsel of Court-approved attorneys' fees and expenses in accordance with this Agreement within ten (10) calendar days after the entry of any order awarding attorneys' fees and expenses, including the Fee and Expense Order, subject to the conditions in this paragraph.  If the Court's award of fees and expenses is vacated, reversed, or reduced on or as a result of an appeal, Class Counsel shall, within ten (10) business days after such *vacatur*, reversal, or reduction, make a refund to the Settlement Fund in cash by wire transfer(s) in the full amount received or such lesser amount as provided for by such *vacatur*, reversal, or reduction, with interest.  If Defendants elect to rescind this Agreement as provided in Section X, Class Counsel shall, within ten (10) business days after receiving notice from Defendants of such rescission, make a refund to the Settlement Fund in cash by wire transfer(s) in the amount of any such fee or expense award or reimbursement, with interest.  If Plaintiffs elect to rescind this Agreement as provided in Section X, Class Counsel must make a refund to the Settlement Fund in cash by wire transfer(s) in the amount of any such fee or expense award or reimbursement with interest within ten (10) business days after providing notice of such rescission, or such rescission shall be null, void and of no effect.  If the Agreement is rescinded, the Settlement Fund shall thereafter be paid to Defendants as provided in Paragraph 39.  The interest rate applicable to any refund made to the Settlement Fund pursuant

to this Paragraph shall be the same interest rate earned by the Settlement Fund during the period between the payment of the attorneys' fees and expenses and any such refund.  Should Class Counsel elect to receive any award of attorneys' fees and expenses prior to the Effective Date, as a condition precedent to any such payment(s), Class Counsel must deliver one or more Irrevocable Letters of Credit in favor of the Settlement Trustees issued by a major commercial bank or financial institution acceptable to Defendants and in a form acceptable to Defendants to secure Class Counsel's obligations to repay any such award received as provided in this Paragraph.

30.     Disbursements for payment of Notice and Administration Costs must be made from the Settlement Fund within five (5) business days of notice by written request by Class Counsel to the Settlement Trustees with proper documentation and, pursuant to Paragraph 15(a), any such disbursements up to, and not exceeding $300,000.00 shall not be refundable to Defendants in the event that this Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective.  For any such requests made prior to the Effective Date, a copy of all written request for disbursements shall be provided to the Settlement Trustees and available for review by any Defendant upon request.  Disbursements for any reasonable payments and expenses incurred in connection with taxation matters relating to taxes owed by or tax filings to be made on behalf of the Settlement Fund may be made from the Settlement Fund, and such amounts shall not be refundable to Defendants in the event that this Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective provided, however, that such payments or expenses shall not include fees for attorneys of record in this Litigation.

## VIII.   DETERMINATION OF OPT-OUTS

31.     As permitted by Fed. R. Civ. P. 23(c)(2)(B)(v) and (e)(4), Class Members may exclude themselves from the Settlement as provided in the Notice or as otherwise approved by

the Court. Copies of all opt out requests received by the Claims Administrator on behalf of Class Counsel shall be delivered to Defendants' counsel at least fifteen (15) business days before the Fairness Hearing.

## IX.   STATEMENT OF PRINCIPLES

32.   The parties acknowledge that baby product manufacturers and distributors individually have the unilateral right to supply or not supply, limit supply, or refuse to supply baby products to any wholesaler or any retailer, including but not limited to BRU, at any price.

33.   The parties acknowledge that baby product manufacturers and distributors individually have the unilateral right to decide whether to adopt and/or enforce their own pricing and/or distribution policies, including policies with respect to the discounting of the sales price of their products.

34.   The parties acknowledge that BRU has the unilateral right to decide whether to purchase any baby product from any vendor, and in what numbers of units or dollar amounts, or not to purchase any such product.

35.   The parties acknowledge that all wholesalers or retailers, including BRU, have the unilateral right to determine the price at which they will resell the baby products of each manufacturer.

36.   These principles shall not be taken as an admission of liability and shall not exceed or reduce the obligations under law of any party to this Agreement.

## X.   TERMINATION AND RESCISSION

37.   If (a) the Court declines to approve this Agreement, or any material part hereof, or such approval is materially modified or set aside on appeal, or (b) the Court declines to enter the Final Judgment substantially in the form attached hereto as Exhibit E, or the Court enters such Final Judgment and on appellate review such Final Judgment is not affirmed, or (c) if the

provisions of the final Preliminary Approval Order as approved by the Court vary in any material way from the proposed form of the final Preliminary Approval Order (as attached as Exhibit A), or the Court enters a Preliminary Approval Order that does not vary in any material way from the proposed form and on appellate review such Preliminary Approval Order is not affirmed, then, within twenty (20) days of any such final ruling, or such other time period as the Court may order, Plaintiffs and Defendants shall each, in their respective sole discretion, have the option to rescind this Agreement in its entirety, and any and all amounts constituting the Settlement Fund (including any fees, costs, and/or expenses advanced to Class Counsel pursuant to Paragraph 29 above) shall be returned to Defendants as provided in Paragraph 39, except for any disbursements to third-parties made or incurred in accordance with Paragraph 15(a). A modification or reversal on appeal with respect to the Allocation Order, the Fee and Expense Order, any Fee and Expense Application or any distribution of the Settlement Fund shall not be deemed a modification of all or a material part of the terms of this Agreement or the Final Judgment. In the event of any such rescission, this Agreement shall be null and void, of no force or effect and the parties shall return to the *status quo ante* as of May 19, 2010.

38.     The Agreement can also be terminated by Plaintiffs under the following circumstances:

a.     In the event that: (i) any Defendant does not pay the full amount of its respective contribution, as set forth on Exhibit H and filed under seal with the Court, into escrow, or (ii) one or more Defendants makes a filing pursuant to either Chapter 7 or Chapter 11 of the United States Bankruptcy Code and the Trustee (as defined in the United States Bankruptcy Code) elects to reject the Settlement Agreement in this matter, then the Plaintiffs shall have the right, within ten (10) days from either the failure to make the payment into escrow

for (i) above or the rejection of the Settlement Agreement for (ii) above, to terminate and cancel the Settlement Agreement in its entirety.

        b.     If the Plaintiffs elect to terminate and cancel the Settlement Agreement in accordance with Paragraph 38(a), they must do so in writing by filing with the Court a notice thereof, with service upon counsel of record for all parties. Upon such termination and cancellation, the parties shall return to their respective rights and shall seek a scheduling conference with the Court. If an event described in Paragraph 38(a)(i) and/or 38(a)(ii) above occurs but Plaintiffs do not elect to terminate and cancel the Settlement Agreement in its entirety, Plaintiffs and all Class Members shall maintain all of their claims and rights against the Defendant(s) that either did not pay into escrow its/their contribution as set forth on Exhibit H and filed under seal with the Court or rejected the Settlement Agreement, and, the Settlement Agreement shall be deemed amended to: (i) eliminate any such Defendant(s) from the terms of the release and from the dismissal of any of the claims in this Litigation; and (ii) reduce the Settlement Amount by the amount of any such Defendant(s)' unpaid contribution.

        39.     In the event of rescission or termination of this Agreement, the Settlement Trustees, or the Claims Administrator at the direction of the Settlement Trustees, shall disburse the Settlement Fund to Defendants pro rata to their actual contribution of the Settlement Amount within fifteen (15) business days after the earlier of (a) receipt of written notice signed by Class Counsel or counsel for Defendants stating that this Agreement has been rescinded or terminated, or (b) any order of the Court so directing. To the extent any Taxes that are paid from the Settlement Fund pursuant to Paragraphs 15 or 23 are refunded as a result of rescission or termination of this Agreement or otherwise, then such refunded amounts shall likewise be returned to the Settlement Fund for disbursement to Defendants. From and after the date of

rescission or termination of this Agreement pursuant to Paragraph 37 or 38, Defendants shall be solely responsible to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Fund and to obtain any permissible refunds. If this Agreement is terminated or rescinded pursuant to Paragraph 37 or 38, any obligations pursuant to this Agreement (other than disbursement of the Settlement Fund to Defendants as set forth above) shall cease immediately.

## XI.    GENERAL PROVISIONS

40.    Defendants may make any disclosures regarding this Agreement and the Settlement to any governmental entity they deem necessary to comply with any law or regulation.

41.    This Agreement constitutes the entire agreement among Plaintiffs and Defendants pertaining to the settlement of the Litigation, and supersedes and preempts any and all prior and contemporaneous oral or written agreements and understandings between Plaintiffs and Defendants in connection with the subject matter of this Agreement. This Agreement may be modified or amended only by a writing executed by Class Counsel and counsel for Defendants and, after preliminary approval of the Settlement, only if such modification or amendment is approved by the Court.

42.    All notices under this Agreement shall be in writing. Each such notice shall be addressed, if directed to any Plaintiff or Settlement Class Member, to Class Counsel at their addresses set forth on the signature pages hereof, and if directed to any Defendant, to such Defendant's counsel at its address set forth on the signature pages hereof, or such other person or entity, address or telephone number as Class Counsel or any Defendant may designate, from time to time, by giving notice to all parties.

43.     Whether or not this Agreement becomes Final, no admission or concession is intended or shall result from this Agreement. The Parties expressly agree that this Agreement and its contents, including the Exhibits and any and all statements, negotiations, documents and discussion associated with them, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing or of the truth of any of the claims or allegations contained in the Complaints or any other pleading, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, whether in the Litigation or in any other action or proceeding. The execution by Plaintiffs of this Agreement shall not be deemed to constitute an admission or concession on the part of Plaintiffs of any lack of merit of the Litigation whatsoever or an admission that the Elliott Action may or may not be certified as a class action for any purpose other than the settlement contemplated by this Agreement.

44.     This Agreement, and any evidence thereof, shall not be admissible in the Litigation or in any other action or proceeding other than an action or proceeding to enforce this Agreement and/or the Settlement if this Agreement and/or the Settlement have become Final.

45.     Plaintiffs, the Settlement Class Members, and Defendants shall not assert in any forum that either Action was brought by Plaintiffs or defended by Defendants in bad faith, and shall not assert any claim of any violation of Fed. R. Civ. P. 11 relating to the prosecution, defense, or settlement of the Litigation.

46.     All terms of this Agreement shall be governed by and interpreted in accordance with the substantive laws of Pennsylvania without regard to its choice of law or conflict of law principles.

47.     The United States District Court for the Eastern District of Pennsylvania shall retain exclusive jurisdiction over all matters relating to the implementation and enforcement of this Agreement.

48.     Headings contained in this Agreement have been inserted for reference purposes only and shall not be considered part of this Agreement in construing this Agreement.

49.     Unless the context clearly indicates otherwise, as used in this Agreement (a) terms used in the masculine, feminine or the neuter include the others, (b) terms used in the singular or the plural include the other, and (c) the terms "include," "includes" and "including" (or similar terms) are intended to convey non-exclusivity, and are to be deemed followed by "without limitation," "but not limited to" or words of similar import.

50.     This Agreement may be executed in counterparts by the parties hereto and/or their respective counsel, and signatures transmitted by facsimile or other electronic means shall be deemed an original signature for purposes of executing this Agreement.

51.     Neither Plaintiffs nor Defendants, nor any of them, shall be considered to be the drafter of this Agreement, or any of its provisions, for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

52.     Each of the undersigned represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have agreed to this Agreement as of the date first above written.

Eugene A. Spector
William G. Caldes
Jeffrey L. Spector
Spector Roseman Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel.: (215) 496-0300
Fax: (215) 496-6611

Mark L. Weyman
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
Tel.: (212) 521-5400
Fax: (212) 521-5450

**COUNSEL FOR DEFENDANTS TOYS "R" US, INC., BABIES "R" US, INC., TOYS "R" US-DELAWARE, INC.**

Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
1144 West Lake Street, Suite 400
Oak Park, IL 60301
Tel.: (708) 628-4949
Fax: (708) 628-4950

Neil E. McDonell
Dorsey & Whitney LLP
250 Park Avenue
New York, NY 10177
Phone: 212-415-9344

**COUNSEL FOR DEFENDANT BABYBJÖRN AB**

Steve W. Berman
Anthony D. Shapiro
George W. Sampson
Ivy Arai Tabbara
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel.: (206) 623-7292
Fax: (206) 623-0594

Margaret M. Zwisler
Latham & Watkins LLP
555 11th Street, N.W., Suite 1000
Washington, DC 20004
Tel.: (202) 637-1092

**COUNSEL FOR DEFENDANT BRITAX CHILD SAFETY, INC.**

_Mary Jane Fait /wbc_

Mary Jane Fait
Theodore B. Bell
Wolf Haldenstein Adler Freeman & Herz LLC
55 West Monroe Street, Suite 1111
Chicago, IL 60603
Tel.: (312) 984-0000
Fax: (312) 984-0001


Fred T. Isquith
Thomas H. Burt
Wolf Haldenstein Adler Freeman & Herz LLC
270 Madison Avenue
New York, NY 10016
Tel.: (212) 545-4600
Fax: (212) 545-4653

**CLASS COUNSEL FOR THE
SUBCLASSES**

Michael J. Hahn
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2526

**COUNSEL FOR DEFENDANT KIDS
LINE, LLC**


Roger A. Raimond
Robinson Brog Leinward Greene Genovese &
Gluck PC
875 Third Avenue, 9th Floor
New York, NY 10022
Direct: (212) 603-6340
Main: (212) 603-6300
Fax: (212) 956-2164

**COUNSEL FOR DEFENDANT
MACLAREN USA, INC.**


George G. Gordon
Carolyn Hazard Feeney
Dechert LLP
Circa Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Tel: (215) 994-4000

**COUNSEL FOR DEFENDANT MEDELA,
INC.**

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have agreed to this Agreement as of the date first above written.

_____
Eugene A. Spector
William G. Caldes
Jeffrey L. Spector
Spector Roseman Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel.: (215) 496-0300
Fax: (215) 496-6611

_____
*Mark L. Weyman*
Mark L. Weyman
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
Tel.: (212) 521-5400
Fax: (212) 521-5450

**COUNSEL FOR DEFENDANTS TOYS "R" US, INC., BABIES "R" US, INC., TOYS "R" US-DELAWARE, INC.**


_____
Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
1144 West Lake Street, Suite 400
Oak Park, IL 60301
Tel.: (708) 628-4949
Fax: (708) 628-4950

_____
Neil E. McDonell
Dorsey & Whitney LLP
250 Park Avenue
New York, NY 10177
Phone: 212-415-9344

**COUNSEL FOR DEFENDANT BABYBJÖRN AB**


Steve W. Berman
Anthony D. Shapiro
George W. Sampson
Ivy Arai Tabbara
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel.: (206) 623-7292
Fax: (206) 623-0594

_____
Margaret M. Zwisler
Latham & Watkins LLP
555 11th Street, N.W., Suite 1000
Washington, DC 20004
Tel.: (202) 637-1092

**COUNSEL FOR DEFENDANT BRITAX CHILD SAFETY, INC.**

31

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have agreed to this Agreement as of the date first above written.

Eugene A. Spector
William G. Caldes
Jeffrey L. Spector
Spector Roseman Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel.: (215) 496-0300
Fax: (215) 496-6611

Mark L. Weyman
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
Tel.: (212) 521-5400
Fax: (212) 521-5450

**COUNSEL FOR DEFENDANTS TOYS "R" US, INC., BABIES "R" US, INC., TOYS "R" US-DELAWARE, INC.**

Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
1144 West Lake Street, Suite 400
Oak Park, IL 60301
Tel.: (708) 628-4949
Fax: (708) 628-4950

Neil E. McDonell
Dorsey & Whitney LLP
250 Park Avenue
New York, NY 10177
Phone: 212-415-9344

**COUNSEL FOR DEFENDANT BABYBJÖRN AB**

Steve W. Berman
Anthony D. Shapiro
George W. Sampson
Ivy Arai Tabbara
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel.: (206) 623-7292
Fax: (206) 623-0594

Margaret M. Zwisler
Latham & Watkins LLP
555 11th Street, N.W., Suite 1000
Washington, DC 20004
Tel.: (202) 637-1092

**COUNSEL FOR DEFENDANT BRITAX CHILD SAFETY, INC.**

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have agreed to this Agreement as of the date first above written.

Eugene A. Spector
William G. Caldes
Jeffrey L. Spector
Spector Roseman Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel.: (215) 496-0300
Fax: (215) 496-6611

Mark L. Weyman
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
Tel.: (212) 521-5400
Fax: (212) 521-5450

**COUNSEL FOR DEFENDANTS TOYS "R" US, INC., BABIES "R" US, INC., TOYS "R" US-DELAWARE, INC.**

Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
1144 West Lake Street, Suite 400
Oak Park, IL 60301
Tel.: (708) 628-4949
Fax: (708) 628-4950

Neil E. McDonell
Dorsey & Whitney LLP
250 Park Avenue
New York, NY 10177
Phone: 212-415-9344

**COUNSEL FOR DEFENDANT BABYBJÖRN AB**

Steve W. Berman
Anthony D. Shapiro
George W. Sampson
Ivy Arai Tabbara
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel.: (206) 623-7292
Fax: (206) 623-0594

Margaret M. Zwisler
Latham & Watkins LLP
555 11th Street, N.W., Suite 1000
Washington, DC 20004
Tel.: (202) 637-1092

**COUNSEL FOR DEFENDANT BRITAX CHILD SAFETY, INC.**

_____

Mary Jane Fait
Theodore B. Bell
Wolf Haldenstein Adler Freeman & Herz LLC
55 West Monroe Street, Suite 1111
Chicago, IL 60603
Tel.: (312) 984-0000
Fax: (312) 984-0001


Fred T. Isquith
Thomas H. Burt
Wolf Haldenstein Adler Freeman & Herz LLC
270 Madison Avenue
New York, NY 10016
Tel.: (212) 545-4600
Fax: (212) 545-4653

**CLASS COUNSEL FOR THE
SUBCLASSES**

*Michael J. Hahn /ep*
_____

Michael J. Hahn
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2526

**COUNSEL FOR DEFENDANT KIDS
LINE, LLC**


_____

Roger A. Raimond
Robinson Brog Leinward Greene Genovese &
Gluck PC
875 Third Avenue, 9th Floor
New York, NY 10022
Direct: (212) 603-6340
Main: (212) 603-6300
Fax: (212) 956-2164

**COUNSEL FOR DEFENDANT
MACLAREN USA, INC.**


_____

George G. Gordon
Carolyn Hazard Feeney
Dechert LLP
Circa Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Tel: (215) 994-4000

**COUNSEL FOR DEFENDANT MEDELA,
INC.**

Mary Jane Fait
Theodore B. Bell
Wolf Haldenstein Adler Freeman & Herz LLC
55 West Monroe Street, Suite 1111
Chicago, IL 60603
Tel.: (312) 984-0000
Fax: (312) 984-0001

Fred T. Isquith
Thomas H. Burt
Wolf Haldenstein Adler Freeman & Herz LLC
270 Madison Avenue
New York, NY 10016
Tel.: (212) 545-4600
Fax: (212) 545-4653

**CLASS COUNSEL FOR THE
SUBCLASSES**

Michael J. Hahn
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2526

**COUNSEL FOR DEFENDANT KIDS
LINE, LLC**

Roger A. Raimond
Robinson Brog Leinward Greene Genovese &
Gluck PC
875 Third Avenue, 9th Floor
New York, NY 10022
Direct: (212) 603-6340
Main: (212) 603-6300
Fax: (212) 956-2164

**COUNSEL FOR DEFENDANT
MACLAREN USA, INC.**

George G. Gordon
Carolyn Hazard Feeney
Dechert LLP
Circa Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Tel: (215) 994-4000

**COUNSEL FOR DEFENDANT MEDELA,
INC.**

_Kendall Millard_

Kendall Millard
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN 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
Tel.: (317) 231-7461
Fax: (317) 231-7433

**COUNSEL FOR DEFENDANT PEG
PEREGO U.S.A., INC.**

Regal Lager, Inc.
By: _____
   Name:
   Title:

David Martin
D.R. Martin, LLC
5200 Peachtree Road, Suite 3116
Atlanta, Georgia 30341
Tel.: (770) 454-1999
Fax: (770) 458-5709

Isaac J. Mitrani
Mitrani, Rynor, Adamsky & Toland P.A.
301 Arthur Godfrey Road
Penthouse
Miami Beach, Florida 33140
Tel.: (305) 358-0050
Fax: (305) 358-0550

**COUNSEL FOR DEFENDANT REGAL
LAGER, INC.**

33

Kendall Millard
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN 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
Tel.: (317) 231-7461
Fax: (317) 231-7433

**COUNSEL FOR DEFENDANT PEG
PEREGO U.S.A., INC.**

Regal Lager, Inc.
By: _____
   Name: Bengt Lager
   Title: President

David Martin
D.R. Martin, LLC
5200 Peachtree Road, Suite 3116
Atlanta, Georgia 30341
Tel.: (770) 454-1999
Fax: (770) 458-5709

Isaac J. Mitrani
Mitrani, Rynor, Adamsky & Toland P.A.
301 Arthur Godfrey Road
Penthouse
Miami Beach, Florida 33140
Tel.: (305) 358-0050
Fax: (305) 358-0550

**COUNSEL FOR DEFENDANT REGAL
LAGER, INC.**

Exhibits

| | |
|---|---|
| A. | Preliminary Approval Order. |
| B. | Notice. |
| C. | Publication Notice. |
| D. | Claim Form. |
| E. | Final Judgment. |
| F. | Allocation Order. |
| G. | Fee and Expense Order. |
| H. | Contribution Schedule |