IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL M. MCDONOUGH, *et al.*, <br><br>      Plaintiffs, <br><br> v. <br><br> TOYS "R" US, INC., d/b/a Babies "R" Us, *et al.*, <br>      Defendants. | No. 2:06-cv-0242-AB |

**PLAINTIFFS' OPPOSITION TO REGAL LAGER'S MOTION FOR LEAVE
TO FILE MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION .................................................................................................1

II.  FACTUAL BACKGROUND ................................................................................1

III.  ARGUMENT .......................................................................................................3

    A.  Regal Lager Should Not Be Given Relief Under Rule 6(b)(1)(B) .........................3

        1.  The impact of an extension on the judicial proceedings and permitting Regal Lager's breach of the Settlement will prejudice Plaintiffs. ...............5

        2.  Regal Lager's attempts to justify its request all fail. ...................................6

        3.  Regal Lager's request for an extension and breach of the Settlement is in bad faith..................................................................................................11

    B.  Regal Lager's Agreement to Settle Precludes Its Last Minute Attempt to Revive Claims Against Plaintiffs.........................................................................12

IV.  CONCLUSION..................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Dominic v. Hess Oil V.I. Corp.*,
   841 F.2d 513 (3d Cir. 1988)....................................................................................4

*Dykes v. Southeastern Pa. Transp. Auth.*,
   1996 U.S. Dist. LEXIS 14070 (E.D. Pa. Sept. 25, 1996) .........................................9

*Georgine v. Amchem Prods., Inc.*,
   1995 U.S. Dist. Lexis 5593 (E.D. Pa. Apr. 24, 1995)..................................... *passim*

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981)....................................................................................................9

*In re Cendant Corp. Prides Litig.*,
   233 F.3d 188 (3d Cir. 2000)......................................................................................4

*Levin v. American Honda Motor Corp.*,
   1996 U.S. Dist. LEXIS 5317 (E.D. Pa. Apr. 18, 1996) ...........................................9

*Melendez v. Horizon Cellular Tel. Co.*,
   841 F. Supp. 687 (E.D. Pa. 1994) ..........................................................................12

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
   507 U.S. 380 (1993)............................................................................................4, 11

*Schlagenhauf v. Holder*,
   379 U.S. 104 (1964)..................................................................................................9

001897-12  437834 V1

## I.      INTRODUCTION

Regal Lager Inc.'s Motion for Leave to File Motion for Summary Judgment ("Motion") under Federal Rule of Civil Procedure 6(b)(1)(B)[1] should be denied.  Regal Lager, Inc. ("Regal Lager") cannot show good cause for its failure to file a timely summary judgment motion by September 16, 2010, which was the cutoff date for dispositive motions.  Regal Lager gave up its right to file a timely summary judgment motion by agreeing to settle all claims.  It cannot avoid its contractual obligation to the Class because it now claims it needs the money it agreed to pay to settle this case for other things.  Regal Lager is not entitled to move for summary judgment as a reward for breaching its contract to settle this litigation.  The Motion should be denied.

## II.      FACTUAL BACKGROUND

In May 2010, after a three-day in-person mediation, the parties, including Regal Lager, reached a tentative agreement to settle both the *McDonough* action and *Elliott, et al. v. Toys "R" Us, Inc., d/b/a Babies "R" Us, et al.*, Civil Action No. 2:09-cv-06151-AB (E.D. Pa.) for $35,500,000.00.  Declaration of Eugene A. Spector In Support of Plaintiffs' Opposition to Regal Lager's Motion for Leave to File Summary Judgment ("Spector Decl."), ¶ 3.  On September 29, 2010, the parties, including Regal Lager, signed a Memorandum of Understanding, in which Regal Lager reaffirmed its agreement to contribute $260,000.00 toward the final settlement.  Spector Decl., ¶ 4.  On January 21, 2011, after eight months of vigorous settlement negotiations, all parties, again including Regal Lager, signed the Settlement Agreement (the "Agreement")[2], and Plaintiffs filed a Motion for Preliminary Approval of Class Settlement, for Certification of Settlement Classes and for Permission to Disseminate Class Notice.[3]  The Settlement was preliminarily approved by this Court on January 31, 2011.[4]

---

[1] Regal Lager incorrectly seeks leave under Federal Rule of Civil Procedure 6(b)(2).  The correct rule is Rule 6(b)(1)(B) as discussed in more detail below.

[2] *McDonough* Dkt. No. 701; *Elliott* Dkt. No. 41 (Settlement Agreement).

[3] *See McDonough* Dkt. No. 698; *Elliott* Dkt. No. 38.

[4] *See McDonough* Dkt. No. 706; *Elliott* Dkt. No. 49.

After preliminary approval, the parties entered into two amendments relating to the timing of the Defendants' payments into the Settlement Fund (the "Fund").  Spector Decl., ¶ 7. The First Amendment to the Settlement Agreement was executed on February 14, 2011, and approved by the Court on February 15, 2011.  It provided that the Defendants, including Regal Lager, would make their payments to the Fund by February 25, 2011 (25 calendar days after preliminary approval).  *Id.*  The Second Amendment to the Agreement was executed on February 25, 2011, and approved by the Court on February 28, 2011.  *Id.* at ¶ 8.  It provided that the Defendants, including Regal Lager, would make their payments to the Fund by March 4, 2011 (32 calendar days after preliminary approval).  *Id.*  Now, more than two months after this Court preliminarily approved the Settlement, and more than a month after its latest reaffirmation of its participation in the Settlement, Regal Lager has failed to make its payment in accordance with the Agreement and instead filed this Motion.  *McDonough* Dkt. No. 720.

The Settlement Agreement required the Defendants[5] to collectively pay $35,500,000.00 into an escrow account pending final approval of the Settlement by this Court.  Spector Decl., ¶¶ 3-4.  On March 7, 2011, counsel for Regal Lager, David Martin, informed Plaintiffs' counsel that his client no longer had the money to pay the settlement amount due, but that he would see if it was possible to raise the funds during the course of the week.  *Id.* at ¶ 10.  On March 11, Regal Lager confirmed that it would not be making its payment.  *Id.* at ¶ 11.  Paragraph 38 of the Agreement, provides that in the event of non-payment by any Defendant, Plaintiffs may either terminate the entire Agreement, or, in the alternative, may maintain the Agreement with all Defendants who have made the required payments, and maintain all claims and rights against

---

[5] Defendants are Toys "R" Us, Inc., Babies "R" Us, Inc., Toy "R" Us-Delaware, Inc. (collectively, "BRU" or "Babies "R" Us"), BabyBjörn AB ("BabyBjörn"), Britax Child Safety, Inc. ("Britax"), Kids Line, LLC ("Kids Line"), Maclaren USA, Inc. ("Maclaren"), Medela, Inc. ("Medela"), Peg Perego U.S.A., Inc. ("Peg Perego"), and Regal Lager.

any delinquent Defendants.[6]  Plaintiffs have elected not to terminate the entire Agreement and

intend to move to enforce the Agreement against delinquent Regal Lager.  As a result, by

operation of Paragraph 38(b), Plaintiffs' unopposed motion to amend the Notice to change the

Settlement Amount to $35,240,000.00 in order to reflect Regal Lager's deficiency was approved

on March 29, 2011.[7]  Thereafter, Regal Lager filed its Motion.  There is no merit to Regal

Lager's Motion and the Court should deny leave to file.

      Simultaneously with their Opposition to Regal Lager's Motion, Plaintiffs are moving to

enforce the Settlement Agreement against Regal Lager and reduce the Agreement to a Judgment

due to Regal Lager's willful breach of the Agreement.[8]  The Agreement reflected the

understanding of the parties and was reached with full knowledge of all relevant facts and with

the advice of counsel.  Regal Lager's refusal to pay its agreed-upon contribution to the

Settlement Fund constitutes an express, intentional breach of its obligation under the Agreement

and not "excusable neglect" that justifies its failure to timely file a summary judgment motion.

### III.    ARGUMENT

### A.    Regal Lager Should Not Be Given Relief Under Rule 6(b)(1)(B)

      Regal Lager has offered no facts to justify its failure to file a timely motion for summary

judgment.  In essence, Regal Lager says that almost one year after it agreed to settle this case,

and having reiterated that decision several times, it has now changed its mind and would like

permission to restart the settled litigation as to it.  By advising the Court that it chose to use the

money it had to operate its business, rather than pay the amount it agreed to pay into the

Settlement Fund, Regal Lager has not offered a reasonable excuse to justify allowing it to file a

belated summary judgment motion.

---

[6] *See McDonough* Dkt. No. 702 at 26-27; *Elliott* Dkt. No. 43 at 26-27.

[7] *See McDonough* Dkt. No. 715; *Elliott* Dkt. No. 60.  Initially, this Court approved draft forms of notice to the class (*See McDonough* Dkt. No. 706, Exs. 1 and 2; *Elliott* Dkt. No. 49, Exs. 1 and 2).

[8] There is no dispute that Regal Lager intentionally breached the Agreement, as Bengt Lager admits that Regal Lager has sufficient working capital to make its payment, but elected to continue operations rather than honor its contract with the Plaintiffs.  *See McDonough* Dkt. No. 718 (Declaration of Bengt Lager in Support of Regal Lager's Motion for Summary Judgment ("Lager Decl."), ¶ 14.

Regal Lager seeks permission to file a belated summary judgment motion under Federal Rule of Civil Procedure 6(b)(1)(B)[9] claiming that it failed to act in a timely manner due to "excusable neglect."[10]  Rule 23(d) also permits the Court to make appropriate orders to manage this class action.  The standard for granting an extension of time under Rule 6(b)(1)(B) and Rule 23(d) after the deadline has expired is "excusable neglect."  *See, e.g., Georgine v. Amchem Prods., Inc*., 1995 U.S. Dist. Lexis 5593, *13 (E.D. Pa. Apr. 24, 1995) (denying the Rule 6(b)(1)(B) motion to extend the time for opting out of the class because of the harm to the settlement class).  Whether a party's neglect[11] is excusable is an equitable determination that considers circumstances such as:  (1) the danger of prejudice to the non-movant; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay and whether it was in the reasonable control of the movant; (4) whether the movant acted in good faith; (5) whether the inadvertence reflected professional incompetence, such as ignorance of the rules of procedure; (6) whether an asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court; and (7) complete lack of diligence.  *Georgine*, 1995 U.S. Dist. LEXIS 5593, at *13-14 (referring to the Supreme Court and Third Circuit standards for determining "excusable neglect" under *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) and *Dominic v. Hess Oil V.I. Corp*., 841 F.2d 513, 517 (3d Cir. 1988)).  *See also In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 196 (3d Cir. 2000).[12]  The Court has

_____

[9] Regal Lager incorrectly seeks leave under Rule 6(b)(2), however, the "arguments" in its Motion can only implicate Rule 6(b)(1)(B).  Rule 6(b)(2) merely restricts the Court's ability to extend time under certain rules, it cannot provide the basis for an extension of time.

[10] Rule 6(b)(1)(B) states in pertinent part, "When an act may or must be done within a specified time, the court may, for good cause, extend the time on a motion made after the time has expired if the party failed to act because of excusable neglect."

[11] "Neglect" means "'to give little attention or respect' to a matter, or … to leave undone or unattended to especially through carelessness…  The word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness."  *Georgine*, 1995 U.S. Dist. LEXIS 5593, at *13 n.7 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 113 S. Ct. 1489, 1494 (1993) and noting that "Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant.  *Id.* at 1496.").

[12] In *In re Cendant Corp. Prides Litig.*, the Third Circuit affirmed the district court's extension of time to file claims pursuant to the settlement under Rule 6(b)(2) for those claimants that had successfully demonstrated excusable neglect for their delays.  However, the extension under those circumstances, unlike here, did not change

the discretion to grant or refuse the extension. *Georgine*, 1995 U.S. Dist. LEXIS 5593, at \*13. And since the Court's decision is based primarily on equitable considerations, it is not necessary to determine the precise grounds within Rule 6(b)(1)(B) upon which the decision rests. *Id*. at \*15. The burden lies with Regal Lager to establish "excusable neglect," and a review of the circumstances plainly reveals it has not met its burden under any of the seven factors outlined in *Georgine* above.

### 1.   The impact of an extension on the judicial proceedings and permitting Regal Lager's breach of the Settlement will prejudice Plaintiffs.

First, and without more, prejudice to the Court and to Plaintiffs is dispositive. In evaluating such equitable considerations, this Court has found that the harm that would result to a settlement and to the non-movants from granting an extension outweighs any prejudice to the movants. *See Georgine*, 1995 U.S. Dist. LEXIS 5593, at \*20. The interests in upholding a settlement and judicial efficiency weigh in favor of rejecting a Rule 6(b)(1)(B) request. *Id*. at \*23. Indeed, "Rule 23 is designed to avoid a multiplicity of lawsuits while protecting the substantive rights of the parties. The purposes of Rule 23 are to provide due process and to achieve *finality* in class litigation." *Id*. (emphasis in original). Here, those interests necessitated a deadline for filing dispositive motions in order to expedite and manage the lawsuit. *See, e.g., id*.

Class members will be prejudiced by the grant of Regal Lager's Motion. This Court has preliminarily approved the Settlement, which could provide significant benefits to class members. Class members could therefore, be deprived of those benefits if Regal Lager's Motion is granted and it is not compelled to comply with the Settlement. In terms of attorney time and resources, the Class members are prejudiced. In signing the Settlement Agreement, Regal Lager agreed to cease litigation, as did Plaintiffs. Spector Decl., ¶¶ 4-5. In return, Plaintiffs agreed to accept $260,000.00 from Regal Lager. The financial certainty and finality that Plaintiffs sought

---

the bargained-for terms of the agreement, including the available settlement funds, and the few months delay in that situation was not harmful.

to achieve by entering into the Settlement is undermined by Regal Lager's breach.  *See*, *e.g.*, *Georgine*, 1995 U.S. Dist. LEXIS 5593, at \*27-28 (referencing *In re Gypsum Antitrust Cases*, 565 F.2d at 1128 ("The trial judge ruled that denying [the movant's] claim was a 'regrettable conclusion,' but there has to be a cutoff period…").  To allow Regal Lager relief from the dispositive motion deadline based on its failure to comply with the Settlement places a burden on judicial resources and discourages class action settlements.  *See*, *e.g.*, *Georgine*, 1995 U.S. Dist. LEXIS 5593, at \*28-29 (discussing *McCubbrey v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62, 69-70 (N.D. Cal. 1976)).

Granting Regal Lager's Motion will not return Plaintiffs to the same status as if there had been no settlement.  In light of the Settlement and months of negotiations, Plaintiffs have understandably shut down their litigation efforts.  Once a bargain was struck, Plaintiffs acted in reliance in mothballing documents, reassigning personnel and taking on or turning to other matters.  Returning to a litigation footing against Regal Lager now, to brief summary judgment motions and to try the case to a jury, would impose additional re-start costs that would not have been incurred had Regal Lager simply announced from the outset that it would not settle.  Because the requested relief would prejudice Plaintiffs, it should be denied.

**2.      Regal Lager's attempts to justify its request all fail.**

Regal Lager's reasons for delay in timely filing its Motion and for its breach of the Settlement Agreement are inexplicable and unsupported.  Regal Lager does not claim that it meant to litigate and somehow simply failed to file its dispositive motion on time.  Rather, Regal Lager concedes that it knew of the deadline, and instead decided to settle.  Regal Lager concedes it was on notice of the deadline to file for summary judgment, but still waited over six months to file its Motion, until after the Settlement to which it agreed on at least three separate occasions[13]

---

[13] Regal Lager agreed to contribute $260,000.00 to the Settlement Fund during the mediation in May, 2010, as part of a Memorandum of Understanding signed by all parties in September, 2010, after the deadline to file dispositive motions had passed, and again as part of the Agreement executed by all parties on January 21, 2011, only ten days before the scheduled trial date for the first trial in the *McDonough* litigation.  *See* Spector Decl., ¶¶ 3-5.

was preliminarily approved, to file its Motion.  Regal Lager agreed on a price, went through

protracted negotiations, signed a contract and proceeded to preliminary approval as a settling

defendant with no intent to resume litigation, but then decided not to meet its contractual

obligation to pay the settlement amount.[14]  In conceding its breach of the Settlement Agreement

by refusing to pay its contribution, the intent and purpose of Regal Lager's Motion is clear – to

deflect its breach.  *See* Lager Decl., ¶¶ 9-15.  The suspicious timing of Regal Lager's alleged

financial woes do not demonstrate good cause or excusable neglect.  Indeed, the President of

Regal Lager, Bengt Lager, vaguely claims, without any accompanying evidence:

- Regal Lager has suffered *financial losses* in both 2009 and 2010.  Lager Decl., ¶ 9 (emphasis added) (but with no accompanying accounting).

- During the parties' settlement discussions in May 2010, Regal Lager believed that it could contribute $260,000.00 to end the class action litigation against it, and Regal Lager still held that belief on January 21, 2011 when it signed the Agreement.  *Id*. at ¶¶ 10-11 (but with no explanation of why this sum was not held in safekeeping consistent with Regal Lager's legal obligations under the Settlement).

- However, during a *comprehensive budgeting review* during the middle of February 2011, it became evident that Regal Lager would not be able to make the required contribution by the February 25, 2011 deadline.  *Id*. at ¶ 12 (emphasis added) (again with no accompanying figures).

- During the week of February 25, 2011 and through March 1, 2011, on behalf of Regal Lager, Bengt Lager explored *restructuring and financing alternatives* to make the required contribution, but was unsuccessful.  *Id*. at ¶ 13 (emphasis added) (again without any detail or figures).

---

[14] If Regal Lager or its counsel had simply missed the deadline, it would reflect professional incompetence, in which case relief should be denied.  However, a strategic decision to default, while possibly incompetent, is also bad faith, further arguing for a denial of Regal Lager's Motion.

- Regal Lager needs its *available working capital* to continue to purchase inventory to supply its customers and continue in operation. *Id*. at ¶ 14 (emphasis added) (same).

Without evidentiary support, these conclusory excuses "reflect[] an easily manufactured excuse incapable of verification by the court". *Georgine*, 1995 U.S. Dist. LEXIS 5593, at *14. Such an excuse is insufficient to relieve Regal Lager of its obligation to pay, nor is it sufficient to relieve Regal Lager of the decision it made to settle instead of seeking summary judgment.

Regal Lager does not offer any facts to support its arguments, and its vague allegations of financial issues establish its lack of diligence. The meaning and significance of "financial losses," "comprehensive budgeting review," "restructuring and financing alternatives," "available working capital," and "financial constraints," are imprecise, at best. Lager Decl., ¶¶ 9, 12-14; Motion at 2-3. Regal Lager further states: "Regal Lager was regrettably unable to make its required contribution toward settlement;"[15] "Regal Lager's delay is due to excusable neglect;" and "Plaintiffs in this case will also suffer no prejudice in having to respond to Regal Lager's motion." Motion at 2-3. Regal Lager's lack of diligence is also apparent when it claims "[f]rom the early days of this case … [it] expressed concern about the overwhelming financial burden of this class action litigation." Motion at 2. Evidence concerning Regal Lager's "financial burden" is squarely within its control. What is more, if the Court is to credit this expression of long term concern, Regal Lager's aggressive litigation of this case without apparent restraint and its refusal to enter into early settlement, completely belies this statement and alleged excuse. Finally, Regal Lager apparently seeks to convince the Court that its last minute breach of the Settlement and its

---

[15] Regal Lager, not Plaintiffs, "excluded" itself from the Settlement by refusing to make its agreed upon payment. *See id. See also* Motion at 2-3.

delayed motion for summary judgment will have no impact on the Class and on attorney and judicial resources.  That is not the case.

Courts routinely require a specific demonstration of fact, not unsupported claims, to demonstrate "good cause."  For example, in *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981), the Supreme Court quoted *In re Halkin*, 598 F.2d 176, 193 (D.C. Cir. 1979), for the following proposition:  "To establish 'good cause' for a protective order under [Federal] Rule [of Civil Procedure] 26(c), 'the courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  (Citation omitted.) Similarly, in *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964), the Supreme Court stated that the "good cause" requirement of Fed. R. Civ. P. 35 is "not met by mere conclusory allegations." Indeed, this Court routinely rejects unsubstantiated Rule 6(b) requests for an extension.  *See*, *e.g.*, *Dykes v. Southeastern Pa. Transp. Auth.*, 1996 U.S. Dist. LEXIS 14070, at *7-8 (E.D. Pa. Sept. 25, 1996) (finding defendant's reason for not filing a motion for fees not excusable under then Rule 6(b)(2)); *Georgine*, 1995 U.S. Dist. LEXIS 5593, at *13 (rejecting Rule 6(b)(2) motion to extend the time for opting out of the class); *Levin v. American Honda Motor Corp.*, 1996 U.S. Dist. LEXIS 5317, at *6-7 (E.D. Pa. Apr. 18, 1996) (finding plaintiff's failure to file a timely fee petition not excusable under Rule 6(b)(2)).

After years of hard fought litigation and more than eight months after the parties reached an Agreement, Regal Lager suddenly claims it cannot fulfill its payment obligation and would rather use its money for its business including, presumably, the payment of executive salaries. Lager Decl., ¶ 14.  In fact, Regal Lager claims that only ten days before the Settlement was preliminarily approved, it still believed it could make its payment.  *Id*. at ¶ 11.  Regal Lager asserts that it realized it could not pay by February 25, *see id.* at ¶ 12, but Regal Lager signed two Amendments to the Agreement directly relating to its payment obligation on February 14 and February 25, 2011.  Spector Decl., ¶¶ 7-8.  Bengt Lager now claims Regal Lager "needs its available working capital to continue to purchase inventory and supply its customers and

continue in operation."   Lager Decl., ¶ 14.  If Regal Lager needs protection from creditors, and a stay of this litigation, its appropriate remedy is to seek protection in the Bankruptcy Courts.  But, it has not filed for bankruptcy, nor does it claim to be in the process of doing so.  Thus, by Mr. Lager's own admission, Regal Lager has $260,000.00 which it could use to pay its legal obligations to the Class, but it has affirmatively chosen to breach the Agreement instead.  Such delay and disruption of the Settlement significantly impacts judicial proceedings and prejudices the Class.  There is no excusable reason to extend the deadline and reopen the litigation.  Regal Lager and its executives have engaged in a deception upon the Plaintiffs, their co-defendants, and, more important, on this Court.

Next, Regal Lager erroneously argues that good cause exists because the legal issues in its summary judgment motion are similar to those raised by Peg Perego in the retailer action *BabyAge.com, Inc., et al. v. Toys "R" Us, Inc., et al* (E.D. Pa., No. 2:05-cv-06792-AB), and that this Court can address these legal issues at the same time.  Motion at 3.  That case is easily distinguishable.  Unlike here, all parties in the *BabyAge* action have not settled.  Litigation is ongoing.  The *BabyAge* case is not stayed pending settlement.  Peg Perego in *BabyAge* did not breach a settlement agreement and its motion is timely.  Here, the case is over on all fronts.  And now Regal Lager suddenly wants to reopen merits litigation because it decided it would rather litigate and use its money for its own business than pay the agreed-upon settlement amount it owes to the Class.  Regal Lager's breach of the Agreement forces the Class to waste attorney time and resources opposing Regal Lager's ill-timed Motion.  To no avail, Regal Lager violated the Settlement and is now asking the Court to ignore its breach and in essence, ignore the good cause requirement.  Regal Lager's reasons for its delay are not even remotely compelling especially when faced with the prejudice to the Class.

3.    **Regal Lager's request for an extension and breach of the Settlement is in bad faith.**

Regal Lager's excuses are unsupported and transparent.  The circumstances and its conduct strongly suggest bad faith.  Regal Lager is one of the smallest payors in the Settlement, its total contribution amounting to less than three quarters of one percent of the Settlement.  Indeed, Regal Lager's contribution is much less than the cost of notice to the Class.  Regal Lager was a signatory to the Agreement and is well aware of its provisions, including Plaintiffs' rights in the event of non-payment.  Regal Lager waited until the Court had preliminarily approved the Settlement and Publication Notice had gone to press in some publications before announcing its purportedly newfound inability to pay.  Regal Lager's counsel asserts that he is working pro bono.  Regal Lager claims to be unable to pay, but has not sought bankruptcy protection.  These facts add up to a striking, reckless strategic gambit:  a bet that Plaintiffs' counsel would simply feel pressed to continue the Settlement, and decide that the cost of litigating against Regal Lager alone for its obligation is greater than the likely recovery.  The facts suggest that Regal Lager simply wants to skip out on its bargain with no consequences.

This is a stunningly ill-advised gamble, because it leaves Regal Lager totally exposed.  If Regal Lager is bound by the Agreement as Plaintiffs contend, it will owe its contribution anyway and probably owe legal fees in addition.  If it is freed of the Agreement, it will then continue to be a defendant in an antitrust conspiracy litigation, liable for far more than it can pay and, by its own admission, without the resources to pay defense counsel to litigate through trial, leaving bankruptcy as its only option.

In no event can such a gambit meet the standard of Rule 6(b)(1)(B).  *See Pioneer*, 507 U.S. at 398 ("were there … any indication at all of bad faith, we could not say that the Bankruptcy Court abused its discretion in declining to find the neglect to be 'excusable'").  In sum, weighing all of the relevant circumstances surrounding Regal Lager's failure to timely file

- 11 -

its motion for summary judgment and to comply with the Settlement, leaves the equities, under Rule 6(b)(1)(B) and Rule 23(d), clearly in favor of denying the Motion for leave.

**B.      Regal Lager's Agreement to Settle Precludes Its Last Minute Attempt to Revive Claims Against Plaintiffs**

Lastly, Regal Lager's breach of the Settlement Agreement precludes it from reviving claims against Plaintiffs.  When parties enter into a settlement agreement, they are precluded from reviving underlying claims even when a party alleges a breach of that agreement.  *See, e.g., Melendez v. Horizon Cellular Tel. Co.*, 841 F. Supp. 687, 691 (E.D. Pa. 1994) (disallowing plaintiffs' attempt to revive claims of discrimination after agreeing to settle).  Under Pennsylvania law where "if the consideration for the release of the prior claim is performance of the settlement agreement … , only substantial performance of the obligor's duties under the agreement will extinguish the prior claim."  *Id.*  In disallowing the revival of underlying claims in the settlement context, absent circumstances suggesting the settlement was procured by fraud, this Court has found that in agreeing to settle, the parties agreed to abandon their underlying claims.  *Id.*  "[T]he prior claim should not be revived unless the 'alleged non-compliance … relates to a matter sufficiently substantial to justify invalidation of the settlement agreement.'"  *Id.* (referencing *Spiridigliozzi v. Bethlehem Mines Corp., Cambria Division*, 558 F. Supp. 734, 736 n.1 (W.D. Pa. 1980)).  Here, Regal Lager's breach has nothing to do with fraud and nothing to do with a matter sufficiently substantial to justify invalidation of the Agreement.  Regal Lager has simply refused to pay and would rather use the money for the Settlement and the Class for its normal business operations.  *See supra* at 1, 7-8.  Thus, Regal Lager's Motion is not only without good cause, but is also precluded by its voluntary agreement to settle.

## IV.      CONCLUSION

Plaintiffs respectfully request that the Court deny Regal Lager's motion for leave to file a summary judgment motion because Regal Lager cannot show good cause for its failure to file a timely motion.

Dated April 14, 2011                              Respectfully submitted,


By ___/s/ Ivy Arai Tabbara_____
Steve W. Berman
Anthony D. Shapiro
George W. Sampson
Ivy Arai Tabbara
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Tel.: (206) 623-7292
Fax: (206) 623-0594

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
1144 West Lake Street, Suite 400
Oak Park, IL  60301
Tel.: (708) 628-4949
Fax: (708) 628-4950

Eugene A. Spector
William G. Caldes
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF
   & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Tel.: (215) 496-0300
Fax: (215) 496-6611

Mary Jane Fait
Theodore B. Bell
WOLF HALDENSTEIN ADLER FREEMAN
   & HERZ LLC
55 West Monroe Street, Suite 1111
Chicago, IL  60603
Tel.: (312) 984-0000
Fax: (312) 984-0001

Fred T. Isquith
Thomas H. Burt
WOLF HALDENSTEIN ADLER FREEMAN
  & HERZ LLC
270 Madison Avenue
New York, NY 10016
Tel.: (212) 545-4600
Fax: (212) 545-4653

CLASS COUNSEL FOR THE SUBCLASSES

001897-12 437834 V1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Plaintiffs' Opposition to

Regal Lager's Motion for Leave to File Motion for Summary Judgment has been duly served on

all counsel via ECF on April 14, 2011.


    /s/ Ivy Arai Tabbara
Ivy Arai Tabbara

- 15 -