**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CAROL M. MCDONOUGH, *et al.*, | No. 2:06-cv-0242-AB |
| Plaintiffs | |
| v. | |
| TOYS "R" US, INC., d/b/a Babies "R" Us, *et al.*, | |
| Defendants. | |
| ARIEL ELLIOTT, *et al.*, | No. 2:09-cv-06151-AB |
| Plaintiffs | |
| v. | |
| TOYS "R" US, INC., d/b/a Babies "R" Us, *et al.*, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL
OF SETTLEMENT WITH DEFENDANTS TOYS "R" US, INC., BABIES
"R" US, INC., TOYS "R" US-DELAWARE, INC., BABYBJÖRN AB,
BRITAX CHILD SAFETY, INC., KIDS LINE, LLC, MACLAREN USA,
INC., MEDELA, INC., AND PEG PEREGO U.S.A., INC.**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES.................................................................................................ii

I.     INTRODUCTION...................................................................................................1

II.    BACKGROUND OF THE LITIGATION...............................................................1

III.   THE SETTLEMENT................................................................................................5

IV.    ARGUMENT...........................................................................................................7

      A.     The Proposed Settlement Is Fair, Reasonable
           and Adequate and Should Be Approved By the Court ..........................7

           1.     The Complexity, Expense and Likely Duration
               of the Litigation.............................................................9

           2.     The Reaction of the Class to the Settlement ............................11

           3.     The Stage of the Proceedings and the Amount
               of Discovery Completed ..............................................12

           4./5.  The Risks of Establishing Liability and Damages ...................13

           6.     The Risks of Maintaining the Class Action
               Through the Trial..........................................................14

           7.     The Ability of the Defendants to Withstand
               a Greater Judgment......................................................15

           8./9.  The Reasonableness of the Settlement in Light
               of the Best Possible Recovery and in Light
               of All the Attendant Risks of Litigation .....................16

      B.     The Court Should Also Approve the Proposed Allocation
           Plan, Which Is Fair, Reasonable and Adequate...................................17

CONCLUSION.................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Austin v. Pennsylvania Dep't of Corr.*,
876 F. Supp. 1437 (E.D. Pa. 1995) ................................................................8

*In re Auto. Refinishing Paint Antitrust Litig.*,
MDL No. 1426, 2004 U.S. Dist. LEXIS 29161 (E.D. Pa. Sept. 27, 2004) .................... passim

*Babyage.com v. Toys "R" Us, Inc.*,
558 F. Supp. 2d 575 (E.D. Pa. 2008)................................................................2

*Bell Atl. Corp. v. Bolger*,
2 F.3d 1304 (3d Cir. 1993) ........................................................................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................2, 10

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003).................................................................14

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .............................................................9, 12, 13, 15

*In re Chambers Dev. Sec. Litig.*,
912 F. Supp. 822 (W.D. Pa. 1995) .............................................................14, 16

*Cotton v. Hinton*,
559 F.2d 1326 (5th Circ. 1977)......................................................................8

*In re Diet Drugs Prods. Liab. Litig.*,
Nos. MDL No. 1203, 99-20593, 2000 U.S. Dist. LEXIS 12275 (E.D. Pa. Aug. 28,
2000).............................................................................................15

*In re Domestic Air Transp. Antitrust Litig.*,
148 F.R.D. 297 (N.D. Ga. 1993).................................................................11

*Elliott v. Toys "R" Us, Inc.*,
No. 2:09-cv-06151-AB ........................................................................2, 14

*In re Gen. Instrument Sec. Litig.*,
209 F. Supp. 2d 423 (E.D. Pa. 2001).............................................................17

*Girsch v. Jepson*,
521 F.2d 153 (3d Cir. 1975) ................................................................. passim

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
  55 F.3d 768 (3d Cir. 1995) ............................................................... 8, 12, 13, 16

*In re Hydrogen Peroxide Antitrust Litig.,*
  552 F.3d 305. (3d Cir. 2008) ........................................................... 10, 14

*Int'l Union, UAW v. Ford Motor Co.,*
  No. 06-10331, 2006 U.S. Dist. LEXIS 70471 (E.D. Mich. July 13, 2006) ........................... 13

*Lazy Oil Co. v. Witco Corp.,*
  95 F. Supp. 2d 290 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999) ................. 13, 15, 16

*Leegin Creative Leather Prods. v. PSKS, Inc.,*
  551 U.S. 877 (2007) ........................................................................ 10, 13

*In re Linerboard Antitrust Litig.,*
  296 F. Supp. 2d 568 (E.D. Pa. 2003) ........................................................ 9, 16

*In re Lucent Technologies, Inc. Sec. Litig.,*
  307 F. Supp. 2d 633 (D.N.J. 2004) ............................................................. 17

*McDonough v. Toys "R" Us, Inc.,*
  638 F. Supp. 2d 461 (E.D.Pa. 2009) ............................................................. 2

*McDonough v. Toys "R" Us,*
  No. 2:06-cv-0242-AB ......................................................................... 1, 2

*In re Motorsports Merchandise Antitrust Litig.,*
  112 F. Supp. 2d 1329 (N.D. Ga. 2000) ........................................................... 9

*Nichols v. SmithKline Beecham Corp.,*
  No. 00-6222, 2005 U.S. Dist. LEXIS 7061 (E.D. Pa. Apr. 22, 2005) ................................ 16

*Petruzzi's v. Darling-Delaware Co., Inc.,*
  880 F. Supp. 292 (M.D. Pa. 1995) ............................................................... 8

*In re Prudential Ins. Co. of Am. Sales Practices Litig.,*
  148 F.3d ................................................................................ 7, 11, 14, 15

*Rodriguez v. West Publishing Corp.,*
  No. CV-05-3222, 2007 U.S. Dist. LEXIS 74849 (C.D. Cal. Sept. 10, 2007), *aff'd in part, rev'd in part on other grounds*, 563 F.3d 948 (9th Cir. 2009) ........................ 16

*Sherin v. Gould,*
  679 F. Supp. 473 (E.D. Pa. 1987) ............................................................... 7

*Shlensky v. Dorsey,*
  574 F.2d 131 (3d Cir. 1978) .................................................................... 8

*In re Shopping Carts Antitrust Litig.*,
  MDL No. 451, 1983 U.S. Dist. LEXIS 11555 (S.D.N.Y. Nov. 18, 1983)..............................9

*In re SmithKline Beckman Corp. Sec. Litig.*,
  751 F. Supp. 525 (E.D. Pa. 1990) .......................................................................................12

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*,
  No, 03-4578, 2005 U.S. Dist. LEXIS 9705 (E.D. Pa. May 20, 2005) ..................................16

*In re Vitamins Antitrust Litig.*,
  No. 99-197, 2000 U.S. Dist. LEXIS 8931 (D.D.C. Mar. 31, 2000).......................................18

*In re Warfarin Sodium Antitrust Litig.*,
  212 F.R.D. 231 (D. Del. 2002) .............................................................................................16

*Williams v. First Nat'l Bank*,
  216 U.S. 582 (1910) ................................................................................................................7

## STATUTES

Section 1 of the Sherman Act, 15 U.S.C. § 1 ............................................................................1

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 .............................................................................................................2, 7, 17

Fed. R. Civ. P. 23(e)...................................................................................................................4

Fed. R. Civ. P. 23(e) (2) .............................................................................................................7

Fed. R. Civ. P. 26 (a)(2) ...........................................................................................................12

## I.     INTRODUCTION

Plaintiffs submit this memorandum in support of their Motion for Final Approval of the Settlement with Defendants Toys "R" Us, Inc., Babies "R" Us, Inc., Toys "R" Us-Delaware, Inc. (collectively, "BRU" or "Babies "R" Us"), BabyBjörn AB ("BabyBjörn"), Britax Child Safety, Inc. ("Britax"), Kids Line, LLC ("Kids Line"), Maclaren USA, Inc. ("Maclaren"), Medela, Inc. ("Medela") and Peg Perego U.S.A., Inc. ("Peg Perego") (collectively, "Settling Defendants").

Plaintiffs and Settling Defendants entered into a proposed Settlement Agreement dated January 21, 2001.[1]   On January 31, 2011, this Court granted Plaintiffs' Motion for Preliminary Approval of Class Settlement, for Certification of Settlement Classes and for Permission to Disseminate Class Notice ("Motion for Preliminary Approval"), preliminarily certified subclasses for the purposes of the Settlement ("Settlement Subclasses"), and approved the proposed notice to the Settlement Subclasses.  *See* Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order").   Settling Defendants have paid $35,240,000.00 into an escrow account that is accruing interest on behalf of the Settlement Subclasses.   For the reasons set forth below, the proposed Settlement and plan of allocation are fair, reasonable and adequate and should therefore be finally approved by the Court.

## II.    BACKGROUND OF THE LITIGATION

The first of the consolidated actions, *McDonough v. Toys "R" Us*, No. 2:06-cv-0242-AB, was filed in January 2006 and alleged that BRU and the other Defendants, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, entered into a series of resale price maintenance agreements which had the effect of decreasing competition and artificially raising the price of baby products

---

[1] Defendant Regal Lager, Inc. ("Regal Lager") was also a party to the Settlement Agreement but subsequently failed to pay the amount owed under the Settlement Agreement.  That issue is separately addressed in Plaintiffs' Motion to Enforce the Settlement Agreement.  Capitalized Terms not otherwise defined herein have the meanings set forth in the Settlement Agreement.

sold to consumers.  After the Court had denied Defendants' initial motions to dismiss, and the

Supreme Court issued its ruling in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), Defendants

filed motions for judgment on the pleadings based on the *Twombly* standard, which the Court

granted without prejudice.  Plaintiffs filed an amended complaint, and Defendants later filed

motions to dismiss arguing, *inter alia*, that the complaint was insufficient under the pleading

standards set forth in *Twombly*.  The Court denied the motion, *Babyage.com v. Toys "R" Us,

Inc.*, 558 F. Supp. 2d 575 (E.D. Pa. 2008), and discovery in the case continued.

 Following discovery, briefing and a three-day evidentiary hearing in *McDonough*, the

Court granted, in part, Plaintiffs' motion for class certification under Fed. R. Civ. P. 23,

certifying certain subclasses.  *McDonough v. Toys "R" Us, Inc.*, 638 F. Supp. 2d 461 (E.D.Pa.

2009).  Subsequently, the complaint in the second of the consolidated actions, *Elliott v. Toys "R"

Us, Inc.*,  No. 2:09-cv-06151-AB, was filed, specifically to cover the time periods and products

for which Rule 23 certification was not granted in *McDonough*.   In early 2010, the Court

granted Defendants' motion for separate trials by Manufacturer, and scheduled the first trial,

against BRU and Medela, to begin in January 2011.

 In May 2010, the parties engaged Professor Eric Green to act as a mediator, and

following a three-day in person mediation session with Professor Green and several months of

telephone calls and letters, Plaintiffs and Defendants reached a Memorandum of Understanding

signed on September 29, 2010.  The parties zealously continued to negotiate the details of the

Settlement until January 21, 2011, when the Settlement Agreement was signed.

 On January 21, 2011, Plaintiffs filed their Motion for Preliminary Approval and sought

certification of the Settlement Subclasses pursuant to Rule 23.  On January 31, 2011, the Court

entered its Preliminary Approval Order, preliminarily approving the Settlement and certifying

the Settlement Subclasses as follows:

      (a)      All persons who directly purchased any Britax car seat from Babies "R" Us within the U.S. during the period January 1, 1999 to January 31, 2011 ("Britax Settlement Subclass").  Plaintiffs Melissa Nuttall, Ariel Elliott, and Kristi Monville were certified as the Settlement Subclass Representatives for this Settlement Subclass.

      (b)      All persons who directly purchased any Kids Line product from Babies "R" Us within the U.S. during the period January 1, 1999 to December 31, 2006 ("Kids Line Settlement Subclass").  Plaintiffs Beth Hellman and Kelly Pollock were certified as the Settlement Subclass Representatives for this Settlement Subclass.

      (c)      All persons who directly purchased any Maclaren stroller from Babies "R" Us within the U.S. during the period October 1, 1999 to January 31, 2011 ("Maclaren Settlement Subclass").  Plaintiffs Yossi Zarfati and Christine Brook Logan were certified as the Settlement Subclass Representatives for this Settlement Class.

      (d)      All persons who directly purchased any Medela Pump In Style breast pump from Babies "R" Us within the U.S. during the period July 1, 1999 to January 31, 2011 ("Medela Settlement Subclass").  Plaintiffs Stephanie Bozzo, Darcy Trzupek and Kristi Monville were certified as the Settlement Subclass Representatives for this Settlement Subclass.

      (e)      All persons who directly purchased any Peg Perego stroller from Babies "R" Us within the U.S. during the period July 1, 1999 to January 31, 2011 ("Peg Perego Stroller Settlement Subclass").  Plaintiffs Stephanie Bozzo, Carol McDonough,

Lawrence McNally and Elizabeth Starkman were certified as the Settlement Subclass Representatives for this Settlement Subclass.

(f)     All persons who directly purchased any Peg Perego high chair from Babies "R" Us within the U.S. during the period July 1, 1999 to January 31, 2011 ("Peg Perego High Chair Settlement Subclass"). Plaintiff Sarah Otazo was certified as the Settlement Subclass Representative for this Settlement Subclass.

(g)     All persons who directly purchased any Peg Perego car seat from Babies "R" Us within the U.S. during the period July 1, 1999 to January 31, 2011 (Peg Perego Car Seat Settlement Subclass").  Plaintiffs Lawrence McNally and Stephanie Bozzo were certified as the Settlement Subclass Representatives for this Settlement Subclass.

(h)     All persons who directly purchased any BabyBjörn baby carrier distributed by Regal Lager from Babies "R" Us within the U.S. during the period February 2, 2000 to April 30, 2005.  Plaintiffs Julie Lindemann, Melissa Nuttall, Sara Shuck, Lawrence McNally, and Stephanie Bozzo were certified as the Settlement Subclass Representatives for this Settlement Subclass.  This Subclass and its Representatives are not releasing any claims against Regal Lager.

In its Preliminary Approval Order, the Court also approved the proposed notice to the Settlement Subclasses and set deadlines and procedures for dissemination of the notice, for filing Plaintiffs' motion for final approval of the Settlement and application for fees and expenses, and for the filing of opt-out notices or objections by Settlement Subclass members.  Notice was thereafter provided to the Subclasses in accordance with the Court's Order.  *See* Declaration of Jeanne Finegan, attached hereto as Ex. 1.  The Court set a fairness hearing on the Settlement pursuant to Rule 23(e) for July 6, 2011.

### III.    THE SETTLEMENT

Pursuant to the Settlement Agreement and its amendments, the Settling Defendants have paid $35,240,000.00 ("Settlement Amount") into an escrow account as a designated settlement fund.  (Settlement Agreement, ¶¶ 1(ee), 11-12).  After payment of certain fees and expenses (subject to Court approval), the Net Settlement Fund will be allocated among the Settlement Classes according to the percentage of the total damages for which each Defendant accounts.  (Settlement Agreement, ¶¶ 19, 26-30).  In the Proposed Allocation Order attached as Ex. F to the Settlement Agreement, Plaintiffs had provided allocation percentages for each Settlement Class to the Court.  Plaintiffs then engaged Dr. Martin Asher to calculate estimates of the appropriate allocation percentage for each Settlement Class in support of their Motion for Final Approval.  Dr. Asher's calculations resulted in allocation percentages in line with those proposed in Plaintiffs' Proposed Allocation Order.  *See* Declaration of Dr. Martin Asher, attached hereto as Ex. 2, ¶ 15.  Accordingly, Plaintiffs propose that the Net Settlement Fund be allocated among the Settlement Classes as follows:

     (a)      BabyBjörn Settlement Class: 6%

     (b)      Britax Settlement Class: 28%

     (b)      Maclaren Settlement Class: 7%

     (c)      Medela Settlement Class: 22%

     (d)      Peg Perego Stroller Settlement Class: 9%

     (e)      Peg Perego High Chair Settlement Class: 4%

     (f)      Peg Perego Car Seat Settlement Class: 3%

     (g)      Kids Line Settlement Class: 21%

("Individual Settlement Funds") (*See* Proposed Allocation Order, ¶ 3).[2]

Allocation of the Settlement Fund is based on, *inter alia*, the alleged percentage overcharge as calculated by Plaintiffs' damages expert, per product, the relevant time period, the evidence developed to date, risks of litigation and likelihood of recovery. Excluded from the Settlement Classes will be all persons who validly and timely request exclusion by June 6, 2011, in accordance with the Court's Preliminary Approval Order (*See* Settlement Agreement, ¶ 31).

Each Settlement Class member must submit a verified claim form with a sworn affidavit with or without documentary proof of the necessary purchase(s) of one or more of the Settlement Products to be eligible to be paid from an Individual Settlement Fund. (*See* Settlement Agreement, ¶¶ 18-20; *see also* Proposed Allocation Order, ¶ 6). If a Settlement Class Member submits valid documentary proof of the actual price paid for a Settlement Product, the Settlement Class Member will be eligible to receive a maximum of three times 20 percent of the actual purchase price of each Settlement Product purchased. (Proposed Allocation Order, ¶¶ 6a, 7). If a Settlement Class Member does not submit documentary proof of the actual purchase price, but otherwise submits a valid proof of purchase, the Settlement Class member will be eligible to receive a maximum of three times 20 percent of the Estimated Retail Price (as calculated by Class Counsel using available information) of each Settlement Product purchased. (Proposed Allocation Order, ¶¶ 6b, 7). The Estimated Retail Prices are based on price lists and other contemporaneous documentation of suggested retail prices from the Settling Defendants. If a Settlement Class Member does not submit any proof of purchase or purchase price at all, but otherwise submits a valid, sworn and timely Claim form, the Settlement Class Member will be

---

[2] Concurrent with the filing of their Motion for Final Approval, Plaintiffs will be filing a Motion for Entry of Proposed Allocation Order.

eligible to receive a one time payment of $5.00 from each Individual Settlement Fund for which he or she is eligible.  (Proposed Allocation Order, ¶¶ 6c).

Depending on the number of claims submitted for payment from each Individual Settlement Fund, each claim may be subject to certain pro rata enhancements or reductions. (Proposed Allocation Order, ¶¶ 6, 9, 10, 11).  Claims of Settlement Class Members that do not submit any proof of purchase or purchase price are not eligible for any enhancements but may be subject to certain pro rata reductions.  (Proposed Allocation Order, ¶¶ 7, 9).  If the claims submitted would exhaust a particular Individual Settlement Fund, the claims may be subject to pro rata reductions.  (Proposed Allocation Order, ¶ 9).  If the claims submitted do not exhaust an Individual Settlement Fund, the claims may be enhanced up to three times the authorized claims. (Proposed Allocation Order, ¶ 7).  *See also* Proposed Allocation Order, ¶¶ 10, 11, (explaining how the aggregate excess from any Individual Settlement Fund will be used to increase any exhausted Individual Settlement Fund).

## IV.   ARGUMENT

### A.   The Proposed Settlement Is Fair, Reasonable and Adequate and Should Be Approved By the Court

Rule 23 of the Federal Rules of Civil Procedure provides that a proposed class action settlement should be approved where the settlement is "fair, reasonable and adequate."  Fed. R. Civ. P.  23(e) (2).  *See In re Prudential Ins. Co. Am. Sales Practices Litig.* Agent Actions, 148 F.3d 283, 316 (3d Cir. 1998); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29161, at *5 (E.D. Pa. Sept. 27, 2004).

The courts have recognized a strong public policy favoring settlement of civil actions. *See, e.g., Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) ("compromises of disputed claims are favored by the courts"); *Sherin v. Gould*, 679 F. Supp. 473, 474 (E.D. Pa. 1987).  The

policy favoring settlement is particularly appropriate in class actions. *See, e.g., In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995); *Austin v. Pennsylvania Dep't of Corr.*, 876 F. Supp. 1437, 1455 (E.D. Pa. 1995) (noting that "the extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy encouraging settlements to 'an overriding public interest.'") (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Circ. 1977)).

District courts have broad discretion in deciding whether to approve a class action settlement. *See, e.g., Girsch v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975); *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978) (observing that a trial judge has "wide discretion" in ruling on a motion for approval of a class settlement). Courts have noted, however, that "it is appropriate to give substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, in making this determination." *In re Auto. Refinishing Paint Antitrust Litig.*, 2004 U.S. Dist. LEXIS 29161, at *7. *See also Petruzzi's v. Darling-Delaware Co., Inc.*, 880 F. Supp. 292, 301 (M.D. Pa. 1995) (noting that "the opinions and recommendation of such experienced counsel are indeed entitled to considerable weight").

The Third Circuit has established a nine-factor test for determining whether a proposed settlement is "fair, adequate and reasonable." *Girsch* 521 F.2d at 157. These so-called *Girsch* factors are:

    (1)      the complexity, expense and likely duration of the litigation;

    (2)      the reaction of the class to the settlement;

    (3)      the stage of the proceedings and the amount of discovery completed;

    (4)      the risks of establishing liability;

    (5)      the risks of establishing damages;

(6)     the risks of maintaining the class action through the trial;

(7)     the ability of the defendants to withstand a greater judgment;

(8)     the range of reasonableness of the settlement fund in light of the best possible

recovery; and

(9)     the range of reasonableness of the settlement fund in light of all the attendant risks

of litigation.

*In re Cendant Corp. Litig.*, 264 F.3d 201, 232 (3d Cir. 2001) (citing *Girsch*, 521 F.2d at 157).

As discussed below, when examined in light of the nine *Girsch* factors, the proposed

Settlement is fair, reasonable and adequate and should therefore be approved by the Court.

**1.      The Complexity, Expense and Likely Duration of the Litigation**

There is little doubt that this litigation has been complex, expensive and of long duration,

and the Settlement was achieved just as the parties began preparation for a series of six separate,

consecutive jury trials, an undertaking of tremendous effort, complexity and expense.  "An

antitrust class action is arguably the most complex action to prosecute …. The legal and factual

issues involved are always numerous and uncertain in outcome."  *In re Linerboard Antitrust*

*Litig.*, 296 F. Supp. 2d 568, 577 (E.D. Pa. 2003) (quoting *In re Motorsports Merchandise*

*Antitrust Litig.*, 112 F. Supp. 2d 1329, 1337 (N.D. Ga. 2000)) (internal citations and quotations

omitted).  *See also In re Shopping Carts Antitrust Litig.*, MDL No. 451, 1983 U.S. Dist. LEXIS

11555, at *17 (S.D.N.Y. Nov. 18, 1983) (observing that "antitrust price fixing actions are

generally complex, expensive and lengthy").

This litigation is no exception.  This case involves complex legal and factual issues

relating to the contractual arrangements between manufacturers, distributors and retailers of

several baby products over a span of many years.  Both the substantive law and procedural law

were impacted by judicial decisions issued during the pendency of this litigation.  Plaintiffs had

already defeated defendants' initial motions to dismiss when the Supreme Court decided

*Twombly*, 550 U.S. 544, providing a supplemental interpretation for the pleading standard in

antitrust cases which required additional briefing.  In addition, the law governing the standard of

review for retail price maintenance agreements changed after the case was filed, from being

judged under a *per se* rule to the rule of reason with the Supreme Court's opinion in *Leegin*

*Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877 (2007), resulting in the parties engaging in

additional substantive motion practice.  Further, as discussed below, the Third Circuit decided

*Hydrogen Peroxide* while Plaintiffs' motion for class certification was *sub judice* in this case.  *In*

*re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305. (3d Cir. 2008).  The *Hydrogen Peroxide*

decision led to additional substantive briefing by plaintiffs and defendants, as well as additional

expert discovery.

  The parties engaged in lengthy discovery throughout the United States and elsewhere and

engaged several economic experts, and briefed complex issues of both substantive and

procedural law.  The Court issued a significant opinion on class certification after a class

certification hearing with live testimony from expert witnesses, and decided a thorny issue of

trial procedure, separating the cases for trial by manufacturer.  The case involved extensive

briefing at every stage, from the motions to dismiss, discovery disputes and class certification,

right up through the severance motion, and at long last took months to settle even after an

agreement in principle was reached at a three-day mediation.  As detailed in Plaintiffs'

application for attorneys' fees and expenses, filed with the Court concurrently, Class Counsel

report having already expended over 81,200 hours on this litigation and incurred expenses

totaling $2,229,775.60.

By settling their claims with Settling Defendants, both Plaintiffs and Settling Defendants will save significant resources that would have already been spent preparing for and conducting the six consecutive trials.  The first *Girsch* factor is clearly satisfied here.

### 2.    The Reaction of the Class to the Settlement

This factor "attempts to gauge whether members of the class support the settlement." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d at 318.  It is common, however, for some class members to object to a proposed settlement and class settlements are often approved over the objections of many class members.  *See, e.g., In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993) (approving settlement notwithstanding a large number of objectors).

Pursuant to the Court's Preliminary Approval Order, direct notice is being given to potential Settlement Subclass Members in the form of both mail and email notice, and publication notice is being given in magazines, press releases, and text messaging, as well as on television, an informational website, and via a toll free information telephone line.  *See* Finegan Decl., Ex. 1, ¶ 7.

As of this date, Class Counsel have received two objections.  The first objection is to Plaintiffs' fee request, even though that request had yet to be filed.  The second objector, who by his own statements is not a class member, objected to receiving the notice on the grounds that (i) he was not a purchaser of any of the products at issue; and (ii) his identity had been improperly revealed as demonstrated by the fact that he  received notice.  Pursuant to the Court's Preliminary Approval Order, the deadline for submitting objections to and opting out of the settlement is June 6, 2011, and Plaintiffs therefore cannot at this time fully gauge the response of Settlement Subclass Members to the Settlement.  On June 13, 2011, Plaintiffs will submit, in

accordance with the Court's Preliminary Approval Order, a response to any objections filed by Settlement Subclass Members.

### 3.    The Stage of the Proceedings and the Amount of Discovery Completed

This factor "captures the degree of case development that class counsel have accomplished prior to settlement.   Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant Corp. Litig.*, 264 F.3d at, 235 (quoting *In re GMC.*, 55 F.3d at 813).   "Generally, post-discovery settlements are viewed as more likely to reflect the true value of a claim as discovery allows both sides to gain an appreciation of the potential liability and the likelihood of success."   *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29161, at \*15 (citing *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993)).

Here, the parties have completed full, extensive merits discovery, including the review of over one million (1,000,000) pages of documents produced by Defendants and third parties, over thirty (30) depositions of fact witnesses, the exchange of reports by and depositions of expert witnesses for class certification, and Plaintiffs' production of Rule 26 (a)(2) expert reports. There was also a three-day evidentiary hearing on Plaintiffs' motion for certification of the Subclasses.  When settlement discussions began, discovery had closed, the Court had set a trial date for the first trial, and the parties were preparing for trial and summary judgment motions. As a result, Class Counsel is clearly in a position to make an informed judgment as to the merits of the litigation and the likelihood of success.  *See In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 530 (E.D. Pa. 1990) (noting that "counsel … are fully cognizant of the relative merits and deficiencies of their clients' positions.  A settlement at this time represents, for both

sides, a significant savings of trial and appeals costs."). The third *Girsch* factor is satisfied here as well.

### 4 and 5.        The Risks of Establishing Liability and Damages

These *Girsh* factors attempt to measure the "expected value of litigating the action rather than settling it at the current time." *In re Cendant Corp. Litig.*, 264 F.3d at, 238 (quoting *In re GMC.*, 55 F.3d at 816).   Plaintiffs believe that their case against Defendants is a strong one that would survive summary judgment, prevail at trial and win on appeal.  However, all complex antitrust class actions have inherent risks.  Defendants in this case are large entities with extensive resources and are represented by talented and experienced counsel.  "As is true in any case, the proposed Settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution."  *Int'l Union, UAW v. Ford Motor Co.*, No. 06-10331, 2006 U.S. Dist. LEXIS 70471, at *67-68 (E.D. Mich. July 13, 2006) (internal quotation marks and citation omitted).

In order to prove liability, Plaintiffs have the burden of showing that the agreements at issue constitute illegal resale price maintenance agreements, a task made all the more difficult by the current uncertainties in the law as a result of the Supreme Court's decision in *Leegin*.

*Leegin* was decided during the pendency of this Action.  When this case commenced, resale price maintenance agreements of the kind alleged were a *per se* violation of the Sherman Act.  After the Supreme Court's ruling, Defendants were able to assert additional defenses, including that the agreements were reasonable restraints on trade.  In addition, assuming Plaintiffs were able to establish liability, they would also have to prove damages against Settling Defendants, which is likely to become an expensive and uncertain "battle of the experts."  *See Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 337 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d

Cir. 1999) (recognizing the value of settlement when the litigation is likely to become a complicated and costly battle of experts).

These uncertainties and risks support the appropriateness of the Settlement. *See In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995) ("A very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes."). The fourth and fifth *Girsch* factors are met here.

**6.      The Risks of Maintaining the Class Action Through the Trial**

This *Girsch* factor looks at the risks of going to trial.  The Third Circuit has held that this factor is perfunctory "[b]ecause the district court always possesses the authority to decertify or modify a class that proves unmanageable …[t]here will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement." *In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d at 321.  However, here, the Third Circuit addressed the standard for class certification during the pendency of the class certification motion. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F. 3d 305.  Though this Court's certification opinion was thorough and closely reasoned, the possibility of decertification here was no mere specter.  The Court declined to certify the full scope of the classes originally proposed by Plaintiffs.  As a result, the *Elliott* Plaintiffs filed additional litigation to seek certification of the unrepresented classes.  Therefore, in the particular circumstances of this case, the sixth *Girsch* factor favors approval.

In this case, as discussed above, there are substantial risks for Plaintiffs in going to trial and proving liability and damages as well as those inherent in any class action. *See In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 523 (E.D. Mich. 2003).  "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *See also In re*

*Auto. Refinishing Paint Antitrust Litig.*, 2004 U.S. Dist. LEXIS 29161, at *21 ("[W]e find that the inherent difficulties in bringing a class action to trial provides additional support for the approval of the … Settlement.").

### 7.    The Ability of the Defendants to Withstand a Greater Judgment

This factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *In re Cendant Corp. Litig.*, 264 F.3d at 240. However, this factor "does not require that the defendant pay the maximum it is able to pay." *In re Diet Drugs Prods. Liab. Litig.*, Nos. MDL No. 1203, 99-20593, 2000 U.S. Dist. LEXIS 12275, at *188 (E.D. Pa. Aug. 28, 2000) (citing *In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d at 321-22).

Here, many of the Settling Defendants are large and solvent entities.  However, courts have not given this factor great weight where the settlement at issue represents a substantial sum in light of the risks involved in proceeding with the litigation.  *See, e.g., In re Auto. Refinishing Paint Antitrust Litig.*, 2004 U.S. Dist. LEXIS 29161, at *22; *Lazy Oil Co.*, 95 F. Supp. 2d at 318, *aff'd*, 166 F.3d 581 (3d Cir. 1999) (concluding that defendant's ability to pay a larger judgment did not weigh against settlement "in light of the risks that Plaintiffs would not be able to achieve any greater recovery at trial.").  Further, no Defendant would agree to stand for any other Defendant's share of the settlement, meaning that the financial health of the least stable Defendant bore on the total recovery – and, in fact, one Defendant now claims it lacks the funds to pay the amount it agreed to pay to settle the claims against it.  *See* Plaintiffs' Motion to Enforce Settlement Agreement Against Regal Lager filed April 14, 2011.

**8 and 9.     The Reasonableness of the Settlement in Light of the Best Possible Recovery and in Light of All the Attendant Risks of Litigation**

These two closely related *Girsh* factors "ask the court to analyze the settlement in light of the best and worst case scenarios." *In re Auto. Refinishing Paint Antitrust Litig.*, 2004 U.S. Dist. LEXIS 29161, at *23. "This inquiry measures the value of the settlement itself to determine whether the decision to settle represents a good value for a relatively weak case or a sell-out of an otherwise strong case." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. at 839 (quoting *In re GMC*, 55 F.3d at 806.).

The Settlement Amount in this case, over $35 million and representing approximately 24% of estimated actual damages, is on par with or superior to settlements in other recent antitrust class actions. *See, e.g., Rodriguez v. West Publishing Corp.*, No. CV-05-3222, 2007 U.S. Dist. LEXIS 74849, at *42-43 (C.D. Cal. Sept. 10, 2007) (approving settlement representing 30% of estimated damages), *aff'd in part, rev'd in part on other grounds*, 563 F.3d 948 (9th Cir. 2009); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No, 03-4578, 2005 U.S. Dist. LEXIS 9705, at *29-30 (E.D. Pa. May 20, 2005) (noting that the settlement, which amounted to 11.4% of total damages to the settlement class "compare[d] favorably with the settlements reached in other complex class action lawsuits."); *Nichols v. SmithKline Beecham Corp.*, No. 00-6222, 2005 U.S. Dist. LEXIS 7061, at *52 (E.D. Pa. Apr. 22, 2005) (approving settlement representing between 9.3% and 13.9% of damages); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 258 (D. Del. 2002) (approving settlement amounting to 33% of maximum possible recovery). *See also In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d at 581 (approving settlement for approximately 36% of total damages during the class period and listing cases with substantially lower settlement percentages); *Lazy Oil Co.*, 95 F. Supp. 2d at 339 (noting cases approving settlements ranging from 0.2% to 16% of potential recovery).

Taking into consideration the risks of continued litigation, as well as the fact that it is the product of intensive arms-length negotiations among experienced counsel with the assistance of a professional mediator, the Settlement falls within the range of reasonableness and satisfies the final *Girsch* factors. Accordingly, this Court should grant Plaintiffs' motion for final approval and approve the Settlement as fair, adequate and reasonable pursuant to Fed. R. Civ. P. 23.

## B. The Court Should Also Approve the Proposed Allocation Plan, Which Is Fair, Reasonable and Adequate

"Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *In re Auto. Refinishing Paint Antitrust Litig.*, 2004 U.S. Dist. LEXIS 29161, at *26 (quoting *In re Lucent Technologies, Inc. Sec. Litig.*, 307 F. Supp. 2d 633, 649 (D.N.J. 2004)). "In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *Id.* (quoting *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 432 (E.D. Pa. 2001)).

The allocation plan submitted by Plaintiffs is straightforward and designed to compensate Settlement Class Members based on the extent of their injuries resulting from Settling Defendants' alleged overcharges. *See* Proposed Allocation Order. The allocation plan provides for the distribution of the Settlement Fund, including accumulated interest, after payment of counsel fees, expenses and Incentive Awards. (Proposed Allocation Order, ¶ 3.) As discussed above, the Settlement Fund is to be allocated among the Settlement Classes based on the alleged percentage overcharge, as calculated by Plaintiffs' damages expert, per product. Each Settlement Class has been allocated that percentage of the overall Settlement Fund which that Settlement Class' damages represent in comparison to the total damages estimated to have been suffered by all of the Settlement Classes, the relevant time period, the evidence developed to

date, risks of litigation and likelihood of recovery. (Proposed Allocation Order, ¶ 3.) Asher

Decl. Ex. 2, ¶¶ 7, 14. Each Settlement Class Member is eligible for reimbursement based on his

or her purchases during the relevant time period of eligible products sold by Settling Defendants.

(Proposed Allocation Order, ¶¶ 3, 6).

Allocation plans that, as here, provide for *pro rata* distributions have been routinely

approved by the courts. *See, e.g, In re Vitamins Antitrust Litig.*, No. 99-197, 2000 U.S. Dist.

LEXIS 8931, at *32 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that

apportions funds according to the relative amount of damages suffered by class members have

repeatedly been deemed fair and reasonable."). The Court should accordingly approve the

allocation plan as fair, reasonable and adequate.

## III.   CONCLUSION

For the foregoing reasons, the Court should grant final approval of the proposed

Settlement and proposed plan for allocation of proceeds.


Dated: May 24, 2011                                  Respectfully submitted,


                                                    s/ Eugene A. Spector
                                                    Eugene A. Spector
                                                    William G. Caldes
                                                    Jeffrey L. Spector
                                                    SPECTOR ROSEMAN KODROFF & WILLIS,
                                                    P.C.
                                                    1818 Market Street, Suite 2500
                                                    Philadelphia, PA 19103
                                                    Tel.: (215) 496-0300
                                                    Fax: (215) 496-6611

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
1144 West Lake Street, Suite 400
Oak Park, IL 60301
Tel.: (708) 628-4949
Fax: (708) 628-4950

Steve W. Berman
Anthony D. Shapiro
George W. Sampson
Ivy Arai Tabbara
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel.: (206) 623-7292
Fax: (206) 623-0594

Mary Jane Fait
Theodore B. Bell
WOLF HALDENSTEIN ADLER FREEMAN
& HERZ LLC
55 West Monroe Street, Suite 1111
Chicago, IL 60603
Tel.: (312) 984-0000
Fax: (312) 984-0001

Fred T. Isquith
Thomas H. Burt
WOLF HALDENSTEIN ADLER FREEMAN
& HERZ LLC
270 Madison Avenue
New York, NY 10016
Tel.: (212) 545-4600
Fax: (212) 545-4653

**CLASS COUNSEL FOR THE
SETTLEMENT SUBCLASSES**