UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL M. MCDONOUGH, *et al.*,<br><br>                              Plaintiffs,<br><br>              v.<br><br>TOYS "R" US, INC., d/b/a/ Babies "R" Us, *et al.*,<br><br>                              Defendants. | C.A. No. 2:06-cv-0242-AB |
| ARIEL ELLIOTT, *et al.*,<br><br>                              Plaintiffs,<br><br>              v.<br><br>TOYS "R" US, INC., d/b/a Babies "R" Us, *et al.*,<br><br>                              Defendants. | No. 2:09-cv-06151-AB |

**MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES,
AND INCENTIVE AWARDS FOR NAMED PLAINTIFFS**

## TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ..................................................................................1

II. CLASS COUNSEL'S INVESTMENT OF TIME AND MONEY IN THE CASE ...........2

III. AWARD OF ATTORNEYS' FEES AND EXPENSES ....................................3

 A. A Reasonable Percentage of the Fund Recovered is the Appropriate Method for Awarding Class Counsel's Attorneys' Fees in this Common Fund Settlement ..................................................................3

 B. A Fee Award Based on 33-1/3% of the Common Fund Is Fair and Reasonable ....4

  1. Thirty Three and One-Third Percent Is A Reasonable Percentage Based On The Size Of The Fund Created. .........................................5

  2. There Are No Substantial Objections To The Settlement Terms Or Fees Requested By Counsel. ..................................................6

  3. Class Counsel Are Skilled and Efficient Litigators. ...................................6

  4. The Litigation Was Complex and Enduring. ............................................6

  5. Class Counsel Faced A Risk Of Nonpayment. .........................................8

  6. Class Counsel Devoted 81,200.82 Hours To Prosecuting This Action. .......................................................................................8

  7. Awards In Similar Cases Demonstrate That 33-1/3 Percent Is Reasonable. ......................................................................................8

  8. Class Counsel Prosecuted The Litigation Without Help From the Government or Other Public Agencies. ..............................................9

  9. The Requested Fee Is Consistent With The Percentage Fee That Would Have Been Negotiated In A Private Contingent Fee Arrangement ...................................................................................10

  10. The Factor of Any Innovative Terms of Settlement Is Neutral. ...............10

 C. The Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee. ..............................................................................................10

  1. Class Counsel's Lodestar Is Reasonable ...............................................11

2.      The Negative Multiplier Requested Here Mitigates in Favor of the Requested Fee ........................................................................................ 12

IV.    CLASS COUNSEL SHOULD BE REIMBURSED FOR THEIR EXPENSES ............. 13

V.     INCENTIVE AWARDS ARE WARRANTED FOR NAMED PLAINTIFFS ................ 14

VI.    CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal,*
___ U.S. ___, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ........................................7

*Babyage.com, Inc. v. Toys "R" Us, Inc.,*
558 F. Supp. 2d 575 (E.D. Pa. 2008)........................................................................7

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................................7

*Blum v. Stenson,*
465 U.S. 886 (1984) ................................................................................................4

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) ................................................................................................4

*Bouman v. Block,*
940 F.2d 1211 (9th Cir. 1991) ..............................................................................12

*Bradburn Parent Teacher Store, Inc. v. 3M,*
513 F. Supp. 2d 322 (E.D. Pa. 2007)..................................................................2, 10

*Caudle v. Bristow Optical Co., Inc.,*
224 F.3d 1014 (9th Cir. 2000) ..............................................................................11

*Cullen v. Whitman Med. Corp.,*
197 F.R.D. 136 (E.D. Pa. 2000) ..............................................................................5

*Godshall v. Franklin Mint Co.,*
2004 U.S. Dist. LEXIS 23976 (E.D. Pa. Dec. 1, 2004) ..........................................5

*Gunter v. Ridgewood Energy Corp.,*
223 F.3d 190 (3d Cir. 2000)....................................................................................4

*Hall v. Best Buy Co.,*
2011 U.S. Dist. LEXIS 31220 (E.D. Pa. Mar. 24, 2011) ...................................8, 14

*Harris v. Marhoefer,*
24 F.3d 16 (9th Cir. 1994) ....................................................................................13

*In re Am. Investors. Life Ins. Co. Annuity Mktg. & Sales Practices Litig.,*
263 F.R.D. 226 (E.D. Pa. 2009)............................................................................14

*In re AT&T Corp. Secs. Litig.*,
  455 F.3d 160 (3d Cir. 2006) ............................................................. 3, 5, 9

*In re Automotive Refinishing Paint Antitrust Litig.*,
  2008 U.S. Dist. LEXIS 569 (E.D. Pa. Jan. 3, 2008) ................................. 2, 5

*In re Blech Sec. Litig.*,
  2002 U.S. Dist. LEXIS 23170, 2002 WL 31720381 (S.D.N.Y. Dec. 4, 2002) ...... 9

*In re Cendant Corp. Prides Litig.*,
  243 F.3d 722 (3d Cir. 2001) .......................................................... 7, 12, 13

*In re Cendant Corp. Sec. Litig.*,
  404 F.3d 173 (3d Cir. 2005) ................................................................. 3

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*,
  269 F.R.D. 468 (E.D. Pa. 2010) ........................................................... 14

*In re Corel Corp. Sec. Litig.*,
  293 F. Supp. 2d 484 (E.D. Pa. 2003) ................................................... 2, 13

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*,
  582 F.3d 524 (3d Cir. 2009) ....................................................... 3, 4, 11, 12

*In re Diet Drugs Prods. Liab. Litig.*,
  553 F. Supp. 2d 442 (E.D. Pa. 2008) ..................................................... 9

*In re FAO Inc. Sec. Litig.*,
  2005 U.S. Dist. LEXIS 16577 (E.D. Pa. May 20, 2005) .............................. 2, 5

*In re Gen. Instrument Sec. Litig.*,
  209 F. Supp. 2d 423 (E.D. Pa. 2001) ................................................... 2, 5

*In re Greenwich Pharm. Sec. Lit.*,
  1995 U.S. Dist. LEXIS 5717 (E.D. Pa. April 26, 1995) ................................ 5

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008) ................................................................. 7

*In re Ikon Office Solutions, Inc.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ........................................................... 10

*In re Ins. Brokerage Antitrust Litig.*,
  579 F.3d 241 (3d Cir. 2009) ................................................................ 13

*In re Medical X-Ray Film Antitrust Litig.*,
  1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998) ................................ 5

*In re Merck & Co. Vytorin ERISA Litig.,*
  2010 U.S. Dist. LEXIS 12344 (D.N.J. Feb. 9, 2010) ......................................................... 10

*In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions,*
  148 F.3d 283 (3d Cir. 1998) ................................................................. 3, 4, 11, 13

*In re Ravisent Techs., Inc. Sec. Litig.,*
  2005 U.S. Dist. LEXIS 6680 (E.D. Pa. Apr. 18, 2005) ........................................................ 2, 5

*In re Remeron Direct Purchaser Antitrust Litig.,*
  2005 U.S. Dist. LEXIS 27012 (D.N.J. Nov. 9, 2005) ........................................................... 5

*In re Rent-Way Secs. Litig.,*
  305 F. Supp. 2d 491 (W.D. Pa. 2003) ......................................................................... 13

*In re Rite Aid Corp. Sec. Litig.,*
  396 F.3d 294 (3d Cir. 2005) ............................................................................... 8, 11

*In re Washington Pub. Power Supply Sys. Sec. Litig.,*
  19 F.3d 1291 (9th Cir. 1994) ................................................................................. 3

*Klingensmith v. Max & Erma's Rests., Inc.,*
  2007 U.S. Dist. LEXIS 81029 (W.D. Pa. Oct. 23, 2007) ...................................................... 15

*Leegin Creative Leather Prods. Inc. v. PSKS Inc.,*
  551 U.S. 877 (2007) ......................................................................................... 7

*Maley v. Del Global Techs. Corp.,*
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ......................................................................... 9

*McDonough v. Toys "R" Us, Inc.,*
  638 F. Supp. 2d 461 (E.D. Pa. 2009) ......................................................................... 7

*Mehling v. New York Life Ins. Co.,*
  248 F.R.D. 455 (E.D. Pa. 2008) ............................................................................. 10

*Menkes v. Stolt-Nielsen S.A.,*
  2011 U.S. Dist. LEXIS 7066 (D. Conn. Jan. 25, 2011) ........................................................ 8

*Mogck v. Unum Life Ins. Co. of Am.,*
  289 F. Supp. 2d 1181 (S.D. Cal. 2003) ...................................................................... 12

*Spann v. AOL Time Warner, Inc.,*
  2005 U.S. Dist. LEXIS 10968, 2005 WL 1330937 (S.D.N.Y. June 7, 2005) ...................................... 8, 9

*Sprague v. Ticonic Nat'l Bank,*
  307 U.S. 161 (1939) ......................................................................................... 4

*Third Circuit Task Force Report, Selection of Class Counsel,*
    208 F.R.D. 340 (2002)......................................................................................................10

### OTHER AUTHORITIES

Denise N. Martin, Vinita M. Juneja, Todd S. Foster & Frederick C. Dunbar, *Recent
    Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?*
    STAN. J.L. BUS. & FIN. (1996)..............................................................................................9

THE MANUAL FOR COMPLEX LITIGATION § 14.121 (4th ed. 2004)...............................................4

Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class
    Actions in Four Federal District Courts: Final Report to the Advisory Committee on
    Civil Rules* (Fed. Judicial Ctr. 1996).................................................................................9

Plaintiffs Julie Lindemann, Melissa Nuttall, Sara Shuck, Lawrence McNally, Stephanie Bozzo, Yossi Zarfati, Darcy Trzupek, Carol McDonough, Ariel Elliott, Beth Hellman, Christine Brooke Logan, Kristi Monville, Sarah Otazo, Kelly Pollock, and Elizabeth Starkman ("Plaintiffs" or "Named Plaintiffs") respectfully move the Court for an Order awarding Class Counsel attorneys' fees and reimbursement of expenses, as well as granting Incentive Awards for the Named Plaintiffs.

## I.    INTRODUCTION

Following hard-fought litigation that involved extensive investigation and discovery, multiple rounds of motion practice, often a consequence of changes in the law during the course of this litigation, a full evidentiary hearing on class certification, trial preparation, and several days of formal mediation, followed by months of additional contentious settlement negotiations, the Settling Parties have now settled this antitrust class action for a cash payment of $35,240,000.00.  This Settlement[1] was achieved through the dedicated efforts of Class Counsel working diligently, without compensation, for more than five years to represent the Settlement Class Members.

While the concurrently-filed Memorandum in Support of Motion for Final Approval ("Final Approval Mem.") documents why the Settlement is a fair, adequate and reasonable result for the Classes and should be approved, this memorandum addresses Class Counsel's request for: (i) an award of attorneys' fees in the amount of $11,746,667.00, which represents 33-1/3% of the gross Settlement amount, (ii) reimbursement of out-of-pocket litigation expenses of $2,229,775.60; and (iii) approval of a $2,500.00 Incentive Award to each Named Plaintiff in recognition of their valuable and time-consuming services to the Class.

---

[1] Capitalized Terms not otherwise defined herein have the meanings set forth in the Settlement Agreement.

As demonstrated below, the record in this case and the case law in the Third Circuit fully support the requested fees, expenses, and Incentive Awards.  An award of one-third of the Settlement Fund is a reasonable and typical portion of a settlement to be awarded as fees and is well within the range of approval in the Third Circuit.  *See In re Automotive Refinishing Paint Antitrust Litig.*, 2008 U.S. Dist. LEXIS 569, at *9-10 (E.D. Pa. Jan. 3, 2008) (in antitrust class action, Judge Surrick granted Plaintiffs' Counsel's request for fees equaling one-third of the settlement fund); *In re Ravisent Techs., Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 6680, at *40 (E.D. Pa. Apr. 18, 2005) ("courts within this Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses").[2]  Accordingly, Plaintiffs respectfully request that the motion be granted.

## II.      CLASS COUNSEL'S INVESTMENT OF TIME AND MONEY IN THE CASE

Class Counsel and other Plaintiffs' law firms have devoted more than 81,200.82 hours to this case, reporting a lodestar of approximately $31,839,355.33 at their regular, historical hourly rates, and have reported incurring $2,229,775.60 in out-of-pocket expenses.  *See* Declaration of Plaintiffs' Class Counsel ("Class Counsel Decl."), attached hereto as Exhibit 1, at ¶¶ 4, 98, 101. *See also* Plaintiff firms' individual fee and expense affidavits, attached hereto as Exhibit 2. Class Counsel will continue to incur additional attorney hours in connection with final approval of the Settlement, responding to inquiries from Class members, interacting with the Claims Administrator, and generally overseeing implementation of the Settlement.

---

[2] *See also Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 342 (E.D. Pa. 2007) (approving a percentage of recovery of 35%, plus reimbursement of expenses); *In re FAO Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 16577, at *5-6 (E.D. Pa. May 20, 2005) (finding a fee of 33%, plus expenses, to be reasonable); *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 497-98 (E.D. Pa. 2003) (awarding counsel one-third of the settlement fund in addition to the reimbursement of litigation expenses); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 433-34 (E.D. Pa. 2001) (approving a fee request of one-third of the settlement fund plus nearly $1,800,000 in expenses).

### III.    AWARD OF ATTORNEYS' FEES AND EXPENSES

Class Counsel requests an award of attorneys' fees of 33-1/3% of the $35,240,000.00

Settlement, or $11,746,667.00, plus interest accrued on that amount.  We respectfully submit, as

the discussion below demonstrates, that the request is well within the bounds allowed by law,

particularly in light of the length and complexity of this case.  Moreover, cross-checking this fee

request against the lodestar fee calculation validates its reasonableness, as explained below.

**A.    A Reasonable Percentage of the Fund Recovered is the Appropriate Method for
Awarding Class Counsel's Attorneys' Fees in this Common Fund Settlement**

The percentage-of-the-fund method of awarding fees has become an accepted, if not the

prevailing, method for awarding fees in common fund cases in this Circuit and throughout the

United States.  Courts have long recognized that "'a private plaintiff, or plaintiff's attorney,

whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is

entitled to recover from the fund the costs of his litigation, including attorneys' fees.'" *In re*

*Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005) (quoting *G.M.C. Trucks*, 55 F.3d at

820 n.39).  The purpose of compensating counsel in this manner means that "those who benefit

from the creation of the fund should share the wealth with the lawyers whose skill and effort

helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th

Cir. 1994).

In this Circuit, district courts have discretion to award fees in common fund cases based

on either the lodestar/multiplier method or the percentage-of-the-fund method.  *In re Diet Drugs*

*(Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 539 (3d Cir.

2009); *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006).  When calculating

attorneys' fees in a common fund case though, "the percentage-of-recovery method is generally

favored." *In re Diet Drugs*, 582 F.3d at 539; *In re Prudential Ins. Co. Am. Sales Practices Litig.*

*Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998); *see also* THE MANUAL FOR COMPLEX

LITIGATION § 14.121 (4th ed. 2004) (reporting that "the vast majority of courts of appeals now

permit or direct district courts to use the percentage method in common-fund cases").

Furthermore, the Supreme Court has consistently endorsed awarding attorneys' fees using the

percentage-of-the-fund method. *See, e.g., Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165-67

(1939); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980); *Blum v. Stenson*, 465 U.S. 886,

900 n.16 (1984). Thus, Class Counsel request that the Court apply the percentage-of-the-fund

method.

**B.     A Fee Award Based on 33-1/3% of the Common Fund Is Fair and Reasonable**

In determining what constitutes a reasonable percentage fee award, a district court must

consider the ten factors identified by the Third Circuit in *Gunter v. Ridgewood Energy Corp.*,

223 F.3d 190 (3d Cir. 2000), and *Prudential*, 148 F.3d 283. *See In re Diet Drugs*, 582 F.3d at

540. The Third Circuit explained in *In re Diet Drugs*, that the *Gunter/Prudential* factors for

which this Court must conduct a "robust assessment" are:

> (1) the size of the fund created and the number of beneficiaries, (2)
> the presence or absence of substantial objections by members of
> the class to the settlement terms and/or fees requested by counsel,
> (3) the skill and efficiency of the attorneys involved, (4) the
> complexity and duration of the litigation, (5) the risk of
> nonpayment, (6) the amount of time devoted to the case by
> plaintiffs' counsel, (7) the awards in similar cases, *Gunter*, 223
> F.3d at 195 n.1; *Prudential*, 148 F.3d at 336-40, (8) the value of
> benefits attributable to the efforts of class counsel relative to the
> efforts of other groups, such as government agencies conducting
> investigations, (9) the percentage fee that would have been
> negotiated had the case been subject to a private contingent fee
> arrangement at the time counsel was retained, and (10) any
> innovative terms of settlement, *Prudential*, 148 F.3d at 338-40; *see
> also AT&T*, 455 F.3d at 165 n.34. [582 F.3d at 540.]

While the Court should consider each factor, "[t]he fee award reasonableness factors 'need not

be applied in a formulaic way' because each case is different, 'and in certain cases, one factor

may outweigh the rest.'" *AT&T*, 455 F.3d at 166 (quoting *Rite Aid*, 396 F.3d at 301). Applying

these factors clearly demonstrates that Plaintiffs' fee request is reasonable.

> **1.  Thirty Three and One-Third Percent Is A Reasonable Percentage Based On The Size Of The Fund Created.**

An award of 33-1/3% percent of the common fund is a reasonable amount that falls

within the range of amounts approved by this Court in similar cases.  Indeed, "courts within this

Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses."

*Ravisent*, 2005 U.S. Dist. LEXIS 6680, at *40; *Auto. Paint.*, 2008 U.S. Dist. LEXIS 569, at *9-

10 (awarding requested fees of one third of the multi-million dollar settlement fund); *In re*

*Remeron Direct Purchaser Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27012, at *10 (D.N.J. Nov. 9,

2005) (awarding fees of 33 1/3% from $75 million settlement fund); *Godshall v. Franklin Mint*

*Co.*, 2004 U.S. Dist. LEXIS 23976, at *18 (E.D. Pa. Dec. 1, 2004) (awarding a 33% fee and

noting that "[t]he requested percentage is in line with percentages awarded in other cases"); *In re*

*Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 433-34 (E.D. Pa. 2001) (awarding 1/3 of a $48

million settlement fund); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000)

(an "award of one-third of the fund for attorneys' fees is consistent with fee awards" by district

courts in the Third Circuit); *In re Greenwich Pharm. Sec. Lit.*, 1995 U.S. Dist. LEXIS 5717, at

*16-17 (E.D. Pa. April 26, 1995) (holding that "[a] fee award of 33.3 percent is in line with the

fee awards approved by other courts"); *In re FAO, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS

16577, at *5 (E.D. Pa. May 20, 2005) (awarding fees of 30% and 33%).  The percentage fee

awards in this Circuit are consistent with fee awards nationwide.  *See, e.g. In re Medical X-Ray*

*Film Antitrust Litig.*, 1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998) (awarding fees that

comprised 33.33% of the $39.36 million settlement).

An award of 33-1/3% percent of the common fund is within the range of reasonableness and particularly appropriate in a case of this nature.  As set forth *supra*, 33-1/3% percent of the common fund results in Class Counsel receiving a negative multiplier on their actual lodestar. Accordingly, this factor weighs in favor of the requested fee award.

### 2.   There Are No Substantial Objections To The Settlement Terms Or Fees Requested By Counsel.

The Notice of Proposed Settlement issued by the parties advised prospective class members that Class Counsel would apply for the fee award described herein and that any class member could object to either the Settlement or the fee application.  There has been one objection to Class Counsel's fee request, which describes this very difficult case as "relatively simpl[e]…" and complains that the effort and work involved were not described so as to justify this fee request.  Clearly, this unstudied objection is insubstantial and unsupportable by the Court's own witness to this hotly-contested litigation.[3]

### 3.   Class Counsel Are Skilled and Efficient Litigators.

Class Counsel are highly experienced in litigating complex class actions and antitrust cases.  As a result, Class Counsel was successful in defeating several attempts by Defendants to dismiss this matter.  Moreover, Class Counsel successfully moved for class certification, and were preparing these cases for trial at the time of settlement.  This factor weighs in favor of the requested fee award.

### 4.   The Litigation Was Complex and Enduring.

"[C]omplex and/or novel legal issues, extensive discovery, acrimonious litigation, and tens of thousands of hours spent on the case by class counsel" are "the factors which increase the

---

[3] There is a second objection that has been received, but that person never purchased any of the relevant products at issue, and is, therefore, not a class member and thus lacks standing to object.  Moreover, that person does not object to Class Counsel's fee request.

complexity of class litigation." *In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 741 (3d Cir. 2001). Here, this Court witnessed first-hand the number of complex and novel legal issues that arose over the last five years.

During the course of the action, Plaintiffs were faced with several rounds of briefing. These were occasioned by (a) the Supreme Court's explanation of the pleading standards in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009),[4] (b) the Supreme Court's decision overturning years of law and rejecting the *per se* ban on resale price maintenance agreements and ruling that such agreements are to be judged under the Rule of Reason, *Leegin Creative Leather Prods. Inc. v. PSKS Inc.*, 551 U.S. 877 (2007), and (c) a Third Circuit decision newly interpreting the class certification standards in *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008). This Court granted class certification, in part, for the *McDonough* subclasses after a three-day evidentiary hearing in mid-2009. *McDonough v. Toys "R" Us, Inc.*, 638 F. Supp. 2d 461, 491 (E.D. Pa. 2009).

Moreover, the parties completed merits discovery, which included the review of over one million (1,000,000) pages of documents from Defendants and third parties, more than 30 depositions, and the production by Plaintiffs of their Rule 26(a)(2) expert reports. In fact, in early 2010 in *McDonough,* the Court granted Defendants' motion to separate the trials by Defendant, and scheduled the first trial against BRU and Medela for January 2011. Dkt. # 662. Accordingly, this factor weighs in favor of a finding that Plaintiffs' fee request is reasonable.

---

[4] *See Babyage.com, Inc. v. Toys "R" Us, Inc.*, 558 F. Supp. 2d 575 (E.D. Pa. 2008) (Brody, J.).

### 5.   Class Counsel Faced A Risk Of Nonpayment.

For this factor, some courts appear to weigh the risk of non-payment in the event that defendants go out of business. *See, e.g., In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005). Here, there is some evidence that this risk existed for one or more Defendants. *See, e.g.,* Declaration of Bengt Lager (Dkt. # 729). Other courts note that "while this case has been pending, Class Counsel have not received any payment, and, by proceeding on a contingent-fee basis, ran substantial risk of nonpayment...." *Hall v. Best Buy Co.*, 2011 U.S. Dist. LEXIS 31220, at *51 (E.D. Pa. Mar. 24, 2011). Certainly, here, there was risk that Plaintiffs would not be successful. Antitrust cases are notoriously complex and uncertain. Here, the legal landscape also changed post-*Leegin*, as well as following the Circuit Court's opinion in *Hydrogen Peroxide* regarding the district court's review of Rule 23 standards. Accordingly, this factor weighs in favor of Plaintiffs' requested fee award.

### 6.   Class Counsel Devoted 81,200.82 Hours To Prosecuting This Action.

Class Counsel devoted considerable time and effort to prosecuting the class antitrust claims in this case. As set forth in the Plaintiff firms' fee and expense affidavits and the Class Counsel Decl., Class Counsel reported devoting 81,200.82 hours to prosecuting this case. *See* Exhibits 1-2. Thus, this factor weighs in favor of Plaintiffs' fee award. *See, e.g., Hall v. Best Buy Co.*, 2011 U.S. Dist. LEXIS 31220, at *52 (finding this factor weighed in favor of 33% fee award where three firms devoted a combined 1,027 hours to prosecuting the class action).

### 7.   Awards In Similar Cases Demonstrate That 33-1/3 Percent Is Reasonable.

As set forth *supra*, fee awards of 33-1/3% are within the range of well-accepted awards in this Circuit. Moreover, this percentage is consistent with awards nationwide. *See, e.g., Menkes v. Stolt-Nielsen S.A.*, 2011 U.S. Dist. LEXIS 7066 (D. Conn. Jan. 25, 2011) (granting fee request of 33 1/3 percent of common fund in class action settlement); *Spann v. AOL Time Warner, Inc.*,

2005 U.S. Dist. LEXIS 10968, 2005 WL 1330937, at *8 (S.D.N.Y. June 7, 2005) (33.3% fee award); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (33.33% fee award); *In re Blech Sec. Litig.*, 2002 U.S. Dist. LEXIS 23170, 2002 WL 31720381, at * 1 (S.D.N.Y. Dec. 4, 2002) (33.3% fee award).  *See also* Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*, at 69 (Fed. Judicial Ctr. 1996) ("Median rates ranged from 27% to 30%."); Denise N. Martin, Vinita M. Juneja, Todd S. Foster & Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* STAN. J.L. BUS. & FIN. (1996) ("Regardless of case size, fees average approximately 32 percent of the settlement.").  Accordingly, this factor supports Class Counsel's request.

### 8. Class Counsel Prosecuted The Litigation Without Help From the Government or Other Public Agencies.

Courts in this Circuit are instructed to consider whether Class Counsel had benefitted from "the efforts of other groups, such as government agencies conducting investigations." *AT&T*, 455 F.3d at 165 (citation omitted).  Similar to the situation in *In re Diet Drugs Prods. Liab. Litig.*, 553 F. Supp. 2d 442, 481 (E.D. Pa. 2008), "this case is quite different from the typical antitrust or securities litigation – in which the *Gunter/Prudential* factors are often considered – 'where government prosecutions frequently lay the groundwork for private litigation.'"  *Id.*  Here, Class Counsel did not rely at all on "the Government or other public agencies to do their work for them as has occurred in some cases." *Id.* at 481-82.[5]  Accordingly, this factor weighs in favor of Class Counsel's requested fee award.

---

[5] In fact, the Federal Trade Commission ("FTC") commenced an investigation apparently well after Plaintiffs had begun litigating this case, *see* "Toys 'R' Us Faces Federal Antitrust Inquiry," WALL STREET JOURNAL, October 17-18, 2009, and settled with Toys "R" Us, Inc. for significantly less money than Class Counsel obtained on behalf of the Subclasses, even when only taking into account Toys "R" Us, Inc.'s contribution to the Settlement Fund. *Compare* FTC Press Release titled, "Toys 'R' Us to Pay $1.3 Million Penalty for Violating FTC Order," dated March 29, 2011, with Exhibit H to the Settlement Agreement.

**9.    The Requested Fee Is Consistent With The Percentage Fee That Would Have Been Negotiated In A Private Contingent Fee Arrangement.**

"The 33-1/3% fee requested here is consistent with private contingent fee arrangements in this District." *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 464 (E.D. Pa. 2008) (citing *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 340 (E.D. Pa. 2007) (finding a fee of 35% to be consistent with private contingent fee arrangements)); *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000), ("[I]n private contingency fee cases . . . plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery.").

**10.    The Factor of Any Innovative Terms of Settlement Is Neutral.**

This factor neither weighs in favor of nor detracts from a decision to award fees. *See, e.g., In re Merck & Co. Vytorin ERISA Litig.*, 2010 U.S. Dist. LEXIS 12344 (D.N.J. Feb. 9, 2010) (finding that this factor is neutral when no innovative terms are highlighted).

In sum, nine out of ten *Prudential/Gunter* factors support Class Counsel's request for a fee award in the amount of 33-1/3 percent of the Settlement Amount, and none of the *Prudential/Gunter* factors counsel against that request.

**C.    The Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee.**

Courts in the Third Circuit often examine the lodestar calculation as a cross-check on the percentage fee award.  The cross-check is not designed to be a "full-blown lodestar inquiry," but rather an estimation of the value of counsel's investment in the case. *Third Circuit Task Force Report, Selection of Class Counsel*, 208 F.R.D. 340, 422-23 (2002) (noting that "[t]he lodestar remains difficult and burdensome to apply, and it positively encourages counsel to run up the bill, expending hours that are of no benefit to the class"). Rather, the Third Circuit recommends the use of the lodestar cross-check "as a means of assessing whether the percentage-of-recovery

award is too high or too low." *In re Diet Drugs*, 582 F.3d at 544 (citing *Rite Aid*, 396 F.3d at 306-07).

The cross-check analysis is a two-step process. First, the lodestar is determined by multiplying the number of hours reasonably expended by the reasonable rates requested by the attorneys. *See Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000). Second, the court determines the multiplier required to match the lodestar to the percentage-of-the-fund request made by counsel, and determines whether the multiplier falls within the accepted range for such a case. Here, the lodestar cross-check confirms that the 33-1/3% request is eminently reasonable.

### 1.   Class Counsel's Lodestar Is Reasonable

As of May 6, 2011, Class Counsel and staff reported spending a total of 81,200.82 hours working on this case. *See* Exhibits 1-2. As explained in Plaintiff firms' affidavits and the Class Counsel Decl., the stated hours were incurred by, among other things, investigating the claims against Defendants, reviewing and analyzing the documents, preparing the Complaint and Consolidated Amended Complaint, conducting necessary legal research, briefing Defendants' motions to dismiss, motions for judgment on the pleadings, and motions for summary judgment, conducting extensive discovery, briefing and presenting plaintiffs' motion for class certification in a three-day evidentiary hearing, working with experts submitting Rule 26(a)(2) reports, beginning trial preparations, engaging in a mediation and extensive additional settlement negotiations, and preparing the necessary agreements and pleadings related to the Settlement.[6]

---

[6] "The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 306-307; *Prudential*, 148 F.3d at 341 (finding no abuse of discretion where district court "reli[ed] on time summaries, rather than detailed time records"). Of course, Class Counsel will make the detailed billing records available to the Court in camera upon request.

Given these activities, the complexity of the legal issues involved, and the intensity of Defendants' defense, the hours incurred are reasonable.  Class Counsel anticipate expending substantial additional hours on this litigation to bring it to a close, for which we will not seek additional compensation; thus, these hours are appropriately taken into account in performing the lodestar cross-check.

The hourly rates charged by Class Counsel are reasonable based on each person's position, experience level, and location.  These rates can be based on the prevailing rates in the communities in which Class Counsel practices or on hourly rates obtained by counsel in other complex or class action litigation.  *Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir. 1991) (finding that declarations submitted by counsel of the "prevailing market rate in the relevant community … [are] sufficient to establish the appropriate [billing] rate for lodestar purposes"); *Mogck v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1191 (S.D. Cal. 2003).  Taking into account the several factors discussed above, including the result achieved, the complexity and risk of the litigation, and the skill and experience of counsel, Class Counsel's rates are reasonable and appropriate in this case.

Thus, Class Counsel's reasonable hours and reasonable rates produced a lodestar of $31,839,355.33 as of May 6, 2011.

## 2.  The Negative Multiplier Requested Here Mitigates in Favor of the Requested Fee

The negative multiplier, at .36, produced by cross-checking the 33-1/3% requested award against the current reported lodestar of $31,839,355.33 is well *below* the accepted range in the Third Circuit.  *See, e.g., In re Diet Drugs*, 582 F.3d at 544 (finding that a multiplier, in a lodestar crosscheck, in the range of "2.6, 3.4, or somewhere in that neighborhood, it is not problematically high.  It is either below or near the average multiplier…."); *Cendant Prides*, 243

F.3d at 735-36, 742 ("strongly suggest[ing]" a multiplier of 3 as the ceiling for an award in a simple case where "no risks pertaining to liability or collection were pertinent"); *Prudential*, 148 F.3d at 341 ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (internal quotation and citation omitted).

A negative multiplier bespeaks strongly of the risk undertaken by counsel in prosecuting to the trial preparation stage of this complex litigation. The Settlement resolves this litigation before trial and any other steps in the proceedings that would have generated a substantially larger lodestar than presented at this point. "The lodestar multiplier … was less than one and thus reveals that Class Counsel's fee request constitutes only a fraction of the work that they billed…." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 284 (3d Cir. 2009).

## IV.   CLASS COUNSEL SHOULD BE REIMBURSED FOR THEIR EXPENSES

Class Counsel also request reimbursement for the reasonable and necessary expenses advanced to prosecute this litigation since its inception in January 2006. These expenses, totaling $2,229,775.60, are detailed in the Plaintiff firms' fee and expense declarations as well Ms. Fegan's declaration regarding the litigation fund. *See* Ex. 2; Declaration of Elizabeth A. Fegan Regarding Expenses Paid by Plaintiffs from the Baby Products Litigation Fund, attached hereto as Ex. 3. "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund." *In re Rent-Way Secs. Litig.*, 305 F. Supp. 2d 491, 519 (W.D. Pa. 2003); *In re Corel Corp. Inc. Secs. Litig.*, 293 F. Supp. 2d at 498 (citation omitted).

The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are the type typically billed by attorneys to paying clients in the marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (allowing recovery of "out-of-pocket expenses that would normally be charged to a fee

- 13 -

paying client"). The categories of expenses for which Class Counsel seek reimbursement here are the type of expenses routinely charged to hourly clients and, therefore, the full requested amount should be reimbursed.

## V.    INCENTIVE AWARDS ARE WARRANTED FOR NAMED PLAINTIFFS

Finally, Class Counsel request that the Court award $2,500.00 to each Named Plaintiff for the time they have expended in representing the Class members. District courts have "broad discretion to award payment to class representatives for their efforts to benefit the class." *Hall v. Best Buy Co.*, 2011 U.S. Dist. LEXIS 31220, at *53-54. "Factors courts use to evaluate the appropriateness of awards include the financial, reputational and personal risks to the plaintiff; the degree to which the Plaintiff was involved in discovery and other litigation responsibilities; the length of the litigation; and the degree to which the named plaintiff benefitted (or not) as a class member." *Id.*

Here, Named Plaintiffs have diligently fulfilled their obligations as Class Representatives. Throughout the litigation, Named Plaintiffs kept informed of the litigation and communicated with Class Counsel as necessary to assist with the effective prosecution of the case. Plaintiffs responded to discovery, and the McDonough Plaintiffs were deposed. After the mediation, each of the Named Plaintiffs considered the terms of the eventual Settlement. For these reasons, Incentive Awards of $2,500.00 for each Named Plaintiff are easily warranted.

Such awards are fair and in line with what other courts have awarded in similar cases. *See, e.g., Hall v. Best Buy Co.*, 2011 U.S. Dist. LEXIS 31220 (E.D. Pa. Mar. 24, 2011) (approving incentive award of $5,000.00 per named plaintiff); *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 476 (E.D. Pa. 2010) ("If the named plaintiff was deposed, the named plaintiff's incentive payment will be $5,000; if the named plaintiff was not deposed, the named plaintiff's incentive payment will be $2,500"); *In re Am. Investors Life Ins.*

*Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226, 245 (E.D. Pa. 2009) (incentive

award of between $5,000.00 and $10,000.00 where named plaintiffs prepared for and testified in

depositions that exposed their private financial affairs, participated in preparing responses to

interrogatories, and produced extensive documents); *Klingensmith v. Max & Erma's Rests., Inc.*,

2007 U.S. Dist. LEXIS 81029, at *20 n.13 (W.D. Pa. Oct. 23, 2007) (incentive award of

$2,500.00 "as a necessary incentive to aid in enforcement of legislation, and as compensation to

an individual willing to contribute her name and time to this purpose"). Thus, Class Counsel

respectfully request that the Court award Incentive Awards in the amount of $2,500.00 for each

Named Plaintiff for the valuable services they provided to this litigation as Class

Representatives.

## VI.    CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court:  (1) award

Class Counsel payment of attorneys' fees in the amount of 33-1/3% of the Settlement Amount,

plus interest; (2) order reimbursement of litigation expenses incurred by Class Counsel in the

amount of $2,229,775.60; and (3) award Incentive Awards in the amount of $2,500.00 for each

Named Plaintiff.


Dated: May 24, 2011                        Respectfully submitted,

                                           s/ Eugene A. Spector
                                           Eugene A. Spector
                                           William G. Caldes
                                           Jeffrey L. Spector
                                           SPECTOR ROSEMAN KODROFF
                                               & WILLIS, P.C.
                                           1818 Market Street, Suite 2500
                                           Philadelphia, PA 19103
                                           Tel.: (215) 496-0300
                                           Fax: (215) 496-6611

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
1144 West Lake Street, Suite 400
Oak Park, IL 60301
Tel.: (708) 628-4949
Fax: (708) 628-4950

Steve W. Berman
Anthony D. Shapiro
George W. Sampson
Ivy Arai Tabbara
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel.: (206) 623-7292
Fax: (206) 623-0594

Mary Jane Fait
Theodore B. Bell
WOLF HALDENSTEIN ADLER FREEMAN
& HERZ LLC
55 West Monroe Street, Suite 1111
Chicago, IL 60603
Tel.: (312) 984-0000
Fax: (312) 984-0001

Fred T. Isquith
Thomas H. Burt
WOLF HALDENSTEIN ADLER FREEMAN
& HERZ LLC
270 Madison Avenue
New York, NY 10016
Tel.: (212) 545-4600
Fax: (212) 545-4653

**CLASS COUNSEL FOR THE
SETTLEMENT SUBCLASSES**