# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL M. MCDONOUGH, *et. al.,*<br><br>                                       **Plaintiffs**<br>v.<br><br>TOYS "R" US, INC. d/b/a Babies "R" Us,<br>*et. al.,*<br>                                       **Defendants** | Case No:  2:06-cv-0242-AB |
| ARIEL ELLIOTT, *et. al.,*<br><br>                                       **Plaintiffs**<br>v.<br><br>TOYS "R" US, INC. d/b/a Babies "R" Us,<br>*et. al.,*<br>                                       **Defendants** | Case No:  2:09-cv-06151-AB |

### ALLISON LEDERER'S STATEMENT OF OBJECTION,
### AND INCORPORATED MEMORANDUM IN SUPPORT

**NOW COMES** Allison Lederer (hereinafter, "Objector" or "Mrs. Lederer"), by and through the undersigned counsel, pursuant to the Court's Order Preliminarily Approving Settlement and Providing for Notice dated January 31, 2011, and Rules 23(d) of the Federal Rules of Civil Procedure, and submits this Statement of Objection and Incorporated Memorandum in Support.

Mrs. Lederer is a citizen and resident of Knox County, Tennessee.  Her mailing address is 429 North Peters Road, Suite 102, Knoxville, TN  37923; her phone number is (865) 690-8180.

Mrs. Lederer purchased products encompassed within the settlement, specifically a MacLaren stroller, a Medela "Pump in Style" breast pump, and two Britax car seats. Pursuant to the instructions in the Notice, a completed Claim Form is attached hereto as Exhibit 1.[1]

As set forth in more detail below, Mrs. Lederer objects to the settlement as well as class counsel's request for an attorney's fee in the amount of Eleven Million Seven Hundred Forty-Six Thousand Six Hundred Sixty-Seven Dollars ($11,746,667.00) and "reimbursement" of litigation expenses in the amount of Two Million Two Hundred Twenty-Nine Thousand Seven Hundred Seventy-Five and 60/100 Dollars ($2,229,775.60).

## I.  INTRODUCTION

Plaintiffs have brought suit against multiple defendants claiming that the prices of various baby products sold by Defendant, Babies 'R' Us ("BRU") were artificially inflated due to unlawful conspiracies between BRU and the other defendants. Plaintiffs alleged that Defendants' conduct violated federal antitrust laws.

On July 15, 2009, this Court granted the McDonough Plaintiffs' motion for class certification, and created 5 distinct subclasses for purchasers who bought the different products manufactured and sold by the defendants from BRU.[2] In the same Order, the Court appointed Hagens Berman Sobol Shapiro LLP, Spector Roseman Kodroff & Willis PC, and Wolf Haldenstein Adler Freeman & Herz LLC to serve as class counsel.

The parties have reached a proposed settlement, which this Court has preliminarily

---

[1]      Mrs. Lederer has not located proof of purchase documentation at this time, but reserves the right to supplement her Claim Form on or before the deadline for submitting claims.
[2]      Consistent with the creation of subclasses, upon motion by Defendants, on March 12, 2010 the Court subsequently ordered separate trials.

approved.  Under the proposed settlement, Defendants were to have made a cash payment of

Thirty-Five Million Five Hundred Thousand Dollars ($35,500,000.00); however, Regal Lager

did not make its payment so the settlement has been reduced to Thirty-Five Million Two

Hundred Forty Thousand Dollars ($35,240,000.00), although a motion to enforce the Regal

Lager settlement is currently pending.  According, it appears that the settlement with Regal

Lager was for a mere $260,000.  Class members have no way of knowing the settlement amount

paid by the other defendants because such amounts remain under seal.

## II.   STANDARD OF REVIEW

### A.   Standard for Approving Class Action Settlements in General

A district court may approve a settlement only if it is "fair, reasonable, and adequate."

Fed. R. Civ. Proc. 23(e)(1)(C).  The Supreme Court has emphasized that the predominant

concern for the district court when reviewing a proposed class action settlement should be to

protect absent class members.  *Amchem Prods., Inc. v. Windsor*, 117 S. Ct. 2231 (1997).

Accordingly, the proposed settlement should be carefully scrutinized and undergo the rigors of

certification analysis, particularly regarding adequacy of representation.  Id.

Rule 23(e) provides no specific guidance on how courts assess the fairness of class action

settlements.  The case law, however, has provided several factors that should be considered,

including: (a) the nature of the claims and possible defenses; (b) whether the proposed settlement

was fairly and honestly negotiated; (c) whether serious questions of law and fact exist, placing

the outcome of the litigation in doubt; (d) whether the value of an immediate recovery outweighs

the mere possibility of future relief after protracted and expensive litigation; (e) whether the

parties believe that the settlement is fair and reasonable; (f) the defendant's financial viability;

(g) the number and objective merit of any objections received from class members; (h) the risks in establishing damages; (i) the complexity, length, and expense of continued litigation; and (j) the stage of the proceedings. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). See also, Klonoff, Robert H., *Class Actions and Other Multi-Party Litigation*, p. 192-3 (West 1999).

### III.   STATEMENT OF SPECIFIC OBJECTIONS

Louis Brendeis famously stated, "*Sunlight is said to be the best of disinfectants; electric light the most efficient policeman.*" Brendeis, "Other People's Money", Harpers Weekly, December 20, 1913. Respectfully, this Court should require that Class Counsel shed additional light on the proposed settlements and Class Counsel's request for fees and expenses.

**A.   Mrs. Lederer objects to the proposed settlement because the amounts paid by the various defendants have not been disclosed. In addition, she objects to any settlement with any defendant for less than "cost of defense."**

Under Rule 23(c)(5), subclasses "are *each* treated as a class." With due respect to Class Counsel and the Court, because information regarding the settlement amounts paid by each defendant have been hidden from class members, the proposed settlement fails to treat the subclasses separately as required.

Unless class members are advised as to the settlement amounts being paid by each defendant, they are unable to make an informed decision regarding the settlements. See, *Reynolds v. National Football League*, 584 F.2d 280, 285 (8th Cir.1978) (notice under Rule 23 must be structured "in a manner that enables class members rationally to decide whether they should intervene in the settlement proceedings or otherwise make their views known.") Under *Reynolds*, the notice of settlement must be sufficiently detailed to permit class members to determine the potential costs and benefits involved, or at least whether additional investigation

into the matter would be an efficient use of their time.

It appears Regal Lager has settled for $260,000, which is certainly less than its expected cost of defense through trial – especially considering this Court's Order for separate trials. Given that each defendant risked treble damages, payment of plaintiffs' attorneys' fees, and joint and several liability and this Court has certified a class under the heightened standard in the Third Circuit pursuant to the *Hydrogen Peroxide* decision, any settlement should be for significantly more than the cost of defense.

**B.    Mrs. Lederer objects to the allocation and distribution of the proposed settlement because the amounts paid by the various defendants have not been disclosed.**

The requirement to treat subclasses as separate classes and Class Counsel's failure to provide information regarding the amounts paid by each defendant are also relevant to the issue of allocation and distribution of the net proceeds.

Mrs. Lederer is a member of two subclasses – the MacLaren and Britax subclasses.   As a member of the Britax class, she would share in 28% of the net settlement remaining after fees and expenses; and she would share in 7% of the net settlement as a member of the MacLaren class.

In evaluating the settlements, she needs to know how much Britax and MacLaren are contributing to the settlement and whether the amounts paid by them correlate to 28% and 7% of the total amounts paid by the manufacturing defendants.  In other words, she needs to know whether funds received from Britax and MacLaren are being used to "make up" for lesser settlements from other manufacturers.  If so, this would be improper.

Finally, the allocation of the settlement appears to have been the result of substantial

negotiation, rather than simply relying upon Dr. Martin Asher. In his affidavit, Dkt. 738-2, page

52 of 64, Attorney Michael Tarringer states that he acted as "Allocation Counsel on behalf of the

McDonough Class case" during settlement negotiations.

**C.     Class Counsel's Request for Attorney Fees is Excessive.**

In its motion for fees and expenses, Class Counsel incorrectly implies that the 10

Gunter/Prudential factors are exclusive. However, the Third Circuit has made clear that District

Courts should consider any and all relevant factors.

> In reviewing an attorneys' fees award in a class action
> settlement, a district court should consider the *Gunter* factors,
> the *Prudential* factors, and **any other factors that are useful
> and relevant with respect to the particular facts of the
> case**. The fee award reasonableness factors "need not be
> applied in a formulaic way" because each case is different,
> "and in certain cases, one factor may outweigh the rest." *Rite
> Aid*, 396 F.3d at 301 (quoting *Gunter*, 223 F.3d at 195 n.1). In
> cases involving extremely large settlement awards, district
> courts may give some of these factors less weight in
> evaluating a fee award. *See In re Cendant Corp. Litig.*, 264
> F.3d 201, 283 (3d Cir. 2001); *Prudential*, 148 F.3d at 339.
> What is important is that in all cases, the district court
> "engage in robust assessments of the fee award
> reasonableness factors," *Rite Aid*, 396 F.3d at 302,
> recognizing "an especially acute need for close judicial
> scrutiny of fee arrangements in class action settlements."
> *Cendant PRIDES*, 243 F.3d at 730 (internal quotations
> omitted).

*In Re AT&T Corp. Sec. Litig.*, 455. F. 3d 160, 166 (3d. Cir. 2006) (emphasis added).

In this case, without question one such relevant factor is the unknown fee earned by Class

Counsel in a related case brought against the same defendants for identical issues, Babyage.com,

Inc., et. al. v. Toys "R" Us, Inc., et. al, Eastern District of Pennsylvania, No. 2005-cv-6792-AB.

Certainly, a large majority of work performed by Class Counsel was equally relevant to both

cases, such that the Court runs the risk of allowing Class Counsel double-compensation for the same work.  In fact, on March 3, 2006 this Court consolidated discovery with the Babyage case. Accordingly, the Court should require Class Counsel to disclose the number of hours allocated to their representation of Babyage.com, Inc. and The Baby Club of America, Inc. as well as the fees in that case.[3]

In addition to considering the fees earned by Class Counsel in the Babyage.com case, this Court should look to the recent study by Professors Eisenberg and Miller and instead award fees in an amount consistent with their study, Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees & Expenses in Class Action Litigation: 1993-2008*, 7 J. of Empirical Legal Stud. 248 (2010) ("Eisenberg & Miller 2010").  Mrs. Lederer suggests that the Court consider a *maximum*[4] award of 22.3% or 24.9% of the overall settlement representing the mean and median percentage fee awards respectively in class action settlements between $22.3 and $38.3 Million.  Eisenberg and Miller 2010 (Tables 17 and 7).

To the extent, if any, the Court considers the affidavits of Class Counsel and the other plaintiffs' lawyers, it should do so skeptically.  Not only is there a substantial risk of overlapping time entries between the McDonough and Elliott consumer class actions and the Babyage.com competitor case, other problematic issues are present as well.  For example, many lawyers and paralegals show increased hourly rates over the course of the litigation, while others do not.  For those whose rates have not increased, it may be possible those lawyers/paralegals are charging 2011 rates for work performed in 2006.  Moreover, plaintiffs' lawyers specializing in class actions, such as Class Counsel and the other attorneys seeking fees in this case, do not have

---

[3]     The Court should also request similar information for expenses allocated to the *Babyage*.com case.
[4]     Of course, depending on the fee earned in the *Babyage.com* case, the Court may determine a lower fee is reasonable.

"standard hourly rates"; rather, their rates are generally established by court order.  Counsel

should submit orders from other cases verifying their rates.

**D.      Class Counsel's Request for Expenses is Excessive**

Mrs. Lederer objects to the following expenses, which in the absence of additional proof

from Class Counsel, the Court should assume these are simply part of their overhead:

1.      This Court should disallow any expenses for Lexis, Westlaw and/or Online

Library Research (totaling approximately $272,000).

2.      Wolf Haldenstein's request in the amount of $2,174 for "Secretarial Overtime"

should be stricken.

3.      Hagen Berman's request in the amount of $4,281 for "Public Relations" should be

disallowed.

In addition, the Court should disallow any request for reimbursement of ***undisclosed***

experts, consultants or investigators (specifically Spector Roseman's request for $276,080.00

and Wolf Haldenstein's request for $8,375.00).

In sum, Mrs. Lederer requests that the expenses be reduced by $562,830, such that the

expenses should not exceed $1,666,946.60.

**E.      Class Members were not given proper notice under Rule 23(h).**

On August 23, 2010, the Ninth Circuit Court of Appeals issued its opinion in *In re:*

*Mercury Interactive Corp. Securities Litigation,* 618 F. 3d 988 (9th Cir. 2010) holding that a

district court errs as a matter of law (and thus abuses its discretion) when it sets the objection

deadline for class members <u>before</u> the deadline for class counsel to file its motion for attorneys'

fees and costs.  In so holding, the court determined that such a schedule violated Rule 23(h) and

was tantamount to a denial of due process because it deprived class members of a full and fair

opportunity to contest class counsel's fee motion.

Consistent with Rule 23(f) and the Ninth Circuit's decision in *Mercury,* the Notice in this

case promised class members that Class Counsel's motion for fees and expenses would be

available on the internet.  Specifically, the Notice stated,

> **2. How will the lawyers be paid?**
> Since they filed this case, Class Counsel has not received any payment for their
> services in prosecuting the lawsuit, nor have they been reimbursed for any out-of-
> pocket expenses. If the Court approves the proposed settlement, Class Counsel
> will ask the Court to award them fees of up to 33 1/3 % of the settlement, plus
> reimbursement of expenses that they incurred in litigation and administering the
> settlement fund. **After this motion is filed with the Court, a copy of this motion
> will be available at www.babyproductsantitrustsettlement.com.** Defendants
> have agreed not to oppose such an award of fees and expenses.
>
> Any attorneys' fees and reimbursement of litigation expenses will be awarded only
> as approved by the Court in amounts determined to be fair and reasonable. If you
> wish to object to the petition for attorneys' fees and reimbursement of litigation
> expenses, you may do so, but only by following the instructions in Part VI.
> (emphasis added)

However, contrary to the assurances made to the class members and this Court, Class

Counsel failed to make the motion for fees and expenses available to Class Members.[5]

Accordingly, under Rule 23(f) proper notice of the motion for fees and expenses was not given.

### D.  REQUEST FOR PERMISSION TO SPEAK AT FAIRNESS HEARING

Undersigned counsel requests permission to speak at the Fairness Hearing, and intends to

file a motion to appear telephonically.

### E.  CONCLUSION

WHEREFORE, Objector Allison Lederer requests that this Court reject the proposed

settlement, and instead review the individual settlements with each defendant independently.

In addition, and alternatively, Mr. Lederer requests that this Court award Class Counsel

---

[5] Because the motion was not available, undersigned counsel obtained the motion (and exhibits) from
PACER – at a cost which may exceed Mrs. Lederer's recovery under the proposed settlement.

(1) attorney's fees in an amount not to exceed 24.9% of the overall settlement and (2) reimbursement of expenses in an amount not to exceed $1,666,946.60.

Finally, due to Class Counsel's failure to make its motion for attorneys' fees and expenses available to class members, Mrs. Lederer requests that the time for objections to the motion be extended and that Class Counsel be ordered to make a copy of its motion for attorneys' fees and expenses available at www.babyproductsantitrustsettlement.com and that Class Counsel pay for additional publication notice to class members advising them that the objection period has been extended due to its error.

Respectfully submitted, this 3rd day of June, 2011.

James H. Price
Lacy, Price & Wagner, P.C.
249 North Peters Road
Knoxville, TN  37923-4917
(865) 690 5028
jprice@lpwpc.com

*Counsel for Allison Lederer*

## CERTIFICATE OF SERVICE

I certify that on this 3rd day of June, a copy of the foregoing was sent via US Mail, postage paid, to the following:

> Eugene A. Spector
> SPECTOR, ROSEMAN, KODROFF & WILLIS, P.C.
> 1818 Market Street, Suite 2500
> Philadelphia, PA  19103
>
> Mark L. Weyman
> REED SMITH LLP
> 599 Lexington Avenue
> New York, NY  10022

In addition, parties may access this filing through the Court's electronic filing system.

James H. Price
Lacy, Price & Wagner, P.C.
249 North Peters Road
Knoxville, TN  37923-4917
(865) 690 5028
jprice@lpwpc.com

<table>
<tr><td>
Must be Postmarked
No Later Than
August 1, 2011
</td>
<td>
**BABY PRODUCTS ANTITRUST LITIGATION SETTLEMENT**
c/o The Garden City Group, Inc.
PO Box 9679
Dublin, Ohio 43017-4979
1-888-292-8492
Fax:1-888-476-7153
Email: questions@babyproductsantitrustsettlement.com
</td>
<td>BBA</td></tr>
</table>

Claim Number:                    Control Number:

EXHIBIT 1 TO OBJECTION

OF   ALLISON LEDERER

## CLAIM FORM AND RELEASE

> **Your Signed Claim Must be Postmarked, Faxed or Sent Electronically In PDF Format To The Claims Administrator No Later than August 1, 2011**

**1.     WHAT THIS CLAIM FORM CONCERNS**

This claim form concerns the settlement of two consolidated lawsuits that were filed by two groups of consumers claiming that Toys "R" Us and Babies "R" Us had conspired with certain baby product manufacturers to restrict competition in violation of federal antitrust law.   Plaintiffs assert that this conduct caused you to pay higher prices at Toys "R" Us and Babies "R" Us for: BabyBjörn baby carriers; Britax car seats; Maclaren strollers; Medela Pump In Style breast pumps; Peg Perego car seats, strollers and high chairs; and all Kids Line products, such as crib sets, blankets, valances, sheets, wall decorations, baskets, pillows, pads, hampers, porta crib sets, lamps, shelves, stackers, rugs, or mobiles.   Plaintiffs' claims are disputed and Defendants deny entering into any conspiracies or engaging in any other unlawful conduct.   The parties have agreed to settle the litigation in lieu of trial.

**Please read the Full Notice (available at www.babyproductsantitrustsettlement.com) carefully before filling out this Form.**

**2.     ELIGIBLE PAYMENTS**

You may be eligible to recover a payment from the settlement for each of the following products you purchased at Toys "R" Us or Babies "R" Us during the time periods indicated:
·     **BabyBjörn baby carriers** between February 2, 2000 and April 30, 2005;
·     **Britax car seats** between January 1, 1999 and January 31, 2011;
·     **Maclaren strollers** between October 1, 1999 and January 31, 2011;
·     **Medela Pump In Style breast pumps** between July 1, 1999 and January 31, 2011;
·     **Peg Perego car seats, strollers or high chairs** between July 1, 1999 and January 31, 2011; and/or
·     **All Kids Line products** between January 1, 1999 and December 31, 2006.

You may be eligible to recover a payment from the settlement for all purchases for which you provide a proper claim form.   This is described in greater detail in the Full Notice available at www.babyproductsantitrustsettlement.com.

**3.     HOW YOU CAN QUALIFY FOR AND RECEIVE PAYMENT**

In order to be eligible to receive any compensation from the settlement, you must:
·     fill out this Claim Form in its entirety;
·     sign the verification statement at the end of the Claim Form;
·     return this completed Claim Form with your supporting documentation, if any, no later than August 1, 2011.
All information submitted will be kept confidential.

2



## PART I - CLAIMANT IDENTIFICATION

**Claimant Name(s)** (as you would like the name(s) to appear on the check, if eligible for payment):

*Allison Lederer*

**Name of the Person you would like the Claims Administrator to Contact Regarding This Claim** (if different from the Claimant Name(s) listed above): *James H. Price, Esq.*

**Claimant or Representative Contact Information:**
The Claims Administrator will use this information for all communications relevant to this Claim (including the check, if eligible for payment). If this information changes, you <u>MUST</u> notify the Claims Administrator in writing.

**Street Address:**

*429 N. Peters Road*

*Suite 101*

**City:**

*Knoxville*

**State and Zip Code:**

*Tennessee  37923*

**Country (Other than U.S.):**

**Daytime Telephone Number:** *(865) 246-0800*    **Evening Telephone Number:** ( )   -

**Email Address:** *jprice @ lpwpc.com*

*(Email address is not required, but if you provide it you authorize the Claims Administrator to use it in providing you with information relevant to this claim.)*

## PART II - BABY PRODUCT PURCHASE INFORMATION

You may be entitled to a settlement payment for each of the baby products listed above you purchased at Toys "R" Us or Babies "R" Us during the time periods indicated. To recover the maximum amount you can from the Settlement Fund for your purchases, attach documentation showing your purchase(s) of the products listed above. Acceptable proof may include receipts, cancelled checks, credit card statements, records from Toys "R" Us or Babies "R" Us, or other records that show you purchased the baby product and when the purchase was made. In order to allow the Claims Administrator to verify your documentation, you must complete the following chart.



3

## PART II - BABY PRODUCT PURCHASE INFORMATION (CONTINUED)

| Date of Purchase | Place of Purchase (Toys "R" Us or Babies "R" Us) | Product Purchased | Proof of Purchase Attached |
|---|---|---|---|
| 2 1 - 1 2009 Approximate | On-Line Y ☐  N ☒ <br> Store 8009 Kingston Pike <br> City Knoxville <br> State TN | Brand MacLaren (e.g. name of manufacturer) <br> Type Stroller (e.g. stroller) <br> Model Quest Sport <br> Price $150.00. Approx | Y ☐ <br> N ☒ |
| 11 1 - 1 2009 Approximate | On-Line Y ☐  N ☒ <br> Store 8009 Kingston Pike <br> City Knoxville <br> State TN | Brand Britax (e.g. name of manufacturer) <br> Type Car Seat (e.g. stroller) <br> Model Boulevard <br> Price $330.00 Approx | Y ☐ <br> N ☒ |
| 11 1 - 1 2010 Approximate | On-Line Y ☐  N ☒ <br> Store 8009 Kingston Pike <br> City Knoxville <br> State TN | Brand Britax (e.g. name of manufacturer) <br> Type Car Seat (e.g. stroller) <br> Model Advocate <br> Price $350.00 -Approx | Y ☐ <br> N ☒ |
| 5 1 - 1 2009 | On-Line Y ☐  N ☒ <br> Store 8009 Kingston Pike <br> City Knoxville <br> State TN | Brand Medela (e.g. name of manufacturer) <br> Type Breast Pump (e.g. stroller) <br> Model Pump in Style <br> Price $379 | Y ☐ <br> N ☒ |
| / / | On-Line Y ☐  N ☐ <br> Store <br> City <br> State | Brand (e.g. name of manufacturer) <br> Type (e.g. stroller) <br> Model <br> Price | Y ☐ <br> N ☐ |

**IF YOU NEED ADDITIONAL SPACE TO LIST YOUR PURCHASES YOU MUST PHOTOCOPY THIS PAGE AND CHECK THIS BOX ☐ IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL NOT BE REVIEWED**

4



---

### PART III - VERIFICATION

---

I declare under penalty of perjury of the laws of the United States of America that all the information provided in this Claim Form is, to the best of my knowledge, accurate and correct.

Signature _____        Date 6/3/11 _____

**Please keep a copy of your completed Claim Form and copies of any attached documentation for your records.**

Please mail, fax or email your completed Claim Form, with your proofs of purchase, to:

**BABY PRODUCTS ANTITRUST LITIGATION SETTLEMENT**
c/o The Garden City Group, Inc.
PO Box 9679
Dublin, Ohio 43017-4979

Fax:1-888-476-7153

Email: questions@babyproductsantitrustsettlement.com

**Your Signed Claim Must be Postmarked, Faxed or Sent Electronically In PDF Format To The Claims Administrator So That It is Postmarked or Received No Later than August 1, 2011.**