IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROL M. MCDONOUGH, *et al.*, | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 2:06-cv-0242-AB |
| TOYS "R" US, INC., d/b/a/ Babies "R" Us, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |
| ARIEL ELLLIOT, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 2:09-cv-06151-AB |
| TOYS "R" US, INC., d/b/a/ Babies "R" Us, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

Clyde Farrel Padgett ("Padgett"), proceeding pro se as a member of the class in the above-referenced suit against Toys "R" Us, *et al.* ("TRU" or "Defendants"), respectfully files this Objection to the Class Action Settlement. In support of this objection, Padgett shows the Court as follows:

Padgett is a member of the class through his purchase of a Bitax car seat and a Maclaren stroller. Padgett timely submitted his claim form to the third-party administrator in this case. (Attached as Exhibit 1).

The settlement agreement should be rejected because:

### A. The attorneys' fees award impermissibly and significantly diminish the settlement funds available to class members.

Class counsel seeks to recover fees and costs directly from the settlement funds. The attorneys' fees and costs in this case should have been negotiated separately from the settlement fund. However, under the agreement, class counsel's recovery of fees from the settlement fund impermissibly and significantly diminishes recovery from the settlement class. This gives the impression of a reverse auction in which class counsel are selling out the class members in favor of large attorneys' fees, especially in light of the relatively strong merits of the case. Once a settlement was reached between the parties, class counsel should then have negotiated their fee award with the Defendants. This was not done. Additionally, a request for 33 1/3 percent of the settlement fund is excessive and unwarranted in this case in light of the benefit received by class members. Indeed, under the settlement agreement, Defendants are not barred in any manner from continuing their anti-competitive misconduct. They may continue business as usual.

Further troubling is the omission of any specific amount for litigation expenses that class counsel seek to recover from the settlement fund. This information should be provided to class members prior to the objection deadline so the purported expenses and costs may be properly considered and analyzed by class members. Without this information, class members have absolutely no indication of the additional deduction from the settlement funds that class counsel may seek. This is improper.

The settlement agreement also provides that class counsel's fee request will be considered separately from the Court's consideration for the fairness, reasonableness, and adequacy of the settlement. But this is inappropriate since class counsel's fees directly impact the amount of recovery to class members. This is another reason class counsel should have

negotiated their fees separately from the settlement amount. Since the requested fees are inextricably tied to the funds available to class members, the two cannot be considered separately. Instead, the amount of attorneys' fees is directly related to the appropriateness of the settlement and they must be considered together.

Further, the Defendants should be charged with bearing the costs of providing notice to the class members and administering the settlement. It appears these costs may be as high as $875,000.00. These costs are deducted from the settlement funds. Because Defendants' misconduct caused this lawsuit, they should bear those costs separately and apart from the settlement funds.

The amount of the settlement payments made by each defendant should not be sealed. Class members are entitled to this information in determining whether to join the class. Additionally, the defendants should not be able to release all liability and responsibility with respect to disbursements from the settlement fund. They should take responsibility to ensure it is fairly and adequately administered and the funds are properly disbursed.

### B.     There is no reason to pay 15 class representatives in this case.

The settlement seeks to award 15 class representatives $2,500.00 each, which will be deducted directly from the settlement fund. There is no rationale or explanation of how this amount was derived. What exactly did these 15 class representatives do in this case to deserve an award so far in excess of the rest of the class? Why were 15 different class representatives necessary in this case? The proposed incentive award has not been sufficiently explained or detailed to render it appropriate, especially since such payments are deducted directly from the settlement fund. These incentive awards should be rejected, or at least significantly reduced.

### C. The evidence of anti-trust violations is significant and therefore the case should not be settled on the cheap, especially without anything preventing Defendants from further participation in anti-competitive misconduct.

The two complaints in the case set out significant evidence of wrongdoing by the Defendants, including the Defendants' own memorandums and emails supporting the allegations. With this evidence, there is no reason to abandon class counsel's initial request for treble damages. It appears the case got better as time went on; yet, class counsel has settled the claims for an amount unrelated at all to the amounts sought in the complaint. Class members receive up to 20% of the original purchase price or $5.00, whichever is greater. There is no reason for such a small settlement. If for nothing else, principles of deterrence warrant a larger settlement from the Defendants.

The settlement does not preclude in any manner the Defendants from continuing to engage in anti-competitive misconduct. In other words, nothing in the settlement agreement prevents the Defendants from acting in the same manner they did before the lawsuit was filed. While class counsel originally sought to enjoin the misconduct, that request has apparently been abandoned. It is patently unfair to require class members to waive all known and unknown claims arising from Defendants' misconduct, while at the same time not requiring Defendants to correct their misconduct in the future.

Further, there is no purpose in the "Statement of Principles" in the settlement agreement. That provision effectively ratifies the anti-competitive misconduct undertaken by the Defendants in this case. It is unnecessary and increases the appearance of impropriety in the settlement.

### D. Any excess settlement funds should be distributed to class members.

The settlement agreement provides that any excess funds will be distributed to non-profit organizations selected by two plaintiffs and two defendants. These funds should be returned to

the class members who were financially harmed by the Defendants' anti-competitive misconduct. The culpable Defendants should not be enabled to select to whom the excess funds should go. There is no need for a *cy pres* distribution in this case since it is not difficult or impossible to identify the individuals to whom the funds should be assigned or distributed. As currently proposed, this distribution is unconscionable on its face.

### E. The proposed settlement agreement lacks any form of deterrence for Defendants' anti-competitive misconduct.

When this case was filed, class counsel sought treble damages against Defendants for their shocking misconduct. All of the sudden at settlement, these claims have disappeared. In fact, Defendants admit absolutely no liability in the agreement and, in fact, they claim that the suit has no merit. This is just the type of lack of accountability and corporate unconsciousness that led to Defendants' cavalier attitude that it could price gouge consumers and form anti-competitive agreements to do so. This settlement serves to reaffirm Defendants' attitude and encourage further corporate misconduct. Defendants have obtained a very favorable settlement, negated millions of possible lawsuits though this class action, and face no additional damages. There are absolutely no damages assessed to deter Defendants from future misconduct and, indeed, the proposed settlement agreement permits Defendants' misconduct to continue while barring future claims based on that same misconduct. As such, the settlement agreement should be rejected.

By this filing, Padgett gives notice that he does not intend to appear at the fairness hearing in this matter.

**WHEREFORE**, class member Clyde Farrel Padgett prays:

1) That the agreement be rejected in its entirety;

2) Alternatively that the offending provisions be stricken from the agreement; and

3) That the Court grant such other and further relief as it deems just and proper.

Dated:  June 1, 2010

BY: _____
CLYDE FARREL PADGETT, Pro Se
257 Canyon Creek Rd.
Lufkin, Texas 75904
(936) 676-8296

**SERVICE**

This is to certify that this objection to class action settlement was sent to the following counsel of record by certified mail:

Mark Weyman
Reed Smith
599 Lexington
New York, N.Y. 10022

Eugene Spector
Spector, Roseman, Kodroff & Willis
1818 Market Street, Ste. 2500
Philadelphia, Pa. 19103

Clyde Farrel Padgett

**BABY PRODUCTS ANTITRUST LITIGATION SETTLEMENT**
c/o The Garden City Group, Inc.
PO Box 9679
Dublin, Ohio 43017-4979
1-888-292-8492
Fax:1-888-476-7153
Email: questions@babyproductsantitrustsettlement.com

BBA

| Claim Number: | 0010004486 |
| --- | --- |

| Control Number: | 4733547464 |
| --- | --- |

CLYDE PADGETT

257 CANYON CREEK RD

TX

LUFKIN, TX, 75904

UNITED STATES OF AMERICA

## ONLINE CLAIM CONFIRMATION

THIS IS YOUR PERSONAL ONLINE CLAIM CONFIRMATION. YOU SHOULD PRINT THIS PAGE AND KEEP A COPY OF IT FOR FUTURE REFERENCE. IF YOU DID NOT UPLOAD YOUR SUPPORTING DOCUMENTATION, YOU MUST MAIL A COPY OF THIS PAGE WITH ALL OF YOUR DOCUMENTATION TO THE P.O. BOX ABOVE.

| | | | |
| --- | --- | --- | --- |
| Jun 14 2010 | **On-Line:** N<br>BABIES R US<br>HOUSTON<br>TX | BRITAX<br>CAR SEAT<br>100.00 | N |
| Apr 9 2010 | **On-Line:** N<br>BABIES R US<br>HOUSTON<br>TX | MACLAREN<br>STROLLER<br>100.00 | N |

If you are submitting supporting documentation by mail, please do not submit original documents. Send only photocopies on 8 ½" x 11" white paper.

