**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CAROL M. MCDONOUGH, *et al.*,<br><br>                                          *Plaintiffs*,<br><br>                    v.<br><br>TOYS "R" US, INC., d/b/a BABIES "R" US, *et al.*,<br><br>                                          *Defendants*. | No. 2:06-cv-00242-AB |
| ARIEL ELLIOTT, *et al.*,<br><br>                                          *Plaintiffs*,<br><br>                    v.<br><br>TOYS "R" US, INC., d/b/a BABIES "R" US, *et al.*,<br><br>                                          *Defendants*. | No. 2:09-cv-06151-AB |

## OBJECTION OF KEVIN YOUNG AND NOTICE OF INTENT TO APPEAR

Representing Kevin Young, *Objector*:

Daniel Greenberg (Arkansas Bar No. 2007-193)
        *Pro hac vice* application pending
CENTER FOR CLASS ACTION FAIRNESS LLC
GREENBERG LEGAL SERVICES
55 Fontenay Circle
Little Rock, AR  72223
Tel. (501) 588-4245
dngrnbrg@gmail.com

Christopher M. Arfaa (Pa. Bar No. 57047)
        Appearing as local counsel
LAW OFFICES OF CHRISTOPHER M. ARFAA, P.C.
150 N. Radnor Chester Rd., Suite F-200
Radnor, PA  19087
Tel. (610) 977-2001
Fax (610) 977-0043
carfaa@arfaalaw.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ......................................................................................................... 1

I.    The Objector Is a Member of the Class. ............................................................ 2

II.    Under Rule 23, Preventing an Unfair Settlement Is This Court's Duty........................... 2

III.    The Attorneys' Fees Are Unreasonable Under Rule 23................................... 4

    A.    Class Counsel Should Not Collect a Commission on Expenses of Notice or Administration. ................................................................................................. 4

    B.    Class Counsel's Supersized Compensation Percentage Is Unreasonable. ................... 8

IV.    The Proposed Allocation Scheme Magnifies the Inherent Defects of the Settlement's Cy Pres Component ........................................................................................................... 14

    A.    The Allocation Plan Is Likely Both To Unnecessarily Decrease the Size of Direct Compensation to Class Members and Unnecessarily Increase the Size of a Second-Best *Cy Pres* Remedy. ................................................................................................... 15

    B.    The Court Should Reject This Settlement's Creation of Contingent *Cy Pres* Beneficiaries, because the Failure to Identify Those *Cy Pres* Beneficiaries Gives Class Members No Opportunity to Object. ................................................................. 18

    C.    In Any Event, the *Cy Pres* Relief Should Not Be Calculated as a Class Benefit When Calculating Attorneys' Fees. ............................................................................. 20

V.    Administration of This Settlement Contains Multiple Notice Deficiencies. ................ 20

VI.     Class Counsel Breached Its Fiduciary Duty to the Class by Negotiating A 'Quick-Pay' Clause for Itself Without Obtaining Similar Protection for the Class...................................... 21

VII.    The "Clear Sailing" Provision Raises Rule 23(a)(4) Concerns..................................... 22

VIII.   The Court Should Discount Attempts By The Settling Parties To Infer Class Approval From A Low Number Of Objections. ...................................................................... 24

IX.    The Objection Furthers the Public Interest, Not Merely the Interest of the Objector.... 27

CONCLUSION..................................................................................................................... 28

# TABLE OF AUTHORITIES

## CASES

*Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*,
 52 F.R.D. 373 (D. Kan. 1971) ................................................................. 26

*Amchem Prods. v. Windsor*,
 521 U.S. 591 (1997) .........................................................…..…………….. 19

*Besinga v. United States*,
 923 F.2d 133 (9th Cir. 1991) ...................................................................... 5

*Camden I Condominium Ass'n v. Dunkle*,
 946 F.2d 768 (11th Cir.1991) .................................................................. 10

*Coppolino v. Total Call Intern., Inc.*,
 588 F. Supp. 2d 594 (D. N.J. 2008) .........................................……..…… 5

*Crawford v. Equifax Payment Services, Inc.*,
 201 F.3d 877 (7th Cir. 2000) ................................................................…. 20

*Create-A-Card Inc., v. Intuit, Inc.*,
 No. C 07-06452 WHA, 2009 WL 3073920 (N.D. Cal. Sept. 22, 2009) …………….…... 8

*Dewey v. Volkswagen of Am.*,
 728 F. Supp. 2d 546 (D.N.J. 2010) ...........................................................… 4

*Ellis v. Edward D. Jones & Co.*,
 527 F. Supp. 2d 439 (W.D. Pa. 2007) .............................................…..…… 25

*Erie County Retirees Assoc. v. County of Erie, Pa.*,
 192 F.Supp.2d  369 (W.D. Pa. 2002) ..................................................... 8-9

*Frederick v. Range Res.-Appalachia, L.L.C.*,
 2011 U.S. Dist. LEXIS 27350 (W.D. Pa. Mar. 17, 2011) ……………….…………… 4

*FreeportPartners, L.L.C. v. Allbritton*,
 No. 04-cv-2030, 2006 WL 627140 (D.D.C. Mar. 13, 2006) …………………………... 11

*FreshKist Produce, L.L.C. v. Choi Corp.*,
 362 F.Supp.2d 118 (D.D.C. 2005) ……………………………………...…… 11

*Friedman v. Lansdale Parking Auth.*,
  No. CIV. A. 92-7257, 1995 WL 141467 (E.D. Pa. 1995) ……………………....…… 15

*Girsh v. Jepson*,
  521 F.2d 153 (3rd Cir. 1975) ……………………………………………………… 3

*Godshall v. Franklin Mint Co.*,
  2004 U.S. Dist. LEXIS 23976 (E.D. Pa. Dec. 1, 2004) ………………………….... 9

*Gottlieb v. Barry*,
  43 F. 3d 474 (10th Cir. 1994) …………………………………………………...…… 11

*Government Employees Hosp. Ass'n v. Serono Intern., S.A.*,
  246 F.R.D. 93 (D. Mass. 2007) …………………………………………………… 17

*Grove v. Principal Mut. Life Ins. Co.*,
  200 F.R.D. 434 (S.D. Iowa 2001) ………………………………………………...… 14

*Grunin v. International House of Pancakes*,
  513 F.2d 114 (8th Cir. 1975) …………………………………………...……….. 2, 8

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) …………………………………………………… 3, 22-24

*In re "Agent Orange" Product Liability Litigation*,
  slip op. (E.D.N.Y. January 7, 1985), *modified,* slip op. (E.D.N.Y. June 18, 1985) ……. 13

*In re American Tower Corp. Securities Litigation*,
  648 F.Supp.2d 223 (D.Mass. 2009) …………………………………………...…….. 16

*In re AT & T Corp.*,
  455 F.3d 160 (3rd Cir. 2006) …………………………………………………… 3-4

*In re Auto. Refinishing Paint Antitrust Litig.*,
  2004 U.S. Dist. LEXIS 29161 ……………………………………….……………… 15

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3rd Cir. 2001) …………………………………………….……… 2, 8, 12

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*,
  269 F.R.D. 468 (E.D. Pa. August 27, 2010) ………………………………….…… 4

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) ……………………………………………...………… 25

*In re Diet Drugs Prods. Liab. Litig.*,
    385 F.3d 386 (3rd Cir. 2004) ………………………………………..……… 5, 19

*In re Diet Drugs Prods. Liability Litig.*,
    434 F.Supp.2d 323, 339 (E.D. Pa. 2006) ………………………………………… 19

*In re Domestic Air Transp. Antitrust Litig.*,
    148 F.R.D. 297 (N.D. Ga. 1993) …………………………………………….…… 13

*In re Fine Paper Antitrust Litig.*,
    751 F.2d 562 (3rd Cir. 1984) …………………………………….……… 22-23

*In re First Fidelity Securities Litigation*,
    750 F.Supp. 160 (D. N.J. 1990) …………………………………………..……… 13

*In re Gen. Instrument Sec. Litig.*,
    209 F. Supp. 2d 423 (E.D. Pa. 2001) ………………………………………..…… 15

*In re General Motors Corp. Engine Interchange Litigation*,
    594 F.2d 1106 (7th Cir. 1979) ………………………………………….……… 26

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
    55 F.3d 768, 785 (3rd Cir. 1995) ………………………………….…… 2-3, 14, 25, 26

*In re Greenwich Pharm. Sec. Lit.*,
    1995 U.S. Dist. LEXIS 23976 ………………………………………………..…… 10

*In re HP Inkjet Printer Litig.*,
    No. 5:05-cv-3580 JF, 2011 WL 1158635 (N.D. Cal. Mar. 29, 2011) ……………… 7-8

*In re LG / Zenith Rear Projection Tel. Class Action Litig.*,
    No. 06-5609, 2009 WL 455513 (D.N.J. Feb. 18, 2009) ………………………………… 9

*In re Lucent Technologies, Inc. Sec. Litig.*,
    307 F. Supp. 2d 633, 649 (D.N.J. 2004) ……………………………………….. 15

*In re Matzo Food Products Litigation*,
    156 F.R.D. 600 (D.N.J.1994) ………………………………………....………… 15

*In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010) ……………………………………………….…… 19

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) …………………………………….…………13

*In re Pet Food Products,*
   629 F.3d 333 (3rd Cir. 2010) (Weis, J., concurring and dissenting) …………………… 8

*In re Pharmaceutical Industry Avg. Wholesale Price Lit.,*
   588 F.3d 24 (1st Cir. 2009) …………………………………………………...…. 15, 18

*In re Prudential Ins. Co. America Sales Practices Litig.,*
   148 F.3d 283 (3rd Cir. 1998) …………………………………………………… 3, 7

*In re Ravisent Techs., Inc. Sec. Litig.,*
   2005 U.S. Dist LEXIS 6680 (E.D. Pa. Apr. 18, 2005) …………………………..……… 9

*In re Relafen Antitrust Litigation,*
   231 F.R.D. 52 (D. Mass. 2005) ……………………………………………...……… 17

*In re Schering-Plough/Merck Merger Litig.,*
   2010 U.S. Dist. LEXIS 29121 (D.N.J. Mar. 25, 2010) …………………………………….. 4

*In re Tyco Intern. Ltd. Multidistrict Litigation,*
   535 F. Supp.2d 249 (D. N. H. 2007) ……………………………………………….. 16-17

*In re Washington Pub. Power Supply Sys. Sec. Litig.,*
   19 F.3d 1291 (9th Cir. 1994) ……………………………………………………….. 13

*Kealoha v. Castle,*
   210 U.S. 149 (1908) ……………………………………………………………...……… 5

*Lachance v. Harrington,*
   965 F. Supp. 630 (E.D. Pa. 1997) ……………………………………………..…….. 7, 9, 19

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.,*
   834 F.2d 677 (7th Cir. 1987) ……………………………………………………..…… 25-26

*Mirfasihi v. Fleet Mortgage Corp.,*
   356 F.3d 781 (7th Cir. 2004) ……………………………………………………..…… 3, 20

*Mullane v. Cent. Hanover Bank & Trust Co.,*
   339 U.S. 306 (1950) …………………………………………………………..…... 19

*Murray v. GMAC Mortgage Corp.,*
   434 F.3d 948 (7th Cir. 2006) …………………………………………………...…… 20

*O'Keefe v. Mercedes-Benz USA, L.L.C.,*
   214 F.R.D. 266 (E.D. Pa. 2003) ……………………………………………….……… 7

*Petruzzi's, Inc. v. Darling-Delaware Co.*,
    880 F. Supp. 292 (M.D. Pa. 1995) …………………………………………..……… 25

*Pozzi v. Smith*,
    952 F.Supp. 218 (E.D. Pa. 1997) …………………………………………..…….. 9

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) …………………………………………….….. 23

*Rosenau v. Unifund Corp.*,
    646 F.Supp.2d 743 (E.D. Pa. 2009) …………………………………….……… 19

*Schwartz v. Dallas Cowboys Football Club Ltd.*,
    362 F.Supp.2d 574 (E.D. Pa. 2005) …………………………………….……… 19

*Schwartz v. Dallas Cowboys Football Club, Ltd.*,
    157 F.Supp.2d 561 (E.D. Pa. 2001) …………………………………………... 7

*Seidman v. American Mobile Sys.*,
    965 F.Supp. 612 (E.D. Pa. 1997) …………………………………………..……… 9

*Six Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) …………………………………………….…… 18

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) …………………………………….……… 3, 6, 22, 23

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) …………………………………………….…… 10-11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    127 S. Ct. 2499 (2007) …………………………………………….……… 12

*Thorogood v. Sears Roebuck & Co.*,
    547 F.3d 742 (7th Cir. 2008) …………………………………………... 24

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) …………………………………………….…… 5, 10

*Waters v. Int'l Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir. 1999) …………………………………………..……… 10

*Weinberger v. Great Northern Nekoosa Corp.*,
    925 F. 2d 518 (1st Cir. 1991) …………………………………………….……… 23

vii

## STATUTES

Class Action Fairness Act ……………………………………………..…………… 5

Private Securities Litigation Reform Act …………………………………….…………….. 11-12

28 U.S.C. § 1713 ………………………………………………………...……………. 6

## OTHER AUTHORITIES

American Law Institute, *Principles of the Law of Aggregate Litigation* (2010) ………..… 15, 20

John Beisner, *et al.*, *Cy Pres: A Not So Charitable Contribution to Class Action Practice* (2010) …………………………………………...…………………………17-18

Wayne Brazil, *For Judges: Suggestions About What to Say About ADR at Case Management Conferences — and How to Respond to Concerns or Objections Raised by Counsel*,
  16 OHIO ST. J. ON DISP. RESOL. 165 (2000) …………………………...……………. 26-27

*Court Awarded Attorney Fees: Report of the Third Circuit Task Force*,
  108 F.R.D. 237 (1985) ………………………………………………….…………….. 13, 22

Alba Conte, *Attorney Fee Awards* ……………………………………………….……… 7

Fed. Tax Coordinator Second Series,
  ¶ P-1001 (RIA) ……………………………………………………………….………… 16

Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*,
  57 VAND. L. REV. 1529 (2004) ………………………………………………...…….. 26

Fed. R. Civ. P. 23 ……………………………………………………………….. 1, 3, 4, 14, 15

Fed. R. Civ. P. 23(a)(4) …………………………………………… 12, 17, 22, 24, 28

Fed. R. Civ. P. 23(b)(3) ………………………………………………… 23

Fed. R. Civ. P. 23(e) …………………………………………………………………… 19

Fed. R. Civ. P. 23(h) …………………………………………………………….. 4, 8

Brian T. Fitzpatrick, *The End of Objector Blackmail?*,
  62 VAND. L. REV. 1623 (2009) ……………………………………………………… 27

Allison Frankel, "Legal Activist Ted Frank Cries Conflict of Interest, Forces O'Melveny and Grant & Eisenhofer to Modify Apple Securities Class Action Deal,"
   AMERICAN LAWYER LIT. DAILY (Nov. 30, 2010) …………………………….….. 27

*The Book of Isaiah* ……………………………………………………………...……… 13

Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*,
   59 FLA. L. REV. 71 (2007) ………………………………………………….….. 25

Adam Liptak, *Doling Out Other People's Money*,
   N.Y. Times (Nov. 26, 2007) ……………………………………………...…… 18

Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS (3d ed. 1992) ……………… 2-3

Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS (4th ed. 2002) …………… 2, 18

Declaration of Michael Perino, *In re Qwest Comm. Int'l, Inc. Sec. Litig.*,
   No. 1:01-cv-01451-REB-KLM (D. Colo. May 15, 2006) (Dkt. No. 1011) …………… 11

Michael Perino, *Markets and Monitors: The Impact of Competition and Experience on Attorneys' Fees in Securities Class Actions*,
   St. John's Legal Studies Research Paper No. 06-0034 …………………………..…….. 11

Martin H. Redish, *et al.*, *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*,
   62 Fla. L. Rev. 617 (2010) ………………………………………………………….. 17

Editorial*, When Judges Get Generous; A better way to donate surpluses from class-action awards*,
   Wash. Post (Dec. 17, 2007) ……………………………………………...……….. 18

Charles Alan Wright et al., *Federal Practice and Procedure* (2d ed. 1986) ………………. 18-19

Sam Yospe, *Cy Pres Distributions in Class Action Settlements*,
   2009 COLUMBIA BUS. L. REV. 1014 ……………………………………………….….. 18

Rachel M. Zahorsky, "Unsettling Advocate,"
   ABA J. (Apr. 2010) ……………………………………………………………..… 27

ix

## INTRODUCTION

This proposed settlement's terms should be more than satisfactory to all parties involved, with the exception of the class members. Class counsel, whose duty it is to protect the interests of the class, has engineered a settlement that treats the common fund less like its fiduciary responsibility and more like its private all-you-can-eat buffet. Class counsel demands a commission on the entire common fund, even though significant portions of that fund create little or no benefit for the class. The size of the commission that class counsel demands cannot be supported by the law generally, or even by the cherry-picked cases that class counsel provides specifically. Like class counsel's swollen fee request, the accompanying cost reimbursement that class counsel asks for looms above the typical rate in the cases that class counsel supplies.

If this settlement is approved, it is impossible to say how much of the 60% of the common fund that remains after class counsel has taken its bite will ultimately go to the class, because the settlement agreement appears designed to divert a sizable portion of that remainder to unidentified charitable beneficiaries. Because distribution to the class should be the top priority for the 60% of the common fund that remains, and because the class is entitled to know the identities of the charities that might benefit, this settlement's *cy pres* provisions are deficient on grounds of both fiduciary duty and of notice.

The settlement is further suspect because of the insertion of certain provisions which benefit the lawyers while doing nothing for their clients. This settlement's 'quick pay' clause, which guarantees immediate payment to class counsel while leaving any compensation arrangements to the class unresolved for months or years, places the interests of class counsel ahead of the interests of the class. This settlement's 'clear sailing' clause requires defendants not to object to any attorneys' award; what defendants get in exchange is that, in the event that this court lowers any such award, it would benefit the defendants and not the class. In short, this settlement is so riddled with deficiencies, so violative of Rule 23's standards in so many respects, that this Court should reject it entirely.

1

I.      **The Objector Is a Member of the Class.**

On two separate occasions in 2008, Objector Kevin Young purchased a Britax car seat from a Babies "R" Us store in Bridgewater, New Jersey. Mr. Young qualifies for membership in the relevant settlement class, and he therefore has standing to object to this settlement. His counsel respectfully requests the opportunity to be heard at the fairness hearing. In the event that any witness testifies at the fairness hearing in support of settlement approval, Mr. Young's counsel respectfully requests an opportunity for witness cross-examination.

Mr. Young's business address is 16 Mount Bethel Road, #277, Warren, New Jersey, 07059. His business phone number is (908) 443-1434. The receipts for his two car-seat purchases are contained in his attached declaration.

II.     **Under Rule 23, Preventing an Unfair Settlement Is This Court's Duty**

Because class actions can create unique conflicts of interest between lawyers and their clients, an independent agent is needed to oversee this relationship: "Traditionally, that agent has been the court." *In re Cendant Corp. Litigation,* 264 F. 3d 201, 255 (3rd Cir. 2001). "Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members.... [T]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F. 3d 768, 785 (3rd Cir. 1995) (quoting *Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir. 1975)). "A trial court has a continuing duty in a class action case to scrutinize the class attorney to see that he or she is adequately protecting the interests of the class."  Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 13:20 (4th ed. 2002).   A court should "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d at 785 (quoting Herbert Newberg & Alba Conte, 2 NEWBERG ON CLASS ACTIONS

§ 11.41 (3d ed. 1992)). The Court should apply "heightened scrutiny," *id.* at 807 (citing cases and authority), when the settlement was achieved before class certification, as this settlement was. Memorandum in Support of Motion for Final Approval of Settlement, at 1.

It is insufficient that the settlement happened to be at "arm's length" without express collusion between the settling parties; the settlement must be objectively reasonable as well. "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004). "These concerns warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998). *Accord Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) ("If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained.")

In the Third Circuit, one starting point for determining whether a settlement is "fair, reasonable, and adequate" under Rule 23 is the nine-headed assemblage of factors the court established in *Girsh v. Jepson,* 521 F.2d 153 (3d. Cir. 1975). However, these nine considerations are only "some of the factors," *Girsh,* at 156, and are far from dispositive: "because of a 'sea-change in the nature of class actions' since *Girsh* was decided in 1975, district courts should also consider other potentially relevant and appropriate factors." *In re AT & T Corp.*, 455 F.3d 160, 165 (3rd Cir. 2006) (citing *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 323 (3rd Cir. 1998)). The six other factors (at minimum) whose relevance this Court should consider include "whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and

reasonable." *Id. See also Frederick v. Range Res.-Appalachia, L.L.C.*, 2011 U.S. Dist. LEXIS 27350, 11-12 (W.D. Pa. Mar. 17, 2011); *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.,* 269 F.R.D. 468, 484 (E.D. Pa. August 27, 2010); *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 572 (D.N.J. 2010). Notably, "the Court's assessment of whether the settlement is fair, adequate and reasonable is guided by the *Girsh* factors, but the Court is in no way limited to considering only those enumerated factors and is free to consider other relevant circumstances and facts involved in this settlement." *In re Schering-Plough/Merck Merger Litig.,* 2010 U.S. Dist. LEXIS 29121, *17 n. 4 (D.N.J. Mar. 25, 2010). In short, recent caselaw suggests that determining whether a settlement is fair, reasonable, and adequate under Rule 23 requires the settling parties to demonstrate the appropriateness of their proposal along multiple dimensions — which include the reasonableness of attorneys' fees and the fairness of the procedure for compensating individual claimants.

### III.   The Attorneys' Fees Are Unreasonable Under Rule 23

Rule 23 (h) permits the court to "award reasonable attorney's fees and nontaxable costs." Class counsel demands a third of the gross settlement amount (approximately $11.74 million), reimbursement of litigation expenses (approximately $2.23 million), and incentive awards for fifteen named plaintiffs ($37,500). Regrettably, its requests are unreasonable in several respects: the funds it requests commissions from are not always appropriate targets, and the commissions it wants are oversized.

### A.   Class Counsel Should Not Collect a Commission on Expenses of Notice or Administration.

Class counsel is requesting one-third of the entire settlement under a common fund theory, even though the settlement fund pays for items that do not benefit the class. For instance, class counsel's overbroad fee request includes a one-third commission on the cost of notice. This

is wrong. First, as a matter of law, post-settlement notice is carried out almost exclusively for the benefit of *defendants*, rather than the class, and thus cannot be double-counted as a class benefit; second, the theory that notice should be counted as a class benefit for purposes of evaluating the settlement would lead to absurd results that contradict the Class Action Fairness Act.

The consideration that defendants receive for settling a class action is a waiver of all claims by class members. But if an individual class member "later claims he did not receive adequate notice and therefore should not be bound by the settlement, he can litigate that issue on an individual basis when the settlement is raised as a bar to a lawsuit he has brought." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). *See also In re Diet Drugs Prods. Liability Litig.*, 385 F.3d 386, 396 (3rd Cir. 2004) (countenancing "a collateral attack on the order approving the Settlement" for claims of inadequate notice); *Kealoha v. Castle,* 210 U.S. 149, 155 (1908) (holding that there can be no *res judicata* without notice). Defendants therefore have every incentive to ensure that classwide notice meets constitutional requirements. This is far from a hypothetical concern: defendants have found themselves on the end of repeat litigation when class members failed to receive constitutionally-adequate notice. *See, e.g., Besinga v. United States*, 923 F.2d 133, 137 (9th Cir. 1991) (reversing dismissal of plaintiff's case because no notice was given in prior class action). *Cf. Coppolino v. Total Call Intern., Inc.*, 588 F. Supp. 2d 594 (D. N.J. 2008) (holding that plaintiff's claim was not barred by *res judicata* when class notice in earlier settlement was constitutionally inadequate). Notice benefits defendants when it creates claim preclusion that would not otherwise exist. As such, the expense of class notice cannot simply be entered as a benefit on the class's side of the ledger.

Furthermore, if the Court adopted the view that notice benefited the class, the very act of settlement could be considered "consideration" — even if class members got nothing in exchange for waiving their rights — simply because the class received letters in the mail notifying them of the settlement. For example, imagine a settlement against a bank that provided only a token $100 *cy pres* award, but in which the defendant was entitled to deduct half the cost of notice from individual customers' accounts to pay for attorneys' fees. Such a settlement would

normally be prohibited by 28 U.S.C. § 1713.[1] Because the costs of notice would "substantially outweigh the monetary loss," if a court adopted the proposition that the notice itself benefited the class generally, the skimming of all class members' accounts would be permissible. Because such a result would be flatly unjust and impossible to square with the plain import of the statute, this suggests that counting notice as a class benefit generally is not only insupportable and unfair, but also self-refuting.[2]

The commission that class counsel demands for administrative expenses is even more indefensible. As part of its share of one-third of the settlement, class counsel in effect demands a third of the court-approved fees and expenses of the claims administrator, as well as a third of the administrative and maintenance fees associated with the settlement fund. Just as in the case of the notice expenses, the money going to the claims administrator is money going to a third party, rather than the class, and should not be considered part of the common fund for purposes of calculating class counsel's fee. Any other result is the economic equivalent of a kickback where class counsel's compensation is a function of how much the settlement administrator bills.

Such an arrangement would create a conflict of interest between the attorney and the class. Under the current structure, every dollar the settlement administrator receives is a dollar the class will not receive. If attorney fees are paid only on what the class receives, class counsel will have appropriate incentive to ensure that settlement administration is efficient and to take steps to prevent overbilling or wasteful expenditures. But if class counsel is given a commission

---

[1] "The court may approve a proposed settlement under which any class member is obligated to pay sums to class counsel that would result in a net loss to the class member only if the court makes a written finding that nonmonetary benefits to the class member substantially outweigh the monetary loss."

[2] There is dictum to the contrary in *Staton v. Boeing Co.,* 327 F.3d at 975 (9th Cir. 2003), but that case cites no authority and provides no reasoning for the proposition. In the context of that opinion — which included notice as a class benefit and found the resultant attorneys' fee award impermissibly high — it appears that the Ninth Circuit was assuming that notice costs could be counted as a class benefit only for the sake of the argument. Moreover, any argument to the contrary would have to account for the fact that *Staton* appears to have been legislatively superseded by the enactment of 28 U.S.C. § 1713 in 2005.

based on the size of administrative expenses, it would have no financial incentive to oversee the efforts of the administrator, creating a perverse system of compensation that discourages assignment of resources to the class.

> When litigation expenses are awarded in addition to a percentage on the gross settlement fund, the only incentive for plaintiff's counsel to minimize the costs of litigation is the subsequent court review for the reasonableness of the expense request. By making the amount of the fee dependent on the net recovery of the class, however, the costs of litigation are incorporated into the class counsel's incentive structure in pursuing the litigation. … Plaintiff attorneys who know that their fee will be based on the net recovery of the class, rather than the gross settlement, will have an incentive to keep costs to a minimum in order to maximize not only the class' return, but also their own attorneys' fee award.

*Lachance v. Harrington*, 965 F. Supp. 630, 648 (E.D. Pa. 1997). *See also O'Keefe v. Mercedes-Benz USA, L.L.C.,* 214 F.R.D. 266, 304-05 (E.D. Pa. 2003):

> The settlement fund should be based on the benefit to the class and not the cost to the defendant.... By tying the counsel's fee to the class's relief, we ensure that the counsel works for the benefit of the class. If we were to base class counsel fees on the costs inflicted on the defendant, strange results might arise. Class counsel would have an incentive to seek excessive injunctions — that provide little relief to the class — against the defendant just to increase their court awarded fee.

Class counsel may legitimately request a percentage of what the class receives: however, it should not be rewarded for the amounts the defendant pays the post office and the settlement administrator any more than it should be rewarded for the amounts the defendants pay defense counsel. In short, class counsel should only be asking for a share of the money the class *actually* receives. " '[N]umerous courts have concluded that the amount of the benefit conferred logically is the appropriate benchmark against which a reasonable common fund fee charge should be assessed.' " *In re Prudential Ins. Co. America Sales Practices Litig.,* 148 F.3d, at 338 (quoting Conte, 1 *Attorney Fee Awards* § 2.05, at 37). "In determining the appropriate amount of attorneys' fees to be paid to class counsel, the principal consideration is the success achieved by the plaintiffs under the terms of the settlement." *Schwartz v. Dallas Cowboys Football Club, Ltd.,* 157 F.Supp.2d 561, 579 (E.D. Pa. 2001). The "key consideration in determining a fee award is reasonableness in light of the benefit *actually conferred*" (emphasis in original). *In re HP*

*Inkjet Printer Litig.,* No. 5:05-cv-3580 JF, 2011 WL 1158635, at *10 (N.D. Cal. Mar. 29, 2011) (quoting *Create-A-Card Inc., v. Intuit, Inc.,* No. C 07-06452 WHA, 2009 WL 3073920, at *3 (N.D. Cal. Sept. 22, 2009)). *See generally In re Cendant Corp. Litig.*, 264 F.3d, at 254-60 (the court should ensure that the incentives of class counsel and class members are aligned). In short, class counsel's demand for a share of the entire settlement, rather than just a share of the relatively smaller portion of the fund that actually conveys benefits to the class, is unreasonable.

## B.   Class Counsel's Supersized Compensation Percentage Is Unreasonable.

Class counsel has requested payment of one-third of the settlement for its fees, and its accompanying requests for costs push its requested share up to nearly 40% of the entire common fund. Its requested percentage is significantly above the 25% benchmark that typically is appropriate in a class action of this size; it flunks Rule 23(h)'s test that attorneys' fees be "reasonable." Because so many factors in this case argue in favor of a lower fee, the court risks abusing its discretion if it assigns such a large portion of the settlement to the attorneys.

Attorney compensation should be awarded so that it "reasonably compensate[s] the attorneys for their services yet are not excessive, arbitrary, or detrimental with respect to the class." *Grunin v. International House of Pancakes*, 513 F.2d, at 127. In this case, class counsel's request for nearly 40% of the entire common fund is excessive. Class counsel's proposed fee award relies on the stereotypical one-third portion that is negotiated for *individual* contingency fees.

Class counsel overstates its case when it suggests that a one-third share for attorneys' fees is "consistent with fee awards nationwide," Motion for Award of Attorneys' Fees (Dkt. No. 738) at 5, or even within this Circuit. Although a 25% benchmark should be far from "the end of the discussion," it can certainly serve as "a beginning point for determining whether a particular fee is reasonable." *In re Pet Food Products,* 629 F.3d 333, 361 (3rd Cir. 2010) (Weis, J., concurring and dissenting). Many district courts in this Circuit have applied a 25% benchmark: *see, e.g.,*

*Erie County Retirees Assoc. v. County of Erie, Pa.,* 192 F.Supp.2d 369, 381 W.D. Pa. 2002) (noting that "settlements involve multi-million dollar funds, and the 25% benchmark is often appropriate in these cases in order to prevent a windfall to counsel."); *In re LG / Zenith Rear Projection Tel. Class Action Litig.,* No. 06-5609, 2009 WL 455513, at *9 (D.N.J. Feb. 18, 2009); *Pozzi v. Smith,* 952 F.Supp. 218, 225 (E.D. Pa. 1997); *Seidman v. American Mobile Sys.,* 965 F.Supp. 612, 622 (E.D. Pa. 1997); *Lachance v. Harrington,* 965 F.Supp. at 648 (E.D. Pa. 1997).

Furthermore, the eleven cases that class counsel provides to demonstrate that its claim is within this Circuit's norms (*see* Motion for Award of Attorneys' Fees at 2, 5) are inapposite. Several citations in its brief are highly misleading: in particular, some of the decisions that class counsel represents as justifying a one-third award of the common fund solely for attorneys' fees in actuality assign that one-third share to the larger domain of *the sum of attorneys' fees and costs. See In re Ravisent Techs., Inc. Sec. Litig.*, 2005 U.S. Dist LEXIS 6680, at *35-40 (E.D. Pa. Apr. 18, 2005); *Godshall v. Franklin Mint Co.,* 2004 U.S. Dist. LEXIS 23976, at *17-19 (E.D. Pa. Dec. 1, 2004).[3] To state the obvious, these two citations from class counsel (in the latter instance, falsely labeling a 33% payment to class counsel that comprised both fees and costs as simply "a 33% fee") constitute significant misdescriptions of past court decisions, in that they materially exaggerate the compensation rule that the cited courts have used in previous settlements.

In general, the facts surrounding this settlement agreement are highly dissimilar to the factual contexts of the eleven cases which class counsel relies on to support its one-third attorneys' fee request. Nearly two-thirds of the eleven settlements that class counsel relies on

---

[3] In fairness, although the *Godshall* case describes the one-third award to class counsel as consisting of both fees and costs at least four separate times in its award analysis and in its Order, the decision's initial background summary does say, once, that class counsel has asked for attorneys' fees while neglecting to mention any accompanying request for costs. It is therefore barely possible that, with respect to this particular case, class counsel's misrepresentation is not culpable so much as it is careless.

resulted in no objections whatsoever. Furthermore, the vast majority of those eleven cases contain cost awards under 10% of attorneys' fees; the separate costs that class counsel requests reimbursement for in this settlement agreement, however, constitute nearly 19% of the fee that it demands.[4] That is, class counsel is requesting cost reimbursements that are over two-thirds more than the highest outlier in the eleven cases it relies on in this area. (Notably, one of the cases class counsel relies on states that a reasonable fee percentage will decrease as the size of the common fund increases. *See In re Greenwich Pharm. Sec. Lit.,* 1995 U.S. Dist. LEXIS 23976, at *17. This rule itself argues for reduction in the attorney fee percentage, because the majority of the eleven cases class counsel cites to support the reasonableness of its fee contain common funds ranging from just over 3% to just over 20% of the size of the fund at issue here.)

More generally, class counsel's claim that its request for fees of one-third of the common fund is "consistent with awards nationwide" is impossible to defend, given the sharply different norms of many other Circuits. The magnitude of its requested award is significantly above the 25% benchmark that has routinely and expressly been relied upon in the Ninth Circuit. *See, e.g., Torrisi v. Tucson Elec. Co.*, 8 F.3d, at 1376 (in common fund cases, "we have established 25% of the common fund as the 'benchmark' award for attorney fees."). The Eleventh Circuit calls the range of 20% to 30% "a 'benchmark' which 'may be adjusted in accordance with the individual circumstances of each case.' " *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999) (quoting *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768, 771-74 (11th Cir.1991)). The D.C. Circuit uses a 20% to 30% range  in common fund cases; this approach originated with *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1272 (D.C. Cir. 1993). Cases

---

[4] These figures are approximate. Nine of the eleven decisions that class counsel supplies grant cost awards that are less than 10% of the attorneys' fees; the other two grant cost awards that are between 11.2% and 11.3% of the fee. Those eleven cost awards range from 2.67% to 11.29% of the fee; both the mean and median cost award in these eleven cases lie between 7.6% and 7.7% of the fee, meaning that the costs that class counsel requests reimbursement for here are almost exactly two and a half times the magnitude of the average expense reimbursement in the eleven cases it cites. The gulf between the costs in these eleven cases and the 18.98% that class counsel requests here (that is, costs expressed as a percentage of the requested fee award) is wide.

following *Swedish Hospital's* approach include *FreshKist Produce, L.L.C. v. Choi Corp.,* 362 F.Supp.2d 118 (D.D.C. 2005); *FreeportPartners, L.L.C. v. Allbritton,* No. 04-cv-2030, 2006 WL 627140, at *5 (D.D.C. Mar. 13, 2006). *Cf. Gottlieb v. Barry,* 43 F. 3d 474, 487 (10th Cir. 1994) (22.5% "well within the range of permissible reasonable fee awards").

Furthermore, the point that class counsel's fee request is far outside of judicial norms is not simply a matter of law; it is a matter of fact. A recent expert report by Professor Michael Perino of St. John's University School of Law comprehensively surveyed a dataset of 525 reported and unreported attorneys' fee awards over the scope of 13 years in the field of securities class action settlements: when surveying the 60 settlements in his dataset with a common fund of $25 million to $75 million, Perino found that the mean (average) attorneys' fee was 23.17% of the common fund, while the median was 25%. *See* Declaration of Michael Perino, *In re Qwest Comm. Int'l, Inc. Sec. Litig.*, No. 1:01-cv-01451-REB-KLM (D. Colo. May 15, 2006) (Dkt. No. 1011) at 11, fig. 2. This suggests that class counsel's fee request of one-third overcompensates itself dramatically.[5]

When confronted with Perino's statistics, class counsel might respond that this is merely a collection of data from securities settlements, and that securities settlements differ from class action settlements generally. This is true, but it certainly does not demonstrate that the evidence from securities settlements should be ignored. Rather, there is a powerful argument that the norms of attorney compensation in securities settlements should expand to class action settlements generally. Unlike typical class action settlements, the choice of both plaintiff and class counsel in securities actions under the Private Securities Litigation Reform Act is considerably constrained; the court selects the lead plaintiff, who (subject to court approval)

---

[5] This Declaration, as well as an academic paper by Perino — *Markets and Monitors: The Impact of Competition and Experience on Attorneys' Fees in Securities Class Actions*, St. John's Legal Studies Research Paper No. 06-0034 — both of which discuss his findings extensively, are attached to this brief as appendices.

selects class counsel.  *See, e.g., In re Cendant Corp. Litigation,* 264 F. 3d, at 218, 273. This procedure typically produces a lead plaintiff who is a well-informed institutional investor. One might expect that this procedure would have consequences for counsel's performance: all other things being equal, the client who is knowledgeable enough to monitor his or her lawyer's performance can negotiate a more appropriate fee and expect a more beneficial result. Why is it that the PSLRA's procedure results in attorneys' fees around 22% to 25%, when settlements involving plaintiffs who are locked out of the driver's seat result in attorneys' fees that are considerably higher?[6] Presumably, the answer is that it is difficult or impossible for the typical named plaintiff to appropriately monitor and control class counsel's performance — a disability that a sophisticated institutional investor does not face. As alluded to in Section II above, the law tries to ensure that class counsel will fairly and adequately protect the interests of the class under Rule 23(a)(4) by loading up the court with fiduciary duties involving the monitoring of class counsel. This creation of a special judicial duty is probably best understood as an attempt to simulate the beneficial consequences of a knowledgeable and sophisticated lead plaintiff: it is therefore appropriate for this Court to take judicial notice of the attorneys' fees that class counsel typically receives under the PSLRA, and to benefit from the data that demonstrate that class counsel receives appropriate compensation when appointed by a plaintiff who can effectively advise and direct his or her attorney.[7]

---

[6] The suggestion that plaintiffs are not always in the driver's seat when represented by class counsel is harsh but accurate. At least one of the named plaintiffs in this action is apparently convinced that his lawyers have failed to act in his interests. *See* Zarfati Objection (Dkt. No. 743), ¶¶ 9-15 (criticizing class counsel because "they have refused to stand up and represent my interests (and the interests of the other class representatives) before this Court in an appropriate manner"). Zarfati contends that class counsel made a settlement offer that sold out his interests. *Id.* If class counsel does not represent the interests of named plaintiffs before this court, whose interests does it represent?

[7] In addition, it is difficult to make the case generally that securities class actions deserve less compensation than antitrust actions: trying a case under the relevant securities law is riskier and demands a higher standard of pleading. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007) (interpreting "[e]xacting pleading requirements" of 15 U.S.C. § 78u-4(b)(2)).

In short, the proposed payment to class counsel is unreasonable. Large settlements typically have lower percentage awards, essentially because of the law of diminishing returns. Although attorneys' awards are left to the court's discretion, such awards typically "involve a sliding scale dependent upon the ultimate recovery, the expectation being that, absent unusual circumstances, the percentage will decrease as the size of the fund increases." *Court Awarded Attorney Fees: Report of the Third Circuit Task Force*, 108 F.R.D. 237, 256 (1985). *Cf. id.* at 256 n. 61: "In a case in which a large settlement is anticipated, the negotiated contingency range may include relatively small percentages. For example, the *Agent Orange* plaintiffs' lawyers collected over ten million dollars in fees, yet that amounted to less than 6% of the settlement fund." (citing *In re "Agent Orange" Product Liability Litigation,* slip op. (E.D.N.Y. January 7, 1985), *modified,* slip op. (E.D.N.Y. June 18, 1985)). *See also In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1297-98 (9th Cir. 1994); *In re Domestic Air Transp. Antitrust Litig*., 148 F.R.D. 297, 350-51 & nn.75, 76 (N.D. Ga. 1993), and cases cited therein (listing declining percentages based on case law). When class counsel decided to go into the wholesale business, surely it was aware of the possibility that it might have to stop charging retail rates: "It is generally not 150 times more difficult to prepare, try and settle a $150 million case than it is to try a $1 million case." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 486 (S.D.N.Y. 1998). "There is considerable merit to reducing the percentage as the size of the fund increases. In many instances the increase is merely a factor of the size of the class and has no direct relationship to the efforts of counsel." *Id.* (quoting *In re First Fidelity Securities Litigation*, 750 F.Supp. 160, 164 n. 1 (D. N.J. 1990)).

The advocates of this unusually sizable fee request defend it in part by arguing that no substantial objections to it have been filed. Motion for Award of Attorneys' Fees (Dkt. No. 738), at 6. This objector is reminded of Isaiah, who heard the call for a messenger and famously responded "Here am I!" *Isaiah* 6:8. Here, class counsel apparently suffers from premature evaluation: it is overly ambitious for class counsel to summarize the objections to this settlement in a brief it has filed two weeks before those objections are due.

13

> There may be many reasons why class members in this case didn't register their concerns about the settlement: lack of interest, time, information, etc. Like the Third Circuit in the *General Motors* case, the Court is unwilling to automatically equate class silence with a showing of "overwhelming" support for the settlement. Therefore, the fact that statistically few people bothered to opt-out or file an objection ultimately counts little in the Court's overall fairness analysis.

*Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 447 (S.D. Iowa 2001) (*citing In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d, at 789.).

In short: in the face of the triple threat that this settlement agreement presents to the court — an award to class counsel that is significantly above judicial norms; a large number of class members that should create significant economies of scale for the class attorneys; and a request for commissions on portions of the settlement that arguably benefit the defendants more than they benefit the class — the court risks abusing its discretion if it approves the settlement agreement's hypertrophied fee and cost request.

## IV.     The Proposed Allocation Scheme Magnifies the Inherent Defects of the Settlement's Cy Pres Component

The allocation plan of any settlement must itself comport with Rule 23 standards. The plan at issue expressly contemplates the possibility of some portion of the settlement being used for a *cy pres* remedy. However, the allocation plan's design unnecessarily increases the likelihood of a second-best *cy pres* remedy; although *cy pres* has its place, it is by definition inferior to any remedy which directly compensates class members. Furthermore, the beneficiaries of the proposed *cy pres* remedy are never stated; rather, they are players to be named later. Because the identity of a *cy pres* beneficiary speaks directly to whether the settlement complies with the Rule 23 standards, this lack of specificity makes for deficient notice. Finally, because *cy pres* does not benefit the class directly, any attempts at creation of *cy pres* beneficiaries at the expense of actual class members should not trigger a financial award to class counsel.

14

**A.      The Allocation Plan Is Likely Both To Unnecessarily Decrease the Size of Direct Compensation to Class Members and Unnecessarily Increase the Size of a Second-Best *Cy Pres* Remedy.**

Any settlement's allocation plan must itself meet Rule 23 standards. "Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable, and adequate." *In re Auto. Refinishing Paint Antitrust Litig.,* 2004 U.S. Dist. LEXIS 29161, at *26 (quoting *In re Lucent Technologies, Inc. Sec. Litig.,* 307 F. Supp. 2d 633, 649 (D.N.J. 2004)). "In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *Id.* (quoting *In re Gen. Instrument Sec. Litig.,* 209 F. Supp. 2d 423, 432 (E.D. Pa. 2001)).

The allocation plan at issue expressly contemplates the possibility of directing some portion of settlement funds to *cy pres* beneficiaries.  Settlement Agreement, § 22. A *cy pres* remedy is not inherently flawed: it is "permitted in situations where class recovery cannot feasibly be distributed to individual class members or where unclaimed funds remain following distribution to the class." *In re Matzo Food Products Litigation,* 156 F.R.D. 600, 605-06 (D.N.J.1994). *See also Friedman v. Lansdale Parking Auth.*, No. CIV. A. 92-7257, 1995 WL 141467, at *2 (E.D. Pa. 1995) ("*Cy pres* distribution, also called "fluid class recovery," is appropriate when disbursement of the fund to the class has been ineffective, the purpose of the fund has not been achieved, and it is possible to indirectly benefit the non-claiming class members by awarding the fund residue to a third party."). *Cf. In re Pharmaceutical Industry Avg. Wholesale Price Lit.*, 588 F.3d 24, 34-35 (1st Cir. 2009) (approving *cy pres* of unclaimed funds because district court had ensured full treble recovery of class members first); American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.07 (2010). But it is far from clear that the *cy pres* scheme this settlement contemplates meets these standards, because the disparity in compensation for different subclasses increases the likely magnitude of *cy pres* distributions.

15

(More precisely, that disparity increases the likelihood of leftover funds. *See* Proposed Allocation Order, § 14.)

This large disparity in compensation of subclasses creates legitimate concern that relatively uncompensated subclass members might see the resources that arguably should go to them instead get funneled to inferior "next-best" *cy pres* beneficiaries. More precisely, in the event that there are excess settlement funds, the settling parties' proposal to put a $5.00 ceiling on a subset of deserving class members, and then to deliver remaining funds to *cy pres* beneficiaries, is unreasonable: it is far from apparent why class members who have held onto their purchase records should be entitled to pro rata increases in compensation, but class members who lack receipts or proofs of purchases should be denied these upwards adjustments.[8] A settlement with a large number of small beneficiaries would economically use a *cy pres* remedy "only where the cost per class member of distributing the residual funds substantially outweighs the amount each class member would receive." *In re American Tower Corp. Securities Litigation,* 648 F.Supp.2d 223, 224 n.1 (D.Mass. 2009).

A *cy pres* distribution which would only become operational once all class members have been fully compensated is, as such, unobjectionable; *see In re Tyco Intern. Ltd. Multidistrict Litigation*, 535 F. Supp.2d 249, 262 (D. N. H. 2007) ("The plan calls for the continued re-distribution of unclaimed funds to class members according to their pro rata shares, until the costs of such redistributions make it economically unfeasible to continue doing so. If and when

---

[8] The terms of the settlement appear to treat members of different subclasses in remarkably disparate ways. For instance, Objector Kevin Young purchased a Britax car seat for $289.99, which by the terms of the settlement entitles him to compensation of as much as (approximately) $58 to $174. *See, e.g.,* Memorandum in Support of Motion for Final Approval of Settlement, at 6-7. Another purchaser, one who is identically situated except that he or she neglected to retain a receipt, would be eligible for compensation of, at most, $5.00. *Id.* (Speaking very generally, taxpayers are well-advised to hold onto their tax records for three years in anticipation of refunds or audits. Fed. Tax Coordinator Second Series ¶ P-1001 (RIA) ("Usually the taxpayer should keep records for three years from the date a return is filed."). However, this settlement appears to require some class members to hold onto their purchase records for quadruple the three-year timespan in order to receive non-minimal compensation.)

16

that point is reached, then the balance of the fund will be subject to a *cy pres* remedy.”); *Government Employees Hosp. Ass'n v. Serono Intern., S.A.,* 246 F.R.D. 93, 95 (D. Mass. 2007) (Settlement amount “specifically allocated” to class members; “This amount was expected to be sufficient to fully pay all of the claims”; “Any excess was to be distributed as a *cy pres* fund”). *See also In re Relafen Antitrust Litigation,* 231 F.R.D. 52, 82 (D. Mass. 2005) (*cy pres* award made only after “great efforts to ensure that individual consumers” were rewarded and “in light of the very weakness of the claims” of some subclass members). But because the settlement at issue here already contains a method to distribute funds to class members, using *cy pres* to lop off a chunk of what rightfully should go to class members is inappropriate.

There is no defensible reason to have ***any*** *cy pres* distribution in this settlement until reasonable measures are taken to ensure that the class members are completely compensated. If class members are entitled to compensation, and that compensation can be feasibly distributed to individual class members without unreasonable administrative burdens, the settling attorneys’ desire to assign any significant portion of the settlement funds to third parties is without lawful foundation. Class counsel will violate its fiduciary duty if it engineers any charitable donation with settlement money that should go to putatively represented clients. A charity to be named later is not the class counsel’s client; the class members are.  And the failure of class counsel and the class representative to put the interests of the class first in negotiating this settlement raises severe Rule 23(a)(4) concerns: how can these parties be said to fairly and adequately represent the class when the proposed settlement pursues the interests of third parties at the class’s expense?

The ALI is not alone in noting the inherent conflicts of interest raised by *cy pres* distributions.  *See, e.g.*, Martin H. Redish, *et al.*, *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 Fla. L. Rev. 617 (2010) (*cy pres* “threatens to undermine the due process interests of absent class members by disincentivizing the class attorneys in their efforts to assure [classwide] compensation of victims of the defendant’s unlawful behavior”); John Beisner, *et al.*, *Cy Pres: A Not So Charitable Contribution to Class*

*Action Practice* (2010); Sam Yospe, *Cy Pres Distributions in Class Action Settlements*, 2009 COLUMBIA BUS. L. REV. 1014; Editorial*, When Judges Get Generous; A better way to donate surpluses from class-action award*s, Wash. Post (Dec. 17, 2007) ("Federal judges are permitted to find other uses for excess funds, but giving the money away to favorite charities with little or no relation to the underlying litigation is inappropriate and borders on distasteful. In all but the rarest of circumstances, those funds should be made available to individual plaintiffs and not to outside organizations — no matter how worthy"); Adam Liptak, *Doling Out Other People's Money*, N.Y. Times (Nov. 26, 2007).

These conflicts of interest are easily eliminated by prohibiting *cy pres* awards except in the narrow circumstances in which pecuniary relief to the class is infeasible.  Unless the settling parties can show that *cy pres* beneficiaries will not outrank feasible class compensation, the settlement should be rejected.

**B.**     **The Court Should Reject This Settlement's Creation of Contingent *Cy Pres* Beneficiaries, because the Failure to Identify Those *Cy Pres* Beneficiaries Gives Class Members No Opportunity to Object.**

As noted above, courts permit *cy pres* distributions in very limited contexts; the central rule of the *cy pres* doctrine is that it may be used "for another purpose as close as possible" to the original purpose. See *In re Pharmaceutical Industry Avg. Wholesale Price Lit.*, 588 F.3d at 33. Conversely, a *cy pres* award "will be rejected when the proposed distribution fails to provide the 'next best' distribution." *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990).  Any such distribution must "adequately target the plaintiff class." *Id.*  But class members are entirely without notice of the *cy pres* beneficiaries; their identities apparently will not be determined until after the objection deadline has passed. This is wrong.

The rationale of the notice requirement is that it allows "the parties to make conscious choices that affect their rights in a litigation context." *See* 2 *Newberg on Class Actions*, § 8.04 at 8-17; 7B Charles Alan Wright et al., *Federal Practice and Procedure*, § 1787 at 220 (2d ed.

18

1986). Notice gives class members "the information 'needed to decide, intelligently, whether to stay in or opt out.' " *In re Diet Drugs Prods. Liab. Litig.,* 385 F.3d at 395 (3rd Cir. 2004) (quoting *Amchem Prods. v. Windsor,* 521 U.S. 591, 628 (1997)). It must be " 'reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Lachance v. Harrington,* 965 F.Supp. 630, 636 (E.D.Pa.1997) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Rule 23(e) requires class members to be given notice of the terms of the settlement. *Rosenau v. Unifund Corp.,* 646 F.Supp.2d 743, 750 (E.D. Pa. 2009). If the creation of *cy pres* beneficiaries could reasonably be predicted by operation of the settlement, those beneficiaries' identities should be included in the notice. *Cf. In re Diet Drugs Prods. Liability Litig.*, 434 F.Supp.2d 323, 339 (E.D. Pa. 2006) (class doesn't have to receive notice of what "could only have been conjecture"; "predicting future events outside the reasonable contemplation of all the parties and the court was not required"). The *cy pres* remedy which the settlement provides for here is just the converse of the situation discussed in *Diet Drugs* immediately above: here, the *cy pres* remedy is not simply conjecture, but instead rests inside the reasonable contemplation of all the parties.

The prospect of contingent *cy pres* awards to unnamed beneficiaries denies class members the information they need in order to evaluate the proposed distribution. The identity of *cy pres* recipients is material to the settlement, and the court should not approve it without providing the class a full and fair opportunity to object to any material changes to it. See, e.g., *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010). Notice to class members is necessary, among other reasons, so that there is public opportunity to double-check that any *cy pres* programs will serve appropriate purposes. *Cf., e.g., Schwartz v. Dallas Cowboys Football Club Ltd.*, 362 F.Supp.2d 574, 577 (E.D. Pa. 2005) (denying proposed *cy pres* distribution because, *inter alia,* it failed to promote appropriate policies, it failed to go to appropriate organizations, and it failed to cover appropriate geographic territory). New notice to objectors would be required before the court approves this settlement.

**C.**     **In Any Event, the *Cy Pres* Relief Should Not Be Calculated as a Class Benefit When Calculating Attorneys' Fees.**

Even if this Court disregards both the ALI *Principles* and legal precedent on the several principles of *cy pres* relief which this settlement contravenes, it should not in any event recognize the creation of a *cy pres* fund as a class benefit when calculating attorneys' fees. *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 952 (7th Cir. 2006); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d, at 784 ("There is no indirect benefit to the class from the defendant's giving the money to someone else."); *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877 (7th Cir. 2000). As noted above, a charity to be named later is not the class counsel's client; the class members are.

**V.**     **Administration of This Settlement Contains Multiple Notice Deficiencies.**

As discussed immediately above, the failure to identify *cy pres* beneficiaries prevents class members from exercising informed consent. The proposed settlement also contains another minor, but significant, deficiency in notice: class counsel has failed to carry out its obligations as described in the Settlement Notice. The Notice informed every single class member that the request for fees, litigation expenses, and administrative expenses filed by class counsel would be available at the settlement website after the motion was filed. Settlement Notice, § V. 2. But it isn't there. It is not apparent how this commitment (or this information) would have any value to the class at all unless it had been placed on the website before the June 6, 2011 deadlines for objection and exclusion.

VI.    **Class Counsel Breached Its Fiduciary Duty to the Class by Negotiating A 'Quick-Pay' Clause for Itself Without Obtaining Similar Protection for the Class.**

Class counsel has structured this settlement so that it would be paid immediately, while class members' payments would be delayed until the resolution of all appeals. There is apparently no binding case law determining whether such a self-serving provision in a class action settlement is lawful, but in general this kind of provision should be viewed as an impermissible breach of the attorneys' fiduciary duty. It is hard to conceive of a more blatant way for class counsel to signal that it has put its own interests ahead of those of its putative clients than to design a settlement which pays the attorneys off almost immediately while making their clients wait (at a maximum) until the appeals process reaches finality or (at a minimum) approximately five months.

The proposal filed with this Court allows class counsel to be paid almost immediately upon settlement approval, whether or not the judgment is appealed. However, class members will at best receive compensation roughly five months after that. *See* Proposed Allocation Order, at § 13. Class counsel has therefore ensured that any appeals process will serve as no obstacle to its own compensation, although it is far less attentive to the months-long delay (speaking optimistically) that necessarily must precede compensation to its clients. There is no provision for the class payment to be put into escrow and earn interest for class members while the appeal is pending.[9] Like the clear sailing agreement discussed immediately below, this provision is all

---

[9] The Objector's reading of the settlement agreement suggests that it leaves open the possibility, but certainly not the guarantee, of class members' ultimately benefiting from any accrued interest. If the settling parties wish to make it clear that their aim is to set aside any accrued interest for the primary benefit of class members in all circumstances (rather than assigning *cy pres* beneficiaries first priority), the Objector would be pleased to be corrected. However, no matter whether some class members' compensation will increase because of accrued interest or not, the settlement is still objectionable. If the accrued interest goes to class members, this further increases the disparity in compensation between class members who have records of their purchase and those who do not; if the accrued interest does not go to class members, this further increases the objectionable *cy pres* payments. Either way, the settling parties have fashioned a settlement that is uniquely defective.

too suggestive of the likelihood that class attorneys have negotiated a settlement that is "driven by fees." *Hanlon*, 150 F.3d at 1021 (9th Cir. 1998).

The provision which places class counsel's paycheck ahead of payment to its clients is colloquially called a "quickpay provision." It breaches class counsel's fiduciary obligation to put its own interests ahead of its clients'.  As a matter of basic economics and common sense, class counsel almost certainly gave up some benefit to the class to obtain the benefit for themselves of advance payment of attorneys' fees. When class attorneys negotiate special treatment for themselves, "the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained." *Staton v. Boeing Co.*, 327 F.3d, at 964 (9th Cir. 2003). *Accord Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. at 266 (1985) ("When a large attorney's fee means a smaller recovery to plaintiff, a significant conflict of interest between client and attorney is created. Even if the plaintiff's attorney does not consciously or explicitly bargain for a higher fee at the expense of the beneficiaries, it is very likely that this situation has indirect or subliminal effects on the negotiations.").

To counsel's knowledge, no court in this circuit has ruled on this question, and it is an issue of first impression here. Nonetheless, this court should not countenance the highly unusual funding agreement that the settling parties have proposed. This bargain is made at the expense of the class and it violates class counsel's fiduciary duties. The settlement agreement should be rejected as a matter of law for this reason alone, but its vulnerability is underscored by an equally offensive addition to the proposed settlement: a "clear sailing" clause.

## VII.    The "Clear Sailing" Provision Raises Rule 23(a)(4) Concerns.

Class action settlements which release defendants from liability in exchange for the creation of a common fund "create an inevitable conflict of interest between the attorneys for

Rule 23(b)(3) class members and the class members." *In re Fine Paper Antitrust Litig.,* 751 F.2d 562, 583 (3rd Cir. 1984). Attorney fee requests from the resultant fund "must be subjected to heightened judicial scrutiny." *Id.* To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton v. Boeing Co.*, 327 F.3d, at 963 (9th Cir. 2003). The Court's sizable duty of scrutiny, its sharpness already magnified by a pre-certification settlement, is necessarily transformed into something even stricter by the settling parties' insertion of a "clear sailing" clause into the settlement agreement.

That clause stipulates that attorney awards will not be contested by opposing parties. "Such a clause by its very nature deprives the court of the advantages of the adversary process." *Weinberger v. Great Northern Nekoosa Corp.,* 925 F. 2d 518, 525 (1st Cir. 1991). The clause strongly suggests that its associated fee request should go "under the microscope of judicial scrutiny." *Id.* The implication of "absence of adversariness makes heightened judicial oversight of this type of agreement highly desirable. Furthermore, the very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class." *Id.* It is "self-evident" that a clear sailing clause should "put a court on its guard." *Id.*

A court should give a settlement "special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement." *Hanlon*, 150 F.3d at 1021 (9th Cir. 1998). The settlement's "clear sailing" clause makes this record about as suggestive as it can get: class counsel negotiated a provision protecting fees from challenge by the defendant, a clause which placed class counsel's interests ahead of those of the class. *See* Settlement Agreement, § 26. Such a provision invites additional scrutiny of the settlement. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 961 n. 5 (9th Cir. 2009).

As part of this settlement, class counsel has secured an unchallenged right to request millions of dollars for itself — whether or not the class secures proportional relief from this

coupon settlement. This provision cannot possibly benefit the class. In a typical common fund settlement, the district court may, at its discretion, reduce the fees requested by plaintiffs' counsel — when it does so, the class will benefit from the surplus. Under the proposed settlement, if the Court awards less to class counsel than the roughly $14 million that defendants have already agreed to pay, the defendant will be the only beneficiary. The settlement is therefore worse for the class than a traditional common fund, yet plaintiffs have done nothing to improve this inferior settlement structure.

Any court judging the fairness of a class action faces "a responsibility difficult to discharge when the judge confronts a phalanx of colluding counsel. The defendant wants to minimize outflow of expenditures and the class counsel wants to increase inflow of attorneys' fees. Both can achieve their goals if they collude to sacrifice the interests of the class." *Thorogood v. Sears Roebuck & Co.*, 547 F.3d 742, 745 (7th Cir. 2008). This Court should understand the clear-sailing agreement in this settlement as suggestive in the *Hanlon* sense — namely, that such an agreement inherently calls for "special attention" to the facts and circumstances of the settlement agreement. *See Hanlon*, 150 F.3d at 1021. This clause raises stark Fed. R. Civ. Proc. 23(a)(4) concerns: Because class counsel, by failing to negotiate for reversion to the class of any denied fee request, have put their own interests ahead of those they are charged to represent, the settlement deserves a higher level of scrutiny by this Court than settlement evaluations typically require.

VIII. **The Court Should Discount Attempts By The Settling Parties To Infer Class Approval From A Low Number Of Objections.**

Any given class action settlement, no matter how much it betrays the interests of the class, will produce only a small percentage of objectors. The predominating response will always be apathy, because objectors — unless they can obtain *pro bono* counsel — must expend significant resources on an enterprise that will create little direct benefit for themselves. Another

common response from non-lawyers in receipt of a settlement notice will be the affirmative avoidance, whenever possible, of anything involving a courtroom. Class counsel may argue that this understandable tendency to ignore notices or free-ride on the work of other objectors is best understood as acquiescence in or evidence of support for the settlement. This is wrong. Silence is simply *not* consent:

> Silence may be a function of ignorance about the settlement terms or may reflect an insufficient amount of time to object. But most likely, silence is a rational response to any proposed settlement even if that settlement is inadequate. For individual class members, objecting does not appear to be cost-beneficial. Objecting entails costs, and the stakes for individual class members are often low.

Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 73 (2007).

There is usually little hope that opt-outs can recover for their claims — the entire purpose of class actions is to aggregate claims that would be uneconomical to bring individually. "Almost by definition, most class members have too little at stake to warrant opting out of the class litigation and filing an individual lawsuit. Thus, opting out is probably not a viable option even though a proposed settlement is unfair or inadequate." *Id.* at 109. Without *pro bono* counsel to look out for the interests of the class, filing an objection is economically irrational for any individual. "[A] combination of observations about the practical realities of class actions has led a number of courts to be considerably more cautious about inferring support from a small number of objectors to a sophisticated settlement." *In re GMC Pick-Up Litig.*, 55 F.3d at 812 (*citing In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217-18 (5th Cir. 1981)); *cf. Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F. Supp. 292, 297 (M.D. Pa. 1995) ("'[T]he silence of the overwhelming majority does not necessarily indicate that the class as a whole supports the proposed settlement . . . .'"). "[A] low number of objectors is almost guaranteed by an opt-out regime, especially one in which the putative class members receive notice of the action and notice of the settlement offer simultaneously." *Ellis v. Edward D. Jones & Co.*, 527 F. Supp. 2d 439, 446 (W.D. Pa. 2007). "[W]here notice of the class action is, again as in this case,

sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a *fait accompli*." *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 680-681 (7th Cir. 1987). "Acquiescence to a bad deal is something quite different than affirmative support." *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1137 (7th Cir. 1979) (reversing approval of settlement).

When class members have little at stake, as in an action such as this where the maximum recovery will typically be in the low three figures, the rate of response will be predictably low; as such, it cannot be seen as something akin to an election or a public opinion poll. *See In re GMC Pick-Up Litig.*, 55 F.3d at 813 (finding that "class reaction factor" does not weigh in favor of approval, even when low number of objectors in large class, when "those who did object did so quite vociferously"); Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1532 (2004). It is typically not worth the average citizen's time or money to object: the slight likelihood that one additional objection will be decisive, when multiplied by the slight increase in an individual class member's payout that such an objection would produce, makes individually-funded objections a losing proposition. *Compare id.* at 1561 ("Common sense indicates that apathy, not decision, is the basis for inaction"; class members who opt out are likely motivated less by technical legal analysis than by a distrust of or distaste for some aspect of the legal process).

The judge should act as a guardian for *all* class members — whether or not they have formally entered the case by registering an objection. "[T]he absence or silence of class parties does not relieve the judge of his duty and, in fact, adds to his responsibility." *Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*, 52 F.R.D. 373, 375 (D. Kan. 1971). Regrettably, the realm of the courtroom is, for many, mysterious and perhaps even a little frightening. Wayne Brazil, *For Judges: Suggestions About What to Say About ADR at Case Management Conferences — and How to Respond to Concerns or Objections Raised by Counsel*, 16 OHIO ST. J. ON DISP. RESOL. 165, 170 (2000) ("court procedures can

be intimidating and confusing to non-lawyers"). It doesn't matter whether the number of formal objectors to this settlement is one or tens of thousands: the settlement's proponents still have the burden to show the proposed settlement and the proposed fee award is fundamentally fair, adequate, and reasonable. That burden is too heavy for this settlement's advocates to carry.

IX.  **The Objection Furthers the Public Interest, Not Merely the Interest of the Objector.**

Objector Daniel Greenberg is senior counsel for the Center for Class Action Fairness LLC ("the Center"), a non-profit program of the 501(c)(3) DonorsTrust. The attorneys engaged by the Center represent consumers *pro bono* by, among other things, representing class members aggrieved by class action attorneys — particularly attorneys who negotiate settlements that benefit themselves at the expense of their putative clients. It has won millions of dollars for class members since its founding in 2009. *See, e.g.*, Rachel M. Zahorsky, "Unsettling Advocate," ABA J. (Apr. 2010); Allison Frankel, "Legal Activist Ted Frank Cries Conflict of Interest, Forces O'Melveny and Grant & Eisenhofer to Modify Apple Securities Class Action Deal," AMERICAN LAWYER LIT. DAILY (Nov. 30, 2010).

It is perhaps relevant to distinguish the Center's mission from the agenda of those who are often styled "professional objectors." A number of "professional objectors" are for-profit attorneys who attempt or threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of the attorneys' fees; thus, some courts presume that the objector's legal arguments are not made in good faith. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009), 1635-36. This is not the business model of The Center for Class Action Fairness. While the Center focuses on bringing objections to unfair class action settlements, it refuses to engage in *quid pro quo* settlements to extort attorneys; the Center has never settled an objection. In short, Greenberg brings this objection in good faith to protect the interests of the class.

## CONCLUSION

This settlement is generous to its advocates, but that generosity cannot be reconciled with class counsel's duty under Rule 23 (a)(4) to "fairly and adequately protect the interests of the class." Class counsel has neglected its fiduciary responsibilities in its production of this proposed settlement. This Court should attend to its own fiduciary responsibilities by rejecting it.


Dated: June 6, 2011

Respectfully submitted,
*/s/ Daniel Greenberg*

Daniel Greenberg (AR BAR 2007-193)
          *Pro hac vice* application pending
GREENBERG LEGAL SERVICES
CENTER FOR CLASS ACTION FAIRNESS LLC
55 Fontenay Circle
Little Rock, AR  72223

Tel. (501) 588-4245
DnGrnbrg@gmail.com



*/s/ Christopher M. Arfaa*

Christopher M. Arfaa (Pa. Bar No. 57047)
          Local counsel
LAW OFFICES OF CHRISTOPHER M. ARFAA, P.C.
150 N. Radnor Chester Rd., Suite F-200
Radnor, PA  19087

Tel. (610) 977-2001
Fax (610) 977-0043
carfaa@arfaalaw.com
