IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROL M. McDONOUGH, et al., | : | |
|     Plaintiffs, | : | |
| | : | CIVIL ACTION |
|         v. | : | |
| | : | NO. 06-242 |
| TOYS "R" US, INC. d/b/a BABIES "R" US, et al., | : | |
|     Defendants. | : | |

| | | |
|---|---|---|
| ARIEL ELLIOTT, et al., | : | |
|     Plaintiffs, | : | |
| | : | CIVIL ACTION |
|         v. | : | |
| | : | NO. 09-6151 |
| TOYS "R" US, INC. d/b/a BABIES "R" US, et al., | : | |
|     Defendants. | : | |

June _13__, 2011                                                             Anita B. Brody, J.

**MEMORANDUM**

On January 21, 2011, all Plaintiffs and Defendants entered into an agreement to settle these related antitrust class actions. After execution and preliminary approval by the Court, Defendant Regal Lager, Inc. ("Regal Lager") failed to make its required payment to the settlement fund. Plaintiffs now move to enforce the settlement agreement against Regal Lager. For the reasons that follow, I will grant Plaintiffs' motion and order Regal Lager to pay its settlement contribution.

**I. BACKGROUND**[1]

Plaintiffs bring these class actions on behalf of themselves and all consumers who purchased certain baby products from Babies "R" Us stores during specified time periods. On July 15, 2009, I certified five subclasses in the *McDonough* class action. The only subclass relevant to Regal Lager was defined as: "All persons who directly purchased any BabyBjörn baby carrier distributed by Regal Lager from Babies 'R' Us within the U.S. for the period February 2, 2000, to April 30, 2005." *McDonough v. Toys "R" Us*, 638 F. Supp. 2d 461, 492 (E.D. Pa. 2009); *McDonough* ECF No. 585.[2] On December 29, 2009, a related class action, *Elliott v. Toys "R" Us, Inc.*, was filed against most of the *McDonough* Defendants but not against Regal Lager.

On May 27, 2010, counsel informed the Court that they had reached an accord to settle both *McDonough* and *Elliott*. Counsel periodically updated the Court through January 2011 as the settlement was actively negotiated and eventually fully finalized in writing.

**A. The Executed Settlement Agreement**

On January 21, 2011, all parties in both actions executed a thirty-four page settlement agreement ("the Agreement"). In doing so, the parties stated that they "intend to be, and shall be, bound by this Agreement upon its execution . . . ." Pls.' Mem. Supp. Mot. Prelim. Approval Class Settlement, Ex. 1 ¶ 4, *McDonough* ECF No. 699-1, *Elliott* ECF No. 39-1 [hereinafter "Agr."]. The parties stipulated for settlement purposes to the certification of subclasses, the

---

[1] The nature of the antitrust action against Defendant Regal Lager is not discussed at length here as it is familiar to the parties and has been previously discussed at *McDonough v. Toys "R" Us*, 638 F. Supp. 2d 461 (E.D. Pa. 2009).

[2] References to the docket in civil action 06-242 are titled "*McDonough* ECF No." and references to the docket in civil action 09-6151 are titled "*Elliott* ECF No."

designation of class representatives, and the appointment of class counsel. *Id.* ¶ 2. The Agreement states that "each Defendant shall pay the portion of the Settlement Amount to be contributed by that Defendant" to an escrow account by a certain date. *Id.* ¶ 11; *see also id.* ¶ 17 (referring to payment as "required"). In exchange for this consideration, and upon the "payment of the Settlement Amount," Plaintiffs agreed to release all related claims against that Defendant regarding the baby product sales that are the subject of these actions. *Id.* ¶ 10. Collectively, Defendants were to pay $35,000,000.00 into the settlement fund. *Id.* ¶ 1(gg).

After execution, the Agreement provides that it can only be rescinded in accordance with Section X. *Id.* ¶¶ 4, 13. Section X first provides that both Plaintiffs and Defendants shall have the option to rescind the Agreement in its entirety if the Court declines to approve the Agreement, if the Court declines to enter Final Judgment in substantially the same form as proposed by the parties, or if the Court approves provisions that vary in a material way from that proposed. *Id.* ¶ 37.

The next paragraph provides circumstances upon which the "[t]he Agreement can also be terminated by Plaintiffs." *Id.* ¶ 38. Plaintiffs have the right to "terminate and cancel the Settlement Agreement in its entirety" if a defendant failed to make its payment into escrow or if a defendant filed for bankruptcy and the trustee rejected the Agreement. *Id.* ¶ 38(a). If Plaintiffs elect to terminate the Agreement in accordance with this provision, they must do so in writing and "the parties shall return to their respective rights." *Id.* ¶ 38(b). If one of those two described events occurs but Plaintiffs do not elect to terminate the Agreement in its entirety, the contract provides the following:

> Plaintiffs and all Class Members shall maintain all of their claims and rights

    against the Defendant(s) that either did not pay into escrow its/their contribution
    . . . or rejected the Settlement Agreement, and, the Settlement Agreement shall be
    deemed amended to: (i) eliminate any such Defendant(s) from the terms of the
    release and from the dismissal of any of the claims in this Litigation; and (ii)
    reduce the Settlement Amount by the amount of any such Defendant(s)' unpaid
    contribution.

*Id.*

    The parties choose Pennsylvania law to govern the terms of the Agreement. *Id.* ¶ 46. They also stipulated that this Court "shall retain exclusive jurisdiction over all matters relating to the implementation and enforcement of this Agreement." *Id.* ¶ 47.

    **B. Preliminary Approval by the Court**

    On January 25, 2011, I held a hearing on preliminary approval of settlement. Plaintiffs' motion for approval was accompanied by the Agreement, executed by all parties. On the record at the hearing, all parties confirmed that they agreed to the terms of the Agreement. On January 31, 2011, I preliminarily approved the settlement, consolidated the actions for the purpose of settlement, preliminarily certified eight subclasses, and ordered Defendants "to make their respective contributions to the Settlement Fund provided for by the Settlement Agreement." Order Preliminarily Approving Settlement and Providing for Notice, *McDonough* ECF No. 706, *Elliott* ECF No. 49. The definition of the subclass involving Regal Lager remained the same as that certified in July 2009. The parties later amended the Agreement to provide additional time for Defendants to make payments.

    Regal Lager did not make its required payment. Spector Decl. ¶¶ 9-11, *McDonough* ECF No. 726, *Elliott* ECF No. 64. Plaintiffs now move to enforce the Agreement against Regal Lager. Pls.' Mot. Enforce, *McDonough* ECF No. 725, *Elliott* ECF No. 63. Regal Lager opposes the motion. Def. Regal Lager, Inc.'s Opp'n, *McDonough* ECF No. 728.

**II. DISCUSSION**

Plaintiffs ask me to enforce the Agreement and award sanctions to Plaintiffs in the form of attorney's fees related to the filing of their motion to enforce. In its opposition, Regal Lager argues that after it failed to make its payment, Plaintiffs partially terminated the Agreement, that they eliminated Regal Lager from the Agreement, and that Plaintiffs no longer have an enforceable contract with Regal Lager.

### A. Whether the Agreement Was Terminated as to Regal Lager

The crux of the instant dispute is the enforceability of the parties' settlement agreement. Regal Lager does not dispute that it executed the Agreement, and there is no factual dispute that an enforceable agreement was created between the parties in January 2011. It is also undisputed that the Agreement required Regal Lager to pay into the settlement fund in March 2011, and it is further undisputed that Regal Lager has not made its payment. Rather, Regal Lager believes that its failure to pay into the settlement fund operates such that Plaintiffs terminated the Agreement against Regal Lager. Plaintiffs respond that the Agreement gives no such right to a Defendant to unilaterally terminate the Agreement simply by deciding not to pay its required contribution.

Settlement agreements are interpreted in accordance with principles of contract law. *Welch & Forbes, Inc. v. Cendant Corp.*, 233 F.3d 188, 193 (3d Cir. 2000). In Pennsylvania, the "fundamental rule of contract interpretation is to ascertain the intent of the contracting parties." *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 481 (Pa. 2006). Where the contract is written, the intent of the parties is determined by examining the writing itself. *Id.* The agreement must be interpreted as a whole, and words must be given their ordinary meaning. *Pines Plaza Bowling, Inc. v. Rossview, Inc.*, 145 A.2d 672, 676 (Pa. 1958). When the terms of a

contract are clear and unambiguous, extrinsic evidence of the parties' intent will not be considered. *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986).

      The thirty-four page Agreement can be crudely summarized as a compromise in which Plaintiffs promised to release the Defendants from claims relating to certain baby products in exchange for Defendants' promise to make payments to the settlement fund. After execution, the Agreement unequivocally provides that it may only be terminated pursuant to the terms stated in Section X–that is, paragraphs 37 through 39. Agr. ¶¶ 4, 13. Paragraph 37 describes circumstances in which either party may rescind the Agreement; none are relevant today. Paragraph 38 provides that the occurrence of either of two additional events would give the Plaintiffs, only, the option to terminate the Agreement. *Id.* ¶ 38 ("The Agreement can also be terminated by Plaintiffs under the following circumstances . . . ."). Relevant to the current circumstances, Plaintiffs would have the right to "terminate and cancel the Settlement Agreement in its entirety" if a Defendant failed to make its payment into escrow. *Id.* ¶ 38(a). If Plaintiffs elect to terminate the Agreement, "they must do so in writing by filing with the Court a notice thereof with service upon counsel of record for all parties." *Id.* ¶ 38(b). If a Defendant did not pay but Plaintiffs did not terminate the Agreement, Plaintiffs and class members would "maintain all of their claims and rights against" the nonpaying Defendant and the Agreement would be "amended to: (i) eliminate any such Defendant(s) from the terms of the release and from the dismissal of any of the claims in this Litigation; and (ii) reduce the Settlement Amount by the amount of any such Defendant(s)' unpaid contribution." *Id.*

Applying these terms to the instant dispute does not reveal any ambiguity in the contract.[3] In signing the Agreement, Regal Lager promised to make payment into an escrow account. Plaintiffs agreed that, upon Regal Lager's payment, it promised to release Regal Lager from certain claims. *Id.* ¶ 10. Regal Lager cannot point to any provision that made its payment optional; therefore, Regal Lager was contractually required to make its payment.

When Regal Lager failed to pay, paragraph 38(a)(i) allowed–but did not require–Plaintiffs to terminate and cancel the entire Agreement, i.e., with all of the Defendants. Plaintiffs did not exercise their right to do so, as they did not file the required notice. *See id.* ¶ 38(b).[4] When Plaintiffs decided not to terminate the Agreement, paragraph 38(b) allowed–but it did not require–Plaintiffs to seek enforcement of the Agreement against Regal Lager. The contract further provides that only Plaintiffs are excused from performance in the event of a material breach by a Defendant. When Regal Lager failed to pay and after Plaintiffs did not terminate the Agreement, paragraph 38(b) amended the Agreement so that Plaintiffs were no longer required to include Regal Lager in the release of claims. The same provision also amended the settlement fund amount to accurately reflect to class members the actual contributions made by the non-breaching Defendants.

---

[3] Regal Lager does not offer any evidence to show that, at some time in the eight months spent negotiating the Agreement, the parties intended paragraph 38 to have the meaning that Regal Lager now proposes. As the contract language is unambiguous, I will not solicit or consider extrinsic evidence of the parties' subjective intentions.

[4] Plaintiffs' motions to amend notice to the class did not constitute such notice because they explicitly stated that they were not terminating the Agreement. Pls.' Expedited Mot. Am. Notice 2, *McDonough* ECF No. 711, *Elliott* ECF No. 56 ("Plaintiffs have elected not to terminate the entire agreement."); Pls.' Mot. Am. Notice 2, *McDonough* ECF No. 713, *Elliott* ECF No. 58 (same).

There is simply no way to understand paragraph 38 as Regal Lager urges: that these amendments were intended to force Plaintiffs to "partially terminate" the Agreement as to a breaching defendant and free that defendant from any obligations it had under the Agreement. Def. Regal Lager, Inc.'s Opp'n 3.  The contract clearly states it may only be terminated pursuant to Section X, and while Section X provides for termination of the contract in its entirety, nowhere does it describe a method of "partial" termination.

Regal Lager argues that, when the contract states that it is "amended" to "eliminate" a nonpaying Defendant "from the terms of the release and from the dismissal of any of the claims in this Litigation," it means that the Agreement is, in effect, partially terminated as to the Defendant and is no longer enforceable against it.  Agr. ¶ 38(b).  Regal Lager's reading confuses the distinct concepts of a release and a settlement agreement.  The terms of paragraph 38 clearly *punish* a nonpaying defendant by eliminating that defendant from receiving the benefit of a release from liability.  They do not, as Regal Lager would like, *reward* a nonpaying Defendant by eliminating that Defendant from its obligations under the Agreement.  In contract law, this provision makes each Defendant's payment a condition precedent to the duty of the Plaintiffs to release that Defendant from liability.

Regal Lager's argument is not only completely unsupported by the language of paragraph 38, but it is also clearly unreasonable in light of the contract as a whole.  This interpretation would extinguish the central bargain of a contract that the parties vigorously negotiated over many months. Under this reading, if a Defendant failed to make its promised payment, Plaintiffs would have only two choices: (1) to terminate the entire Agreement as to all Defendants or (2) to partially terminate the Agreement as to the breaching Defendant.  Neither option would allow

Plaintiffs to enforce any Defendant's promise to make a payment. *See id.* (providing that if the contract is terminated in its entirety, "the parties shall return to their respective rights and shall seek a scheduling conference with the Court"); Def. Regal Lager, Inc.'s Opp'n 3 (arguing that Plaintiffs have partially terminated the contract and "Plaintiffs' remedy is to proceed to trial and continue with the claims of the antitrust litigation"). Under this odd construction, Defendants' promise to pay would be illusory. Despite having "settled" the lawsuit after eight vigorous months of negotiation, pursuant to Regal Lager's version, any and all of the Defendants could simply decide not to pay and Plaintiffs would be forced to resume litigation as though no agreement had ever been reached.[5] *Cf. Huttenstine v. Mast*, 537 F. Supp. 2d 795, 801 (E.D.N.C. 2008) ("Defendants' interpretation of the Stipulation did not obligate them to do anything: under their reading, Defendants could decide, on a whim, not to pay the Settlement Amount. Such a reading is not tenable, as it would render the Stipulation to be nothing more than an illusory contract.").

In sum, while the Agreement defines certain termination methods, the Agreement was not terminated in accordance with any of those methods. Regal Lager is still party to the Agreement and has obligations pursuant to its contract.

### B. Enforcement of the Agreement

Having found that a binding contract exists, I turn now to enforcement.[6] "Where a

---

[5] After deciding not to pay its contribution, Regal Lager filed motions for summary judgment regarding the merits of the litigation.

[6] "[A] district court generally has jurisdiction to enforce a settlement agreement entered into under its aegis . . . ." *Hobbs & Co. v. Am. Investors Mgmt.*, 576 F.2d 29, 33 (3d Cir. 1978); *see Fox v. Consol. Rail Corp.*, 739 F.2d 929, 932 (3d Cir. 1984). There is no question of my continuing jurisdiction over this dispute; the settlement was entered on the record, payment has

settlement agreement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement." *Step Plan Servs., Inc. v. Koresko*, 12 A.3d 401, 408-09 (Pa. Super. Ct. 2010). "A settlement agreement will not be set aside absent a clear showing of fraud, duress or mutual mistake." *Felix v. Guiseppe Kitchens & Baths, Inc.*, 848 A.2d 943, 947 (Pa. Super. Ct. 2004). While a settlement agreement in a class action is also subject to the restrictions of Rule 23, that fact does not diminish the agreement's enforceability as a binding contract. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 596 (3d Cir. 2010).

I will enforce the contract terms because Regal Lager has failed to identify a legally acceptable excuse for its failure to perform.[7] Regal Lager cannot point to any provision that justified its nonpayment, and it is therefore clear that Regal Lager breached the Agreement. While Regal Lager submits a declaration describing its financial difficulties, Lager Decl., *McDonough* ECF No. 729, financial uncertainty is insufficient to excuse a business from fulfilling its contractual obligations. *See, e.g.*, *Felix*, 848 A.2d at 948 ("It is well settled that the financial inability of a party to complete obligations under a settlement is not a basis for voiding the settlement."). This is especially so when, as here, such difficulty was foreseeable at the time of contract. Def. Regal Lager, Inc.'s Opp'n 8 ("Regal Lager's failure to make its contribution by the March 4 deadline was not the product of some frivolous whim. In fact, since August 2007, Plaintiffs had specific and documented knowledge of Regal Lager's financial limitations.")

---

already been ordered by the Court, and the claims against Regal Lager were not dismissed.

[7] Regal Lager suggests that the Agreement cannot be enforced because the contract does not expressly provide that specific enforcement is the remedy for breach. Def. Regal Lager, Inc.'s Opp'n 2, 5 n.5. Such a specific provision is clearly not required; district courts routinely enforce settlement agreements entered into by litigants in cases pending before them. *See supra* note 2.

(citing Martin Decl. ¶ 6). Even if Regal Lager now feels its "decision to settle was improvident in hindsight, the decision has been made and cannot be revisited." *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 275 (3d Cir. 2002); *see Brokers Title Co. v. St. Paul Fire & Marine Ins. Co.*, 610 F.2d 1174, 1181 (3d Cir. 1979) ("The essence of contract law is the objective intent of the parties and when there has been no allegation of mistake, fraud, overreaching or the like, it is not the function of the court to redraft a contract to be more favorable to a given party than the agreement he chose to enter.").

### **C.** **Sanctions**

Plaintiffs also request that the Court order Regal Lager to pay Plaintiffs' attorney's fees and costs incurred in filing the motion to enforce the Agreement. Pls.' Mot. Enforce 1. I will deny this request on the present record.[8]

### **III. CONCLUSION**

For the above reasons, I will grant in part and deny in part Plaintiffs' motion to enforce the settlement agreement against Defendant Regal Lager. I will grant the motion to enforce but deny the request for attorney's fees.

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:        Copies **MAILED** on _____ to:

---

[8] While Regal Lager offers a misguided interpretation to escape its contractual obligations, Plaintiffs' allegations regarding its conduct are not so egregious as to warrant sanctions at this time. Furthermore, while federal courts have inherent power to issue sanctions for abusive litigation practices undertaken in bad faith, a "trial court should avail itself of its inherent sanctioning power only when absolutely necessary." *Klein v. Stahl GMBH & Co.*, 185 F.3d 98, 109 (3d Cir. 1999).