**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CAROL M. MCDONOUGH, *et al.*, | No. 2:06-cv-0242-AB |
| Plaintiffs | |
| v. | |
| TOYS "R" US, INC., d/b/a Babies "R" Us, *et al.*, | |
| Defendants. | |
| ARIEL ELLIOTT, *et al.*, | No. 2:09-cv-06151-AB |
| Plaintiffs | |
| v. | |
| TOYS "R" US, INC., d/b/a Babies "R" Us, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' RESPONSE TO OBJECTIONS TO THE**
**PROPOSED SETTLEMENT AGREEMENT AND ORDER**

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ...................................................................................................1

    A.    The Objection of Kevin Young .................................................3

        1.    The Center for Class Action Fairness is Improperly Using this Court as a Forum to Advance its Political Agenda............................3

        2.    Reasonableness of Attorneys' Fees........................................6

        3.    The Cy Pres Component of the Settlement Agreement is Appropriate......................................................10

        4.    Adequacy of Notice...............................................................11

        5.    The Time Frame for Payment of Attorneys' Fees is Reasonable .............12

        6.    The "Clear Sailing" Clause is not Improper .............................12

    B.    The Objection of Allison Lederer .......................................13

        1.    Nondisclosure of Amounts Paid by Individual Defendants....................13

        2.    Class Counsel Will Not Receive One Cent in Fees from the Babyage.com, Inc., et al v. Toys 'R' Us, Inc., et al Settlement, and Such Allegations are Entirely Without Grounds............14

        3.    Reasonableness of Attorneys' Fees .......................................15

        4.    Reasonableness of Attorneys' Expenses .................................15

        5.    Adequacy of Notice................................................................16

    C.    The Objection of Yossi Zarfati ..........................................16

    D.    The Objection of Clyde Farrel Padgett ...............................17

        1.    Reasonableness of Attorneys' Fees and Expenses ...................17

        2.    Reasonableness of Incentive Fees to Named Class Representatives ........18

        3.    The Settlement is a Great Success for Plaintiffs, and this Action was not Settled "On the Cheap" ...................18

        4.    The Cy Pres Component of the Settlement Agreement is Appropriate.....19

E.     The Objection of Shawn Golden ...............................................................19

F.     The Objections of Kelly Spann, Jennifer Popiel and Mathilda Fenton ...............20

       1.     Reasonableness of Attorneys' Fees ...........................................20

       2.     Class Counsel's Representation of Subclasses is Appropriate ...............20

G.     The Objection of Greg Bryan .............................................................21

       1.     Statement on Settlement Website...............................................21

       2.     The Proposed Allocation Order Provides
           for the Resolution of Unclaimed Funds.....................................22

       3.     The Settlement Agreement Does Not Limit
           Class Members' Rights in Unrelated Actions.............................22

H.     The Objection of Christopher D. Pericone..........................................22

I.     The Objection of Clark Hampe...........................................................23

       1.     Adequacy of Notice...............................................................23

       2.     Class Counsel's Representation of Subclasses is Appropriate ...............24

       3.     The Settlement Amount is Not Inadequate...............................24

       4.     Reasonableness of Attorneys' Fees ...........................................24

J.     The Objection of Maria Sierotowicz...................................................25

CONCLUSION...........................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Auto. Refinishing Paint Antitrust Litig.*,
MDL No. 1426, 2008 U.S. Dist LEXIS 569 (E.D. Pa. Jan 3, 2008)....................................7, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................................18

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .............................................................................................................7

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005) ................................................................................................7

*In re Corel Corp. Sec. Litig.*,
293 F. Supp. 2d 484 (E.D. Pa. 2003) (Brody, J.) ............................................................2, 8

*Cullen v. Whitman Med. Corp.*,
197 F.R.D. 136 (E.D. Pa. 2000) (Brody, J.) ......................................................................8

*In re Diet Drugs (Phentermine / Fenfluramine / Dexfenfluramine) Prod. Liab. Litig.*,
582 F.3d 524 (3d Cir. 2009) .............................................................................................8, 9

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ..........................................................................................................6, 7

*Feder v. Elec. Data Sys. Corp.*,
248 Fed. Appx. 579 (5th Cir. 2007) ...................................................................................25

*First State Orthopaedics v. Concentra, Inc.*,
534 F. Supp. 2d 500 (E.D. Pa. 2007)..................................................................................17

*In re Flat Glass Antitrust Litig.*,
191 F.R.D. 472 (W.D. Pa. 1999)........................................................................................20

*Gates v. Rohm & Haas Co.*,
No. 06-17432011, 2011 U.S. Dist. LEXIS 30730 (E.D. Pa. Mar. 24, 2011) .......................10

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ................................................................................................7

*Hall v. Best Buy Co.*,
No. 07-cv-4754, 2011 U.S. Dist. LEXIS 31220 (E.D. Pa. Mar. 24, 2011) ..........................18

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ............................................................................. 15, 16, 17

*Hunt v. Imperial Merchant Servs., Inc.*,
560 F.3d 1137 (9th Cir. 2009), *cert. denied, Imperial Merch. Servs. v. Hunt*, 130 S.
Ct. 154 (2009) .............................................................................................................. 7

*In re Ins. Brokerage Antitrust Litig.*,
579 F.3d 241 (3d Cir. 2009) ...................................................................................... 14

*Jermyn v. Best Buy Stores, L.P.*,
No. 08-cv-00214(CM), 2010 U.S. Dist. LEXIS 130682 (S.D.N.Y. Dec. 6, 2010) ............... 7

*Lazy Oil Co. v. Witco Corp.*,
166 F.3d 581 (3d Cir. 1999) ................................................................................. 16, 17

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
551 U.S. 877 (2007) .............................................................................................. 9, 18, 19

*In re Linerboard Antitrust Litig.*,
MDL No. 1261, 2008 U.S. Dist. LEXIS 77739 (E.D. Pa. Oct. 3, 2008) .......................... 11

*Malchman v. Davis*,
761 F.2d 893 (2d Cir. 1985) ...................................................................................... 13

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
No. 08-cv-285(DMC), 2010 U.S. Dist. LEXIS 12344 (D.N.J. Feb. 9, 2010) ................... 20

*O'Keefe v. Mercedes-Benz United States, LLC*,
214 F.R.D. 266 (E.D. Pa. 2003) ............................................................................... 3, 5

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) ..................................................................................................... 7

*Phillips Petrol. Co. v. Shutts*,
472 U.S. 797 (1985) ..................................................................................................... 7

*In re Prudential Ins. Co. Sales Prac. Litig.*,
177 F.R.D. 216 (D.N.J. 1997) ............................................................................. 11, 12, 24

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ...................................................................................... 13

*The Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*,
No. 03-4578, 2005 U.S. Dist. LEXIS 9705 (E.D. Pa. May 20, 2005) ............................ 19

*In re UnitedHealth Group Inc. PSLRA Litig.*,
643 F. Supp. 2d 1107 (D. Minn. 2009) ....................................................................... 3, 4

*In re Wal-Mart Wage & Hour Empl. Pracs. Litig.*,
    2:06-cv-00225-PMP, 2010 U.S. Dist. LEXIS 21466 (D. Nev. Mar. 8, 2010)........................4

*Weinberger v. Great Northern Nekoosa Corp.*,
    925 F.2d 518 (1st Cir. 1991) ...........................................................................13

## OTHER AUTHORITIES

Fed.R.Civ.P. 11 ..............................................................................................15

Fed.R.Civ.P. 23 ...........................................................................................4, 7

Fed.R.Civ.P 23(a)(4) ..............................................................................12, 20

Fed.R.Civ.P. 23(b)(3) ....................................................................................23

Fed.R.Civ.P. 23(c)(2)(B) ...............................................................11, 23, 24

Fed.R.Civ.P. 23(d)(2) ....................................................................................25

Fed.R.Civ.P. 23(e)..........................................................................................14

Fed.R.Civ.P. 23(e)(1) .....................................................................................11

## MISCELLANEOUS

3 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS (4th ed. 2002).......11, 25

Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket
    Guide for Judges* ...........................................................................................3

Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623, 1641
    (2009) ............................................................................................................12

## INTRODUCTION

On January 31, 2011, this Court granted Plaintiffs' Motion for Preliminary Approval of Class Settlement, for Certification of Settlement Classes and for Permission to Disseminate Class Notice ("Motion for Preliminary Approval"). The Preliminary Approval Order preliminarily approved Plaintiffs' Settlement[1] with Defendants Toys "R" Us, Inc., Babies "R" Us, Inc. Toys "R" Us-Delaware, Inc. (collectively, "BRU" or "Babies "R" Us"), BabyBjörn AB ("BabyBjörn"), Britax Child Safety, Inc. ("Britax"), Kids Line, LLC ("Kids Line"), Maclaren USA, Inc. ("Maclaren"), Medela, Inc. ("Medela") and Peg Perego U.S.A., Inc. ("Peg Perego") (collectively, "Settling Defendants"), and Regal Lager, Inc. ("Regal Lager").[2] Pursuant to the terms of the Settlement Agreement, Class Counsel provided Notice of the Settlement to the Members of the Class. The Notice provided clear instructions as to how the respective Class Members could object to the Settlement.

On May 24, 2011, Plaintiffs filed their Motion for Award of Attorneys' Fees, Expenses, and Incentive Awards for Named Plaintiffs ("Attorneys' Fees Motion"), which sets forth Class Counsel's request for attorneys' fees in the amount 33-1/3% of the total settlement amount, plus expenses and incentive awards for the Named Class Representatives. The amount of requested fees represents a negative multiplier of 0.36 of the lodestar fees actually expended by Class Counsel in the prosecution of this action.

---

[1] All capitalized terms in this Response shall have the same meaning as defined in the Settlement Agreement.

[2] Regal Lager failed to make its agreed upon contribution to the Settlement Fund after this Court preliminarily approved the Settlement, and breached the Settlement Agreement, and as a result, the Settlement Amount was reduced from $35,500,000.00 to $35,240,000.00, and no claims against Regal Lager have been released. Plaintiffs filed a Motion to Enforce Settlement Agreement against Regal Lager (*McDonough* Dkt. No. 725, *Elliott* Dkt. No. 63), which was granted in part and denied in part by this Court on June 13, 2011 (*McDonough* Dkt. No. 758, *Elliott* Dkt. No. 82). Regal Lager is now obligated to make its contribution to the Settlement Fund by June 27, 2011.

Notice of the Class Settlement was sent by direct mail and electronic mail to approximately 1.3 million potential class members and notice of the settlement was published in the media nationwide. *See* Declaration of Jeanne C. Finegan of the Garden City Group, Exhibit 2 to Plaintiffs' Memorandum in Support of Motion for Preliminary Approval ("Finegan Decl."). Of these enormously populous classes, **only nine**[3] purported Class Members and one non-class member submitted objections to the Settlement Agreement and/or the Attorneys' Fees Motion, and one Class Member objected solely to the $2,500.00 incentive award requested to be paid to the Class Representatives (collectively, the "Objections"). Clearly and overwhelmingly the members of the Class have not voiced any objection to the Settlement. *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, at 491 and 495 (E.D. Pa. 2003) (Brody, J).

Moreover, of those nine objectors, three are represented by "professional objectors" – a breed of attorneys who make a living by filing boilerplate objections in the hope that they will be compensated in return for allowing the settlement to proceed. The Crosley Law Firm, representing Mr. Golden, has filed objections to at least three other cases in the last five years.[4] Lacy, Price & Wagner PC, representing Ms. Lederer, has filed at least one other objection to a class settlement in the past year.[5] Mr. Padgett, objecting *pro se*, has filed at least four objections

---

[3] In his Objection, Mr. Young argues that this Court should not view the dearth of Objectors as an indication that the majority of the Class is pleased with the Settlement. (Young Objection at 24-26). Considering the fact that millions of people were notified by direct mail, electronic mail, magazine ads, text messages, internet banner ads, a website, and a toll-free telephone line (Finegan Decl. at ¶ 13), this would indeed be a correct conclusion to draw. As this Court has noted, the lack of objections to such a large class is "some measure of the strength of the opposition." *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 490-91 (E.D. Pa. 2003) (Brody, J.).

[4] *Lubitz v. Daimlerchrysler Corp.*, 2006 WL 3780789 (N.J. Super. Ct. Dec. 21, 2006) (listing Thomas A. Crosley as attorney of record for objectors Britta W. Strickland and Andrew Rodriguez); *In re Bridgestone/Firestone Tire Cases*, Nos. JC 4266, 4270 (Cal. Sup. Ct. Apr. 8, 2008), *see* http://www.saccourt.ca.gov/coordinated-cases/ford-explorer/docs/index.pdf; *Am. Med. Ass'n v. Met. Life Ins. Co.*, Objection by Samantha Rodriguez, No. 1:00-cv-2800, Dkt. 505 (S.D.N.Y. Aug. 31, 2010)

[5] *In re Lawnmower Engine Horsepower Marketing & Sales Prac. Litig.*, No. 20:08-md-1999, Dkt. 301 (E.D.Wis. (continued…)

to class settlements in recent years.[6]  Finally, as described below, Mr. Young is represented by an ideological group on a mission to disrupt and destroy the class action process.  For obvious reasons, courts are learning to view such professional objections with suspicion.  *See, e.g.,* *O'Keefe v. Mercedes-Benz United States, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003) ("Federal courts are increasingly weary of professional objectors: Some of the objections were obviously canned objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests");  *In re UnitedHealth Group Inc. PSLRA Litig.*, 643 F. Supp. 2d 1107, 1109 (D. Minn. 2009) (the goal of professional objectors is "to hijack as many dollars for themselves as they can wrest from a negotiated settlement").  The Federal Judicial Center has warned judges to "[b]e wary of self-interested professional objectors who often present rote objections to class counsel's fee requests and add little or nothing to fee proceedings."  Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges*, Federal Judicial Center, 2005.

### A.   <u>The Objection of Kevin Young</u>

**1.**   *The Center for Class Action Fairness is Improperly Using this Court as a Forum to Advance its Political Agenda*

Objector Kevin Young is represented by Daniel Greenberg of a corporation that goes by

---

(…continued)

June 4, 2010).

[6] *Zwicker v. Gen. Motors. Corp.*, No. C07-0291-JCC, Dkt. 150 (W.D. Wash. Oct. 20, 2008); *In re Mattel, Inc. Toy Lead Paint Prod. Liab. Litig.*, No. 2:07-cl-01897, Dkt. 240 (C.D. Cal. Mar. 8, 2010); *Gemelas v. Dannon Co.*, No. cv-08-236, Dkt. 61 (N.D. Ohio May 24, 2010); *In re Lawnmower Litig.*, No. 20:08-md-1999, Dkt. 304 (E.D. Wis. June 7, 2010).

the name Center for Class Action Fairness LLC ("CCAF").[7]

CCAF describes its mission as being "tort reform" – often interpreted as the reduction of the number of class actions prosecuted in the United States.[8]  This supposed "non profit" has filed several objections to attorneys' fees awards in class action settlements over the last few years, all seeking to reduce the amount of attorneys' fees awarded to class counsel.[9]   These are among the new industry of professional objectors – and here the goal is to eliminate Rule 23 rights regardless of the underlying merits of the action.  *See, e.g.*, *In re Wal-Mart Wage & Hour Empl. Pracs. Litig.*, 2:06-cv-00225-PMP, 2010 U.S. Dist. LEXIS 21466 (D. Nev. Mar. 8, 2010) (requiring professional objector to post Rule 7 bond);  *In re UnitedHealth Group Inc.*, 643 F. Supp. 2d at 1108 (disparaging the practice of professional objection).  CCAF's objective is clear: if they can successfully reduce enough attorneys' fees, presumably fewer class actions will be brought.  Of course, this motive is at direct odds with the interests of those who use the class

---

[7] It is unclear how Mr. Young came to be represented by CCAF, however, it should be noted that on April 18, 2011, CCAF's founder, Ted Frank, posted a message on the CCAF website that included the following solicitation: "Of course, the Center for Class Action Fairness, LLC, is happy to represent *pro bono* class members who don't want to see their recovery diminished by excessive fee requests and illegal *cy pres* slush funds for the attorneys. (Please remember that commenting to this post is not a good way to contact me unless you leave your contact information, which Blogger does not automatically provide me. You may prefer to just send me an email.)"  *See* "Babies 'R' Us baby products antitrust class action settlement: McDonough v. Toys 'R' Us," posted at http://centerforclassactionfairness.blogspot.com/2011/04/babies-r-us-baby-products-antitrust.html, (Accessed on April 18, 2011), attached hereto as Exhibit A.  Apparently aware that such solicitation could raise questions, the language quoted herein has since been removed from this post on the CCAF website, though no mention of the revision is apparent on the post as it presently appears.  *See* "Babies 'R' Us baby products antitrust class action settlement: McDonough v. Toys 'R' Us," posted at http://centerforclassactionfairness.blogspot.com/2011/04/babies-r-us-baby-products-antitrust.html, (Accessed on June 6, 2011), attached hereto as Exhibit B.

[8] *See* Center For Class Action Fairness, available at http://centerforclassactionfairness.blogspot.com/, describing Ted Frank, CCAF's founder as a "leading tort-reform advocate."

[9] *See, e.g.*, *In re Apple Inc. Sec. Litig.*, No. C-06-5208, Dkt. 136 (N.D. Cal. Nov. 5, 2010); *In re Classmates.com Consol. Litig.*, No. C09-00045-RAJ, Dkt. 102 (W.D. Wash. Nov. 18, 2010); *In re HP Inkjet Printer Litig.*, No. C-5-3580, Dkt. 263 (N.D. Cal. Dec. 30, 2010); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, MDL No. 03-1532, Dkt. 1138 (D. Me. Jan. 28, 2011); *In re Motor Fuel Temperature Sales Prac. Litig.*, No. 07-md-1840, Dkt. 1783 (D. Kan. Feb. 18, 2011); *Sobel v. The Hertz Corp.*, No. 3:06-cv-00545, Dkt. 205 (D. Nev. Apr. 7, 2011); *Cobell v. Salazar*, No. 1:96-cv-01285, Dkt. 3782 (D.D.C. May 31, 2011).

process to vindicate their substantive law rights.  Unlike objectors who seek to improve class recoveries or settlement terms, CCAF's agenda is to prevent law suits enforcing the substantive law to be brought at all.

The Young Objection is, for all intents and purposes, an inaccurate argument having little factual predicate with this case or with the Settlement.  The following examples demonstrate Mr. Greenberg's failure to object based on the actual circumstances of *this* case:

- The Young Objection refers to this as a "coupon settlement," *see* Young Objection at 23-24, however the Settlement Agreement clearly states that Defendants are to pay U.S. Dollars.  *See* Settlement Agreement, ¶¶ 1(ee), 11;

- The Young Objection further states that in the event this Court awards Class Counsel a smaller fee than requested, any excess funds would revert to the Defendants, *see* Young Objection at 24, however the Settlement Agreement specifically provides that under no circumstances can any portion of the Settlement Fund revert to Defendants after the Settlement becomes Final.  *See* Settlement Agreement, ¶ 20; and

- The Young Objection claims that this Settlement was reached pre-class certification, *see* Young Objection at 3, 23, however, the Settlement Agreement plainly discloses that on or about July 15, 2009, this Court certified the *McDonough* Subclasses.  *See* Settlement Agreement, at 2, Recital E.

These are precisely the type of obvious "canned objections" that this Court has previously noted are "generic, unhelpful protests."  *O'Keefe*, 214 F.R.D. at 295 n.26.

Indeed, Mr. Greenberg seems to have simply lifted facts and arguments from one of CCAF's several other objections.  For example, the language noted above regarding a "coupon

settlement" and purported fee reversion appears to have been cut and pasted from objections in other cases. *Compare* Young Objection at 23, 24 *with* Objection to Proposed Settlement and Notice of Intent to Appear at Hearing at 23, 26, *Sobel v. The Hertz Corp.*, No. 3:06-cv-00545 (D. Nev. Apr. 7, 2011), attached hereto as Exhibit C.

Mr. Greenberg is more focused on politics than the facts of this particular case. *See, e.g.*, Young Objection at 21 (advancing the novel argument that – contrary to decades of case law – Class Counsel's Motion for Attorneys' Fees constitutes a breach of counsel's fiduciary duty to the class); *id.* at 27 (noting that the CCAF has a political agenda and is led by "Legal Activist" Ted Frank). Moreover, at one point, Mr. Greenberg identifies himself as the objector rather than counsel for Mr. Young, further demonstrating that it is Mr. Greenberg and CCAF that are truly the driving force behind the "Young" Objection. Young Objection at 27. This Court is not the appropriate audience for such blatant political posturing. CCAF's demonstrated political objectives, lack of diligence, and haphazardly constructed brief belie its purported ability to appropriately represent the class. The Court should be especially wary of this attempt to hijack the settlement process for the purpose of advancing a stated ideological agenda.

## 2.   *Reasonableness of Attorneys' Fees*

Mr. Young claims that Class Counsel's request for fees is unreasonable. Namely, Mr. Young argues that, by seeking an attorneys' fee of 33 -1/3% of the gross Settlement Amount, Class Counsel seeks one third of the expenses associated with the Notice and Claim Administration. Young Objection at 4, 5. Mr. Young argues that the Notice actually benefits the Defendants, and therefore they, not Plaintiffs, should bear the cost. *Id.* This argument is meritless as is his description of the actual transaction embodied in the Settlement Agreement. The Supreme Court has explicitly established that class action plaintiffs must "pay for the cost of notice as part of the ordinary burden of financing [their] own suit." *Eisen v. Carlisle &*

*Jacquelin*, 417 U.S. 156, 179 (1974); *see also Jermyn v. Best Buy Stores, L.P.*, No. 08-cv-00214(CM), 2010 U.S. Dist. LEXIS 130682 at *22-23 (S.D.N.Y. Dec. 6, 2010) (under *Eisen*, plaintiffs bear the cost of notice).[10] Such notice is required under Fed.R.Civ.P. 23 and is indeed a due process right of every class member, and therefore plaintiffs must make every effort to notify class members of a settlement. *See Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). Plaintiffs have certainly complied with this requirement. *See* Finegan Decl., *passim*.

With respect to Mr. Young's argument that the request for fees is unreasonable, many decades of case law support the "common fund" approach to awarding attorneys' fees and costs (including costs of notice and claim administration) in the class action context, and the Supreme Court has consistently endorsed using the "percentage of the fund" approach to attorneys' fees. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980); *see also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005) ("[A] private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fee," quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 n.39 (3d Cir. 1995)); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 U.S. Dist LEXIS 569, at *9-10 (E.D. Pa. Jan 3, 2008); *see generally* Attorneys' Fees Motion at 3-4.

---

[10] A court may, in its discretion, shift the cost of notice to the defendants *only if* the liability of the defendants has been determined on the merits, usually by summary judgment or trial. *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 359 (1978) ("[C]ourts must not stray too far from the principle underlying *Eisen IV* that the representative plaintiff should bear all costs relating to the sending of notice because it is he who seeks to maintain the suit as a class action."); *Hunt v. Imperial Merchant Servs., Inc.*, 560 F.3d 1137, 1139 (9th Cir. 2009), *cert. denied, Imperial Merch. Servs. v. Hunt*, 130 S. Ct. 154 (2009) (permitting cost-shifting to defendants when defendants' liability had been determined on the merits by summary judgment). Here, there has been no determination of liability on the merits, and therefore, Plaintiffs must bear the cost of Notice under *Eisen*. *See, e.g., Jermyn*, 2010 U.S. Dist. LEXIS 130682 at *22-23.

Mr. Young nevertheless argues that the request is "far outside of judicial norms," (Young Objection at 11) although, as set forth in the Attorneys' Fees Motion, this assertion is not an accurate description of the law. *See, e.g., In re Auto. Paint*, 2008 U.S. Dist. LEXIS 569, at \*9-10 (awarding requested fees of one third of the multi-million dollar settlement fund), *see generally* Attorneys' Fees Motion at 5 (citing several cases in which an attorneys' fee award of one third of the recovery was granted).[11]

The Young Objection ignores the law in this Circuit which addresses the two-step "lodestar cross-check" "as a means of assessing whether the percentage-of-recovery award is too high or too low." *In re Diet Drugs (Phentermine / Fenfluramine / Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 545 (3d Cir. 2009). Class Counsel's lodestar amount as of May 6, 2011 is $31,839,355.53. This reflects the total fees incurred in the prosecution of this complex and enduring litigation over five years, including several rounds of briefing, merits discovery, and trial preparation. *See* Attorneys' Fees Motion at 11-12; *see also*, Declaration of Plaintiffs' Class Counsel in Support of Plaintiffs' Motion for Final Approval of Settlement and Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards for Class Representatives, Exhibit 1 to Attorneys' Fees Motion. When the requested award of $11,746,667.00 is cross-checked against the May 6 lodestar a negative multiplier of 0.36 is produced. This is **well below** the range accepted in the Third Circuit. *See, e.g., In re Diet Drugs*, 582 F.3d at 545 (multiplier of 2.6 or 3.4 not unreasonably high); *In re Corel Corp.*, 293 F.Supp.2d at 497 (Brody, J.) (granting attorneys' fee award when multiplier was 1.03); *Cullen v.*

---

[11] In support of his argument, Mr. Young cites an expert report in an unrelated **securities** litigation class action, which focused exclusively on awards in exceptionally large settlements in certain securities class actions. Young Objection at 11. He then acknowledges that this data is **not applicable** to other class actions, but argues that this Court should buck precedent and apply the wholly different standard to this antitrust case. *Id.* This policy argument is completely out of place.

*Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) (Brody, J.) (approving multiplier of 2.04). Class Counsel prosecuted this case *at a loss*.

Finally, the Young Objection fails to consider the risk of nonpayment that Class Counsel accepted in deciding to continue to prosecute these claims over the last five years.[12] The law governing the standard of review for resale price maintenance agreements changed after the case was filed when the Supreme Court issued its decision in *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007). At the time this action was filed, resale price maintenance agreements were considered *per se* illegal under the Sherman Act, but the *Leegin* Court expressly overruled that precedent and changed the law, so that such agreements would be judged under a "rule of reason" analysis. *Id.* This shift in antitrust law made the Plaintiffs' case far more difficult to prove, and therefore increased the risk that Class Counsel would never recover any compensation for their representation. *See* Declaration of Eric L. Cramer, attached hereto as Exhibit D, at ¶ 6(b).

In reality, as set forth in the Attorneys' Fees Motion, Class Counsel's fee request is far from excessive. Class Counsel is seeking only a *fraction* of its total lodestar amount, which totaled over $31 million. Attorneys' Fees Motion at 12. Class Counsel seeks only $11,746,667.00. *Id.* at 1. In the course of this prosecution, Class Counsel devoted a total of 81,200.82 hours to prosecuting this action, and its fee request of one-third of the common fund only compensates for 36% of those hours. *Id.* at 8-9 (citing cases and articles showing that the average fee award is 32% of the common fund).

---

[12] Risk of nonpayment is one of the ten factors the Court must consider in determining whether a percentage fee award is reasonable. *See, e.g.*, *In re Diet Drugs*, 582 F. 3d at 541.

**3.**     *The Cy Pres Component of the Settlement Agreement is Appropriate*

The Young Objection also attacks the *cy pres* allocation set forth in the Settlement

Agreement for funds that remain after distribution to the Class Members of 100% of their

respective losses.  Young Objection at 14; Settlement Agreement ¶ 22.  The Settlement

Agreement states that any funds which remain after all claims have been allocated shall be

distributed to up to four non-profit organizations.  *Id.*  Young makes the wholly speculative

allegation that class counsel will "violate its fiduciary duty if it engineers any charitable donation

with settlement money that should go to putatively represented clients." Young Objection at 17.

The Young Objection also argues that the identities of the potential future beneficiaries must be

included in the Notice – a process that involves the defendants as well as, most importantly, the

Court, and requires that in the first instance there be funds remaining and, if so, how much and a

determination of how such funds may best be used. Objector also asserts that any *cy pres* amount

should not be taken into account in calculating attorneys' fees.  *Id.* at 19, 20.  Of course, such

arguments are premised on the assumption that there is a known amount of funds remaining and

that such funds are not part of the common benefit obtained as a result of the Settlement. At the

moment, of course, there are no *cy pres* funds to be allocated.  Pursuant to the Proposed

Allocation Order and the Settlement Agreement, there is no way of determining at this stage

whether or not there will be any Final Excess Amount, nor what that amount will be.  *See*

Proposed Allocation Order, *McDonough v. Toys "R" Us*, No. 2:06-cv-0242(AB), Dkt. 739-1,

May 24, 2011 ("Proposed Allocation Order") at ¶ 6.

Moreover, *cy pres* awards to charitable organizations are an accepted, standard means by

which to beneficially distribute unclaimed settlement funds.  *See, e.g., Gates v. Rohm & Haas

Co.*, No. 06-17432011, 2011 U.S. Dist. LEXIS 30730 at *6 (E.D. Pa. Mar. 24, 2011) ("Courts

generally 'have approved charitable donations to organizations geared toward combating harms

similar to those that injured the class members.  Such a donation may serve the *cy pres* principle

of indirectly benefitting all class members.'"), *citing In re Linerboard Antitrust Litig.*, MDL No.

1261, 2008 U.S. Dist. LEXIS 77739 (E.D. Pa. Oct. 3, 2008); *see also* 3 ALBA CONTE & HERBERT

B. NEWBERG, NEWBERG ON CLASS ACTIONS §10:16 (4th ed. 2002) (unclaimed portion of

settlement may be distributed according to *cy pres* principles).  Each claimant who can submit a

proof of purchase and purchase price will receive at least 100% of his or her damages, and

perhaps up to three times that amount.  *See* Proposed Allocation Order ¶ 6.  Claimants are not

entitled to any amount beyond this, and Mr. Young offers no justification as to why he is entitled

to more compensation than he could hope to receive even after a favorable trial on the merits.

4.    *Adequacy of Notice*

Mr. Young objects to the class Notice, stating that such Notice was deficient insofar as

the Attorneys' Fees Motion was not available on the settlement website until June 6, 2011.

Young Objection at 20.  The Attorneys' Fees Motion has been accessible on the ECF/PACER

website since May 24, 2011, and Mr. Young has clearly had access to it.  Within an hour of

discovering that the motion was not also posted on the settlement website, which Mr. Young

acknowledges was a "minor" error (Young Objection at 20), Class Counsel posted the Attorneys'

Fees Motion on the website.  Moreover, to be sufficient, class notice need not anticipate in

advance what the Court will award counsel – rather it must describe the maximum sought by

counsel which this notice certainly does.  Fed.R.Civ.P. 23(c)(2)(B) and 23(e)(1).  *See, e.g., In re*

*Prudential Ins. Co. Sales Prac. Litig.*, 177 F.R.D. 216, 232 (D.N.J. 1997).[13]

---

[13] *In re Prudential Ins. Co. Sales Prac. Litig.* held that class Notice is sufficient if it discloses "(1) the nature of the pending litigation, (2) that any class member could opt out, (3) that any class member who declined to opt out would be bound by the final judgment, (4) the general terms of the settlement, (5) that (continued...)

**5.**     *The Time Frame for Payment of Attorneys' Fees is Reasonable*

Mr. Young also attacks the timing of when Class Counsel may be paid, as provided for in the Settlement Agreement. Young Objection at 21. Mr. Young claims it is improper for Class Counsel to be paid until all appeals are final. The Settlement Agreement states that Class Counsel may seek an advance of court-awarded compensation prior to the resolution of all appeals and objections *only* if Class Counsel submits one or more Irrevocable Letter(s) of Credit as security. Settlement Agreement ¶ 29.

Among other things, this arrangement reduces the leverage of professional objectors such as CCAF, who can exert more pressure if any appeal they file – however unlikely to succeed – delays payments to counsel for the class. *Cf.* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623, 1641 (2009) ("If class counsel have already received their fee awards, then there is no reason for them to pay a premium to objectors with meritless appeals merely to avoid the delay caused by their appeals.") Fitzpatrick's article, which is described favorably by the CCAF in Mr. Young's Objection (Young Objection at 27), states that these so-called "quick pay" provisions "may very well be the best solution conceived thus far to objector blackmail." *Id.* at 1659.

**6.**     *The "Clear Sailing" Clause is not Improper*

Finally, Young objects to the "clear sailing" clause in the Settlement Agreement. Young Objection at 23-24; Settlement Agreement ¶ 26. He alleges that a provision which states that the Defendants will not challenge the attorneys' fee award implicates Fed.R.Civ.P 23(a)(4) concerns

_____

(…continued)

complete information was available in Court files, and (6) that any class member could be heard at the specified date, time, and place." *Id.* at 232.

and he vaguely alludes to "colluding counsel." Young Objection at 23-24. This allegation is baseless and Mr. Young has no evidence for his boilerplate charge. Indeed, as the Court is well aware (as are those like Mr. Young who have read the papers) the Settlement Agreement was the result of an eight-month negotiation process overseen by a neutral third-party mediator, which required further in-person sessions and mediator intervention. There are absolutely no grounds to suggest that Class Counsel and Defendants were somehow "colluding" to deprive Class Members of their full awards. Courts do not hesitate to honor such "clear sailing" provisions when the attorneys' fees will be paid from a common fund. *See, e.g., Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009); *Malchman v. Davis*, 761 F.2d 893, 904-05 (2d Cir. 1985) (no suggestion of collusion in "clear sailing" provision when merits of settlement agreement and attorneys' fees were separately and independently negotiated between plaintiffs and defendants). In a common fund settlement such as this one, the defendant has already agreed to pay the total settlement amount – it is of no import to the defendant what portion of that amount is allocated as compensation for class counsel. Mr. Young fails to address this first logical step. He relies heavily on *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518 (1st Cir. 1991) to support his argument that courts must scrutinize these fees (Young Objection at 23), however, that case did *not* involve a common fund settlement such as this. *Id.* at 522.

**B.**      **The Objection of Allison Lederer**

On June 6, 2011, class member Allison Lederer filed her Statement of Objection and Incorporated Memorandum in Support (the "Lederer Objection"). Plaintiffs respond to the Lederer Objection as follows:

**1.**      *Nondisclosure of Amounts Paid by Individual Defendants*

Ms. Lederer first objects to the Settlement Agreement and the Proposed Allocation on the grounds that the Agreement and the Notice do not delineate the exact percentage of funds each

Settling Defendant will contribute to the Settlement Fund.  Lederer Objection at 4-5.  This argument is groundless.  As an initial matter, this Court need only determine whether a settlement is "fair, reasonable and adequate" to each Subclass under Rule 23(e) and there is no doubt that this Settlement Agreement and Award fit that description.  *See, e.g., In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009) (internal citations omitted).  Class Counsel has secured over $35 million to compensate the Settlement Classes for their injuries, and has proposed to this Court the allocation of that amount among the various Subclasses.  *See* Proposed Allocation Order ¶ 3; Settlement Agreement ¶ 1(ee).  Indeed, Ms. Lederer does not challenge the adequacy of the total Settlement Amount, or the amount for any Subclass – she only challenges the fact that the Notice does not disclose the precise allocation of contribution among the Settling Defendants.  Lederer Objection, *passim*.  Ms. Lederer does not explain how this information will help inform her decision about the adequacy of the settlement, especially since she will likely receive one hundred percent of her damages, possibly trebled.  Therefore, even if Ms. Lederer were to opt-out of the class and successfully bring claims against these same Defendants on her own, she could not achieve a better result.

Finally, despite Ms. Lederer's allegations to the contrary, the Class Notice fully complied with the requirements under the law.  *See* ¶ A.4, *supra*; ¶¶ B.5, I.1, *infra*.

**2.**   *Class Counsel Will Not Receive One Cent in Fees from the Babyage.com, Inc., et al v. Toys 'R' Us, Inc., et al Case, and Such Allegations are Entirely Without Grounds*

Ms. Lederer makes the baseless allegation that Class Counsel is receiving "double compensation" for its work in this action and in the *Babyage.com* action.  Lederer Objection at 6-7.  There is no evidence to support this accusation and it is patently false.  *See* Exhibit D at ¶ 5.  As this Court is aware, the *Babyage.com* cases involved similar issues and named some of the

same parties as defendants as this Action, and therefore this Court coordinated the cases "for the purpose of discovery" on March 3, 2006. *See* Order dated March 1, 2006 (*McDonough* Dkt. No. 17). *See also*, Exhibit D at ¶¶ 3-4.  At no time did any member of Class Counsel ever represent any party in the *Babyage.com* matter, nor did any member of Class Counsel ever receive any fees derived from the *Babyage.com* case.  Exhibit D at ¶ 5.

Indeed, this accusation is so egregiously frivolous and unfounded that on June 7, 2011, Class Counsel submitted a letter to Ms. Lederer's counsel, Mr. James H. Price, demanding that he support or withdraw this allegation or Class Counsel will move to seek sanctions under Fed.R.Civ.P. 11.  In response to this letter, Mr. Price simply produced the docket sheets for these proceedings, which demonstrate nothing other than the coordination of the cases for discovery.  Mr. Price has not even attempted to produce any evidence that Class Counsel received payment for any work associated with the *Babyage.com* matter.

### 3.    *Reasonableness of Attorneys' Fees*

Ms. Lederer's other objections to the attorneys' fee amount are unwarranted.  Lederer Objection at 6.  As set forth above and in the Attorneys' Fees Motion, Class Counsel is seeking a negative multiplier (0.36) of its total lodestar fee – i.e., only a fraction of the total fees Class Counsel has incurred.  *See supra*, ¶ A.2; Attorneys' Fees Motion at 11-12.

### 4.    *Reasonableness of Attorneys' Expenses*

Ms. Lederer also objects to Class Counsel's request for expenses incurred the prosecution for the action.  Lederer Objection at 8.  Specifically, Ms. Lederer objects to the request for so-called "overhead" fees associated with research on online legal database, secretarial overtime, and public relations.  *Id.*  This objection is groundless.  As set forth in the Attorneys' Fees Motion, Class Counsel are entitled to reimbursement for expenses such as these, which are "the type typically billed by attorneys to paying clients in the marketplace." *Harris v. Marhoefer*, 24

F.3d 16, 19 (9th Cir. 1994); Attorneys' Fees Motion at 13.  Legal database charges, secretarial

expenses, and public relations efforts are customarily charged to hourly clients and therefore

should be fully reimbursed to Class Counsel.  Attorneys' Fees Motion at 13.

Ms. Lederer's objection to Class Counsel's request for expenses incurred in the retention

of experts, consultants, and investigators is similarly misplaced.  Spector Roseman Kodroff &

Willis, P.C. ("SRKW") paid Dr. Martin Asher, Econ One, Navigant Consulting, DoeLegal,

Lansultants, CT Legal Solutions, and Avantstar $276,098.00 in connection with discovery,

Electronically Stored Information ("ESI"), economic calculations, and the preparation of an

alternate damages report.  These expenses are necessary in a complex antitrust litigation where

sophisticated economic analysis is required and are certainly "the type typically billed by

attorneys to paying clients in the marketplace." *Harris*, 24 F.3d at 19.

### 5.    *Adequacy of Notice*

Finally, Ms. Lederer objects to the adequacy of Notice for same reasons set forth in the

Young Objection, *see* Lederer Objection at 8-9, as to which we have responded above.  *See*

*supra*, ¶ A.4.  More important, it is clear that Ms. Lederer and her counsel, like Messrs. Young

and Greenberg, were able to access and review the publicly available Attorneys' Fees Motion

and other documents filed by Class Counsel in support of the proposed settlement.

### C.    <u>The Objection of Yossi Zarfati</u>

On May 31, 2011, class representative Yossi Zarfati filed his Objection of Yossi Zarfati,

Settlement Subclass Representative of the Subclass (the "Zarfati Objection").[14]  The Zarfati

---

[14] In *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 589 (3d Cir. 1999) the Third Circuit held that a court can approve class remedies in the best interests of a class even over the objection of a class representative, because to require otherwise would provide the objectors with unfair "leverage" and undermine fair and reasonable settlements. Of course, in that case the objector, a class representative, challenged the overall fairness of the settlement and (continued...)

Objection does not challenge the settlement or the attorneys' fees or expenses requested by Class Counsel.  In fact, Mr. Zarfati states that Class Counsel "did a good job that they should be compensated for" and "achieved…a substantial victory to the benefit of the various subclasses." Zarfati Objection at ¶¶ 5, 15.  Mr. Zarfati's only objection is that the amount of his representative plaintiff incentive award is insufficient.[15]  *Id.* at ¶2, 6.   As set forth in the Attorneys' Fees Motion, the requested incentive award is reasonable, and respects this Court's case law guidelines regarding incentive awards.  *See, e.g.*, *First State Orthopaedics v. Concentra, Inc.*, 534 F. Supp. 2d 500, 525 (E.D. Pa. 2007).

### D.      The Objection of Clyde Farrel Padgett

On June 6, 2011, class member Clyde Farrel Padgett submitted an Objection to the Attorneys' Fees Motion (the "Padgett Objection").  Plaintiffs respond to the Padgett Objection as follows:

#### 1.      *Reasonableness of Attorneys' Fees and Expenses*

Mr. Padgett objects to the requested attorneys' fees for primarily the same reasons set forth in the Young Objection and the Lederer Objection.  Padgett Objection at 2-3.  We have addressed these.  Mr. Padgett's objections should be dismissed for the same reasons.  *See supra*, ¶¶ A.2, B.3, B.4.

_____

(…continued)

attorneys' fees and sought to disqualify class counsel due to a conflict of interest.  *Id.* at 583.  Mr. Zarfati makes no such allegations – in fact, he supports both the Settlement Amount and the requested attorneys' fees.  He seeks only to increase his representative plaintiff incentive award, something which this Court may certainly do in its discretion

[15] In fact, the Zarfati Objection is diametrically opposed to the objection of fellow class member Clyde Farrel Padgett, who asserts that the $2,500.00 incentive award requested by Class Counsel is too substantial.  *See infra*, at ¶ D.2

2. *Reasonableness of Incentive Awards to Named Class Representatives*

Mr. Padgett then claims the incentive award of $2,500.00 for each of fifteen class representatives is excessive. Padgett Objection at 3. Such an incentive award is entirely reasonable, as described in our papers, and Mr. Padgett's objection is without merit. Throughout the litigation, Named Plaintiffs have spent numerous hours fulfilling their duties as class representatives. Each "kept informed of the litigation and communicated with Class Counsel as necessary to assist with the effective prosecution of the case." Attorneys' Fees Motion at 14. Named Plaintiffs responded to discovery requests, reviewed the Settlement Agreement, and certain Named Plaintiffs were deposed. *Id.* An award of $2,500.00 is reasonable to compensate the Named Plaintiffs for their time and expenses in assisting in the litigation and is in line with what other courts have awarded in similar cases. *See, e.g., Hall v. Best Buy Co.*, No. 07-cv-4754, 2011 U.S. Dist. LEXIS 31220 (E.D. Pa. Mar. 24, 2011).

3. *The Settlement is a Great Success for Plaintiffs,*
*and this Action was not Settled "On the Cheap"*

Class Counsel has secured a total Settlement Amount of over $35 million from the Settling Defendants in this action, yet Mr. Padgett asserts, without any analysis, that this settlement is "too small." Padgett Objection at 4, 5. To the contrary, given the difficult legal and procedural issues at play in this litigation, as well as the increased difficulty in proving the case after the Supreme Court's 2007 decisions in both *Leegin*, 551 U.S. 877 and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Settlement Amount marks a significant achievement for the Plaintiffs. The $35,240,000.00 Settlement Amount[16] represents approximately 24% of estimated

---

[16] As previously noted, *supra* at 1 n.2, Regal Lager is now obligated to make its contribution to the Settlement Fund by June 27, 2011.

actual damages, well within the settlements of other antitrust class actions if not superior to

them. *See, e.g., The Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. 03-4578,

2005 U.S. Dist. LEXIS 9705, at *29-30 (E.D. Pa. May 20, 2005) (settlement totaling 11.4% of

total damages was fair); *see generally* Plaintiffs' Memorandum in Support of Motion for Final

Approval of Settlement, May 24, 2011, Dkt. 737-1 ("Settlement Memo").

     Mr. Padgett alleges that the Settlement Agreement does not prevent the Settling

Defendants from continuing to engage in anti-competitive misconduct.  Padgett Objection at 4, 5.

This is a specious argument – indeed, if a $35.24 million class action Settlement Award does not

serve to adequately deter the Settling Defendants from future misconduct, it is difficult to

imagine what would.[17]  Additionally, the Settlement Agreement contains a "Statement of

Principles" provision in which Settling Defendants implicitly acknowledge that they will follow

the law as set forth in the Supreme Court's decision in *Leegin*.  Settlement Agreement ¶ 33.

    **4.**    *The Cy Pres Component of the Settlement Agreement is Appropriate*

    Finally, Mr. Padgett objects to the *cy pres* allocation on the same basis as set forth in the

Young Objection and previously discussed.  Padgett Objection at 4-5.  For the same reasons it is

without merit.  *See supra*, ¶ A.3.

    **E.**    **The Objection of Shawn Golden**

    Shawn Golden's Objection (the "Golden Objection") is to the reasonableness of the

attorneys' fees requested by Class Counsel.  Golden Objection, ¶ 8.  As set forth above and in the

Attorneys' Fees Motion, Class Counsel is seeking a negative multiplier (0.36) of its total lodestar

---

[17] Moreover, BRU is already subject to a 1998 Federal Trade Commission order regarding its relationships with its suppliers, under which it was recently fined $1.3 million for violations in connection with the conduct alleged in this litigation.

fee – i.e., only a fraction of the total fees Class Counsel has incurred.  *See supra*, ¶ A.2;

Attorneys' Fees Motion at 11-12.

     **F.**     **<u>The Objections of Kelly Spann, Jennifer Popiel and Mathilda Fenton</u>**

     On June 6, 2011, class members Kelly Spann, Jennifer Popiel and Mathilda Fenton (the

"Spann Objectors") submitted Objections to Settlement of Class Action, Request for Attorneys'

Fees and Notice of Intent to Appear at Fairness Hearing (the "Spann Objections").  Plaintiff

responds to the Spann Objections as follows:

     **1.**     *Reasonableness of Attorneys' Fees*

     The Spann Objectors challenge the requested attorneys' fees and the Notice on

substantially the same grounds as the other Objectors.  Accordingly, Plaintiffs need only refer to

those responses.  *See* Spann Objections at 2-3; *supra*, ¶¶ A.2, A.4, B.3, B.4, B.5

     **2.**     *Class Counsel's Representation of Subclasses is Appropriate*

     The Spann Objections also allege that Class Counsel's representation of the various

Subclasses creates a conflict of interest.  Spann Objections at 3.  The Spann Objectors have

provided no evidence of such conflict.  Indeed, in certifying the Subclasses and appointing class

representatives for the various classes and Class Counsel, this Court has acted within its

authority to protect the class.  It is common for courts to certify subclasses in actions where class

counsel represents the entire class. *See, e.g., In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472,

481-82 (W.D. Pa. 1999) (noting that courts have declined to consider conflicts between

subclasses sufficient to preclude certification under Rule 23(a)(4) "unless the conflict is

apparent, imminent, and on an issue at the very heart of the suit") (internal quotation and

citations omitted); *In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-cv-285(DMC), 2010

U.S. Dist. LEXIS 12344 at * 17 (D.N.J. Feb. 9, 2010) (approving settlement subclasses and

finding that class counsel would adequately represent the whole class under Rule 23(a)(4)).

In this case, Class Counsel engaged separate, independent Allocation Counsel to determine how best to appropriately allocate the Settlement Amount among the various Subclasses, and then engaged Dr. Martin Asher to evaluate and execute Allocation Counsel's recommendation. *See* Plaintiffs' Motion for Entry of Proposed Allocation Order (*McDonough* Dkt. No. 739, *Elliott* Dkt. No. 70). Each of the Subclasses is represented by separate plaintiffs. *See* Preliminary Approval Order. Further, the Spann Objectors cannot allege that they (nor any other Class Members) have been negatively impacted by the Subclass allocations because, based on claims submitted to date, each individual claimant will likely ultimately receive the maximum amount which he or she would be awarded after an individual trial on the merits (assuming such a trial was successful for the claimant). Therefore, they have no entitlement to additional funds.

### G.   The Objection of Greg Bryan

On June 3, 2011 Greg Bryan submitted a letter to this Court objecting to the Settlement Agreement (the "Bryan Objection"). In response to the Bryan Objection, Plaintiffs submit the following:

#### 1.   *Statement on Settlement Website*

Mr. Bryan alleges that "class members have been led to believe that the 'settlement will provide up to $35.24 million to consumers' but that is not true" because Class Counsel seeks a portion of that amount in fees. Bryan Objection at 1. Mr. Bryan argues that the statement in the Notice regarding the settlement amount is incorrect insofar at is shows the gross, not net, Settlement Amount, and that the settlement website should be updated to reflect the net amount. *Id.* The Notice that was provided to class members (and also available on the web site) was clear both on the total settlement and the fee requested. The net figure was easily calculable to any class member. Further, the compensated work of counsel is for the benefit of the classes. It is for that reason Class Counsel are paid out of the fund achieved in the Settlement.

2.      *The Proposed Allocation Order Provides*
*for the Resolution of Unclaimed Funds*

Mr. Bryan is under the incorrect impression that the "settlement as proposed does not

resolve what happens if there are settlement funds remaining after all the class members have

been compensated." Bryan Objection at 1.  However, Section 22 of the Settlement Agreement

does indeed describe how excess funds will be allocated.  Section 22 states that any funds not

distributed to claimants will be allocated to charitable organizations with approval of the Court.

*See also*, ¶ A.2, *supra* (*cy pres* awards to charities are standard and fair).

3.      *The Settlement Agreement Does Not Limit*
*Class Members' Rights in Unrelated Actions*

Mr. Bryan is also under the mistaken impression that "the release appears to prevent

[him] from suing Britax or Babies "R" Us for any problems with the car seats [he] purchased."

Bryan Objection at 2.  Section 10 of the Settlement Agreement expressly provides that:

> For the avoidance of doubt, **Released Claims shall not include any**
> **claims entirely unrelated to the claims that were or could have been**
> **asserted in the Litigation**, including but not limited to, allegations of
> false advertising or misrepresentations relating to the performance of the
> products purchased, personal injury, or breach of warranty…

(Emphasis added).

The release in no way implicates any Class Member's right to bring a claim against the

Settling Defendants for personal injury, breach of warranty, or any other claims not related to

this antitrust action.

**H.      The Objection of Christopher D. Pericone**

On May 9, 2011, class member Christopher D. Pericone submitted a letter to this Court

expressing his objections to the request for attorneys' fees (the "Pericone Objection") before the

filing of the Attorneys' Fees Motion.

22

Mr. Pericone's only objection is to the reasonableness of the attorneys' fees requested by Class Counsel.  It is not an informed objection insofar Mr. Pericone had not yet been able to review the Attorneys' Fees Motion at the time he submitted his Objection.  *See* Pericone Objection, *passim*.  On May 9, 2011, Class Counsel wrote to Mr. Pericone to inform him that his objection was premature as Class Counsel had not yet filed any request for fees with the Court. Mr. Pericone did not respond to Class Counsel's letter, and since the Attorneys' Fees Motion has been filed, Mr. Pericone has not filed any additional objections.  Regardless, as set forth above in Paragraphs A.2, B.3, and B.4, *supra*, and in the Attorneys' Fees Motion, the fees requested by Class Counsel are reasonable and represent a negative multiplier of the lodestar.

**I.**     **The Objection of Clark Hampe**

On June 6, 2011, Clark Hampe filed an Objection to Class Settlement and Application for Attorneys' Fees and Expenses (the "Hampe Objection").  Plaintiffs respond to the Hampe Objection as follows:

**1.**     *Adequacy of Notice*

Mr. Hampe makes the unspecific and conclusory statement that the "class notice is vague and the class definition is ambiguous."  Hampe Objection at 1.  Mr. Hampe does not attempt to offer any support for this allegation.  The Class Notice, preliminarily approved by this Court, contains, *inter alia*, a clear definition of the Subclasses and provides a thorough description of the action, the Settlement Agreement, and the Class Members' rights, including the right to file a claim and the right to object to the Settlement Agreement.  The Notice meets the requirements of Rule 23(c)(2)(B).[18]

---

[18] Under Rule 23(c)(2)(B), notice for classes certified under Rule 23(b)(3) must clearly state "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may (continued…)

### 2.    *Class Counsel's Representation of Subclasses is Appropriate*

Mr. Hampe argues that there is a conflict of interest between the various subclasses, and that therefore Class Counsel cannot represent all the subclasses without "compromising their impartiality." Hampe Objection at 2. For the reasons set forth in Paragraph F.2, *supra*, this objection is without merit.

### 3.    *The Settlement Amount is Not Inadequate*

Mr. Hampe then objects without specification that the Settlement Amount is "inadequate" and that the Britax subclass' portion of the Settlement Amount is "inadequate." Hampe Objection at 2. For the reasons set forth in Paragraph D.3, *supra*, the Settlement Amount is more than adequate, especially when one considers that an unfavorable trial verdict could leave Class Members with no compensation whatsoever. Also, as explained in Paragraph F.2, *supra*, the proposed form of allocation of the Settlement Amount was recommended by independent Allocation Counsel, the proposed allocation percentages were calculated by Dr. Asher, and Class Counsel followed their recommendations. Any argument that any of the proposed allocations are insufficient is without merit.

### 4.    *Reasonableness of Attorneys' Fees*

Mr. Hampe challenges the requested attorneys' fees and the Notice on substantially the same grounds as the other Objectors, and Plaintiffs respond to the Hampe Objection accordingly.

_____

(…continued)

enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members." Fed.R.Civ.P 23(c)(2)(B); *see also In re Prudential Ins. Co. Sales Practices Litig.*, 177 F.R.D. at 232. (class notice is sufficient if it discloses "(1) the nature of the pending litigation, (2) that any class member could opt out, (3) that any class member who declined to opt out would be bound by the final judgment, (4) the general terms of the settlement, (5) that complete information was available in Court files, and (6) that any class member could be heard at the specified date, time, and place.)" *Id.* at 232.

*See* Hampe Objection at 2; *supra*, ¶¶ A.2, A.4, B.3, B.4, B.5.

   **J.      The Objection of Maria Sierotowicz**

   On April 25, 2011, Maria Sierotowicz submitted a handwritten letter to this Court setting

forth her purported objection to the Settlement Agreement (the "Sierotowicz Objection").  In her

Objection, Ms. Sierotowicz states that she never purchased any products from any of the Settling

Defendants.  *See* Sierotowicz Objection at 1.  Therefore, Ms. Sierotowicz is not a member of any

of the Subclasses and, insofar as she has no cognizable financial interest implicated by the

Settlement Agreement, she has no standing to object to the Settlement Agreement.  *See*

Fed.R.Civ.P. 23(d)(2); *see generally Feder v. Elec. Data Sys. Corp.*, 248 Fed. Appx. 579, 581

(5th Cir. 2007) (burden of proof is on objector to establish class membership/standing); 4 ALBA

CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11:55 (4th ed. 2002) ("[A]s a

general rule, only class members have standing to object to a proposed settlement.").

   On May 24, 2011, Class Counsel wrote to Ms. Sierotowicz to inform her that since she

never purchased any of the baby products at issue, she is not a member of the settlement class,

and Class Counsel therefore has not taken any action on her behalf.

## CONCLUSION

For the reasons stated herein, all of the Objections to the Settlement, the Notice, the

Attorneys' Fees Motion, and the Proposed Allocation Order should be denied.


Dated: June 13, 2011                              Respectfully submitted,


                                                  s/  Eugene A. Spector
                                                  Eugene A. Spector
                                                  William G. Caldes
                                                  Jeffrey L. Spector
                                                  SPECTOR ROSEMAN KODROFF
                                                       & WILLIS, P.C.
                                                  1818 Market Street, Suite 2500
                                                  Philadelphia, PA 19103
                                                  Tel.: (215) 496-0300
                                                  Fax: (215) 496-6611

                                                  Elizabeth A. Fegan
                                                  HAGENS BERMAN SOBOL SHAPIRO LLP
                                                  1144 West Lake Street, Suite 400
                                                  Oak Park, IL 60301
                                                  Tel.: (708) 628-4949
                                                  Fax: (708) 628-4950

                                                  Steve W. Berman
                                                  Anthony D. Shapiro
                                                  George W. Sampson
                                                  Ivy Arai Tabbara
                                                  HAGENS BERMAN SOBOL SHAPIRO LLP
                                                  1918 Eighth Avenue, Suite 3300
                                                  Seattle, WA 98101
                                                  Tel.: (206) 623-7292
                                                  Fax: (206) 623-0594

Mary Jane Fait
Theodore B. Bell
WOLF HALDENSTEIN ADLER FREEMAN
& HERZ LLC
55 West Monroe Street, Suite 1111
Chicago, IL 60603
Tel.: (312) 984-0000
Fax: (312) 984-0001

Fred T. Isquith
Thomas H. Burt
WOLF HALDENSTEIN ADLER FREEMAN
& HERZ LLC
270 Madison Avenue
New York, NY 10016
Tel.: (212) 545-4600
Fax: (212) 545-4653

**CLASS COUNSEL FOR THE
SETTLEMENT SUBCLASSES**