# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL M. MCDONOUGH, *et. al.,*<br><br>Plaintiffs<br><br>v.<br><br>TOYS "R" US, INC. d/b/a Babies "R" Us, *et. al.,*<br><br>Defendants | Case No: 2:06-cv-0242-AB |
| ARIEL ELLIOTT, *et. al.,*<br><br>Plaintiffs<br><br>v.<br><br>TOYS "R" US, INC. d/b/a Babies "R" Us, *et. al.,*<br><br>Defendants | Case No: 2:09-cv-06151-AB |

## ALLISON LEDERER'S REPLY IN SUPPORT OF HER OBJECTION TO THE PROPOSED SETTLEMENT AND CLASS COUNSEL'S MOTION FOR FEES AND EXPENSES

NOW COMES Allison Lederer (hereinafter, "Objector" or "Mrs. Lederer"), by and through the undersigned counsel, and submits this Reply in support of her objection to the proposed settlement.

### I. Class Counsel Overstates the Significance of the Proposed Settlement to the Class as a Whole

In its Response to the Objections filed by various class members, Class Counsel predictably tout the benefits of the proposed settlement. However, to be sure, their description of the benefits to class members is severely overstated.

First, an important, yet overlooked, aspect of the damages in this case is prejudgment interest. See, *William A. Graham Co. v. Haughey, 2011 U.S. App. LEXIS 9906* (affirming the judgment issued by Judge Bartle of the Eastern District of Pennsylvania which added $4.6 Million in prejudgment interest to a $19 Million damages award in a copyright infringement case, thereby increasing plaintiff's recovery by 22.4%). In the context of this case, the settlement amount of $35,500,000 is less than the interest earned by the Defendants on the $149,560,000 in overcharges to class members during the conspiracy. Recent SEC filings by Toys R Us indicate an annual interest rate of 7.625% on corporate notes which mature in August 2011[1]; accordingly, if Toys R Us had to borrow $150,000,000 (rather that obtain extra profits through an unlawful conspiracy to inflate prices), it would have paid almost $11.5 Million per year in interest.[2]

Second, Class Counsel's assertion that class members such as Mrs. Lederer "will likely receive a hundred percent of her damages, possible trebled" – even if true[3] – is misleading. The only possible explanation for claimants to receive 100% of their damages is that the vast majority of class members will receive nothing because they fail to submit claims.

Finally, contrary to Class Counsel's position, the proposed settlement clearly does not "deter the Settling Defendants from future misconduct." The Defendants overcharged the class by $150 Million, retained the funds during the 12 years of their conspiracy, and settled for a

---

[1] http://www.toysrusinc.com/press-room/releases/financial/2011/toysrus-inc.-reports-financial-results-for-first-quarter-2011/
[2] Of course, Toys R Us did not make all its extra profits at the beginning of the conspiracy, and thus Toys R Us would not have theoretically earned $11.5 Million in interest per year during the entire 12 year conspiracy covered by the proposed settlement (which would total $138 Million). Assuming its supra-profits were obtained evenly throughout the 12 year conspiracy from 1999-2011, the interest that would have been earned by Toys R Us from the conspiracy is approximately $69 Million.
[3] In fact, Mrs. Lederer will not receive 100% of her available remedies under applicable state law. Under the Tennessee Trade Practices Act, Mrs. Lederer could recover the "full consideration or sum paid", rather than merely the amount of the overcharges. *Tenn. Code Ann. §47-25-106*. Accordingly, Class Counsel's statement that "even if Ms. Lederer were to opt-out of the class and successfully bring claims against these same Defendants on her own, she could not achieve a better result" is flat-out wrong.

mere $35,500,000. Defendants' net ill-gotten gains from their illegal conspiracy are nearly $115 Million, plus the interest they earned.

In sum, if this case was prosecuted successfully through trial, the class-wide award in this case could easily exceed $500,000,000 (actual damages of $150 Million, with treble damages, attorneys' fees, interest and costs.) Class Counsel's reasons for advocating a settlement of only 7% of this amount are not set forth in the record with any degree of specificity. In the absence of justification for accepting such a relatively low amount, the Court should reject the settlements.

## II. The Amounts Paid By the Various Defendants Is An Important Issue

Mrs. Lederer clearly explained the importance of the amounts paid by the various defendants in her initial brief, i.e., she and other class members need to know whether funds received from certain manufacturers are being used to "make up" for lesser settlements from other manufacturers in order to ensure the settlement is fair to each subclass. Class Counsel failed to rebut Mrs. Lederer's position on the importance of this issue. Rather, Class Counsel completely ignores the distinction between subclasses in an obvious effort to have the proposed settlement analyzed by this Court only in the aggregate.

## III. The Court Should Award Fees Pursuant to the Eisenberg & Miller Study[4]

As explained in Mrs. Lederer's initial brief, the Court should award fees in an amount consistent with the study conducted by Professors Theodore Eisenberg and Geoffrey P. Miller[5], *Attorney Fees & Expenses in Class Action Litigation: 1993-2008*, 7 J. of Empirical Legal Stud. 248 (2010), specifically Tables 17 and 7.

---

[4] Mrs. Lederer is satisfied with Class Counsel's representation that none of the lawyers seeking fees and expenses in this matter were in any way compensated from the proceeds of the Babyage.com litigation. In light of the representation by Class Counsel, Mrs. Lederer withdraws her argument that the Court should require disclosure of Class Counsel's participation in the Babyage.com litigation.
[5] Eisenberg and Miller have been recognized for their study of class actions. Their article *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 Vand. L. Rev. 1529 (2004) was used as a reference in Managing Class Action Litigation: A Pocket Guide for Judges cited favorably by Class Counsel.

Class Counsel's response is off-topic and inadequate. Class Counsel simply fails to explain why its request for 33-1/3% is superior to the 24.9% suggested by the Eisenberg & Miller study. In fact, Class Counsel does not address the Eisenberg & Miller study at all.

Instead, Class Counsel focuses only on the "lodestar cross-check" – which should be applied only after determining the appropriate percentage of the fund to award Class Counsel as their fee. As Class Counsel acknowledges, the lodestar is used merely "as a means of assessing with the percentage-of-recovery award is too high or too low." *Plaintiffs' Response to Objections, p. 8, citing In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig. 582 F. 3d 524,545 (3d Cir. 2009).*

In the end, assuming this Court grants final approval to the proposed settlements, the Court should not award fees solely on the lodestar. Class Counsel did not achieve an extraordinary settlement, and should not receive extraordinary compensation. Eisenberg and Miller's study describes the market value for counsel's services, and the Court should cap fees at 25% of the overall settlement.[6]

### IV. Class Counsel's Request for Expenses is Excessive

To be clear, Mrs. Lederer does not object to Class Counsel's request for reimbursement of expenses that were incurred *solely* as part of this case, including long distance phone, fax, copies, travel and the like. However, there has been no showing that Class Counsel's Lexis and/or Westlaw expenses were incurred solely as part of this case. It is most likely that Class

---

[6] The Court should not enhance Class Counsel's fee as a result of the U.S. Supreme Court's decision in *Leegin* either. Before *Leegin*, the Supreme Court had declared that all non-price vertical restraints, *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36 (1977) and all vertical restraints to fix maximum resale prices, *State Oil v. Khan*, 522 U.S. 3 (1997), would be analyzed under the "rule of reason." Given the direction of the Supreme Court to move toward the rule of reason analysis for vertical restraints, not to mention the members of the Supreme Court in 2007, the *Leegin* decision could hardly have been a surprise to Class Counsel. But, if this Court is inclined to enhance Class Counsel's percentage, it should consider the *maximum* to be 29.2%, which Eisenberg & Miller found to be the mean percentage in "high risk" cases settling for between $22.8 and 38.3 Million. Eisenberg & Miller 2010, Table 17.

Counsel pay monthly licenses fees covering all or almost all of these charges, such that the charges are "overhead", i.e. these charges would have been incurred regardless of Class Counsel's work in this case.

### V. Class Members were not given proper notice of the request for fees under Rule 23(h).

Finally, there is issue of notice of the motion for fees and expenses. In its response, Class Counsel refers the Court to the wrong rule; motions for fees and expenses are governed by Rule 23(h), not Rule 23(c)(2)(B) or Rule 23(e)(1).[7] Rule 23(h) explicitly requires that notice of the motion for fees and expenses be "directed to class members in a reasonable manner."[8]

As class counsel admits, notice "is required under Fed. R. Civ. P. 23 and is indeed a due process right of every class member, and therefore plaintiffs must make every effort to notify class members of a settlement." *Plaintiffs' Response, page 7.* See also, *In re Mercury Interactive Corp. Securities Litigation*, 618 F. 3d 988 (9th Cir. 2010). In this case, notice under Rule 23(h) should have included posting Class Counsel' Motion for Attorney Fee and Expenses on the website as promised.

Jean Finegan, Senior Vice President of the Claims Administrator, The Garden City Group, Inc., has acknowledged that "[e]lectronic media opens up countless ways in which class members can be reached (e-mail, text messages, mobile media, RSS feeds, etc.), and as a result, what constitutes adequate Notice will undoubtedly continue to evolve and expand."

---

[7] Class Counsel are very experienced class action attorneys. They know or should know which rules are applicable to their motion for fees and expenses. The fact that they would cite to the wrong rule evinces a notably cavalier attitude toward the class members they represent.

[8] In addition, Mrs. Lederer believes the motion should have been emailed to the 1,030,090 email addresses Ms. Finegan referenced in her affidavit. Dkt. # 699-3.

Finegan, Jeanne, On Demand Media Could Change the Future of Best Practicable Notice, republished at http://www.gcginc.com/media/pdf/ondemandmedia.pdf.

However, in this instance, Class Counsel seek to reduce and diminish notice requirements under Rule 23. Class members were promised that the motion for fees and expenses would be available on the internet, but it was not. Under the circumstances, this Court must be constrained to find that class members did not received adequate notice of Class Counsel's motion for fees and expense under Rule 23(h).

Respectfully submitted, this 22nd day of June, 2011.

> *s/ James H. Price*
> James H. Price
> Lacy, Price & Wagner, P.C.
> 249 North Peters Road
> Knoxville, TN 37923-4917
> (865) 690 5028
> jprice@lpwpc.com
>
> *Counsel for Allison Lederer*

## CERTIFICATE OF SERVICE

I certify that on this 22nd day of June 2011, a copy of the foregoing was filed electronically. Notice of this filing will be send by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

> *s/ James H. Price*
> James H. Price
> Lacy, Price & Wagner, P.C.
> 249 North Peters Road
> Knoxville, TN 37923-4917
> (865) 690 5028
> jprice@lpwpc.com