**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CAROL M. MCDONOUGH, *et al.*, | No. 2:06-cv-0242-AB |
| Plaintiffs | |
| v. | |
| TOYS "R" US, INC., d/b/a Babies "R" Us, *et al.*, | |
| Defendants. | |
| ARIEL ELLIOTT, *et al.*, | |
| Plaintiffs | No. 2:09-cv-06151-AB |
| v. | |
| TOYS "R" US, INC., d/b/a Babies "R" Us, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' SUR-REPLY TO THE REPLIES OF OBJECTORS KEVIN YOUNG AND ALLISON LEDERER TO PLAINTIFFS' RESPONSE TO OBJECTIONS**

## TABLE OF CONTENTS

**Page No(s).**

INTRODUCTION ....................................................................................................1

ARGUMENT ..........................................................................................................2

I.     CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS
REASONABLE AND IN LINE WITH WELL-ESTABLISHED LAW ..........................2

       A.     Class Counsel's Attorneys' Fees are Properly
Fashioned as Part of the Total Settlement Award...................................2

       B.     The Use of the Lodestar Cross check is Standard Procedure,
and the Existence of a Negative Multiplier Means that the
Application of a "25% Benchmark" is Inappropriate ...........................5

       C.     Class Counsel's Efforts Were Not "Average".....................................10

II.    THE SETTLEMENT AGREEMENT'S PROVISION
PERMITTING ADVANCEMENT OF COUNSEL FEES IS
NECESSARY AND IN NO WAY PREJUDICES THE CLASS...................................11

III.   CLASS NOTICE WAS EXTENSIVE AND SATISFACTORY ....................................13

IV.   THE CERTIFICATION OF A SETTLEMENT SUBCLASS
CONTEMPORANIOUSLY WITH A PROPOSED SETTLEMENT
DOES NOT REQUIRE A RE-REVIEW OF THE SETTLEMENT
AGREEMENT WHEN THE PRIMARY CLASS CERTIFICATION
OCCURRED PRIOR TO SETTLEMENT....................................................................14

V.    THE POTENTIAL OF A CY PRES DISTRIBUTION, IF
ANY, IS VALID UNDER WELL-ESTABLISHED LAW............................................15

CONCLUSION......................................................................................................19

## TABLE OF AUTHORITIES

**Page No(s).**

*In re "Agent Orange" Product Liability Litigation MDL No. 381,*
  818 F.2d 179 (2d Cir. 1987) ................................................................17

*In re Automobile Refinishing Paint Antitrust Litigation,*
  MDL No. 1426,
  2008 U.S. Dist. LEXIS 569 (E.D. Pa. Jan. 3, 2008) .............................8

*In re Blech Securities Litigation,*
  Nos. 94 Civ. 7696, 95 Civ. 6422,
  2000 U.S. Dist. LEXIS 6920 (S.D.N.Y. May 19, 2000) .........................7

*Boeing Co. v. Van Gemert,*
  444 U.S. 472 (1980) ............................................................................17

*Careccio v. BMW of North America LLC,*
  No. 08-2619,
  2010 U.S. Dist. LEXIS 42063 (D.N.J. Apr. 29, 2010) ...........................7

*Cohen v. Apache Corp.,*
  No. 89 Civ. 0076
  1993 WL 126560 (S.D.N.Y. Apr. 21, 1993) .........................................9

*In re Corel Corp. Securities Litigation,*
  293 F. Supp. 2d 484 (E.D. Pa. 2003) (Brody, J.).............................8, 9

*Crawford v. Equifax Payment Services, Inc.,*
  201 F.3d 877 (7th Cir. 2000) ..............................................................16

*In re Crazy Eddie Securities Litigation,*
  824 F. Supp. 320 (E.D.N.Y. 1993) ........................................................9

*Cullen v. Whitman Medical Corp.,*
  197 F.R.D. 136 (E.D. Pa. 2000) (Brody, J.) ......................................8, 9

*In re Diet Drugs (Phentermine / Fenfluramine / Dexfenfluramine)*
  *Product Liability Litigation,*
  582 F.3d 524 (3d Cir. 2009) .................................................................8

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974) .............................................................................3

*Erie County Retirees Association v. County of Erie, Pennsylvania,*
  192 F. Supp. 2d 369 (W.D. Pa. 2002) ..............................................................9, 10

*In re FAO, Inc. Securities Litigation,*
  Nos. 03-942, 03-6596,
  2005 U.S. Dist. LEXIS 16577 (E.D. Pa. May 20, 2005)............................................9

*Freeland v. Iridium World Communications, Ltd.,*
  No. 99-1002-NKL (D.D.C. Oct. 23, 2008) (Order and Final Judgment, Dkt. 264) ...................7

*Gates v. Rohm & Haas Co.,*
  No. 06-1743,
  2011 U.S. Dist. LEXIS 30730 (E.D. Pa. Mar. 24, 2011) ........................................18

*In re General Instrument Securities Litigation,*
  209 F. Supp. 2d 423 (E.D. Pa. 2001) ............................................................8

*Godshall v. Franklin Mint Co.,*
  No. 01-CV-6539,
  2004 U.S. Dist. LEXIS 23976 (E.D. Pa. Dec. 1, 2004) ........................................8, 9

*In re Greenwich Pharmaceutical Securities Litigation,*
  No. 92-3071,
  1995 U.S. Dist. LEXIS 5717 (E.D. Pa. Apr. 26, 1995)............................................9

*Gunter v. Ridgewood Energy Corp.,*
  223 F.3d 190 (3d Cir. 2000) ..................................................................10

*Hall v. Best Buy Co.,*
  No. 07-cv-4724,
  2011 U.S. Dist. LEXIS 31220 (E.D. Pa. Mar. 24, 2011) ........................................10

*In re HP Inkjet Printer Litigation,*
  No. 5:05-cv-3580 JF,
  2011 WL 1158635 (N.D. Cal. Mar. 29, 2011)......................................................4

*In re Insurance Brokerage Antitrust Litigation,*
  579 F.3d 241 (3d Cir. 2009) ...............................................................6, 7, 8

*Jermyn v. Best Buy Stores, L.P.,*
  No. 08-cv-00214 (CM),
  2010 U.S. Dist. LEXIS 130682 (S.D.N.Y. Dec. 6, 2010)..........................................3

*Kleinpeter-Fleck v. Collins & Aikman Corp.,*
  No. 2:06-cv-13555-GER-SDP (E.D. Mich. Apr. 14, 2011)
  (Settlement Distribution Order, Dkt. 271) ......................................................5

*Lachance v. Harrington,*
   965 F. Supp. 630 (E.D. Pa. 1997) .................................................................*passim*

*In re LG / Zenith Rear Projection Television Class Action Litigation,*
   No. 06-5609
   2009 U.S. Dist. LEXIS 13568 (D.N.J. Feb. 18, 2009) ........................................ 10

*In re Linerboard Antitrust Litigation,*
   504 F. Supp. 2d 38 (E.D. Pa. 2007) .................................................................... 1

*In re Linerboard Antitrust Litigation,*
   MDL No. 1261,
   2008 U.S. Dist. LEXIS 77739 (E.D. Pa. Oct. 3, 2008) ................................. 17, 18

*In re Marsh & McLennan Companies, Inc. Securities Litigation,*
   No. 04-cv-8144-CM
   2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) .................................... 7

*In re Medical X-Ray Film Antitrust Litigation,*
   No. CV-93-5904
   1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998) ....................................... 9

*In re Mercury Interactive Corp. Securities Litig.,*
   618 F.3d 988 (9th Cir. 2010) ............................................................................ 14

*Mirfasihi v. Fleet Mortgage Corp.,*
   356 F.3d 781 (7th Cir. 2004) ............................................................................ 16

*Murray v. GMAC Mortgage Corp.,*
   434 F.2d 948 (7th Cir. 2006) ............................................................................ 16

*O'Keefe v. Mercedes-Benz USA, LLC,*
   214 F.R.D. 266 (E.D. Pa. 2003) ....................................................................... 12

*In re OSB Antitrust Litigation,*
   No. 06-cv-00826 (E.D. Pa. Dec. 9, 2008) (Order dated December 9, 2008)
   (Diamond, J.) ...................................................................................................... 9

*In re OSB Antitrust Litigation,*
   No. 06-cv-00826 (E.D. Pa. Dec. 9, 2008) (Order Denying Objections) (Diamond, J.) ....... 13, 14

*In re Pet Food Products Liability Litigation,*
   629 F.3d 333 (3d Cir. 2010) ............................................................................ 2, 9

*In re Pharmaceutical Industry Average Wholesale Price Litigation,*
   588 F.3d 24 (1st Cir. 2009)..................................................................................17

*In re Prudential Insurance Company of America Sales Practices Litigation Agent Actions,*
   148 F.3d 283 (3d Cir. 1998) ..................................................................3, 8, 10

*In re Ravisent Technologies, Inc. Securities Litigation,*
   No. 00-cv-1014,
   2005 U.S. Dist. LEXIS 6680 (E.D. Pa. Apr. 19, 2005)............................................8

*In re Remeron Direct Purchaser Antitrust Litigation,*
   No. 03-cv-0085 (FSH),
   2005 U.S. Dist. LEXIS 27012 (D.N.J. Nov. 9, 2005).............................................8

*Schwartz v. Dallas Cowboys Football Club, Ltd.,*
   157 F. Supp. 2d 561 (E.D. Pa. 2001) ...................................................................4

*In re UnitedHealth Group Inc. PSLRA Litigation,*
   643 F. Supp. 2d 1107 (D. Minn. 2009) ...............................................................12

## STATUTES AND RULES

Class Action Fairness Act of 1995 ("CAFA")
   28 U.S.C. § 1712(a)............................................................................................18

Clayton Act,
   15 U.S.C. § 15(a) ...............................................................................................1

Federal Rules of Civil Procedure
   Rule 23 .............................................................................................................14
   Rule 23(h)....................................................................................................13, 14
   Rule 26(b)(4)(A) ..................................................................................................6

Federal Rules of Evidence
   Rule 702.............................................................................................................6
   Rule 703.............................................................................................................6

Private Securities Litigation Act of 1995 ("PSLRA")
   15 U.S.C. §§ 77z-1(a)(6)......................................................................................18
   15 U.S.C. §§ 78u-4(a)(6)......................................................................................18

## OTHER AUTHORITIES

T. Eisenberg & G. Miller, *Attorney Fees & Expenses in Class Action Litigation: 1993-2008,*
   7 J. of Empirical Legal Stud. 248 (2010) .............................................................7

B. Fitzpatrick, *The End of Objector Blackmail?,* 62 Vand. L. Rev. 1623 (2009) .................. 11, 12

B. Rothstein & T. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges,*
 (Federal Judicial Center 2005) ............................................................................................... 12

A. Conte & H. Newberg, *Newberg on Class Actions* (4th ed. 2002)
 § 10:16 .................................................................................................................................... 19

# INTRODUCTION[1]

In his Reply to Plaintiffs' Response to Objections to the Proposed Settlement Agreement and Order, (*McDonough* Dkt. No. 766) ("Young Reply" or "Young"), filed on June 20, 2011, Objector Kevin Young, through his attorney Daniel Greenberg of the Center for Class Action Fairness (CCAF), acknowledges the deficiencies in his initial Objection and Notice of Intent to Appeal, (*McDonough* Dkt. No. 749) ("Young Objection"), filed with this Court on June 6, 2011. Acknowledging the errors in his Objection, Mr. Young attempts to recharacterize his arguments.[2] Unfortunately for Mr. Young, these "corrected" arguments are contrary to decades of precedent, in the Third Circuit and throughout the country, regarding the determination of the fairness of class action settlements and requests for attorneys' fees.

First, Mr. Young now asks the Court to delay its consideration of Plaintiffs' fee request until the completion of the administration process. Mr. Young does not point to ***a single case*** in which a Court has employed this procedure in the administration of a cash basis common fund; in fact, one of the cases he cites directly rejects this radical approach. *Lachance v. Harrington,*

---

[1] On June 22, 2011, Objector Allison Lederer filed without the permission of this Court an improper Reply in Support of her Objection that was improper without the permission of this Court (*McDonough* Dkt. No. 767) (the "Lederer Reply"). The Lederer Reply primarily restates the arguments set forth in Lederer's original Objection. As such, Plaintiffs need not reply separately to the Lederer Reply. Lederer does raise one new argument in her Reply – that the Settlement Amount is insufficient insofar as it does not include prejudgment interest. Lederer Reply at 2. However, under the Clayton Act, the decision to award prejudgment interest is wholly within the discretion of the district court, and may only be awarded upon a showing of bad faith on the part of the defendant. 15 U.S.C. § 15(a); *see also In re Linerboard Antitrust Litig.*, 504 F. Supp. 2d 38, 65-66 (E.D. Pa. 2007). Therefore, Lederer cannot allege that Class Counsel erred in not achieving prejudgment interest as part of the settlement of the litigation when there is absolutely no way Lederer can argue with any degree of certainty that prejudgment interest would be awarded in an antitrust case such as this. What is more, Lederer seems to assume that a settlement must result in the capitulation of the defendant on all potential liability – in other words, that a settlement is anything but a settlement of a dispute that eliminates the risk of achieving nothing at all.

[2] All capitalized terms in this Sur-Reply shall have the same meaning as defined in the Settlement Agreement and Plaintiffs' Response to Objections to the Proposed Settlement Agreement and Order ("Plaintiffs' Response"), filed with this Court on June 13, 2011.

965 F. Supp. 630, 649 n.15 (E.D. Pa. 1997) (attorneys' fees are allocated before the end of the notice and claims administration process). Nevertheless, he asserts that this Court should adopt this unnecessary and challenging procedure. Then, Mr. Young asks this Court to ignore decades of case law by declining to use a lodestar cross check when determining the reasonableness of Class Counsel's fee request of 33-1/3% of the common fund – another position that is not even supported by the very cases upon which Mr. Young relies. *See, e.g.*, *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 361 (3d Cir. 2010) (Young cites concurring and dissenting opinion; majority opinion approved the requested 31% attorneys' fee percentage and remanded on other grounds). Mr. Young presents no evidence regarding average fee awards when the lodestar cross check results in a ***negative multiplier***, such as is the case here. Finally, Mr. Young rehashes some of the remaining claims from his initial Objection, with no new support in the law. In doing so, Mr. Young mischaracterizes the arguments set forth in Plaintiffs' Response to Objections to the Proposed Settlement Agreement and Order (*McDonough* Dkt. No. 760) ("Plaintiffs' Response") and completely ignores the clear law of this Circuit. Mr. Young's Reply (like his original Objection) is a vehicle by which the CCAF seeks to advance its agenda, so it is in some sense fitting that Mr. Young's brief relies on policy arguments and political posturing and ignores or minimizes legal authority.

## ARGUMENT

I.    **CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE AND IN LINE WITH WELL-ESTABLISHED LAW**

A.    **Class Counsel's Attorneys' Fees are Properly Fashioned as Part of the Total Settlement Award**

Mr. Young argues in his Reply, as he did in his initial Objection, that Class Counsel's attorneys' fee award should not be allocated from the total common fund, but rather from what is left of the common fund after all fees and expenses associated with notice and claims

administration have been paid out.  Young at 1-2.  Young mischaracterizes the Plaintiffs'

Response as "emphasiz[ing]…that class *counsel* must pay for notice, that this obligation of class

*counsel* is stated in Rule 23, that class *counsel* has a constitutional duty to provide notice…" *Id.*

at 1 (emphasis added).  Plaintiffs' Response says nothing of the sort – Plaintiffs instead argue

there, as they do here, that the *class* – not class counsel – is responsible for paying the cost of

notice.  *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 179 (1974); *see also Jermyn v. Best Buy*

*Stores, L.P.*, No. 08-cv-00214 (CM), 2010 U.S. Dist. LEXIS 130682 at *22-23 (S.D.N.Y. Dec. 6,

2010) (under *Eisen*, plaintiffs bear the cost of notice).

The authority cited by Young holds, without addressing this issue, only that courts should

take into account the benefit to the class when determining the reasonableness of the fee request.

Young states that this Court should consider "the success achieved by plaintiffs under the terms

of the settlement" and Plaintiffs wholeheartedly agree. Young at 2.  Such a consideration will

show that Class Counsel secured a successful settlement of over $35 million for Plaintiffs, the

vast majority of whom would likely never litigate their claims on an individual basis.  It does not

lead to the conclusion that this Court should wait (possibly several months or longer) until all

expenses associated with Notice and administration have been paid out before ordering an award

of attorneys' fees.

The cases cited by Mr. Young do not suggest otherwise.  In *In re Prudential Ins. Co. of*

*Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998), the court considered whether

the class counsel should receive a percentage of the funds that would have been available to the

class under a related but separate "task force plan" that was largely the result of efforts of state

governmental regulators.  The "crux" of the inquiry was "distinguishing those benefits created by

class counsel from the benefits created under" the government plan.  *Id.* at 338.  The court was

decidedly *not* considering whether class counsel should be allocated its fee before or after the costs of class notice and other expenses have been allocated from the common fund.  Of course, no such governmental or other plan exists in this case – there exists only one Settlement Agreement, and there can be no doubt that it would not exist at all were it not for the ongoing efforts of Class Counsel.  *See* Attorneys' Fees Motion at 9 (class counsel received no assistance from the Government or any public agencies).  The other cases cited by Young for this proposition are likewise inapposite as neither case employs the common fund approach to attorneys' fees, and therefore the courts never considered the issue of whether attorneys' fees should be calculated out of the whole fund or only what is left of the fund after all expenses have been allocated.  Young at 2; *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561 (E.D. Pa. 2001) (finding that a fee of 100% of lodestar and expenses in a non-common fund settlement was too high given the terms of the settlement agreement); *In re HP Inkjet Printer Litig.*, No. 5:05-cv-3580 JF, 2011 WL 1158635 (N.D. Cal. Mar. 29, 2011) (in coupon settlement, attorneys' fees which totaled *more* than the total value of the coupon settlement to the class as a whole were not reasonable).

Indeed, in common fund cases courts have explicitly ordered that class counsel's percentage fee be calculated *before* the deduction of any amount attributable to the costs of notice or administrative expenses.  In *Lachance,* 965 F. Supp. at 649 n.15 (cited by Young in his original Objection at 9), this Court refused to "deduct the expenses of administering the common fund from the gross settlement fund" for the purposes of allocating the attorneys' fees because (1) "the costs of administering the fund are an uncontrollable part of the litigation established by the framework of Rule 23" and the court did not want to incentivize class counsel to cut corners in class notice and administration, and (2) "it would be extremely burdensome on the court to

4

calculate an attorney fee if the costs of administering the class were to be deducted because a great deal of class administration expense is incurred *after* the court enters judgment on the adequacy of the settlement and attorneys fees." *Id.* (emphasis added); *see also Kleinpeter-Fleck v. Collins & Aikman Corp.*, No. 2:06-cv-13555-GER-SDP, (E.D. Mich. Apr. 14, 2011) (Settlement Distribution Order, Dkt. 271), attached hereto as Exhibit 1 (explicitly requiring that attorneys' fees be distributed from common fund before notice expenses are paid out).[3]   Young presents no support for his suggestion that this Court depart from this well-established framework of class settlement management.

### B.   The Use of the Lodestar Cross Check is Standard Procedure, and the Existence of a Negative Multiplier Means that the Application of a "25% Benchmark" is Inappropriate[4]

Young merely reiterates his attack on Class Counsel's request for attorneys' fees in the amount of 33-1/3 % of the common fund – an amount which represents a negative multiplier of 0.36 of the total lodestar.[5]   Young relies on a report written by Michael Perino in another case, as well as an article, also by Mr. Perino, to support his allegation that Class Counsel's request for attorneys' fees is outside of "statistical and judicial norms."   Young at 4-5.   In the first instance the "report" and article (insofar as Mr. Young seeks to submit these documents as authority by

---

[3] Indeed, the claims process may take several months or longer to complete, and it will be an added burden upon this Court if it is forced to re-examine this issue and re-calculate an attorneys' fee after all notice and administrative expenses have been allocated.

[4] To the extent that the Lederer Reply takes issue with the lodestar cross check or the percentage of fee award, Plaintiffs fully respond to such arguments in this Section.  *See* Lederer Reply at 3-4.

[5] The fact that Class Counsel is receiving a negative multiplier of 0.36 has apparently convinced objector Shawn Golden to withdraw his Objection to the reasonableness of the requested fee award.  *See* Notice of Withdrawal of Objection to Class Action Settlement (*McDonough* Dkt. No. 769) ("Golden Withdrawal"), filed June 27, 2011.  In his Notice of Withdrawal, Mr. Golden states, "Based upon the submitted information [establishing that Class Counsel's lodestar fee results in a negative multiplier of 0.36], the requested attorneys fees appear to be *reasonable*. For this reason, Objector Shawn Golden wishes to withdraw his objection to the reasonableness of the 33.33% attorney fee award to the common fund created by this class settlement."  Golden Withdrawal at 1 (emphasis added).

an "expert") is inadmissible in this case as it does not comply with Fed. R. Evid. 702 or 703.

Were Mr. Perino to submit a report for this case and subject himself to examination as permitted under Fed. R. Civ. P. 26(b)(4)(A) and a *Daubert* analysis, among other things it would surely be noted that Mr. Perino focuses exclusively on fee awards made in securities class actions.  Young makes no attempt to show how these statistics are applicable to large antitrust class actions.[6] Young does not analyze whether these cases are based on different economic profiles.  For all his talk of data points and statistical trends, Young misses a basic tenet of statistical analysis – the choice of a data set.  Young looks exclusively to securities class action settlements to draw conclusions about antitrust class actions such as this one.[7]

Neither the Perino material, nor anything else Young has submitted, demonstrates that courts invariably adhere to any 25% benchmark when class counsel's lodestar exceeds the requested fee.  Indeed, a negative multiplier must be considered by a court determining the reasonableness of an attorney fee request as a factor weighing heavily in favor of the reasonableness of the request.  Here, Class Counsel seeks a fee award which constitutes ***only 36%*** of the total lodestar of all fees incurred in the prosecution of this action, creating a negative multiplier of 0.36.  *See* Attorneys' Fee Motion at 12.  A negative multiplier is a strong indication that Class Counsel's requested award is reasonable and should be granted.  *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 284 (3d Cir. 2009) (granting fee request when "[t]he

---

[6] The Perino article is even further afield – it seeks only to analyze the effect of attorney experience and competition in securities class actions under the PSLRA.  No conclusions are drawn regarding class actions as a whole.  *See* Appendix to Young Objection, *passim*.

[7] Plaintiffs do not allege that securities class action settlements do not have precedential value to this case, or that this Court should not consider fee awards made by other courts in securities cases.  However, Young relies exclusively on securities awards to draw statistical conclusions about antitrust class action awards, a tactic which does not stand up to statistical scrutiny.

lodestar multiplier…was less than one and thus reveals that Class Counsel's fee request constitutes only a fraction of the work that they billed"); *Careccio v. BMW of N. Am. LLC*, No. 08-2619, 2010 U.S. Dist. LEXIS 42063, at *21 (D.N.J. Apr. 29, 2010) (awarding fee when lodestar cross check produced negative multiplier); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04-cv-8144-CM, 2009 U.S. Dist. LEXIS 120953, at *59 (S.D.N.Y. Dec. 23, 2009) ("The percentage fee requested represents a negative multiplier of 0.44 to the lodestar. Thus, not only are Lead Counsel not receiving a premium on their lodestar, their fee request amounts to a deep discount from their lodestar."); *In re Blech Sec. Litig.*, Nos. 94 Civ. 7696, 95 Civ. 6422, 2000 U.S. Dist. LEXIS 6920, at *5 (S.D.N.Y. May 19, 2000) (awarding thirty percent of twelve million dollar settlement fund where thirty percent represented a negative multiplier of the lodestar); *Freeland v. Iridium World Comm'ns, Ltd.*, No. 99-1002-NKL, (D.D.C. Oct. 23, 2008) (Order and Final Judgment, Dkt. 264) (awarding requested attorneys' fee of one third of $14.85 million settlement when requested fee represented a negative multiplier of lodestar).[8]

Plaintiffs have indeed supplied evidence to support their position on fee awards in the form of decades of case law in which courts apply exactly the same formula and standards which Plaintiffs ask this Court to apply. Despite Young's assertion to the contrary, Class Counsel does not argue that this must Court first apply the lodestar approach in what is clearly a request for a

---

[8] The Lederer Reply asserts that this Court should award "the 24.9% [fee] suggested by the Eisenberg & Miller study." Lederer Reply at 4. However, the study in question does not "suggest" that any particular fee be awarded in any particular case; rather, the study provides averages of fee awards and other information regarding class action settlements. Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees & Expenses in Class Action Litigation: 1993-2008*, 7 J. of Empirical Legal Stud. 248 (2010), *passim*. Furthermore, the Lederer Reply conveniently ignores Tables 14 and 17 of the Eisenberg & Miller study, which show that the mean multipler calculated in lodestar cross checks in the Third Circuit is 2.01. *Id.* Table 14. The mean multiplier in antitrust cases nationwide is 2.24 and in consumer cases it is 1.82. *Id.* Finally, the mean multiplier for settlements in the $22.8 to $38.3 million range nationwide is 1.83. *Id.* Table 15. As reiterated above, Class Counsel here seeks an award which would result in a negative multiplier of 0.36. Of course, Lederer fails to include this information, as it demonstrates that Class Counsel here is seeking a far smaller fraction of its total lodestar amount than attorneys generally receive in similar actions.

percentage of the common fund.  Young at 9; Motion for Attorneys' Fees at 1.  Rather, Class

Counsel provides to this Court the law in this Circuit, and throughout the Country, applying the

"lodestar cross check" as a means of assessing the reasonableness and fairness of an attorneys'

fee award when such award is fashioned as a percentage of a common settlement fund.  *See, e.g.*,

*In re Diet Drugs (Phentermine / Fenfluramine / Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d

524, 545 (3d Cir. 2009); *In re Prudential*, 148 F.3d at 341;  *In re Ins. Brokerage Antitrust Litig.*,

579 F.3d at 284; *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 497 (E.D. Pa. 2003) (Brody,

J.) (granting attorneys' fee award of one-third of fund, plus expenses, when multiplier was 1.03);

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) (Brody, J.) (granting

attorneys' fee award of one third of fund, plus expenses, when multiplier was 2.04).

      Finally, Class Counsel can point (and has pointed) to dozens of cases awarding requests

for fees of one-third or more of the common fund.[9]  *See, e.g.*, *In re Auto. Refinishing Paint*

*Antitrust Litig.*, MDL No. 1426, 2008 U.S. Dist. LEXIS 569, at *9-10 (E.D. Pa. Jan. 3, 2008)

(awarding requested fees of one-third of the multi-million dollar settlement fund plus expenses);

*In re Ravisent Tech., Inc.  Sec. Litig.*, No. 00-cv-1014, 2005 U.S. Dist. LEXIS 6680, at *40 (E.D.

Pa. Apr. 19, 2005) ("[C]ourts within this Circuit have typically awarded attorneys' fees of 30%

to 35% of the recovery, plus expenses.") (internal citations omitted); *In re Remeron Direct*

*Purchaser Antitrust Litig.*, No. 03-cv-0085 (FSH), 2005 U.S. Dist. LEXIS 27012, at *10 (D.N.J.

Nov. 9, 2005) (awarding fees of one-third of $75 million settlement plus expenses); *Godshall v.*

*Franklin Mint Co.*, No. 01-cv-6539, 2004 U.S. Dist. LEXIS 23976, at *18 (E.D. Pa. Dec. 1,

---

[9] Young's assertion that Class Counsel offers only "one case" to support the reasonableness of its fee request is disingenuous.  Young at 3.  In reality, Plaintiffs cited one case in Plaintiffs' Response, and then referred the Court to page 5 of their Attorneys' Fees Motion, which cites dozens of cases to support their request for fees.  Plaintiffs' Response at 8.

2004) (awarding a 33% fee); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 433-34 (E.D. Pa. 2001) (awarding one-third of a $48 million settlement fund plus expenses); *In re Greenwich Pharm. Sec. Litig.*, No. 92-3071, 1995 U.S. Dist. LEXIS 5717, at *16-17 (E.D. Pa. April 26, 1995) ("[a] fee award of 33.3 percent [plus expenses] is in line with the fee awards approved by other courts"); *In re FAO Inc. Sec. Litig.*, Nos. 03-942, 03-6596, 2005 U.S. Dist. LEXIS 16577, at *5 (E.D. Pa. May 20, 2005) (awarding fees of 30% and 33%, plus expenses); *In re OSB Antitrust Litig.*, No. 06-cv-00826 (E.D. Pa. December 9, 2008) (Order dated December 9, 2008, Dkt. 947) (Diamond, J.), attached hereto as Exhibit 2 (awarding fees of one third of a settlement fund of over $100 million, plus expenses); *see also In re Medical X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 U.S. Dist. LEXIS 14888 (E.D.N.Y Aug. 7, 1998) (awarding fees which comprised 33.33% of a $39.36 million settlement, plus expenses); *In re Crazy Eddie Sec. Litig.,* 824 F. Supp. 320, 325-327 (E.D.N.Y. 1993) (34% of $42 million settlement, plus expenses); *Cohen v. Apache Corp.,* No. 89 Civ. 0076, 1993 WL 126560, at *1 (S.D.N.Y. Apr. 21, 1993) (33 1/3% of $6.52 million recovery, plus expenses). Indeed, this Court has approved an attorneys' fee of 33-1/3% of the common fund in two other class action settlements. *In re Corel Corp.*, 293 F. Supp. 2d at 497 (one third of common fund plus expenses is "within the reasonable range"); *Cullen*, 197 F.R.D. at 146-47 (same).

In fact, in almost all of the cases cited by Young in his initial objection to support his argument that the Court should apply a "25% benchmark," the court actually awards a higher percentage (or the percentage requested by the class counsel), ***and*** applies the lodestar cross check. *See* Young Objection at 8-9; *In re Pet Food Prods.*, 629 F.3d at 361 (Young cites concurring and dissenting opinion, majority opinion approved the requested 31% attorneys' fee percentage, plus expenses, and remanded on other grounds); *Erie Cnty. Retirees Ass'n. v. Cnty.*

*of Erie, Pa.*, 192 F. Supp. 2d 369, 381 (W.D. Pa. 2002) (applying lodestar cross check and

awarding attorneys' fees of 38% of common fund plus expenses); *In re LG / Zenith Rear*

*Projection Television Class Action Litig.*, No. 06-5609, 2009 U.S. Dist. LEXIS 13568, at *23-25

(D.N.J. Feb. 18, 2009) (applying lodestar cross check and awarding the requested fees of 5.7% of

settlement which constituted a lodestar multiplier of 1.5); *Lachance*, 965 F. Supp. at 649-50

(applying lodestar cross check and awarding requested attorneys' fees of 30% of common fund

plus expenses (figures calculate to a negative multiplier of 0.88)).  These cases reference a 25%

"benchmark" in passing but then consider a number of different factors, including a lodestar

cross check, to determine if the fee requested is indeed reasonable.[10]  In many cases, that analysis

leads the court to conclude that a fee of greater than 25% is appropriate.  The law on this point is

established – courts in this Circuit regularly award attorneys' fees of one-third (or more) of the

common fund in large, complex class actions such as this.[11]

### C.   Class Counsel's Efforts Were Not "Average"

Both Young and Lederer attempt to portray the fee award requested by Class Counsel as

significantly greater than the average award.  *See Young Reply* at 3-6, Young Objection at 4-14,

Lederer Reply at 2-4, Lederer Objection at 6-8.  As noted *supra*, at I.B., Young's arguments are

---

[10] Finally, Young asserts that Class Counsel is actually seeking "over 40% of the class recovery" but this is patently inaccurate. Young at 3.  Class Counsel is seeking reimbursement for litigation expenses in the amount of $2,229,775.60, as well as a $2,500.00 Incentive Award to each Named Plaintiff, and attorneys' fees in the amount of 33-1/3% of gross Settlement Amount. Attorneys' Fees Motion at 1.  The request for litigation expenses is separate and apart from the percentage fee request.  As a rule, courts award attorneys litigation expenses separately from, and in addition to, awarding a percentage fee from the fund.  *See supra*, Section I.B (citing many cases in which courts awarded attorneys a percentage of the common fund in fees, in addition to litigation expenses incurred).

[11] Young attacks Class Counsel's argument that this Court should not consider the substantial risk of nonpayment that Class Counsel undertook in prosecuting this litigation because such risks are "routinely and voluntarily undertaken by sophisticated, entrepreneurial businesspeople."  Young at 10.  Again, Young ignores the black letter law.  Risk of nonpayment is one of the ten *Gunter / Prudential* factors a district court must consider in determining what constitutes a reasonable percentage fee award.  *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000); *Prudential*, 148 F. 3d at 283; *see also Hall v. Best Buy Co.*, No. 07-cv-4724, 2011 U.S. Dist. LEXIS 31220, at *51 (E.D. Pa. Mar. 24, 2011) (applying *Gunter / Prudential* factors); Attorneys' Fees Motion at 8.

inaccurate portrayals of fee awards throughout the Country, and both Young and Lederer rely upon papers that are divorced from the facts of this case. However, it is also important to note that, as this Court is aware, this was not an ***average*** case. Class certification was achieved despite the fact that *Hydrogen Peroxide* enhanced the class certification inquiry and *Leegin* changed the standard for adjudging vertical resale price maintenance conspiracies from *per se* to the "rule of reason."[12] Any claims that this case was "average" are plainly misplaced.

## II.   THE SETTLEMENT AGREEMENT'S PROVISION PERMITTING ADVANCEMENT OF COUNSEL FEES IS NECESSARY AND IN NO WAY PREJUDICES THE CLASS

Young re-hashes his condemnation of the time frame for attorney payment under the Settlement Agreement in his Reply, but provides no further authority for his allegation that this provision somehow compromises Class Counsel's ability to represent the best interests of the Class.[13] The Settlement Agreement provides that Class Counsel may seek an advance of court-awarded compensation prior to the resolution of all appeals and objections ***only*** if Class Counsel submits one or more Irrevocable Letter(s) of Credit as security. Settlement Agreement ¶ 29. As acknowledged by Brian Fitzpatrick in his article, *The End of Objector Blackmail?*, though such provisions may not be perfectly suited to all circumstances, they are a "better solution" than any other possibility currently employed by the courts to combat the "serious problem" of "professional objectors" who "can levy what is effectively a tax on class action settlements, a tax which has no benefit to anyone other than the objectors." Brian Fitzpatrick, *The End of Objector*

---

[12] In his Reply, Young describes the decisions in *Twombly, Hydrogen Peroxide*, and *Leegin*, as "holdings that are contrary to **Class Counsel's** interests," and holdings that, "class counsel did not like [because they] jeopardized ***its*** interests here." *See* Young Reply at 10 (emphasis added). These cases, which go directly to Plaintiffs' underlying claims and the certification of the Subclasses, directly affect the interests of the Subclasses as a whole, not merely those of Class Counsel. This is yet another example of Mr. Young's indifference to the welfare of the class.

[13] Mr. Young's Reply, like his original Objection, is completely devoid of any legal authority to support his contention that including a "quick-pay" provision is a violation of Class Counsel's fiduciary duty.

*Blackmail?*, 62 Vand. L. Rev. 1623, 1636 (2009).  However "pure" CCAF's motives may be, the unfortunate fact is that class action settlements are often plagued by such "professional objectors" who hold up proceedings and ultimately force class counsel to either delay or pay. *See, e.g.*, *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003) ("Federal courts are increasingly weary of professional objectors: Some of the objections were obviously canned objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests.");  *In re UnitedHealth Group Inc. PSLRA Litig.*, 643 F. Supp. 2d 1107, 1109 (D. Minn. 2009) (the goal of professional objectors is "to hijack as many dollars for themselves as they can wrest from a negotiated settlement"); Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges* (Federal Judicial Center 2005) (warning judges to "be wary of self-interested professional objectors who often present rote objections to class counsel's fee requests and add little or nothing to the fee proceedings").

Young claims to have a "curiosity" about what defense counsel was "offered" by Class Counsel to induce this standard settlement provision.  Young at 18.  In reality, he is insinuating the existence of some collusion between Class Counsel and the Defendants.[14]  Of course, he offers no facts whatsoever in support of this *ad hominem* attack on Class Counsel's integrity. The Court should ignore such a baseless, offensive allegation.

---

[14] In his Objection, Mr. Young goes even further, claiming that Class Counsel "breach[ed]" and "violate[d]" its fiduciary duty by including a quick pay provision in the Agreement.  Young Objection at 22.  Mr. Young apparently makes no qualms about falsely and recklessly attempting to impugn the integrity of Class Counsel.  It is consistent with his and his counsel's ideological agenda and purposes that go well beyond this litigation and taint all that they say.

III.   **CLASS NOTICE WAS EXTENSIVE AND SATISFACTORY**[15]

Young offers nothing new in his attack on class notice, stating, without evidentiary support or assistance from experienced professionals in the area of providing notice in aggregate cases, that such notice was deficient insofar as the Attorneys' Fees Motion was not available on the settlement website until June 6, 2011.  Young at 19. As set forth in Plaintiffs' Response, the Attorneys' Fees Motion has been accessible on the ECF/PACER website since May 24, 2011, and Mr. Young has clearly had access to it.  *See* Plaintiffs' Response at 11.[16]  Moreover, the Notice disseminated to nearly 1.3 million potential Subclass members via mail and e-mail, and available to all Subclass members *via* the settlement website, clearly stated that "Class Counsel will ask the Court to award them fees of up to 33 1/3 % of the settlement, plus reimbursement of expenses that they incurred in litigation and administering the settlement fund."  *See* Declaration of Jeanne C. Finegan of the Garden City Group, Exhibit 1 to Plaintiffs' Memorandum in Support of Motion for Final Approval (*McDonough* Dkt. No. 737) ("Finegan Decl."), at 5-6; Notice, Exhibit 1 to this Court's Order Preliminarily Approving Settlement and Providing for Notice (*McDonough* Dkt. No. 706), at 8-9.[17]  Notice of the filing of, and contents of, the Attorneys' Fees Motion was therefore more than sufficient to satisfy the requirements of Fed. R. Civ. P. 23(h).  *See, e.g., In re OSB Antitrust Litig.*, No. 06-cv-00826 (E.D. Pa. December 9, 2008) (Order dated December 9, 2008, Dkt. 945) (Diamond, J.), attached hereto as Exhibit 3 (finding sufficient notice of motion for attorney's fees under 23(h) even though the motion was filed *after* the

---

[15] Lederer similarly attacks the Notice in an argument that replicates her original Objection.  *See* Lederer Reply at 5-6.

[16] Lederer Objection and Reply also contain information obtained from the Attorneys' Fees Motion, showing no prejudice suffered from the initial absence of the Motion on the settlement website.

[17] A slightly amended Notice to address Regal Lager, Inc.'s non-payment prior to dissemination was approved by this Court on March 29, 2011, however the amendment did not in any way alter the language quoted herein.

deadline for objections because the settlement notice disclosed the fee percentage that class

counsel would seek).[18]

## IV. THE CERTIFICATION OF A SETTLEMENT SUBCLASS CONTEMPORANIOUSLY WITH A PROPOSED SETTLEMENT DOES NOT REQUIRE A RE-REVIEW OF THE SETTLEMENT AGREEMENT WHEN THE PRIMARY CLASS CERTIFICATION OCCURRED PRIOR TO SETTLEMENT

In his Response, Young acknowledges (after his error was pointed out by Plaintiffs) that

the *McDonough* Subclasses were certified well in advance of the Settlement Agreement being

reached.  He instead argues (for the first time in his Reply) that because the *Elliott* Subclasses

were certified after the Settlement was reached, this Court should view the Settlement with

"especially piercing judicial scrutiny."  Young at 13-14.  Although Plaintiffs are confident that

the Settlement Agreement would stand up to any degree of scrutiny, Plaintiffs note that Young

cannot, and does not, offer any authority to support his argument.  *Id.*  Nor does he offer any

reason why those Subclasses should not have been preliminarily certified by this Court or fully

certified as settlement classes as part of the settlement approval process.  If it is Young's point,

as it appears to be throughout, that there should be no class actions and no class action

settlements, then of course it makes no difference to him when this Court reached its conclusion

as to the propriety of the Subclasses and their satisfaction of Rule 23.

As this Court is well aware, the *Elliott* Subclasses were combined with the certified

*McDonough* Subclasses and preliminarily certified together as the Settlement Subclasses.  The

operative facts and legal issues for the *Elliott* and *McDonough* Subclasses are essentially the

---

[18] While the *OSB* decision preceded the decision in *In re Mercury Interactive Corp. Securities Litig.*, 618 F.3d 988 (9th Cir. 2010), *Mercury* merely held that "a schedule that requires objections to be filed before the fee motion itself is filed denies the class the full and fair opportunity to examine and oppose the motion that Rule 23(h) contemplates."  *Id.* at 995.  In this case, the Attorneys' Fees Motion was filed and publicly available a full thirteen days prior to the deadline for objections.

same.  The creation of subclasses for settlement purposes as part of the preliminary approval of a

settlement agreement does not warrant any special scrutiny.  Such heightened scrutiny is

warranted in instances in which the settlement agreement was prior to class certification because

such cases have not withstood the rigors of the certification process.  Such is not the case here,

where this Court had already reviewed and certified the *McDonough* Subclasses prior to the

parties reaching a Settlement Agreement.

## V.       THE POTENTIAL OF A CY PRES DISTRIBUTION, IF ANY, IS VALID UNDER WELL-ESTABLISHED LAW

Young argues that the *cy pres* provision of the Settlement Agreement is improper because

"its intended operation apparently leaves some members of the class benefited by no more than

$5.00." Young at 15.[19]   Young is referring to the provision of the Settlement Agreement which

provides that, after all Class Members have been compensated for as much as three times 100%

of their losses, remaining settlement funds (if any) will be allocated to charitable organizations to

be selected by the Court.  Settlement Agreement ¶ 22.   Young argues that because those Class

members who do not have any proof of purchase whatsoever will be entitled to a set award of

$5.00, they will not be receiving 100% of their damages and therefore will be harmed by any *cy*

*pres* distribution.  Young at 15; Proposed Allocation Order at ¶ 6.c.  Of course, this argument

ignores the reality that Class members who lack documentation of purchase price or proof of

purchase would be sorely disadvantaged and perhaps be unable to prove damages at an

individual trial, and therefore would be entitled to *zero* in damages.  *See, Lachance*, 965 F.Supp.

at 638 ("[A] settlement is fair to the plaintiffs in a substantive sense…if it gives them the

---

[19] Young apparently attempted to make this same argument in his Objection, but it was not well developed. *See*
Young Objection at 16.

expected value of their claim if it went to trial.") (internal citations omitted).  This Settlement is more than fair to those Class members who do not have evidence of the purchase of their products beyond their sworn statements.

Young also asks this Court to wait until all *cy pres* allocations have been made and then deduct the value of such allocations from the common fund prior to awarding attorneys' fees. Young at 15 (arguing that class counsel should be compensated "only for the benefits it derives for the class, not for the benefits it derives for *cy pres* recipients").  Young offers absolutely no precedent (or reason but his own say so) supporting such a procedure.[20]  Essentially all that Young is attempting to do is to change the definition of a "common fund" recovery and deprive class action lawyers of a fair fee as provided by precedent in this Circuit, in the hopes of starving out class actions.  Young cannot and does not point to one single case supporting this radical

---

[20] The cases to which Young cites in his original Objection, which he reasserts in his Reply, do not support his claim that *cy pres* funds do not benefit Class members and that Class Counsel should receive no compensation for procuring them.  Rather, they stand for the proposition that the class device should not be used to solely benefit class representative(s) or one class at the expense of another.  For example, in *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877 (7th Cir. 2000), the Seventh Circuit reversed a district court decision approving a settlement which provided an incentive award of $2,000.00 while providing no direct compensation for other class members. The proposed attorney's fees were over fourteen times the size of the proposed charitable contribution, but the court did not reverse the settlement on that basis.  Nowhere in the opinion does the court hold that *cy pres* funds do not benefit classes, and because the fee was not based upon the *cy pres* award, the court did not hold that attorneys should not receive compensation for procuring it.  *See also Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) (describing the holding in *Crawford* by stating that "the disproportion- $2,000 for one class member, nothing for the rest- [was] proof that the class device had been used to obtain leverage for one person's benefit," and finding the proposed settlement in the *Murray* case to do the same by providing the class representative with 300% of the statutory award and providing class members each with approximately 1% of theirs.  Again *cy pres* awards were not involved in the Seventh Circuit's determination that the settlement was "untenable.").  *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir. 2004) involved a settlement in which there were two classes, and one (the "telemarketing" class) would receive a payment of up to $2.4 million, while the other (the "information sharing" class) received nothing.  The $243,000.00 obtained for the benefit of the "information sharing" class was allocated to the "telemarketing" class's award, and the attorney's argued that it was a "*cy pres* remedy."  While the Court held there was no benefit to the "information sharing" class from the "*cy pres*" distribution, in that case, members of the "information sharing" class were sacrificing rights the court determined could be worth as much as $35 million without receiving any direct benefit.  In this case, funds can be distributed *cy pres*, if at all, only after all claiming Class members have been fully compensated.  Therefore, the concerns in *Mirfasihi* do not apply here either.

proposal.[21]  *See, e.g., Lachance*, 965 F. Supp. at 649 n.15 (refusing to deduct cost of notice from settlement fund before calculating attorneys' fees because "such a system would overly tax the court's resources").

Even if a *cy pres* distribution is not the most direct way to benefit Class members, the Supreme Court has held that class counsel has a claim to a portion of any unclaimed settlement funds procured on behalf of class members.  Absent class members' "right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel.  Unless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980).  Therefore, courts must require "every member of the class to share attorney's fees to the same extent that he can share the recovery."  *Id.*  In this case, any *cy pres* distribution will be comprised of funds that were left unclaimed by absent class members, and those absent class members must "contribute to the payment of attorney's fees incurred on their behalves."  *Id.*

---

[21] Moreover, Courts have held the exact opposite – that *cy pres* distributions are intended to and do provide a benefit to the class, particularly absent class members.  *See, e.g., In re "Agent Orange" Prod. Liab. Litig. MDL No. 381*, 818 F.2d 179, 185 (2d Cir. 1987) ("[A] district court may, in order to maximize 'the *beneficial impact* of the settlement fund on the needs of the class,' set aside a portion of the settlement proceeds for programs designed to assist the class.") (internal citation omitted) (emphasis added); *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 34 (1st Cir. 2009) ("[T]he *cy pres ... distributions serve the objectives of compensation for the class (albeit in an indirect manner)*, access to judicial relief for small claims, and deterrence of illegal behavior.") (quoting 3 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 10:15, at 513 (4th ed.2002)) (emphasis added); *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2008 U.S. Dist. LEXIS 77739, at *10 (E.D. Pa. Oct. 3, 2008) ("One court has summarized [*cy pres*'] application to the class action context as follows: 'Where settlement funds remain after distribution to class members, courts have approved charitable donations to organizations geared toward combating harms similar to those that injured the class members. Such a donation may serve the *cy pres* principle of indirectly *benefiting all class members.*'") (quoting *In re Motorsports Merchandise Antitrust Litig.*, 160 F. Supp. 2d 1392, 1394 (N.D. Ga. 2001)) (emphasis added).

It appears as though Young is asking this Court to treat this antitrust class action settlement as a "claims made" or "coupon" settlement, such as those regulated under the Class Action Fairness Act. *See* 28 U.S.C. § 1712(a) (providing that the portion of an attorneys' fees which is attributable to a coupon settlement must be based on the amount of coupons which are actually redeemed by the class).[22] Of course, this Settlement follows a different procedure – the creation of a common fund for settlement. This is not a settlement where any amounts not paid to Class members revert back to the defendants. All funds will eventually be paid to Class members or to institutions whose interests are aligned with the Class members' interests. Thus, the Class members will be benefited both directly with cash and indirectly if the all of the cash is not distributed to the Class members. There is an explicit denial of reversion to Defendants in the Settlement Agreement. Settlement Agreement ¶ 20. Young asks this Court to undertake an unnecessary burden. Instead, the Court should disregard this argument, utterly unsupportable under the law, and approve the Settlement Agreement, including its *cy pres* provision. *See, e.g.*, *Gates v. Rohm & Haas Co.*, No. 06-1743, 2011 U.S. Dist. LEXIS 30730, at *6 (E.D. Pa. Mar. 24, 2011) ("Courts generally 'have approved charitable donations to organizations geared toward combating harms similar to those that injured the class members. Such a donation may serve the *cy pres* principle of indirectly benefiting all class members.'"), *citing In re Linerboard Antitrust Litig.*, MDL No. 1261, 2008 U.S. Dist. LEXIS 77739 (E.D. Pa. Oct. 3, 2008); *see also* 3 Alba

---

[22] In the alternative, since many of Young's objections rely on class action settlements in securities cases, Young may be asking the Court to treat this settlement as a "claims made" settlement, which it is not. Claims made settlements in the securities context are governed by the Private Securities Litigation Reform Act (PSLRA). *See* 15 U.S.C. §§ 77z-1(a)(6); 78u-4(a)(6) (stating that attorneys' fees in securities class actions cannot exceed a "reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."). Of course, this is not a securities case, nor is this a claims made settlement. Claims made settlements contain reverter provisions requiring any remaining settlement funds to revert back to the defendants. No such provision exists in this case. *See* Settlement Agreement ¶ 20.

Conte & Herbert B. Newberg, *Newberg on Class Actions* § 10:16 (4th ed. 2002) (unclaimed portion of settlement may be distributed according to *cy pres* principles).

## CONCLUSION

For the reasons set forth above, as well as those detailed in the Plaintiffs' Response, in Plaintiffs' Motion for Final Approval of the Settlement (*McDonough* Dkt. No. 737), and in Plaintiffs' Attorneys' Fees Motion, the Settlement Agreement is fair, reasonable, and adequate, and provides a great benefit to the Class members. Further, Plaintiff' Attorneys' Fees Motion seeks only a fraction of the total lodestar amount of fees, and represents Class Counsel's sole compensation for years of arduous litigation, without which this Settlement would never have been achieved. Therefore, Plaintiffs respectfully request that this Court approve both the Settlement Agreement and Plaintiffs' Attorneys' Fees Motion.

Dated: June 27, 2011

Respectfully submitted,

_/s/_ _Eugene A. Spector_____
Eugene A. Spector
William G. Caldes
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF
& WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel.: (215) 496-0300
Fax: (215) 496-6611

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
1144 West Lake Street, Suite 400
Oak Park, IL 60301
Tel.: (708) 628-4949
Fax: (708) 628-4950

Steve W. Berman
Anthony D. Shapiro
George W. Sampson
Ivy Arai Tabbara
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel.: (206) 623-7292
Fax: (206) 623-0594

Mary Jane Fait
Theodore B. Bell
WOLF HALDENSTEIN ADLER FREEMAN
& HERZ LLC
55 West Monroe Street, Suite 1111
Chicago, IL 60603
Tel.: (312) 984-0000
Fax: (312) 984-0001

Fred T. Isquith
Thomas H. Burt
WOLF HALDENSTEIN ADLER FREEMAN
& HERZ LLC
270 Madison Avenue
New York, NY 10016
Tel.: (212) 545-4600
Fax: (212) 545-4653

***CLASS COUNSEL***