# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE OSB ANTITRUST LITIGATION | :<br>: Master File No. 06-826<br>: |
| THIS DOCUMENT RELATES TO:<br>ALL DIRECT ACTIONS | :<br>:<br>:<br>: |

## ORDER

On November 10, 2008, Direct Purchaser Plaintiffs filed a Motion for Final Approval of Proposed Settlements with Remaining Defendants, Approval of Plan of Allocation and Award of Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards for Class Representatives. (Doc. No. 916.) In separate Orders today, I have approved each of the five Settlements with the remaining Defendants. I will approve the Plan of Allocation. I will grant Plaintiffs' requests for reimbursement of expenses and incentive awards for Class Representatives. Finally, I will grant Plaintiffs' request for attorneys' fees, subject to my approval of the distribution of the fees and my resolution of any disputes respecting that distribution.

**I.     PLAN OF ALLOCATION**

Plaintiffs seek approval of their proposed Plan of Allocation, which they set forth in the Combined Notice that was disseminated to Class Members. <u>See</u> Combined Notice ¶ 1.6. Under the Plan, Members of the Litigation Class, Huber Settlement Class, Georgia-Pacific Settlement Class, Ainsworth Settlement Class, and Tolko Settlement Class must timely file a Claim Form with the Claims Administrator, who will award qualified Claimants their *pro rata* share of the dollar value of the appropriate settlements. Membership in the Classes is determined by the type

of OSB product the Claimant purchased and the date of purchase. There is a single Claim Form for all the Classes, which was due to the Claims Administrator by December 1, 2008. Each Claimant's *pro rata* share will be determined by dividing (a) the dollar amount of the Claimant's direct purchases of the OSB products included in the Class by (b) the total dollar amount of all claims made by Members of that Class. The Claims Administrator may investigate claims or require additional documentation to determine the Claimant's appropriate share. A Claimant may appeal the denial of a claim to the Court. The settlement funds will be distributed in this fashion as soon as practicable.

In considering whether to approve a proposed plan of allocation, courts employ the same standard as that used to determine whether the settlement itself should be approved: the plan must be fair, reasonable, and adequate. See, e.g., In re Am. Bus. Fin. Servs., Inc. Noteholders Litig., No. 05-232, 2008 WL 4974782, at *9 (E.D. Pa. Nov. 21, 2008); Nichols v. SmithKline Beecham Corp., No. 00-6222, 2005 WL 950616, at *16 (E.D. Pa. Apr. 22, 2005). "In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." In re Ikon Office Solutions, Inc. Sec. Litig., 194 F.R.D. 166, 184 (E.D. Pa. 2000).

I find that the proposed Plan of Allocation is indeed fair, reasonable, and adequate. Class Members will be compensated for their qualifying OSB purchases in proportion to the total amount of purchases made by Claimants within each Class. This is a common distribution scheme that courts frequently approve because it enables each claimant to be compensated fairly vis à vis other class members. See, e.g., Meijer, Inc. v. 3M, No. 04-5871, 2006 WL 2382718, at *17 (E.D. Pa. Aug. 14, 2006) (because "the amount of a Class Member's relevant, direct purchases provides a reasonable measure of the relative injury which each Class Member has

suffered . . . the Distribution Plan correlates to the damages that each participating Class Member actually suffered").

The RV Class Members filed a superficial objection to the proposed Plan of Allocation, arguing that the Combined Notice failed adequately to describe a distribution plan. (Doc. No. 906.) In a separate Order, I have today overruled this objection. Moreover, no Class Member has objected to the substance of the proposed Plan. Accordingly, I will approve the Plan of Allocation as fair, reasonable, and adequate.

## II. ATTORNEYS' FEES

Class Counsel seek attorneys' fees of one third the total settlement funds that are or will be available to Class Members, including interest. The total settlement amount is $120,730,000 plus interest. Excluding the value of the opted-out claims, one third of this amount currently equals $37,091,797. In the event the opt-outs do not pursue their claims against Defendants and funds revert back to Class Members, Class Counsel seek one third of these funds as well. I find that this request for attorneys' fees is reasonable and well-earned.

### A. Standards

I may award "reasonable attorneys' fees" in a class action. Fed. R. Civ. P. 23(h). "[A] thorough judicial review of fee applications is required in all class action settlements." In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 819 (3d Cir. 1995). A court may award attorneys' fees under either the percentage-of-recovery or lodestar methods. The percentage-of-recovery method is generally preferred in common fund class actions, however, "because it allows courts to award fees from the fund 'in a manner that rewards

counsel for success and penalizes it for failure.'" In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 300 (3d Cir. 2005) (quoting In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 333 (3d Cir. 1998)). The Third Circuit has urged district courts to use the lodestar method to cross-check the reasonableness of a requested percentage-of-recovery fee. Id. at 305.

The Third Circuit has set out criteria for district courts to consider in determining whether a fee request is reasonable:

> (1) the size of the fund created and the number of persons benefitted;
> (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;
> (3) the skill and efficiency of the attorneys involved;
> (4) the complexity and duration of the litigation;
> (5) the risk of nonpayment;
> (6) the amount of time devoted to the case by plaintiffs' counsel; and
> (7) the awards in similar cases.

Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000). Other criteria a court may consider include:

> (1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations . . . ;
> (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained . . . ; and
> (3) any "innovative" terms of settlement.

In re AT&T Corp., 455 F.3d 160, 165 (3d Cir. 2006) (citing Prudential, 148 F.3d at 338-39).

**B.      Reasonableness of the Requested Fee**

Each of these criteria supports approval of the requested fee award. The size of the settlement fund is quite large. Class Counsel negotiated settlements with each of the nine Defendants, achieving a total recovery of over $120 million. As I discussed in my Orders finally approving these settlements, this is an excellent recovery for the Class.

4

The absence of substantial objections also weighs in favor of approving the request for attorneys' fees. The Combined Notice indicated that Counsel would seek an attorneys' fees award not to exceed one third of the recovery. See Combined Notice ¶ 1.8. Of a class of over 30,000, only a group of sixteen Class Members – the RVCMs – objected to the proposed Settlements. I have overruled all these objections. The RVCMs also filed a "technical objection" to the notice of Class Counsel's fee request, and urged that I award them attorneys' fees as objecting Class Members. (Doc. Nos. 901, 906; Tr. Nov. 24, 2008 at 34.) I have rejected both arguments in separate Orders issued today. Interestingly, the RVCMs do not contend that a fee of one third of the total recovery is unreasonable. (See Doc. No. 906.) There were thus no objections as to the reasonableness of Class Counsel's fee request.

"[T]he most significant factor [in evaluating claims for counsel fees] . . . is the quality of representation, as measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." In re Ikon, 194 F.R.D. at 194 (quotations and citation omitted). Class Counsel have represented their clients with consummate skill and efficiency, bringing this massive matter to conclusion in less than three years. Lead Class Counsel – Jeffrey Corrigan and the other lawyers from Spector, Roseman, Kodroff & Willis, P.C. – performed brilliantly in this exceptionally difficult case. Ably assisted by Co-Lead Counsel, Mr. Corrigan supervised discovery efforts in which over eighty depositions were taken and over thirteen million documents were produced. Moreover, counsel for Defendants – dozens of extremely distinguished lawyers from across the country – skillfully and vigorously opposed Plaintiffs.

Lead Defense Counsel Joseph Tate and other lawyers from Dechert LLP and James Grant and other lawyers from Alston & Bird LLP are superb litigators who, along with other Defense Counsel, presented sophisticated, aggressive defenses on behalf of their clients, filing motions to dismiss, opposing class certification, and seeking summary judgment.

The fourth factor – complexity and duration of the litigation – also clearly supports the fee request. This was an exceedingly complex class action that was vigorously litigated for nearly three years. The case required careful review of millions of pages of complex financial documents, presentation and review of sophisticated expert analyses, and the filing of innumerable motions. As of this date, there are nearly one thousand docket entries for this case.

Class Counsel pursued this difficult case on a contingent basis, and recovery was by no means guaranteed. The risk of nonpayment for fees and expenses was thus substantial. This factor thus also weighs in favor of approving Class Counsel's fee request.

Class Counsel have invested a tremendous amount of time during the nearly three years this matter was litigated. Counsel's Joint Declaration reports that they have spent over 100,000 hours litigating the case – an efficient expenditure of attorney time, given this case's size and complexity.

A fee of one third the total recovery is also reasonable when compared to fees courts in this Circuit have awarded in similar cases. See, e.g., In re Remeron Direct Purchaser Antitrust Litig., No. 03-0085, 2005 WL 3008808, at *15-16 (D.N.J. Nov. 9, 2005) ("A one third fee from a common fund has been found to be typical by several courts within this Circuit which have undertaken surveys of awards within the Third Circuit and others.")

The Gunter criteria thus strongly support approval of the fee request. The Prudential

factors also support approval. Prudential, 148 F.3d at 338-39. First, the benefit to the Class is directly and entirely attributable to Class Counsel's efforts: there was no underlying government investigation on which Counsel could rely. Second, a 33 1/3% contingent fee is commonly negotiated in the private market. See In re Linerboard Antitrust Litig., No. MDL 1261, 2004 WL 1221350, at *15 (E.D. Pa. June 2, 2004) (citing expert declarations that concluded that a thirty percent fee is "at or below the market rate"); Remeron, 2005 WL 3008808, at *16 ("Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation."). Third, the Settlement Agreements include innovative provisions requiring the Settling Defendants to cooperate against all non-settling Defendants (with the exception of Louisiana-Pacific's, the last-settling Defendant). These provisions may well have figured into the eventual decisions of all Defendants to settle.

  The one third fee request is especially reasonable when cross-checked with Class Counsel's lodestar. See Rite Aid, 396 F.3d at 305 (suggesting that district courts check a percentage-of-recovery fee against counsel's lodestar to confirm reasonableness). Class Counsel have submitted declarations and summaries of their hourly billing. (Doc. No. 916 Ex. B1-B39.) I have examined these filings and find the time spent and hourly rates to be reasonable. The cumulative lodestar totals $38,796,018. Class Counsel have instead requested one third of the settlement funds that are or will be available to Class Members, which currently equals $37,091,797. There is thus a negative multiplier of approximately .95. Given that courts have approved percentage-of-recovery fee requests with lodestar multipliers in the one to four range, Class Counsel's request is very reasonable. See In re Cendant Corp. Prides Litig., 243 F.3d 722, 742 (3d Cir. 2001) ("'[M]ultiples ranging from one to four are frequently awarded in common

7

fund cases when the lodestar method is applied.'") (quoting Prudential, 148 F.3d at 341).

Accordingly, I will approve Class Counsel's requested fee award of one third of the total settlement funds that are or will be available to Class Members. I decline, however, to follow Counsel's suggestion that I allow Lead and Co-Lead Counsel complete discretion to divide over $37 million among the firms that represented Plaintiffs. Prudence suggests that judicial review of that process is warranted, especially in light of the dispute between Co-Lead Counsel Cohen, Milstein, Sellers & Toll, PLLC and Hausfeld LLP. (See Doc. No. 931; Tr. Nov. 24, 2008 at 25-30.) I recognize, however, that Lead and Co-Lead Counsel are in the best position initially to determine each firm's contributions to the case. See Linerboard, 2004 WL 1221350, at *18 (liaison counsel is "better able to describe the weight and merit of each [counsel's] contribution") (quotation and citation omitted). Accordingly, I will Order Lead and Co-Lead Counsel to develop and submit a proposed plan of distribution of the attorneys' fees award by January 9, 2009, and will permit any interested firm or attorney to file objections to this proposed plan by January 16, 2009. No attorneys' fees shall be disbursed until I finally approve a complete plan of distribution. If Plaintiffs' Counsel are unable to agree as to the fees to be awarded to a firm or lawyer, the matter shall be presented to me for resolution. A hearing on any such dispute shall be held on February 9, 2009 at 2 p.m. I will not allow any fees to be disbursed to Plaintiffs' Counsel until all these disputes are resolved.

### III. UNREIMBURSED EXPENSES

Class Counsel request $1,874,979 in unreimbursed litigation expenses, documented in declarations submitted to the Court. (Doc. No. 916 Ex. B ¶¶ 147-52; Ex. B1-B39.) "Attorneys

who create a common fund for the benefit of a class are entitled to reimbursement of reasonable litigation expenses from the fund." Nichols, 2005 WL 950616, at *24 (citations omitted). I have already approved reimbursement of over $1.6 million in litigation expenses. (Id. ¶ 148.) This complex, lengthy matter involved some eighty depositions, the creation and maintenance of a huge case database, and the preparation and review of expert economic analyses and reports. There has been no objection to the reasonableness of the request for expenses. Accordingly, I find that these expenses are reasonable and I will approve reimbursement.

## IV. INCENTIVE AWARDS FOR CLASS REPRESENTATIVES

Finally, Plaintiffs seek approval of $25,000 incentive awards for each of the six Class Representatives. "[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." Cullen v. Whitman Medical Corp., 197 F.R.D. 136, 145 (E.D. Pa. 2000) (citation omitted). Plaintiffs state that the Class Representatives have worked closely with Class Counsel throughout the litigation and have reviewed litigation documents, provided discovery, and submitted to deposition. (Doc. No. 916 at 46.) Given this participation over nearly three years, and the absence of objection to the awards, I find that a $25,000 incentive award to each Class Representative is reasonable. See, e.g., Linerboard, 2004 WL 1221350, at *18-19 (approving $25,000 incentive awards, finding "ample authority in this district and in other circuits" to support the amount).

**AND NOW**, this 9th day of December, 2008, it is **ORDERED** that Plaintiffs' Motion for Final Approval of Proposed Settlements with Remaining Defendants, Approval of Plan of

9

Allocation and Award of Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards for Class Representatives (Doc. No. 916) is **GRANTED**. It is **FURTHER ORDERED** as follows:

1. The Plan of Allocation proposed by Direct Purchaser Plaintiffs in the Motion for Final Approval is **APPROVED** as fair and reasonable.

2. The Claims Administrator, Complete Claim Solutions LLC, shall distribute the Net Settlement Funds (i.e. the portion of the approved settlement funds that remains after deduction of notice and administration costs, including the fees and costs of the Claims Administrator that have already been or may hereafter be approved by the Court, and any attorneys' fees and expenses that the Court has already awarded, or may hereafter award, to Class Counsel) as follows:

    a. Members of the Litigation Class who submit a valid and timely Claim Form will receive proceeds from the settlements with Louisiana-Pacific Corporation, Weyerhaeuser Company, Potlatch Corporation, Norbord Industries, Inc., and Grant Forest Products Sales, Inc. and Grant Forest Products, Inc. The Net Settlement Funds will be distributed on a *pro rata* basis to Litigation Class Members who submit a valid and timely Claim Form. The Claims Administrator will calculate the *pro rata* share for each Litigation Class Member who submits a valid and timely Claim Form by dividing (a) the dollar value of that Litigation Class Member's direct purchases of OSB structural panels included in the Litigation

          Class by (b) the total dollar value of all Claims made by members of the Litigation Class.

    b.    Members of the Huber Settlement Class who submit a valid and timely Claim Form will receive proceeds from the settlement with J.M. Huber Corporation. The Net Settlement Funds will be distributed on a *pro rata* basis to Huber Settlement Class Members who submit a valid and timely Claim Form. The Claims Administrator will calculate the *pro rata* share for each Huber Settlement Class Member who submits a valid and timely Claim Form by dividing (a) the dollar value of that Huber Settlement Class Member's direct purchases of the OSB products included in the Huber Settlement Class by (b) the total dollar value of all Claims made by members of the Huber Settlement Class.

    c.    Members of the Georgia-Pacific Settlement Class who submit a valid and timely Claim Form will receive proceeds from the settlement with Georgia-Pacific LLC. The Net Settlement Funds will be distributed on a *pro rata* basis to Georgia-Pacific Settlement Class Members who submit a valid and timely Claim Form. The Claims Administrator will calculate the *pro rata* share for each Georgia-Pacific Settlement Class Member who submits a valid and timely Claim Form by dividing (a) the dollar value of that Georgia-Pacific Settlement Class Member's direct purchases

of OSB structural panels included in the Georgia-Pacific Settlement Class by (b) the total dollar value of all Claims made by members of the Georgia-Pacific Settlement Class.

d. Members of the Ainsworth Settlement Class who submit a valid and timely Claim Form will receive proceeds from the settlement with Ainsworth Lumber Co. Ltd. The Net Settlement Funds will be distributed on a *pro rata* basis to Ainsworth Settlement Class Members who submit a valid and timely Claim Form. The Claims Administrator will calculate the *pro rata* share for each Ainsworth Settlement Class Member who submits a valid and timely Claim Form by dividing (a) the dollar value of that Ainsworth Settlement Class Member's direct purchases of OSB structural panels included in the Ainsworth Settlement Class by (b) the total dollar value of all Claims made by members of the Ainsworth Settlement Class.

e. Members of the Tolko Settlement Class who submit a valid and timely Claim Form will receive proceeds from the settlement with Tolko Industries Ltd. The Net Settlement Funds will be distributed on a *pro rata* basis to Tolko Settlement Class Members who submit a valid and timely Claim Form. The Claims Administrator will calculate the *pro rata* share for each Tolko Settlement Class Member who submits a valid and timely Claim Form by dividing (a) the dollar value of that Tolko Settlement Class Member's direct

      purchases of OSB structural panels included in the Tolko Settlement Class by (b) the total dollar value of all Claims made by members of the Tolko Settlement Class.

   f. Regardless of their purchases, individuals and entities are not eligible to receive settlement proceeds if they: (1) excluded themselves from all of the classes in which they qualified; (2) have assigned or otherwise transferred their total claims to other parties; (3) are a government entity; (4) are a Court in any of the lawsuits related to this case; or (5) are a Defendant, or parent, subsidiary, or affiliate of one of the Defendants.

3. Direct Purchaser Plaintiffs' petition for the award of attorneys' fees and the reimbursement of litigation expenses to Class Counsel in the Motion for Final Approval is **GRANTED**.

4. Attorneys' fees in the amount of 33.33% of the total settlement funds that are or will be available to Class Members, together with interest accrued thereon, are awarded to Class Counsel, and interest shall accrue from the date the Defendants made the deposits into each of the respective settlement accounts until the date such funds are dispersed to Class Counsel, with interest on these fees being paid at the same rate as the settlement funds have earned.

5. Lead and Co-Lead Counsel shall submit a proposed plan of distribution of the attorneys' fees award by January 9, 2009. Any interested firm or attorney objecting to this plan must file their objection by January 16, 2009. No attorneys' fees shall be distributed until

       I finally approve an appropriate plan of distribution. If Plaintiffs' Counsel are unable to agree as to the fees to be awarded to a firm or lawyer, the matter shall be presented to me for resolution. A hearing on any such dispute shall be held on February 9, 2009 at 2 p.m. I will not allow any fees to be disbursed to Plaintiffs' Counsel until all these disputes are resolved.

6.     Unreimbursed expenses of $1,874,979 are awarded to Class Counsel from the Total Settlement Amount as reimbursement of expenses Plaintiffs' counsel reasonably incurred to prosecute this litigation. Lead and Co-Lead Counsel are authorized to distribute this award as they deem appropriate.

7.     Direct Purchaser Plaintiffs' request for payment of incentive awards to the six Class Representatives is **GRANTED**. I award $25,000 payable from the Total Settlement Amount to each of the six class representatives: Sawbell Lumber Co., Columbare Inc., Norwood Sash & Door Manufacturing Co., Frontier Lumber Co., Inc., Grubb Lumber Co., Inc., and New Deal Lumber & Millwork Co., Inc.

8.     The Court retains continuing and exclusive jurisdiction over all matters relating to the administration and implementation of the Plan of Allocation and the award of attorneys' fees, reimbursement of litigation expenses, and incentive awards for class representatives. Plaintiffs, Class Members and Plaintiffs' Counsel are hereby deemed to have irrevocably submitted to the exclusive jurisdiction of this Court, for any suit, action, proceeding or dispute arising out of or relating to the Plan of Allocation or the award of attorneys' fees, reimbursement of litigation expenses or incentive awards for class representatives. Solely for purposes of such suit, action or proceeding, to the fullest extent they may effectively

do so under applicable law, the parties are deemed to have irrevocably waived any claim or objection that they are not subject to the jurisdiction of this Court, or that this Court is, in any way, an improper venue or an inconvenient forum.

        **AND IT IS SO ORDERED.**

        /s/ Paul S. Diamond

        _____
        **Paul S. Diamond, J.**