# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL M. MCDONOUGH, *et al*.,<br><br>                              Plaintiffs,<br><br>            v.<br><br>TOYS "R" US, INC., d/b/a/ Babies "R" Us, *et al*.,<br><br>                              Defendants. | C.A. No. 2:06-cv-0242-AB |
| ARIEL ELLIOTT, *et al.*,<br><br>                              Plaintiffs,<br><br>            v.<br><br>TOYS "R" US, INC., d/b/a Babies "R" Us, *et al*.,<br><br>                              Defendants. | No. 2:09-cv-06151-AB |

## MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS FOR NAMED PLAINTIFFS

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................1

II.    CLASS COUNSEL'S INVESTMENT OF TIME AND MONEY IN THE CASE ...........2

III.   AWARD OF ATTORNEYS' FEES AND EXPENSES ....................................2

     A.     A Reasonable Percentage of the Fund Recovered is the Appropriate Method for Awarding Class Counsel's Attorneys' Fees in this Common Fund Settlement ......................................................................3

     B.     A Fee Award Based on 33-1/3% of the Common Fund Is Fair and Reasonable .................................................................................4

          1.     An award of 33⅓% is reasonable based on the size of the Common Fund. ...........................................................................4

          2.     Because the deadline for objections has not yet passed, analysis of the second factor is premature. ..................................................5

          3.     Class Counsel are skilled and efficient litigators. ......................5

          4.     The litigation was complex and enduring. .................................5

          5.     Class Counsel faced a risk of nonpayment. ...............................7

          6.     Class Counsel devoted more than 84,950.77 hours to prosecuting this action. ..........................................................................7

          7.     Awards in similar cases demonstrate 33⅓% is reasonable. ........7

          8.     Class Counsel prosecuted the litigation without help from the government or other public agencies. ........................................8

          9.     The requested fee is consistent with the percentage fee that would have been negotiated in a private contingent fee arrangement. ..................8

          10.    The factor of any innovative terms is neutral. ...........................9

     C.     The Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee ..............................................................................9

          1.     Class Counsel's lodestar is reasonable. ....................................10

          2.     The negative multiplier of .34 mitigates in favor of the requested fee. ......11

IV.     CLASS COUNSEL SHOULD BE REIMBURSED FOR THEIR EXPENSES ...............11

V.      INCENTIVE AWARDS ARE WARRANTED FOR NAMED PLAINTIFFS.................12

VI.     CONCLUSION...............................................................................................................13

001897-12  711012 V1

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
263 F.R.D. 226 (E.D. Pa. 2009) ................................................................................. 13

*In re AT&T Corp. Secs. Litig.*,
455 F.3d 160 (3d Cir. 2006) .................................................................................. 3, 8

*In re Auto. Refinishing Paint Antitrust Litig.*,
2008 U.S. Dist. LEXIS 569 (E.D. Pa. Jan. 3, 2008) ........................................... 2, 4

*In re Baby Prods. Antitrust Litig.*,
708 F.3d 163 (3d Cir. 2013) .................................................................................. 4, 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................. 6

*In re Blech Sec. Litig.*,
2002 U.S. Dist. LEXIS 23170 (S.D.N.Y. Dec. 4, 2002) ......................................... 7

*Blum v. Stenson*,
465 U.S. 886 (1984) .................................................................................................. 3

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .................................................................................................. 3

*Bouman v. Block*,
940 F.2d 1211 (9th Cir. 1991) ............................................................................... 10

*Bradburn Parent Teacher Store, Inc. v. 3M*,
513 F. Supp. 2d 322 (E.D. Pa. 2007) ....................................................................... 2

*Caudle v. Bristow Optical Co., Inc.*,
224 F.3d 1014 (9th Cir. 2000) ................................................................................. 9

*In re Cendant Corp. Prides Litig.*,
243 F.3d 722 (3d Cir. 2001) ................................................................................. 6, 11

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005) ..................................................................................... 3

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*,
269 F.RD. 468, 476 (E.D. Pa. 2010) ...................................................................... 13

*In re Corel Corp. Sec. Litig.*,
  293 F. Supp. 2d 484 (E.D. Pa. 2003) ................................................................2, 11

*Cullen v. Whitman Med. Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000)..........................................................................5

*In re Diet Drugs Prod. Liab. Litig.*,
  582 F.3d 524 (3d Cir. 2009)................................................................3, 4, 9, 11

*In re Diet Drugs Prods. Liab. Litig.*,
  553 F. Supp. 2d 442 (E.D. Pa. 2008) ..................................................................8

*In re FAO Inc. Sec. Litig.*,
  2005 U.S. Dist. LEXIS 16577 (E.D. Pa. May 20, 2005) ...................................2

*In re Fasteners Antitrust Litig.*,
  2014 U.S. Dist. LEXIS 9990 (E.D. Pa. Jan. 27, 2014) ...................................2, 9

*In re Flonase Antitrust Litig.*,
  951 F. Supp. 2d 739 (E.D. Pa. 2013) .............................................................2, 4, 7

*In re Flonase Antitrust Litig.*,
  291 F.R.D. 93 (E.D. Pa. 2013)........................................................................2, 4, 7

*In re Gen. Instrument Sec. Litig.*,
  209 F. Supp. 2d 423 (E.D. Pa. 2001) .............................................................2, 5

*Godshall v. Franklin Mint Co.*,
  2004 U.S. Dist. LEXIS 23976 (E.D. Pa. Dec. 1, 2004) ....................................5

*In re Greenwich Pharm. Sec. Litig.*,
  1995 U.S. Dist. LEXIS 5717 (E.D. Pa. April 26, 1995) ....................................5

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000)................................................................................4

*Hall v. Best Buy Co.*,
  274 F.R.D. 154 (E.D. Pa. 2011)..........................................................................7

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ................................................................................12

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008)............................................................................6, 7

*In re Ikon Office Solutions, Inc.*,
  194 F.R.D. 166 (E.D. Pa. 2000)..........................................................................8

*In re Ins. Brokerage Antitrust Litig.*,
579 F.3d 241 (3d Cir. 2009)..................................................................11

*Kirsch v. Delta Dental*,
534 Fed. Appx. 113 (3d Cir. 2013).....................................................2, 3

*Klingensmith v. Max & Erma's Rests., Inc.*,
2007 U.S. Dist. LEXIS 81029 (W.D. Pa. Oct. 23, 2007) .......................13

*Leegin Creative Leather Prods. Inc. v. PSKS Inc.*,
551 U.S. 877 (2007).................................................................................6

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)......................................................7

*McDonough v. Toys "R" Us, Inc.*,
638 F. Supp. 2d 461 (E.D. Pa. 2009) .......................................................6

*McDonough v. Toys "R" Us, Inc*,
834 F. Supp. 2d 329 (E.D. Pa. 2011), vacated, 708 F.3d 163 (3d Cir. 2013) ................ passim

*In re Medical X-Ray Film Antitrust Litig.*,
1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998).........................5

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ....................................................................5

*Mehling v. New York Life Ins. Co.*,
248 F.R.D. 455 (E.D. Pa. 2008)................................................................8

*Menkes v. Stolt-Nielsen S.A.*,
2011 U.S. Dist. LEXIS 7066 (D. Conn. Jan. 25, 2011)...........................7

*In re Merck & Co. Vytorin ERISA Litig.*,
2010 U.S. Dist. LEXIS 12344 (D.N.J. Feb. 9, 2010) ..............................9

*Mogck v. Unum Life Ins. Co. of Am.*,
289 F. Supp. 2d 1181 (S.D. Cal. 2003)..................................................10

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009) ........................5

*In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)..........................................................4, 10, 11

*In re Ravisent Techs., Inc. Sec. Litig.*,
2005 U.S. Dist. LEXIS 6680 (E.D. Pa. Apr. 18, 2005) ........................2, 4

*In re Remeron Direct Purchaser Antitrust Litig.*,
  2005 U.S. Dist. LEXIS 27012 (D.N.J. Nov. 9, 2005)..............................................................4

*In re Rent-Way Secs. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003)...................................................................................11

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005)..............................................................................................7, 10

*Sprague v. Ticonic Nat'l Bank*,
  307 U.S. 161 (1939)................................................................................................................3

*Stagi v. AMTRAK*,
  880 F. Supp. 2d 564 (E.D. Pa. 2012) ................................................................................2, 4

*Third Circuit Task Force Report*, *Selection of Class Counsel*, 208 F.R.D. 340, 422-23
  (2002)......................................................................................................................................9

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) .................................................................................................3

**OTHER AUTHORITIES**

Denise N. Martin, Vinita M. Juneja, Todd S. Foster & Frederick C. Dunbar, *Recent
  Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* 2
  STAN. J.L. BUS. & FIN. (1996).................................................................................................8

MANUAL FOR COMPLEX LITIGATION § 14.121 (4th ed. 2004) ........................................................3

001897-12  711012 V1

Plaintiffs Julie Lindemann, Melissa Nuttall, Sara Shuck, Lawrence McNally, Stephanie Bozzo, Yossi Zarfati, Darcy Trzupek, Carol McDonough, Ariel Elliott, Beth Hellman, Christine Brooke Logan, Kristi Monville, Sarah Otazo, Kelly Pollock, and Elizabeth Starkman ("Plaintiffs" or "Named Plaintiffs") respectfully move the Court for an Order awarding Class Counsel attorneys' fees and reimbursement of expenses, as well as granting Incentive Awards for the Named Plaintiffs.

## I.      INTRODUCTION

Class Counsel have zealously prosecuted this matter since 2006, investing more than 84,950.77 hours of time and $2,283,482.10 in out-of-pocket expenses, all on a contingent basis.[1] As a result of Class Counsel's work, and after hard-fought litigation that involved extensive investigation and discovery, multiple rounds of motion practice, often a consequence of changes in the law during the course of this litigation, a full evidentiary hearing on class certification, and trial preparation, the Settling Parties settled this antitrust class action for a cash payment of $35,500,000.00.[2]  The Amended Settlement was achieved through the dedicated efforts of Class Counsel working diligently, without compensation, *for more than eight years* to represent the Settlement Class Members.

While the concurrently-filed Memorandum in Support of Motion for Final Approval ("Final Approval Mem.") documents question why the Amended Settlement is a fair, adequate and reasonable result for the Classes and should be approved, this memorandum addresses Class Counsel's request for:  (i) an award of attorneys' fees in the amount of $11,833,333.00, which represents 33⅓% of the gross Settlement Amount, (ii) reimbursement of out-of-pocket litigation expenses of $2,283,482.10; and (iii) approval of a $2,500.00 Incentive Award to each Named Plaintiff in recognition of their valuable and time-consuming services to the Class.

---

[1] Capitalized Terms not otherwise defined herein have the meanings set forth in the Fourth Amended Settlement Agreement ("Amended Settlement").

[2] After the Third Circuit reversed approval of the Initial Settlement, the Settling Parties re-worked the allocation plan and concurrently present to this Court the Amended Settlement.

As detailed below, the record in this case and Third Circuit case law fully support the requested fees and expenses.  A fee award of one-third of the Settlement Fund is reasonable and well within the range of approval in the Third Circuit. [3]  This Court has also found a fee of one-third to be reasonable in other antitrust class actions. [4]  Moreover, this fee request represents just 34% of Class Counsel's lodestar through July 31, 2014.  Accordingly, Plaintiffs respectfully request that the Motion be granted.

## II.   CLASS COUNSEL'S INVESTMENT OF TIME AND MONEY IN THE CASE

As of July 31, 2014, Class Counsel and other Plaintiffs' law firms have devoted more than 84,950.77 hours to this case, reporting a lodestar of approximately $33,886,857.65 at their regular hourly rates and $2,283,482.10 in out-of-pocket expenses. [5]

## III.   AWARD OF ATTORNEYS' FEES AND EXPENSES

Class Counsel requests an award of attorneys' fees of 33-1/3% of the $35,240,000.00 Settlement, or $11,833,333.00, plus interest accrued on that amount.  The request is well within the bounds allowed by law, particularly in light of the length and complexity of this case, as this

---

[3] *See, e.g. Kirsch v. Delta Dental*, 534 Fed. Appx. 113, 116 (3d Cir. 2013) (upholding fee of "roughly 36% of the District Court's conservative valuation" of the settlement value).

[4] *See, e.g., In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 746, 748 (E.D. Pa. 2013) ("*Flonase Direct Purchasers*") (approving requested fee of one-third of $150 million settlement fund (plus interest), and noting that "in the last two-and-a-half years, courts in eight direct purchaser antitrust actions approved one-third fees.") (citations omitted); *In re Flonase Antitrust Litig..*, 291 F.R.D. 93, 104 (E.D. Pa. 2013) ("*Flonase Indirect Purchasers*") ("A one-third fee award is standard in complex antitrust cases of this kind."). Other courts in this District have granted similar awards. *See, e.g., In re Fasteners Antitrust Litig.*, 2014 U.S. Dist. LEXIS 9990, at *17 (E.D. Pa. Jan. 27, 2014) ("Counsel's request for one third of the settlement fund is consistent with other direct purchaser antitrust actions.") (citing *Flonase Direct Purchasers*, 951 F. Supp. 2d at 748); *In re Auto. Refinishing Paint Antitrust Litig.*, 2008 U.S. Dist. LEXIS 569, at *9-10 (E.D. Pa. Jan. 3, 2008) (approving request for fees equaling one-third of the settlement fund); *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 342 (E.D. Pa. 2007) (approving a percentage of recovery of 35%, plus reimbursement of expenses); *In re Ravisent Techs., Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 6680, at *40 (E.D. Pa. Apr. 18, 2005) ("courts within this Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses"); *In re FAO Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 16577, at *5-6 (E.D. Pa. May 20, 2005) (finding a fee of 33%, plus expenses, to be reasonable); *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 497-98 (E.D. Pa. 2003) (this Court awarding counsel one-third of the settlement fund in addition to the reimbursement of litigation expenses); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 433-34 (E.D. Pa. 2001) (approving a fee request of one-third of the settlement fund plus nearly $1,800,000 in expenses); *see also Stagi v. AMTRAK*, 880 F. Supp. 2d 564, 571 (E.D. Pa. 2012) ("this District's fee awards generally range between nineteen and forty-five percent of the common fund") (citations omitted).

[5] *See* Declarations of Class Counsel, attached as Ex. 1; Plaintiff firms' individual fee and expense affidavits, attached as Ex. 2.  *See also* Declaration of Elizabeth A. Fegan Regarding Expenses Paid By Plaintiffs From The Baby Products Litigation Fund, attached as Ex. 3.

Court has already held. *See McDonough v. Toys "R" Us, Inc*[6]. Moreover, cross-checking this fee request against the lodestar fee calculation validates its reasonableness, as explained below.

A.    **A Reasonable Percentage of the Fund Recovered is the Appropriate Method for Awarding Class Counsel's Attorneys' Fees in this Common Fund Settlement**

The percentage-of-the-fund method of awarding fees has become an accepted, if not the prevailing, method for awarding fees in common fund cases in this Circuit and throughout the United States.[7] Courts have long recognized that "'a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'"[8] The purpose of compensating counsel in this manner means that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it."[9]

In this Circuit, district courts have discretion to award fees in common fund cases based on either the lodestar/multiplier method or the percentage-of-the-fund method.[10] However, when calculating attorneys' fees in a common fund case, "the percentage-of-recovery method is generally favored."[11] Furthermore, the Supreme Court has consistently endorsed awarding attorneys' fees using the percentage-of-the-fund method.[12] Thus, Class Counsel requests that the Court apply the percentage-of-the-fund method.

---

[6]  834 F. Supp. 2d 329 (E.D. Pa. 2011) ("*McDonough*").

[7]  *See, e.g., Kirsch*, 534 Fed. Appx. at 115 ("'[t]he percentage of recovery method is generally favored in common fund cases.'") (quoting *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 280 (3d Cir. 2009)).

[8]  *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005) (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 n.39 (3d Cir. 1995)).

[9]  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).

[10]  *See In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 539 (3d Cir. 2009); *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006).

[11]  *In re Diet Drugs*, 582 F.3d at 540; *see also Kirsch*, 534 Fed. Appx. at 115 (same); MANUAL FOR COMPLEX LITIGATION § 14.121 (4th ed. 2004) (reporting that "the vast majority of courts of appeals now permit or direct district courts to use the percentage method in common-fund cases").

[12]  *See, e.g., Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165-67 (1939); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

**B.    A Fee Award Based on 33-1/3% of the Common Fund Is Fair and Reasonable**

In determining what constitutes a reasonable percentage fee award, a district court must

consider the ten factors identified by the Third Circuit in *Gunter v. Ridgewood Energy Corp.*[13]

and *In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions.*[14] As the Third Circuit

explained in *In re Diet Drugs*,[15] the *Gunter/Prudential* factors for which this Court must conduct

a "robust assessment" are:

> (1) the size of the fund created and the number of beneficiaries,
> (2) the presence or absence of substantial objections by members
> of the class to the settlement terms and/or fees requested by
> counsel, (3) the skill and efficiency of the attorneys involved,
> (4) the complexity and duration of the litigation, (5) the risk of
> nonpayment, (6) the amount of time devoted to the case by
> plaintiffs' counsel, (7) the awards in similar cases, (8) the value of
> benefits attributable to the efforts of class counsel relative to the
> efforts of other groups, such as government agencies conducting
> investigations, (9) the percentage fee that would have been
> negotiated had the case been subject to a private contingent fee
> arrangement at the time counsel was retained, and (10) any
> innovative terms of settlement.

Applying these factors clearly demonstrates that Plaintiffs' fee request is reasonable.[16]

**1.    An award of 33⅓% is reasonable based on the size of the Common Fund.**

An award of 33⅓% percent of the common fund is a reasonable amount that falls within

the range of amounts approved by this Court in similar cases.[17]  Indeed, "courts within this

Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses."[18]

---

[13] 223 F.3d 190 (3d Cir. 2000).

[14] 148 F.3d 283 (3d Cir. 1998).

[15] 582 F.3d at 540 (internal citations omitted).

[16] Because there is no *cy pres* component to the Amended Settlement and all of the funds are being distributed to Settlement Classes, the Amended Settlement clearly "prioritizes direct benefit to the class," and there is therefore no need to decrease the fee award pursuant to *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 178-179 (3d Cir. 2013).

[17] *See, e.g., Flonase Direct Purchasers*, 951 F. Supp. 2d at 746 (approving fees of one-third of common fund); *Flonase Indirect Purchasers*, 291 F.R.D. at 104 (same, and noting that "one-third fee award is standard in complex antitrust cases of this kind"); *Stagi*, 880 F. Supp. 2d at 571 ("this District's fee awards generally range between nineteen and forty-five percent of the common fund").

[18] *Ravisent*, 2005 U.S. Dist. LEXIS 6680, at *40; *see also, e.g., Auto. Paint.*, 2008 U.S. Dist. LEXIS 569, at *9-10 (awarding requested fees of one third of the multi-million dollar settlement fund); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27012, at *10 (D.N.J. Nov. 9, 2005) (awarding fees of 33⅓%

- 4 -

The percentage fee awards in this Circuit are consistent with nationwide percentages.[19]
Accordingly, this factor weighs in favor of the requested fee award.

> **2.      Because the deadline for objections has not yet passed, analysis of the second factor is premature.**

The Notice of Settlement issued by the parties advised prospective class members that
Class Counsel would apply for the fee award described herein and that any class member could
object to either the Settlement or the fee application.  As of this date, there have been no
objections to the fees requested by counsel.  However, the deadline for objections is August 22,
2014, so it is premature to fully analyze this factor.

> **3.      Class Counsel are skilled and efficient litigators.**

Class Counsel are highly experienced in litigating complex class actions and antitrust
cases.  As a result, Class Counsel was successful in defeating several attempts by Defendants to
dismiss this matter.  Moreover, Class Counsel successfully moved for class certification, and
were preparing these cases for trial at the time of settlement.  This factor weighs in favor of the
requested fee award.

> **4.      The litigation was complex and enduring.**

"[C]omplex and/or novel legal issues, extensive discovery, acrimonious litigation, and
tens of thousands of hours spent on the case by class counsel" are the "factors which increase the

---

from $75 million settlement fund); *Godshall v. Franklin Mint Co.*, 2004 U.S. Dist. LEXIS 23976, at *18 (E.D. Pa.
Dec. 1, 2004) (awarding a 33% fee and noting that "[t]he requested percentage is in line with percentages awarded
in other cases"); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d at 433-34 (awarding one-third of a $48 million
settlement fund); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) (an "award of one-third of the
fund for attorneys' fees is consistent with fee awards" by district courts in the Third Circuit); *In re Greenwich
Pharm. Sec. Litig.*, 1995 U.S. Dist. LEXIS 5717, at *16-17 (E.D. Pa. April 26, 1995) (holding that "[a] fee award of
33.3 percent is in line with the fee awards approved by other courts").

[19] *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of fees equal
to one-third of total recovery); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 U.S. Dist. LEXIS
27899, at *16-17 (S.D.N.Y. Mar. 31, 2009) (holding that "Class Counsel's request for 33% of the Settlement Fund is
typical in class action settlements in the Second Circuit" and collecting cases); *In re Medical X-Ray Film Antitrust
Litig.*, 1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998) (awarding fees that comprised 33.33% of the
$39.36 million settlement).

complexity of class litigation."[20]  Here, this Court witnessed first-hand the number of complex and novel legal issues that have arisen during the last eight years.

During the course of the action, Plaintiffs were faced with several rounds of briefing. These were occasioned by (a) the Supreme Court's explanation of the pleading standards in *Bell Atl. Corp. v. Twombly*;[21] (b) the Supreme Court's decision rejecting the historical *per se* ban on resale price maintenance agreements and ruling that such agreements are to be judged under the Rule of Reason;[22] and (c) a Third Circuit decision newly interpreting the class certification standards.[23]  This Court granted class certification, in part, for the *McDonough* subclasses after a three-day evidentiary hearing in mid-2009.[24]  This Court previously found this factor weighed in favor of approval because, inter alia, "class counsel had to address three significant changes in the law handed down by higher courts at different stages of this five-year litigation."[25]

Moreover, the parties completed merits discovery, which included the review of over one million pages of documents from Defendants and third parties, more than 30 depositions, and the production by Plaintiffs of their Rule 26(a)(2) expert reports.  In fact, in early 2010 in *McDonough,* the Court granted Defendants' motion to separate the trials by Defendant, and scheduled the first trial against BRU and Medela for January 2011.[26]  Moreover, Class Counsel has diligently worked to address the Third Circuit's concerns, expressed on appeal of the Initial Settlement, in the allocation plan for the Amended Settlement.

Accordingly, this factor weighs in favor of a finding that Plaintiffs' fee request is reasonable.

---

[20] *In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 741 (3d Cir. 2001).

[21] 550 U.S. 544 (2007).  *See Babyage.com, Inc. v. Toys "R"* Us*, Inc.*, 558 F. Supp. 2d 575 (E.D. Pa. 2008).

[22] *Leegin Creative Leather Prods. Inc. v. PSKS Inc.*, 551 U.S. 877 (2007).

[23] *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008).

[24] *See McDonough v. Toys "R" Us, Inc.*, 638 F. Supp. 2d 461, 491 (E.D. Pa. 2009).

[25] *See McDonough* 834 F. Supp. 2d at 343.

[26] Dkt. No. 662.

### 5.      Class Counsel faced a risk of nonpayment.

For this factor, some courts weigh the risk of non-payment in the event that defendants go out of business.[27]  Here, two Defendants, Maclaren and Kids Line, have filed for bankruptcy during the pendency of settlement negotiations and the approval process.

Other courts have also analyzed this factor by noting that "while this case has been pending, Class Counsel have not received any payment, and, by proceeding on a contingent-fee basis, ran substantial risk of nonpayment…."[28]  Here, Class Counsel have been zealously advocating for Plaintiffs and the Class since early 2006 – for more than eight years – without payment.  Class Counsel ran a substantial risk of non-payment as antitrust cases are notoriously complex and uncertain.  The legal landscape in this case also changed post-*Leegin*, as well as following the Circuit Court's opinion in *Hydrogen Peroxide* regarding the district court's review of Rule 23 standards.  Accordingly, this factor weighs in favor of Plaintiffs' requested fee award.

### 6.      Class Counsel devoted more than 84,950.77 hours to prosecuting this action.

Class Counsel devoted considerable time and effort to prosecuting the Class's antitrust claims.  As set forth in the declarations of Counsel, Class Counsel reported devoting 84,950.77 hours to prosecuting this case.  Thus, this factor weighs in favor of Plaintiffs' fee award.[29]

### 7.      Awards in similar cases demonstrate 33⅓% is reasonable.

As set forth *supra*, fee awards of 33⅓% are within the range of well-accepted awards in this Circuit.  Moreover, this percentage is consistent with awards nationwide.[30]  Accordingly, this factor supports Class Counsel's request.

---

[27] *See, e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005); *McDonough v. Toys "R" Us, Inc.*, 834 F. Supp. 2d 329, 343 (E.D. Pa. 2011) (citing *Rite Aid*), *vacated*, 708 F.3d 163 (3d Cir. 2013).

[28] *Hall v. Best Buy Co.*, 274 F.R.D. 154, 173 (E.D. Pa. 2011).  *See also Flonase Indirect Purchasers*, 291 F.R.D. at 104 ("as a contingent fee case, counsel faced a risk of nonpayment in the event of an unsuccessful trial. Throughout this lengthy litigation, Class Counsel have not received any payment.  This factor supports approval of the requested fee"); *Flonase Direct Purchasers*, 951 F. Supp. 2d at 748 (same).

[29] *See, e.g.*, *Flonase Direct Purchasers*, 951 F. Supp. 2d at 748 (finding factor weighed in favor of 33% fee award where class counsel devoted more than 40,000 combined hours to prosecuting the antitrust class action).

[30] *See, e.g.*, *Menkes v. Stolt-Nielsen S.A.*, 2011 U.S. Dist. LEXIS 7066 (D. Conn. Jan. 25, 2011) (granting fee request of 33⅓ percent of common fund in class action settlement); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (33.33% fee award); *In re Blech Sec. Litig.*, 2002 U.S. Dist. LEXIS 23170, at *5

8.      **Class Counsel prosecuted the litigation without help from the government or other public agencies.**

Courts in this Circuit are instructed to consider whether Class Counsel had benefitted from "the efforts of other groups, such as government agencies conducting investigations."[31] Similar to the situation in *In re Diet Drugs Prods. Liab. Litig.*,[32] "this case is quite different from the typical antitrust or securities litigation," in which the *Gunter/Prudential* factors are often considered, "where government prosecutions frequently lay the groundwork for private litigation."[33] Here, Class Counsel did not rely on "the Government or other public agencies to do their work for them as has occurred in some cases."[34] Accordingly, this factor weighs in favor of Class Counsel's requested fee award.

9.      **The requested fee is consistent with the percentage fee that would have been negotiated in a private contingent fee arrangement.**

"The 30% fee requested here is consistent with private contingent fee arrangements in this District."[35]  Plaintiffs recognize that the Court has previously found this factor to be neutral in light of the "extreme[] difficult[y in] determin[ing] what fee would have been negotiated at the

---

(S.D.N.Y. Dec. 4, 2002) (33.3% fee award); *see also* Denise N. Martin, Vinita M. Juneja, Todd S. Foster & Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* 2 STAN. J.L. BUS. & FIN. (1996) ("Regardless of case size, fees average approximately 32 percent of the settlement.").

[31] *AT&T*, 455 F.3d at 165 (citation omitted).

[32] 553 F. Supp. 2d 442, 481 (E.D. Pa. 2008).

[33] *Id.*

[34] *Id.* at 481-82. In fact, the Federal Trade Commission ("FTC") commenced an investigation well after Plaintiffs had begun litigating this case, *see* "Toys 'R' Us Faces Federal Antitrust Inquiry," WALL STREET JOURNAL, October 17-18, 2009, and settled with Toys "R" Us, Inc. for significantly less money than Class Counsel obtained on behalf of the Subclasses, even when only taking into account Toys "R" Us, Inc.'s contribution to the Settlement Fund.  *Compare* FTC Press Release titled, "Toys 'R' Us to Pay $1.3 Million Penalty for Violating FTC Order," dated March 29, 2011, with Exhibit H to the Amended Settlement (filed under seal) (Dkt. #857).

[35] *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 464 n.18 (E.D. Pa. 2008) (citing *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 340 (E.D. Pa. 2007) (finding a fee of 35% to be consistent with private contingent fee arrangements)); *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[I]n private contingency fee cases … plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery.").

outset of the litigation."[36]  However, other courts have found that "a one-third contingency fee arrangement is not out of the ordinary in a complex [antitrust] case like this one."[37]

   **10.     The factor of any innovative terms is neutral.**

   This factor neither weighs in favor of nor detracts from a decision to award fees.[38]

   In sum, nine of the ten of the *Prudential/Gunter* factors supports Class Counsel's request for a fee award in the amount of 33⅓% of the common fund, and none of the *Prudential*/*Gunter* factors counsel against that request.

**C.     The Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee**

   Courts in the Third Circuit often examine the lodestar calculation as a cross-check on the percentage fee award.  The cross-check is not designed to be a "full-blown lodestar inquiry," but rather an estimation of the value of counsel's investment in the case.[39] The Third Circuit recommends the use of the lodestar cross-check "as a means of assessing whether the percentage-of-recovery award is too high or too low."[40]

   The cross-check analysis is a two-step process.  First, the lodestar is determined by multiplying the number of hours reasonably expended by the reasonable rates requested by the attorneys.[41]  Second, the court determines the multiplier required to match the lodestar to the percentage-of-the-fund request made by counsel, and determines whether the multiplier falls within the accepted range for such a case.  Here, the lodestar cross-check confirms that the 33⅓% request is eminently reasonable.[42]

---

   [36] *McDonough*, 834 F. Supp. 2d at 345.

   [37] *See Fasteners Antitrust Litig.*, 2014 U.S. Dist. LEXIS 9990, at *19 (finding factor weighed in favor of approval in antitrust case because "a one-third contingency fee arrangement is not out of the ordinary in a complex case like this one").

   [38] *See, e.g.*, *In re Merck & Co. Vytorin ERISA Litig.*, 2010 U.S. Dist. LEXIS 12344, at *42 (D.N.J. Feb. 9, 2010) (finding factor neutral when no innovative terms are highlighted).

   [39] *Third Circuit Task Force Report*, *Selection of Class Counsel*, 208 F.R.D. 340, 422-23 (2002) (noting that "[t]he lodestar remains difficult and burdensome to apply, and it positively encourages counsel to run up the bill, expending hours that are of no benefit to the class").

   [40] *In re Diet Drugs*, 582 F.3d at 545 n.42 (citing *Rite Aid*, 396 F.3d at 306-07).

   [41] *See Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000).

   [42] *See McDonough*, 834 F. Supp. 2d at 346.

- 9 -

1.   **Class Counsel's lodestar is reasonable.**

As of July 31, 2014, Class Counsel reported spending a total of 84,950.77 hours working on this case.[43] As explained in the Class Counsel Declaration and Counsels' Fee Declarations, the stated hours were incurred by, among other things, investigating the claims against Defendants, reviewing and analyzing the documents, preparing the Complaint and Consolidated Amended Complaint, conducting necessary legal research, briefing Defendants' motions to dismiss, motions for judgment on the pleadings, and motions for summary judgment, conducting extensive discovery, briefing and presenting plaintiffs' motion for class certification in a three-day evidentiary hearing, working with experts submitting Rule 26(a)(2) reports, beginning trial preparations, engaging in a mediation and extensive additional settlement negotiations, preparing the necessary agreements and pleadings related to the Settlement, prosecuting this matter on appeal, and negotiating the Initial and Amended Settlements.[44]  Given these activities, the complexity of the legal issues involved, and the intensity of the defense mounted by Defendants, the hours incurred are reasonable. Class Counsel anticipate expending substantial additional hours on this litigation to bring it to a close, for which we will not seek additional compensation; these additional hours should be considered in evaluating the reasonableness of the fee request.

The hourly rates charged by Class Counsel are reasonable based on each person's position, experience level, and location.  These rates can be based on the prevailing rates in the communities in which Class Counsel practices or on hourly rates obtained by counsel in other complex or class action litigation.[45]  Taking into account the several factors discussed above,

---

[43] *See* Class Counsel Declaration, Counsels' Fee Declarations.

[44] "The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting.  The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 306-307; *see also Prudential*, 148 F.3d at 341 (finding no abuse of discretion where district court "reli[ed] on time summaries, rather than detailed time records").  Of course, Class Counsel will make the detailed billing records available to the Court *in camera* upon request.

[45] *See Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir. 1991) (finding that declarations submitted by counsel of the "prevailing market rate in the relevant community … [are] sufficient to establish the appropriate [billing] rate for lodestar purposes"); *Mogck v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1191 (S.D. Cal. 2003).

including the result achieved, the complexity and risk of the litigation, and the skill and experience of counsel, Class Counsel's rates were reasonable and appropriate.

Thus, Class Counsel's reasonable hours and reasonable rates produced a lodestar of $33,886,857.65 as of July 31, 2014.

### 2. The negative multiplier of .34 mitigates in favor of the requested fee.

The negative multiplier, at .34, produced by cross-checking the 33⅓% requested award against the current reported lodestar of $33,886,857.65 is well **below** the accepted range in the Third Circuit.[46]  A negative multiplier bespeaks strongly the risk undertaken by counsel in prosecuting to the trial preparation stage of this complex litigation.[47]  The Amended Settlement resolves this litigation before trial and any other steps in the proceedings that would have generated a substantially larger lodestar than presented at this point.

### IV.   CLASS COUNSEL SHOULD BE REIMBURSED FOR THEIR EXPENSES

Class Counsel also request reimbursement for the reasonable and necessary expenses advanced to prosecute this litigation since its inception in January 2006 through July 31, 2014. These expenses, totaling $2,321.401.37, are detailed in the Counsels' Fee Declarations as well as the Declaration of Elizabeth A. Fegan Regarding Expenses Paid by Plaintiffs from the Baby Products Litigation Fund.  "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of … reasonable litigation expenses from that fund."[48]

---

[46] *See, e.g.*, *In re Diet Drugs*, 582 F.3d at 542 n. 42 (finding that a multiplier, in a lodestar crosscheck, in the range of "2.6, 3.4, or somewhere in that neighborhood, it is not problematically high.  It is either below or near the average multiplier…."); *Cendant Prides*, 243 F.3d at 735-36, 742 ("strongly suggest[ing]" a multiplier of 3 as the ceiling for an award in a simple case where "no risks pertaining to liability or collection were pertinent"); *Prudential*, 148 F.3d at 341 ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (internal quotation and citation omitted).

[47] *See McDonough*, 834 F. Supp. 2d at 347 (the negative multiplier "is well under the generally acceptable range and provides strong additional support for approving the attorneys' fees request"). *See also In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 284 (3d Cir. 2009) ("The lodestar multiplier … was less than one and thus reveals that Class Counsel's fee request constitutes only a fraction of the work that they billed….").

[48] *In re Rent-Way Secs. Litig.*, 305 F. Supp. 2d 491, 519 (W.D. Pa. 2003); *see also In re Corel Corp. Inc. Secs. Litig.*, 293 F. Supp. 2d at 498 (same) (citation omitted).

The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are the type typically billed by attorneys to paying clients in the marketplace.[49]  For example, the expenses Plaintiffs' Counsel paid through the Baby Products Litigation Fund can be divided into seven specific categories: (1) Professional Expert and Consulting Services ($966,015.39); (2) Document Review On-Line Website ($154,134.00); (3) Foreign Translation Services ($9,410.00); (4) Deposition Transcript, Video and Other Deposition Related Costs ($43,086.27); (5) Hearing Materials ($29,566.63); (6) Mediation-Related Costs ($37,833.96); and (7) Costs of Appeal ($2,330.90).  Through July 31, 2014, Plaintiffs' Co-Lead Counsel has directed that a total of $1,244,337.85 in fees and costs be paid through the Baby Products Litigation Fund.  The balance in the Fund is $37,919.27.[50]

The categories of expenses for which Class Counsel seek reimbursement here are the type of expenses routinely charged to hourly clients and, therefore, the full requested amount of $2,283,482.10 should be reimbursed.[51]

## V.       INCENTIVE AWARDS ARE WARRANTED FOR NAMED PLAINTIFFS

Finally, Class Counsel request that the Court award $2,500.00 to each Named Plaintiff for the time they have expended in representing the Class members. District courts have "broad discretion to award payment to class representatives for their efforts to benefit the class."[52] "Factors courts use to evaluate the appropriateness of awards include the financial, reputational and personal risks to the plaintiff; the degree to which the Plaintiff was involved in discovery and

---

[49] *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (allowing recovery of "out-of-pocket expenses that 'would normally be charged to a fee paying client'").

[50] Declaration of Elizabeth A. Fegan Regarding Expenses Paid by Plaintiffs from the Baby Products Litigation Fund, Ex. 3.

[51] *See McDonough*, 834 F. Supp. 2d at 348 (Court awarding the requested expenses and finding them "adequately documented, proper and reasonable").

[52] *Hall v. Best Buy Co.*, 2011 U.S. Dist. LEXIS 31220, at *53-54.

other litigation responsibilities; the length of the litigation; and the degree to which the named plaintiff benefitted (or not) as a class member."[53]

Here, Named Plaintiffs have diligently fulfilled their obligations as Class Representatives. Throughout the litigation, Named Plaintiffs kept informed of the litigation and communicated with Class Counsel as necessary to assist with the effective prosecution of the case. Plaintiffs responded to discovery, and the *McDonough* Plaintiffs were deposed. After the mediations, each of the Named Plaintiffs considered the terms of the Settlements. For these reasons, Incentive Awards of $2,500.00 for each Named Plaintiff are easily warranted.

Such awards are fair and in line with what other courts have awarded in similar cases.[54] Thus, Class Counsel respectfully request that the Court award Incentive Awards in the amount of $2,500.00 for each Named Plaintiff for the valuable services they provided to this litigation as Class Representatives.

## VI.    CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court: (1) award Class Counsel payment of attorneys' fees in the amount of 33⅓% of the Settlement Amount, plus interest, (2) order reimbursement of litigation expenses incurred by Class Counsel in the amount of $2,283,482.10; and (3) award Incentive Awards in the amount of $2,500.00 for each Named Plaintiff.

---

[53] *Id.*

[54] *See, e.g., Hall v. Best Buy Co.*, 2011 U.S. Dist. LEXIS 31220 (approving incentive award of $5,000.00 per named plaintiff); *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.RD. 468, 476 (E.D. Pa. 2010) ("If the named plaintiff was deposed, the named plaintiff's incentive payment will be $5,000; if the named plaintiff was not deposed, the named plaintiff's incentive payment will be $2,500."); *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226, 245 (E.D. Pa. 2009) (incentive award of between $5,000.00 and $10,000.00 where named plaintiffs prepared for and testified in depositions that exposed their private financial affairs, participated in preparing responses to interrogatories, and produced extensive documents); *Klingensmith v. Max & Erma's Rests., Inc.*, 2007 U.S. Dist. LEXIS 81029, at *20 n.13 (W.D. Pa. Oct. 23, 2007) (incentive award of $2,500.00 "as a necessary incentive to aid in enforcement of legislation, and as compensation to an individual willing to contribute her name and time to this purpose").

Dated: August 15, 2014     Respectfully submitted,

            s/ Elizabeth A. Fegan

             Elizabeth A. Fegan
            HAGENS BERMAN SOBOL SHAPIRO LLP
            1144 West Lake Street, Suite 400
            Oak Park, IL 60301
            Tel.: (708) 628-4949
            Fax: (708) 628-4950

            Steve W. Berman
            Anthony D. Shapiro
            Ivy Arai Tabbara
            HAGENS BERMAN SOBOL SHAPIRO LLP
            1918 Eighth Avenue, Suite 3300
            Seattle, WA 98101
            Tel.: (206) 623-7292
            Fax: (206) 623-0594

            Eugene A. Spector
            William G. Caldes
            Jeffrey L. Spector
            SPECTOR ROSEMAN KODROFF
              & WILLIS, P.C.
            1818 Market Street, Suite 2500
            Philadelphia, PA 19103
            Tel.: (215) 496-0300
            Fax: (215) 496-6611

            Fred T. Isquith
            Thomas H. Burt
            WOLF HALDENSTEIN ADLER FREEMAN
            & HERZ LLC
            270 Madison Avenue
            New York, NY 10016
            Tel.: (212) 545-4600
            Fax: (212) 545-4653

            *Class Counsel for the Settlement Subclasses*

- 14 -

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on August 15, 2014 a true and correct copy of the foregoing document was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

By: <u>/s/ Elizabeth A. Fegan</u>
Elizabeth A. Fegan

001897-12  711012 V1