UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL M. MCDONOUGH, *et al.*,<br><br>                                Plaintiffs,<br><br>                v.<br><br>TOYS "R" US, INC., d/b/a/ Babies "R" Us, *et al.*,<br><br>                                Defendants. | C.A. No. 2:06-cv-0242-AB |
| ARIEL ELLIOTT, *et al.*,<br><br>                                Plaintiffs,<br><br>                v.<br><br>TOYS "R" US, INC., d/b/a Babies "R" Us, *et al.*,<br><br>                                Defendants. | No. 2:09-cv-06151-AB |

**MOTION FOR FINAL APPROVAL OF
FOURTH AMENDED SETTLEMENT WITH DEFENDANTS TOYS "R" US, INC.,
BABIES "R" US, INC., TOYS "R" US-DELAWARE, INC., BABYBJÖRN AB,
BRITAX CHILD SAFETY, INC., KIDS LINE, LLC, MACLAREN USA, INC.,
<u>MEDELA, INC., AND PEG PEREGO U.S.A., INC.</u>**

Plaintiffs in the *McDonough* and *Elliott* matters ("Plaintiffs") respectfully move for final approval of the Fourth Amended Settlement Agreement ("Amended Settlement" or "Fourth Amended Settlement")[1] reached with Defendants Toys "R" Us, Inc., Babies "R" Us, Inc., Toys "R" Us-Delaware, Inc. (collectively, "BRU" or "Babies "R" Us"), BabyBjörn AB ("BabyBjörn"), Britax Child Safety, Inc. ("Britax"), Kids Line, LLC ("Kids Line"), American Baby Products, Inc. f/k/a Maclaren USA, Inc. ("Maclaren"), Medela, Inc. ("Medela"), Peg

---

[1] All Capitalized Terms in this memorandum will have the same meaning as set forth in the Amended Settlement.  A copy of the Amended Settlement is attached as Ex. 1.  "Exs. A-K" are references to exhibits to the Amended Settlement.

- 1 -

Perego U.S.A., Inc. ("Peg Perego"), and Regal Lager, Inc. ("Regal Lager")[2] (collectively "Defendants").[3]

Following the Third Circuit's ruling vacating the Initial Settlement Agreement,[4] Plaintiffs and Defendants vigorously negotiated the Amended Settlement, which provides for 100% of the Net Settlement Fund to be distributed directly to the Settlement Classes. While the achievement of the $35.5 million common fund remains unchanged, the Amended Settlement maximizes the direct benefit to the Settlement Classes. In addition to payments to the estimated 21,077 class members who previously submitted or now submit valid and timely claims with valid contact information, the 1,135,378 class members identified in BRU's purchase records with valid addresses will receive a direct payment without having to file a Claim Form.[5] Based on the combination of claims and direct payments, the *entire* Net Settlement Fund will be distributed directly to at least 1,156,455 Settlement Class Members in the first distribution.[6]

Importantly, there is no *cy pres* payment in the Amended Settlement. Instead, to the extent there are portions of the Settlement Fund remaining as a result of uncashed checks sent to Settlement Class Members, such funds shall be paid to Defendants.[7] Defendants will then issue

---

[2] The "Manufacturer Defendants" are BabyBjörn, Britax, Kids Line, Maclaren, Medela, Peg Perego, and Regal Lager.

[3] During the course of the initial settlement negotiations, Maclaren filed for bankruptcy. During the course of seeking approval of the Amended Settlement, Kids Line filed for bankruptcy. With regards to the Maclaren bankruptcy, Plaintiffs obtained a Stipulation and Order modifying the automatic stay imposed under section 362 of the Bankruptcy Code to permit the District Court to approve the Amended Settlement Agreement on a final basis. With respect to Kids Line, the parties executed such a stipulation and submitted it to the bankruptcy court on Friday, August 8, 2014, and anticipate that the bankruptcy court will enter it shortly.

[4] *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013).

[5] These numbers are estimated as of August 8, 2014, and may increase before the Claims Deadline of August 22, 2014. The Claims Administrator will file an affidavit with the Court with the final numbers before the Fairness Hearing.

[6] *See* Amended Settlement, ¶¶ 18-21; Claim Form and Allocation Order, Exhibits D and F, ¶¶ 6(a), (b). *See also* Declaration of Lael D. Dowd Concerning Final Implementation of Notice Program ("Dowd Decl."), attached as Ex. 2, ¶ 21.

[7] *See* Amended Settlement, ¶ 20; Ex. F., ¶¶ 13-15.

coupons in the Final Remaining Amount in a second distribution to Settlement Class Members who received less than the maximum Enhanced Authorized Payment in the first distribution.[8]

This Amended Settlement does not change the Settlement Amount ($35,500,000), but maximizes depletion of the Net Settlement Fund to the direct benefit of all known Settlement Class Members.

As reflected in detail in the accompanying memorandum, pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court should find that the Amended Settlement is "fair, reasonable and adequate."[9] The Amended Settlement satisfies the ten-factor test for determining whether a proposed settlement is "fair, adequate and reasonable,"[10] because (1) the litigation has been complex and expensive over the last eight years; (2) merits discovery has been completed and the parties were on the verge of trial when the Initial Settlement was negotiated; (3) Plaintiffs faced a significant risk of establishing liability of damages, as well as maintaining the class action through trial, particularly where this Court had severed the trials of the Defendants; (4) several Defendants filed for bankruptcy during the course of the litigation; (5) the Settlement Amount of $35.5 million represents approximately 30% of estimated actual damages, which amount has been allocated among the Settlement Subclasses based, in part, on Dr. Martin Asher's calculation of the appropriate allocation percentages,[11] and is on par with or superior to settlements in other recent antitrust class actions; and (6) 100% of the Net Settlement Fund will be distributed to Settlement Class Members, thus maximizing the degree of direct benefit provided to the Class.

---

[8] *Id.*, Ex. F, ¶¶ 7, 11-12, 14-16, Ex. I.  A Notice, Publication Notice, Postcard Notice, E-Mail Notice and Claim Form was provided to the Settlement Class Members, informing them of these changes.  *See* Dowd Decl.

[9] Fed. R. Civ. P.  23(e) (2).  *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29161, at *5 (E.D. Pa. Sept. 27, 2004).

[10] *Girsch v. Jepsen*, 521 F.2d 153, 157 (3d Cir. 1975); *Baby Products,* 708 F.3d 163, 174 (3d Cir. 2013).

[11] *See* Declaration of Dr. Martin Asher ("Asher Decl."), attached as Ex. 3, ¶ 15.

001897-12 711852 V1

Accordingly, as discussed in more detail in the memorandum, when examined in light of the Third Circuit's ten-factor test, the proposed Amended Settlement is fair, reasonable and adequate and should therefore be approved by the Court.[12]

## I. CONCLUSION

For the foregoing reasons, the Court should grant final approval of the proposed Amended Settlement and proposed plan for allocation of proceeds.

Dated: August 15, 2014  Respectfully submitted,

s/ Elizabeth A. Fegan

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
1144 West Lake Street, Suite 400
Oak Park, IL 60301
Tel.: (708) 628-4949
Fax: (708) 628-4950

---

[12] Moreover, the Notice Plan has been implemented as ordered by the Court. *See* Dowd Decl.

- 4 -

Steve W. Berman
Anthony D. Shapiro
Ivy Arai Tabbara
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel.: (206) 623-7292
Fax: (206) 623-0594

Eugene A. Spector
William G. Caldes
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF
    & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel.: (215) 496-0300
Fax: (215) 496-6611

Fred T. Isquith
Thomas H. Burt
WOLF HALDENSTEIN ADLER FREEMAN
& HERZ LLC
270 Madison Avenue
New York, NY 10016
Tel.: (212) 545-4600
Fax: (212) 545-4653

**CLASS COUNSEL FOR THE
SETTLEMENT SUBCLASSES**

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on August 15, 2014 a true and correct copy of the foregoing document was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

By: /s/ Elizabeth A. Fegan
Elizabeth A. Fegan